**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.*, **Individually and on Behalf of All Others Similarly Situated,**<br><br>                                        **Plaintiffs,**<br><br>      **v.**<br><br>**VIDA LONGEVITY FUND, LP,** *et al.*,<br><br>                                        **Defendants.** | **No. 1:21-cv-00402-SRF** |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
SETTLEMENT AND CERTIFICATION OF THE CLASS FOR SETTLEMENT
PURPOSES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..……… ii

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   FACTUAL AND PROCDEDURAL BACKGROUND ............................................. 1

  A.   The Parties and the Lawsuit ..................................................................... 1

  B.   Procedural History ...................................................................................... 2

  C.   Negotiations and Proposed Settlement Terms .......................................... 3

  D.   Due Diligence Discovery ............................................................................. 3

  E.   The Settlement .............................................................................................. 5

III.  ARGUMENT ............................................................................................................ 5

  A.   Legal Standard .............................................................................................. 5

  B.   Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class ................... 7

  C.   The Settlement Was Negotiated at Arm's Length and Is  Supported by Plaintiffs and Experienced Counsel ................................................... 8

  D.   The Settlement Provides Substantial Relief to the Settlement Class ............................... 9

    1.   The Significant Risks of Continued Litigation ................................... 9

    2.   Anticipated Legal Fees and Expenses ....................................... 11

  E.   The Proposed Plan of Allocation Treats Class Members Equitably ............................ 12

IV.   THE CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT .......... 13

  A.   The Rule 23(a) Requirements Are Satisfied ........................................... 14

    1.   Numerosity Is Satisfied ............................................................. 14

    2.   Commonality Is Satisfied ........................................................... 15

    3.   Typicality Is Satisfied ................................................................. 15

    4.   Adequacy of Representation Is Satisfied .................................... 16

  B.   The Rule 23(b)(3) Elements Are Satisfied .............................................. 17

    1.   Predominance Is Satisfied .......................................................... 17

    2.   Superiority Is Satisfied ............................................................... 18

  C.   The Notices and Notice Plan Should Be Approved ................................. 19

V.    PROPOSED SCHEDULE OF EVENTS ................................................................ 20

VI.   CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alloy, Inc. Sec. Litig.*, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................................ 9

*Alves v. Main*, Civil Action No. 01-789 (DMC), 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ... 8, 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 13, 17

*Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases)*, 461 F.3d 219 (2d Cir. 2006) ..... 19

*Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). ....................................................... 20

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ......................................................... 15

*Bernhard v. TD Bank, N.A.,* No. 08-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) ................. 10

*Cmty. Bank of N. Va.*, 622 F.3d 275 (3d Cir. 2010) .................................................................... 16

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................................ 5

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................................. 6

*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GMC")*, 55 F.3d 768 (3d Cir. 1995) 5, 6, 11

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. App'x 94 (3d Cir. 2013) ........................ 16

*Hall v. AT&T Mobility LLC,* No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ................. 9

*Hassine v. Jeffres*, 846 F.2d 169 (3d Cir. 1988) ........................................................................ 17

*Henderson v. Volvo Cars of N. Am., LLC*, Civil Action No. 09-4146 (CCC), 2013 WL 1192479

   (D.N.J. Mar. 22, 2013) ............................................................................................... 15, 16, 19

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3-:09-cv-00419-MMD-WGC, 2012

   WL 5199742 (D. Nev. Oct. 19, 2012) .................................................................................. 11

*IGI Secs. Litig.*, 122 F.R.D. 451 (D.N.J. 1998) ......................................................................... 16

*Ikon Office Sols.*,194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................... 9

*Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013) ............................................ 12, 15

*Jones v. Commerce Bancorp Inc.,* No. 05-5600, 2007 (D. N.J. July 16, 2007)............................ 5

*Kanefsky v. Honeywell Int'l, Inc.*, 2022 WL 1320827 (D.N.J. May 3, 2022) ................................ 6

*La. Mun. Police Emples. Ret. Sys. v. Sealed Air Corp.*, Civil Action No. 03- CV-4372 (DMC),

    2009 WL 4730185 (D.N.J. Dec. 4, 2009)................................................................................ 12

*Lo v. Oxnard European Motors, LLC*, No. 11cv1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal.

    Dec. 15, 2011)........................................................................................................................ 13

*Mehling v. New York Life Ins. Co*., 246 F.R.D. 467 (E.D. Pa. 2007) ........................................... 6

*Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) .................................................................................... 16

*NFL  Players Concussion Injury Litig*. ("*NFL*"), 775 F.3d 570, (3d Cir. 2014) .......... 6, 15, 17, 18

*Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632 (E.D. Pa. June 30,

    2016) ...................................................................................................................................... 18

*Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450 (D.N.J. 1997)...................... 8

*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir. 2015) (citing Fed. R. Civ. P. 23(a)(2)....... 15, 18

*Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3rd Cir. 2005)............................................................. 14

*Ritti v. U-Haul Int'l, Inc.*, No. 05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006)............... 17

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ........................................................ 18

*Schuler v. Meds. Co.*, Civil Action No. 14-1149 (CCC), 2016 WL 345218 (D.N.J. June 23, 2016)

    .................................................................................................................................................. 8

*Shah v. Zimmer Biomet Holdings,* No. 3:16-cv-815-PPS-MGG, 2020 U.S. Dist. LEXIS 171925

    (N.D. Ind. Sept. 18, 2020)......................................................................................................... 8

*Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343 (E.D. Pa. 2021) ...................................... 6

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)...................................................................... 14

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011).................................................... 11, 15, 19

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004) ....................................................................... 19

*Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS), 2019 (D.N.J. Oct. 4, 2019) ............. 5, 18

*ViroPharma Inc. Sec. Litig.,* No. 12-2714, 2016 WL 312108  (E.D. Pa. Jan. 25, 2016)................ 9

*Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ............................................... 10

*Yarger v. ING Bank, Fsb*, 285 F.R.D. 308 (D. Del. 2012) ............................................................ 18

## I.    PRELIMINARY STATEMENT

Plaintiffs Timothy O'Hern, Seymon Rodkin, and Dominic Cardinale (together, "Plaintiffs") respectfully submit this unopposed Motion for: (i) preliminary approval of the proposed settlement ("Settlement") of the above-captioned class action (the "Action") on the terms and conditions in the Stipulation of Settlement, dated July 8, 2022 (the "Stipulation"), submitted herewith[1]; (ii) certification of the class ("Class") for settlement purposes; (iii) approval of the form and manner of providing notice of the proposed Settlement to the Class; and (iv) scheduling a hearing to consider final approval of the Settlement ("Fairness Hearing").[2]

## II.    FACTUAL AND PROCDEDURAL BACKGROUND

### A.    The Parties and the Lawsuit

Plaintiffs are investors in the Vida Longevity Fund, LP ("VLF" or the "Fund"), an open-ended investment fund that uses money raised from investors to purchase life settlements. The Fund bought life insurance policies at a discount to their face value for investment purposes. The stated objective for the Fund was to produce a return of capital, plus cumulative compounded annualized returns of between 8 and 12%, with low volatility and low correlation with traditional asset class investments. While the Fund advertised having achieved the targeted return from inception through 2017, its fortunes changed in 2018, and its performance began to deteriorate through 2020.

---

[1] The Stipulation and Exhibits are attached as Exhibit 2 to the Declaration of Paul J. Scarlato ("Decl. Ex. __") submitted herewith.

[2] Unless otherwise defined herein, all capitalized terms have the same meaning as those set forth in the Stipulation.

Plaintiffs filed a class action complaint ("Complaint") against the Fund and Defendants Vida Management I, LLC, Capital Management, LLC, Vida Capital, Inc., and Jeffrey R. Serra ("Serra") (together, "Defendants"). The Complaint alleged that the Fund initially attributed its slipping performance to one-time or extrinsic events. Then, at the close of the third quarter of 2020, it revealed for the first time that the losses were caused by weaknesses in its internal processes and procedures required for the evaluation and pricing of its investments. The Complaint alleged that Defendants violated Texas' Securities Act ("TSA") by misrepresenting and/or failing to disclose the weaknesses in its internal processes and procedures and that the offering materials failed to make the requisite disclosures. The Complaint also alleged that Defendants violated the TSA by failing to disclose material conflicts of interest of the Fund's founder, Serra, which conflicts served to disadvantage the Fund.

### B.    Procedural History

The Complaint (ECF No. 1) was filed on March 19, 2021 after an extensive pre-filing investigation by Plaintiffs' counsel into the facts and law described below. In advance of the time for Defendants to file an answer, Plaintiffs indicated their intent to amend. Then, on April 8, 2021, Defendants asserted via letter that the operative Complaint contained a number of factual errors and, most significantly, that Plaintiffs' alleged material omissions were based on facts that were publicly disclosed. Defendants' letter demanded that the Complaint be voluntarily dismissed and/or the factual errors be corrected in an amended complaint pursuant to Fed. R. Civ. P. 11.

Shortly thereafter, the Fund published its financial results for the first quarter of 2021 ending March 30, 2021. Those results showed that the Fund's performance appeared to be turning around, and the Fund again began posting positive returns.

Notwithstanding the assertions in Defendants' March 19, 2021 letter, Plaintiffs remained confident of the accuracy of the allegations of the Complaint. Plaintiffs also maintained that Defendants had been required to disclose the allegedly omitted information in the Fund's offering materials, regardless of whether that information was available through other public sources.

Mindful of the risks of continued litigation and that a continued turnaround in the Fund's performance would significantly reduce potential damages, the parties explored whether the benefits of a possible resolution of the case at this stage through mediation outweighed expensive, time-consuming, burdensome litigation. The parties scheduled a mediation with Jed D. Melnick Esq., of JAMS, a highly experienced mediator who has mediated many securities class actions.

### C.    Negotiations and Proposed Settlement Terms

On October 14, 2021, the parties participated in an all-day mediation session with Mr. Melnick. Prior to the mediation, the parties submitted detailed mediation statements outlining the strengths and weaknesses their respective cases. The parties did not reach a settlement on October 14, but they continued discussions through the course of the following months and exchanged confidential documents including related to the amount of damages. The parties finally reached an agreement in principle on January 5, 2022, and entered into a formal Stipulation dated July 8, 2022. The Stipulation was subject to certain terms and conditions, and requires Defendants to pay the sum of $1.4 million in satisfaction of Plaintiffs' claims in return for a release. Pertinent to this Motion, two conditions are relevant: Plaintiffs' right to conduct due-diligence discovery, and this Court's approval of the Settlement.

### D.    Due Diligence Discovery

Given that the parties reached an agreement to settle before discovery was conducted, Plaintiffs maintained the right to conduct due diligence discovery to confirm the fairness of the

Settlement. Plaintiffs maintained the right to withdraw from the Settlement if information produced through the due diligence discovery caused them to reasonably and in good faith conclude that the proposed Settlement was not fair, reasonable, or adequate. In connection therewith, Defendants produced almost 6 gigabytes of data consisting of documents in 2,698 folders. The production consisted of, among other things, extensive documentation related to:

- o The financial performance or any valuation of the Fund;

- o The calculation of or adjustment to the Fund's reported net asset value ("NAV"), including relating to the base discount rate for calculation of the NAV and any caps on the NAV;

- o A study conducted by Vida Capital relating to medical underwriting data and actual mortality experience for purposes of better understanding mortality for the life-settlement population;

- o The calculation of or adjustment to the Fund's reported life expectancy ("LE") and LE update guidelines, including Actual-to-Expected calculations;

- o Reports or memoranda provided by Lewis & Ellis, Inc. to the Risk and/or Valuation Committees relating to the valuation of the Fund;

- o The May 2020 write-down of the Fund's NAV;

- o Any sale of investment assets by the Fund; and

- o Minutes of meetings of and materials presented at or before the meetings of the Investment Committee of Vida Capital Management, LLC, reports prepared by the Investment Committee, or reports prepared for the Investment Committee relating to:

    - The financial performance or valuation of VLF;

    - The calculation of or adjustment to VLF's reported NAV;

    - The calculation of or adjustment to VLF's LE update guidelines and age review;

    - The write-down of VLF's assets;

    - Purchases or recommendations of purchase of investment assets by VLF; and/or

    - Any sale of investment assets by VLF.

### E.     The Settlement

Following due diligence discovery, Plaintiffs chose to proceed with the Settlement. This unopposed Motion now seeks this Court's preliminary approval of the Settlement, which calls for Defendants to pay $1.4 million into a Settlement Fund for the benefit of the Class. The Settlement Fund will be used to pay the claims of Authorized Claimants as defined in the Stipulation, as well as the costs and expenses related to the notice and administration of the Settlement ("Notice and Administration Expenses"), any Attorneys' Fees and Expenses Award to Plaintiffs' Counsel, as well as Incentive Awards for the Plaintiffs as may be approved by the Court.

### III.     ARGUMENT

### A.     Legal Standard

The Third Circuit has reiterated the long-standing principle that there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). Settlements are especially favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GMC")*, 55 F.3d 768, 784 (3d Cir. 1995). Judicial review of a class action settlement is a two-step process consisting of preliminary approval and a subsequent fairness hearing to consider final approval. *Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS), 2019 WL 4894568 (D.N.J. Oct. 4, 2019); *In re NFL  Players Concussion Injury Litig. ("NFL")*, 775 F.3d 570, 581-83 (3d Cir. 2014); *GMC*, 55 F.3d at 785.

When reviewing a proposed settlement for preliminary approval, the Court's function is to make a "preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the class." *Jones v. Commerce Bancorp Inc.,* No. 05-5600, 2007 WL 2085357, at *2 (D. N.J. July 16, 2007) (citation omitted). The review for preliminary approval is

less stringent than for final approval. *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *GMC*, 55 F.3d at 785.

Prior to the December 1, 2018 amendment to Rule 23, courts in the Third Circuit looked to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), and its progeny, including *NFL*, at the final approval stage. Those factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Following the December 1, 2018 amendment to Rule 23(e)(1)(B), the preliminary approval evaluation includes an assessment of whether it is likely that the court will be able to finally approve the settlement and certify the class. Rule 23(e)(1)(B).[3] The Advisory Committee Notes on the 2018 amendments make clear that "[t]he goal of this amendment is not to displace any factor," but only "to focus the court and the lawyers" on the "core concerns" flagged in Rule 23(e)(2)(A)-(D). Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

Courts in this Circuit therefore continue to apply the Third Circuit's factors in addition to Rule 23(e)(2)'s considerations. *See, e.g., Kanefsky v. Honeywell Int'l, Inc.*, 2022 WL 1320827, at *4 n. 3 (D.N.J. May 3, 2022); *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355-56 (E.D. Pa. 2021) (Rule 23(e)(2)'s "factors are in many respects a codification of various factors set

---

[3] In connection with final approval, the Court will be asked to review the following core factors identified by Rule 23(e)(2): whether: (a) Plaintiffs and Plaintiffs' Counsel adequately represented the Class; (b) the Settlement was negotiated at arm's length; (c) the relief provided to the Class is adequate taking in to account (i) "the cost, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class"; (iii) "the terms of any proposed award of attorney's fees" to plaintiffs' counsel; and (iv) any and all agreements between the settling parties; and (d) the proposal treats Class members equitably relative to each other.

forth in *Girsh*."). Applying the standards set forth above, the Court must determine at the preliminary approval stage whether it "will likely be able to" approve the proposed Settlement at the final approval stage. Fed. R. Civ. P. 23(e)(2)(B)(i).

As summarized below, and as will be detailed in a motion for final approval, the Settlement meets all the factors required. Preliminary approval is therefore warranted.

### B.    Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class

The Settlement was negotiated by counsel who are experienced in complex securities litigation and who were acting in an informed manner. *See* Decl. Ex. 3. Plaintiffs' Counsel conducted a thorough investigation relating to the claims, defenses, and underlying events that are the subject of the Action. This process included a review of publicly available information on various platforms such as the Securities and Exchange Commission ("SEC") Investment Advisor Public Disclosure and Edgar databases (including SEC Forms ADV Data Archive), FINRA's Brokercheck, filings with the Texas and Florida Secretary of State Offices, filings with the National Association of Insurance Commissioners, filings with Texas and Florida Insurance Commissions, deed and lien records filed with the Travis County Clerk's Recording Division, and two Public Records Requests to the Florida Office of Insurance Regulations.

Plaintiffs' Counsel: (i) researched and drafted a thorough and detailed Complaint; (ii) participated in thorough settlement negotiations, including a mediation session with a private Mediator; and (iii) obtained a preliminary estimate of Class-wide damages from a damages expert. Plaintiffs' Counsel was cognizant that the settlement was reached early in the litigation process and that formal discovery had not yet taken place. Therefore, the Stipulation explicitly permitted Plaintiffs' Counsel to conduct due diligence discovery to confirm the fairness of the Settlement. The extensive scope of that due diligence discovery, which covered all core issues, was discussed

above. This work provided Plaintiffs' Counsel with a sound basis to conclude that the Settlement was in the best interests of Plaintiffs and the Settlement Class. *See, e.g., Schuler v. Meds. Co.*, Civil Action No. 14-1149 (CCC), 2016 WL 345218, at *7 (D.N.J. June 23, 2016) ("[a]lthough there has been no formal discovery, Lead Counsel has ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement."). Plaintiffs' Counsel's judgment that the Settlement is in the best interest of the Settlement Class should therefore be given substantial weight. *See Alves v. Main*, Civil Action No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

### C.   The Settlement Was Negotiated at Arm's Length and Is Supported by Plaintiffs and Experienced Counsel

The Settlement was negotiated at arm's length with the assistance of an experienced Mediator, Jed Melnick of JAMS. *See Shah v. Zimmer Biomet Holdings*, No. 3:16-cv-815-PPS-MGG, 2020 U.S. Dist. LEXIS 171925, *18 (N.D. Ind. Sept. 18, 2020) (finding that Mr. Melnick is a "highly respected and experienced" mediator who has mediated securities class actions and is a "leading mediator in this field"). During the mediation process, the parties submitted confidential mediation statements and participated in mediated settlement negotiations before the Mediator. While a resolution of the Action was not reached at the October 4, 2021 mediation, the parties continued to engage in settlement negotiations in the weeks that followed and ultimately agreed to settle the case following a Mediator's proposal. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the

Settlement was achieved free of collusion and merits preliminary approval. *See In re ViroPharma Inc. Sec. Litig.,* No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.") (quoting *Hall v. AT&T Mobility LLC,* No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010)); *Alves,* 2021 WL 6043272 at *22: *Bernhard v. TD Bank, N.A.,* No. 08-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009).

Given that the Settlement is the product of an arm's-length negotiation overseen by an experienced Mediator, was approved by Plaintiffs, and was entered into by experienced and informed counsel, preliminary approval is warranted.

### D.    The Settlement Provides Substantial Relief to the Settlement Class

#### 1.    The Significant Risks of Continued Litigation

The Settlement creates a settlement fund of $1,400,000 and will provide a substantial benefit to the Class, particularly given the risks posed by continued litigation. Indeed, while Plaintiffs believe that their claims are strong, they also recognize that this Action, like most securities fraud actions, presented a number of obstacles to establishing both liability and damages. *See In re Ikon Office Sols.,*194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting that "class actions alleging securities fraud" are "inherently complex"); *In re Alloy, Inc. Sec. Litig.,* 2004 WL 2750089, *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues in securities action presented significant hurdles to proving liability).

There were significant challenges and risks ahead concerning whether the claims would withstand a motion to dismiss, class certification, and summary judgment, and whether Plaintiffs would be able to convince a jury to accept Plaintiffs' theories over Defendants' competing

narrative. To succeed on their claims, Plaintiffs would need to prove that Defendants' offering materials contained material misrepresentations and omissions regarding the Fund's internal controls and procedures and alleged conflicts of interests that caused investor losses. Defendants would have argued that: (i) the Fund's underperformance was caused by a variety of different unrelated factors that impacted the Fund's performance at different times during the Class Period, and (ii) any alleged conflicts of interest were adequately disclosed in publicly available sources. There is a significant risk that discovery into these issues, which would turn on highly contested expert testimony, may not be favorable to Plaintiff and the class.

Even if Plaintiffs overcame these hurdles to establishing liability, they would have then had to confront additional challenges with respect to loss causation and damages. Because the determination of damages in securities class actions generally involves a "'battle of the experts,' it is virtually impossible to predict with any certainty which testimony w[ill] be credited, and ultimately, which damages w[ill] be found to have been caused by actionable, rather than the myriad [of] nonactionable factors such as general market conditions." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Had this litigation continued, Plaintiffs would expect Defendants to mount formidable arguments undermining loss causation that might be accepted in whole or in part, thereby eliminating or drastically reducing any potential recovery.

Plaintiffs' damages expert has estimated that if liability were established with respect to the claims asserted, a reasonable estimate of aggregate recoverable damages was approximately $26 million. The Settlement recovers approximately 5.4% of aggregate damages. Courts have routinely approved settlements that recovered comparable or smaller percentages of maximum damages. *See, e.g.*, 2016 WL 345218 at *8 (approving $4,250,000 settlement reflecting approximately 4.0% of estimated recoverable damages, and noting percentage "falls squarely

within the range of previous settlement approvals"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3-:09-cv-00419-MMD-WGC, 2012 WL 5199742, *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of maximum damages, and noting that the amount was within median recovery in securities class actions settled in last few years).

The $1.4 million Settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). And in conducting the analysis, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GMC*, 55 F.3d at 806; *Lo v. Oxnard European Motors, LLC*, No. 11cv1009 JLS (MDD), 2011 WL 6300050, *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate.") (alteration in original) (citation omitted).

Finally, even if Plaintiffs prevailed at all future stages of the litigation, any potential recovery (in the absence of a settlement) would only occur years into the future, substantially delaying payment to the Settlement Class, and perhaps only coming after costly appeals. By contrast, the Settlement offers the opportunity to provide definite recompense to the Class now. Reaching a settlement at this juncture thus avoids the uncertainty of overcoming numerous hurdles at the motion to dismiss and summary judgment phase, trial, and in likely appeals.

## 2.    Anticipated Legal Fees and Expenses

As set forth in the proposed Notice, Plaintiffs' Counsel will request, on behalf of

themselves and co-counsel, attorneys' fees of no more than 30% of the Settlement Amount, plus accrued interest, and litigation expenses of no more than $50,000, and an Incentive Award to Plaintiffs of $30,000 ($10,000 per Plaintiff) for their time and expenses in pursuing the Action. The amounts of attorneys' fees and expenses are within the discretion of the Court and are payable from the Settlement Amount upon their award, subject to repayment if the awards are reduced on appeal by a final non-appealable order. *See* Stipulation § X.

A fee request of up to 30% would be consistent with other common fund awards approved within the Third Circuit. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *La. Mun. Police Emples. Ret. Sys. v. Sealed Air Corp.*, Civil Action No. 03- CV-4372 (DMC), 2009 WL 4730185, *8 (D.N.J. Dec. 4, 2009) (same); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3rd Cir. 2005) (noting statistical studies showing that average fee award in securities class actions with settlements over $10 million was 31% and that median fee award rates in several federal district courts ranged from 27% to 30%).

The basis of Plaintiffs' Counsel's fee and expense request will be detailed in the upcoming motion requesting fees and expenses.[4]

### E.    The Proposed Plan of Allocation Treats Class Members Equitably

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Class. Rather, all members of the Class, including Plaintiffs, will receive a *pro rata* distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. The proposed plan was created by Plaintiffs in consultation with a damages expert. All

---

[4] The Stipulation (with its exhibits) is the only agreement among the parties, apart from a standard, confidential agreement that allows Defendants to terminate the Settlement if exclusion requests exceed a specified threshold.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3).

Class Members who were harmed as a result of the alleged wrongdoing and who have an eligible claim will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See* Notice ¶¶ 52 - 61.

The Claims Administrator will calculate claimants' Recognized Claims using the transactional information provided by claimants in their Claim Forms, which can be faxed, mailed, or emailed to the Claims Administrator, or submitted online using the Claims Administrator's website. Because the Settlement (like most settlements) does not recover 100% of alleged damages, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all Authorized Claimants. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, Plaintiffs' Counsel will seek Court approval of a distribution to Authorized Claimants. *See* Stipulation § E.

The proposed Settlement thus meets the requirements for likely approval under Rule 23(e)(2) and *Girsh*.

## IV.    THE CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT

Plaintiffs also respectfully request that the Court preliminarily certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619-22, 117 S. Ct. 2231 (1997). However, a settlement class, like all other certified classes, must satisfy the requirements of Rules 23(a) and (b), although manageability concerns of Rule 23(b)(3) are not at issue. *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration [for] settlement only certification").

Here, the proposed Class is defined in the Stipulation as: all persons and entities who, during the Class Period, purchased or otherwise acquired VLF Interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests. *See* Stip. § I.A.12.[5] The Class Period means the period from January 1, 2017 through March 19, 2021, inclusive. *Id.* § I.A.13. As discussed below, all certification requirements for settlement purposes are met for the proposed Class, and Defendants consent to certification (for settlement purposes only). *See id.*, Ex. A, ¶ 2.[6] Accordingly, Plaintiffs respectfully submit that the Court should preliminarily certify the Class and appoint Rosca Scarlato, LLC as Class Counsel and Plaintiffs as the Class Representatives.

## A.     The Rule 23(a) Requirements Are Satisfied

### 1.     Numerosity Is Satisfied

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Forty class members is generally considered sufficient to satisfy this element.  *See Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001). Here, approximately 5,700 investors were affected by the representations and omissions at issue. Numerosity is therefore easily satisfied.

---

[5] Excluded from the Class are: Defendants; the agents or employees of Defendants; any person firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (provided however, that the term "affiliate" or "affiliated with" shall not include Life Assets Trust S.A. Compartments VII and VIII), and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks. Also excluded from the Class are any persons or entities who validly exclude themselves, and such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims. *Id.*

[6] *See* Newberg on Class Actions, § 11.27 at 11-40 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

### 2.    Commonality Is Satisfied

The second prong of Rule 23(a) – commonality – requires "consideration of whether there are 'questions of law or fact common to the class[.]'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (citing Fed. R. Civ. P. 23(a)(2)). The commonality requirement is satisfied if the claims have even one significant issue common to the class. *See NFL*, 821 F.3d at 427. The Court's focus must be "on whether the defendant's conduct [is] common as to all class members[.]" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). And that "bar is not a high one." *Reyes*, 802 F.3d at 486 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).

In this case, there are numerous common questions of law and fact, such as whether Defendants made material misrepresentations and omissions, and whether Plaintiffs suffered losses as a result thereof. Commonality is therefore satisfied. *See Henderson v. Volvo Cars of N. Am., LLC*, Civil Action No. 09-4146 (CCC), 2013 WL 1192479, *4 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the . . . Class Vehicles suffered from a design defect . . . and whether Plaintiffs have actionable claims.").

### 3.    Typicality Is Satisfied

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those other class members. Fed R. Civ. P.(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).  "As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established . . . .'" *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 149 (alterations in original) (citation omitted). Moreover, the typicality analysis focuses on the

conduct of the defendants, not that of the class representatives. *In re IGI Secs. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1998). Thus, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (internal citation omitted).

Here, all of Plaintiffs' claims arise out of the same alleged misrepresentations and omissions made by, or under the control of, Defendants. *See Henderson*, 2013 WL 1192479, at *5 (typicality satisfied where "the claims made by those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo – namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to disclose the defect"). This requirement is, likewise, met herein.

### 4.    Adequacy of Representation Is Satisfied

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named plaintiffs' and . . . counsel's ability to fairly and adequately represent class interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. App'x 94, 100-101 (3d Cir. 2013) (alternations in original, citation omitted). In doing so, "the district court ensures that no conflict of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named plaintiffs have the ability and incentive to vigorously represent the interests of the class." *Id.* at 101 (citing *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010)).

In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that

16

he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l, Inc.*, No. 05-4182, 2006 WL 1117878, at \*5 (E.D. Pa. Apr. 26, 2006) (quoting *Hassine v. Jeffres*, 846 F.2d 169, 179 (3d Cir. 1988)). Here, all of the Class Representatives are adequate insofar as they invested in the Fund and were allegedly injured in the same manner based upon the same various misrepresentations and omissions. *See* Compl., ¶¶ 7-9, 22-43, 48-49. They have also actively participated in the litigation of this case, including attending and participating in the mediation, have been in regular communication with their attorneys regarding these proceedings, and have no interests that conflict with other Class Members' interests.

The Stipulation designates, subject to Court approval, Alan L. Rosca and Paul Scarlato of Rosca Scarlato, LLC as Class Counsel. With respect to their adequacy, they have substantial experience in litigating complex class action lawsuits and were able to negotiate a favorable settlement for the Class. *See* Decl. Ex. 3. Based on the result achieved herein, the Court should appoint these attorneys as Plaintiffs' counsel for the Settlement Class and determine that Rule 23(a)(4)'s adequacy requirement is satisfied.

### B.    The Rule 23(b)(3) Elements Are Satisfied

#### 1.    Predominance Is Satisfied

Plaintiffs seek certification under Rule 23(b)(3), which has two components: predominance and superiority. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. Predominance is generally more demanding than commonality; however, the Third Circuit is "more inclined to find the predominance test met in the settlement context." *NFL*, 821 F.3d 434 (citations omitted). This is because, "for purposes of inquiring into the predominance of questions of law and fact relevant to

a settlement class, manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, *8 (E.D. Pa. June 30, 2016).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Settlement Class Members. For example, were this case to proceed, the primary issue would be whether Defendants are liable for misrepresentations and omissions. Plaintiffs believe that these are issues of generalized proof, and common to all Class Members. *See Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 319 (D. Del. 2012) (finding predominance over defendant's objection that different class members received different communications and advertisements because "it is the common content of these advertisements that drives resolution"). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied. *Udeen*, 2019 WL 4894568, at *5 (finding predominance satisfied in case where there were "numerous common questions regarding whether the class vehicles are defective, whether Defendants should have disclosed the alleged defect, whether the allegedly concealed information was material to consumers, and whether class members were harmed by Defendant's actions").

### 2.    Superiority Is Satisfied

Rule 23(b)(3)'s superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *NFL*, 821 F.3d at 434 (citations omitted). The Third Circuit "consider[s] the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *Id.* at 434-35; Fed. R. Civ. P. 23(b)(3)(A)-(D).

The Stipulation provides the Settlement Class with prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of potential Class Members who are dissatisfied with the Settlement to object to it or exclude themselves from it. The Settlement would also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in countless individualized trials against Defendants. To litigate the claims of the Settlement Class on an individual basis would not be economically feasible and would result in "needless duplication of effort." *See Henderson*, 2013 WL 1192479 at *6. And because the parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan*, 667 F.3d at 302-03. Therefore, "class status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases)*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.    The Notices and Notice Plan Should Be Approved

The Notice is the best notice practicable, *see* Fed. R. Civ. P. 23(c)(2)(B), because it will reach nearly all Settlement Class Members through direct notice and provide those remaining with the opportunity to learn of the Settlement's benefits through publication notice. Indeed, Defendants have provided the Claims Administrator with a list of the names, addresses, and email addresses of investors in the Fund. The notices are designed to inform the Settlement Class about the Stipulation, are presented in plain language, are designed to be noticed by members of the Settlement Class, and conform to the standards set forth in the Federal Judicial Center's 2010

*Judges Class Action Notice and Claim Process Checklist and Plain Language Guide. See* Stip. § IV & Exs D-F. The proposed notices are proper because they contain "sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

Plaintiffs ask the Court to appoint Strategic Claims Services ("SCS") as the Claims Administrator to administer the Settlement under the supervision of Plaintiffs' Counsel. SCS is a nationwide leader in legal administration services for class action settlements and legal noticing programs and has efficiently administered hundreds of securities class actions. *See* Decl., Ex. 4.

## V.     PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the Court adopt the schedule set forth in Exhibit 1 to the Scarlato Declaration for Settlement-related events.

If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  For example, if the Court enters the Preliminary Approval Order on November 1, 2022, Plaintiffs request that the Court schedule the Settlement Hearing for February 20, 2023, or at the earliest date thereafter on which the Court's schedule will allow the hearing.

## VI.     CONCLUSION

Based on the foregoing, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant the instant motion and enter the enclosed proposed Preliminary Approval Order.

Dated: October 19, 2022

**RIGRODSKY LAW, P.A.**

*/s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue- Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Email: sdr@rl-legal.com
        gms@rl-legal.com
        hwm@rl-legal.com

Alan L. Rosca
**ROSCA SCARLATO, LLC**
23250 Chargin Blvd., Suite 100
Beachwood, OH 44122
Telephone: (216) 946-7070
Email: arosca@rscounsel.law

Paul J. Scarlato
**ROSCA SCARLATO, LLC**
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216)-946-7070
Email: pcarlato@rscounsel.law

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2022, a true and correct copy of the foregoing Unopposed Motion for Preliminary Approval of Proposed Settlement and Certification of the Class for Settlement Purposes and Declaration of Paul J. Scarlato have been filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

_/s/ Seth D. Rigrodsky_
Seth D. Rigrodsky

22