## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN**, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**VIDA LONGEVITY FUND, LP**, *et al.*,<br><br>**Defendants.** | **No. 1:21-cv-00402-SRF** |

## DECLARATION OF PAUL J. SCARLATO

Paul J. Scarlato, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a member of the law firm and proposed Class Counsel, Rosca Scarlato, LLC, and prior to that, a shareholder in the law firm Goldman Scarlato & Penny, P.C., counsel for Plaintiffs and proposed Class Representatives Timothy O'Hern, Seymon Rodkin, and Dominic Cardinale (together, "Plaintiffs"). I submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement and Certification of the Class for Settlement Purposes (the "Motion"). The purpose of this Declaration is to place certain documents before the Court.

2.      Attached as Exhibit 1 hereto is a Proposed Schedule of Events, for the Court's convenience, based on the timelines agreed to in the Settlement Agreement, and as set forth in the [Proposed] Order Preliminary Approving Proposed Settlement.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Stipulation of Settlement entered into by the parties, along with exhibits to the Stipulation as follows:

- Exhibit A:   [Proposed] Order Preliminarily Approving Proposed Settlement;

- Exhibit B:   [Proposed] Order Approving Class-Action Settlement;

- Exhibit C:   [Proposed] Judgment;

- Exhibit D:   Postcard Notice;

- Exhibit E:   Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses;

- Exhibit F:   Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses;

- Exhibit G:   Proof of Claim and Release Form; and

- Exhibit H:   Confidentiality Agreement and Order.

4.    Attached hereto as Exhibit 3 is the Biography of the Rosca Scarlato lawyers who worked on this matter.

5.    Attached hereto as Exhibit 4 is the brochure of Strategic Claims Services, the proposed Claims Administrator in connection with the proposed Settlement.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this 19th day of October 2022.

*/s/ Paul J. Scarlato*

Paul J. Scarlato

*Counsel for Plaintiffs and the Proposed Class*

EXHIBIT 1

# EXHIBIT 1

## PROPOSED SCHEDULE OF EVENTS

| | |
|---|---|
| Fairness Hearing | ***At the Court's convenience, but no fewer than 110 calendar days after entry of the Preliminary Approval Order.*** |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's application for fees and expenses | ***No later than 35 days before the Fairness Hearing*** |
| Deadline for submission of requests for exclusion, objections to settlement, and oppositions to motion for final approval or for attorneys' fees | ***Received no later than 28 days before the Fairness Hearing*** |
| Deadline for filing reply papers in support of the motions | ***No later than 7 days before the Fairness Hearing*** |
| Deadline for sending Postcard Notice | ***No later than 60 days before the deadline to opt-out or object*** |
| Deadline for publication of Summary Notice over national press service | ***No later than 50 days before the deadline to opt-out or object*** |
| Deadline for submission of Claim Forms | ***Postmarked or received no later than 120 days after Preliminary Approval*** |

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.***, Individually and on Behalf of All Others Similarly Situated,**<br><br>        **Plaintiffs,**<br><br>  v.<br><br>**VIDA LONGEVITY FUND, LP,** *et al.***,**<br><br>        **Defendants.** | **No. 1:21-cv-00402-SRF** |

## STIPULATION OF SETTLEMENT

WHEREAS capitalized terms in this Stipulation of Settlement have the meanings ascribed to them in Section I below; and

WHEREAS, on March 19, 2021, Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale filed the above-captioned securities class action against Vida Longevity Fund, LP and the other named Defendants alleging violations of the Texas Securities Act; and

WHEREAS, pursuant to stipulations approved by the Court, the Action was stayed while the parties engaged in mediation to try to resolve the Action; and

WHEREAS, on October 14, 2021, the Settling Parties participated in a full day of mediation led by Jed D. Melnick, Esq., of JAMS; and

WHEREAS the Settling Parties did not reach an agreement at the end of the mediation session, but continued their discussions over the next several months; and

WHEREAS, on January 5, 2022, the Settling Parties signed an agreement in principle on the primary terms of a settlement, which was subject to various conditions; and

WHEREAS the Settling Parties negotiated the full terms of a settlement, resulting in the execution of this Stipulation of Settlement and its exhibits; and

WHEREAS, throughout the pendency of the Action and the Settlement negotiations, Plaintiffs and Defendants have been advised by various consultants and experts, including individuals with expertise in estimating potential damages in cases involving allegations of securities-law violations, and by competent counsel with experience in securities lawsuits such as this Action; and

WHEREAS, based upon Plaintiffs' Counsel's investigation and evaluation of the facts and law relating to the claims alleged in this Action, their pre- and post-filing investigations, and their consultation with experts, Plaintiffs and Plaintiffs' Counsel have agreed to settle the Action and release the Releasees as to the Released Class Claims pursuant to the terms of this Settlement Agreement and subject to its terms and conditions (including the completion of Due-Diligence Discovery) after considering, among other things: (*i*) the substantial benefits that the terms of the proposed Settlement would provide to Class Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this one; (*iii*) the defenses available to Defendants; (*iv*) the difficulties and delays inherent in such litigation; (*v*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members; and (*vi*) Plaintiffs' and Plaintiffs' Counsel's belief, to be verified through the Due-Diligence Discovery, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of Class Members; and

WHEREAS Defendants do not concede any wrongdoing or liability in connection with any facts or Claims that have been, could have been, or could be alleged in the Action, but they nevertheless prefer that the Action be settled and dismissed because the proposed Settlement

would, among other things:  (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the asserted Claims; (*ii*) finally put to rest those Claims and the underlying matters; and (*iii*) confer substantial benefits upon Defendants, including avoidance of further disruption of the management and operation of Defendants' business due to the pendency and defense of the Action; and

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendants or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Plaintiffs (individually and in their representative capacity) and Defendants, by and through their duly authorized counsel, that, subject to the Court's approval and such approval's becoming Final, (*i*) the Action and the matters raised in it are hereby settled and compromised as to Defendants, and (*ii*) the Action will be dismissed with prejudice as to Defendants based upon the terms and conditions in this Settlement Agreement, including, among other things, that, as set out in the Release, the Released Class Claims will be released as to the Releasees, and the Released Releasees' Claims will be released as to the Releasors.

## I.    DEFINITIONS

A.    As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.    "Action" means the securities class action now pending in this Court and captioned *O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.), including any other cases that have been or might be consolidated into that action as of the Final Settlement Date.

2.    "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. § 210.1-02(b), as well as the ultimate private-equity owners of any Defendant to the extent the term "Affiliate" or "Affiliated" is used in connection with any Defendant.

3.    "Approval Order" means the order to be entered by the Court finally approving the Settlement and dismissing the Complaint and all Claims in the Action as contemplated in Section XIII of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit B.

4.    "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Plaintiffs' Counsel as set out in Section X below.

5.    "Attorneys' Fees and Expenses Award" means the amount that the Court awards to Plaintiffs' Counsel to compensate them for fees and expenses in connection with investigating, prosecuting, and/or settling the Action, as provided for in Section X below.

6.    "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, but not limited to, agents, administrators, executors, heirs, estates, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the Net Settlement Amount has been allowed pursuant to the terms of this Settlement Agreement.

4

7.      "Business Day" means a day other than a Saturday, Sunday, or Legal Holiday.

8.      "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1715.

9.      "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and any losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any United States federal, state, or common-law right of action or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

10.      "Claim Form" means the form, as approved by the Court, that Class Members will use to submit claims under the procedures set out in this Settlement Agreement, which form the Settling Parties shall ask the Court to approve substantially as set out as Exhibit G.

11.      "Claims Administrator" means, subject to Court approval and appointment in the Preliminary Approval Order, Strategic Claims Services.

12.      "Class" or "Class Members" means, for purposes of this Settlement, all persons and entities who, during the Class Period, purchased or otherwise acquired VLF Interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests.  Excluded from the Class are:

a.      such persons or entities who submit valid and timely requests for exclusion from the Class;

b.      such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c.      Defendants; the agents or employees of Defendants; any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (*provided, however,* that the term "affiliate" or "affiliated with" shall not include Life Assets Trust S.A. Compartments VII and VIII); and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks.

13.     "Class Period" means the period from January 1, 2017 through March 19, 2021, inclusive.

14.     "Complaint" means the Class Action Complaint filed in the Action on March 19, 2021.

15.     "Complete Bar Order" means the bar order, the text of which is set forth in paragraph 18 of the Approval Order (Exhibit B).

16.     "Confidentiality Agreement" means the Confidentiality Agreement in the form entered into by Plaintiffs and Defendants, a copy of which is attached as Exhibit H.

17.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting shares, by contract, or otherwise.  Any disputes as to whether any Defendant or any other Releasee has a Controlling Interest in an entity or whether an entity has a Controlling Interest in a Defendant or

any other Releasee shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be submitted to the Mediator for final, binding resolution, and the party claiming that the interest is a Controlling Interest for purposes of this Settlement Agreement shall bear the burden of proof as to that issue.

18.    "Court" means the United States District Court for the District of Delaware.

19.    "Defendants" means VLF; Vida Management I, LLC; Vida Capital Management, LLC; Vida Capital, Inc.; Vida Capital, LLC; and Jeffrey R. Serra.

20.    "Defendants' Counsel" means Richards, Layton & Finger P.A. and Proskauer Rose LLP.

21.    "Derivative Action" means the shareholder derivative action now pending and captioned as *The Moller Family Trust v. Vida Management I, LLC*, C.A. No. 2021-0823-MTZ (Del. Ch.).

22.    "Due-Diligence Discovery" means the information that VLF will provide to Plaintiffs as described in Section II below.

23.    "Escrow Account" means the account described in Section III into which the Settlement Amount shall be paid.  The Escrow Account shall be at Huntington Bank.  The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund, as described below.

24.    "Escrow Agent" means Strategic Claims Services, which shall act as escrow agent for the Escrow Account.

25.    "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

7

26.     "Fairness Hearing" means the hearing at or after which the Court will make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle the Class Members' Claims against Defendants and the other Releasees and whether the Court should approve the proposed Settlement; *provided* that the Fairness Hearing shall be scheduled for a date that is no fewer than one hundred ten (110) days following the Preliminary Approval Date.  It is within the Court's discretion to hold the Fairness Hearing in person, telephonically, or by videoconference.

27.     "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any other person living in, or a member of, such an individual's household.

28.     "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a.     if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired;

b.     if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

29.     "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

30.     "Goldman Scarlato & Penny" means Goldman Scarlato & Penny PC.

8

31.   "Incentive Award" means any amount that the Court awards to Plaintiffs to compensate them for their reasonable costs and expenses directly relating to the representation of the Class.

32.   "Incentive Award Application" means the application by which Plaintiffs seek an Incentive Award, as provided for in Section XI below.

33.   "Investment Decision" means any decision regarding an investment in VLF Interests by a Class Member during the Class Period, including a decision to hold or sell/redeem such interests during the Class Period.

34.   "Judgment" means the Judgment entered by the Court as contemplated in Section XIII of this Settlement Agreement, which Judgment the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit C.

35.   "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal observed holiday.

36.   "Long-Form Notice" means the notice, as approved by the Court and as described in Section IV and in the Preliminary Approval Order, that informs potential Class Members of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit E.  As provided in the Preliminary Approval Order, the Long-Form Notice will be sent to those potential Class Members who request it.

37.   "Mediator" means Jed D. Melnick, Esq., or, if he is unavailable, someone of similar stature upon whom the Settling Parties agree.

9

38.     "Net Settlement Amount" means the Settlement Fund *less* (*i*) any Tax

Expenses paid or owing, (*ii*) any Notice and Administrative Expenses paid or owing, and (*iii*) the

Attorneys' Fees and Expenses Award and the Incentive Award.

39.     "Nominees" means brokerage firms, banks, and other institutions that hold

VLF Interests for the benefit of other persons or entities.

40.     "Notice and Administrative Expenses" means any and all expenses (other

than Plaintiffs' Counsel's fees and expenses) associated with the administration of the Settlement

contemplated by this Settlement Agreement, including the Claims Administrator's fees and

expenses and all other fees and expenses associated with (*i*) printing and sending the Postcard

Notice, Long-Form Notice, and Claim Form to potential Class Members, (*ii*) publishing the

Summary Notice, (*iii*) assisting Class Members with filing Claim Forms, (*iv*) processing Claim

Forms, (*v*) setting up and maintaining a toll-free telephone number for potential Class Members

to call, (*vi*) operating a settlement website, and (*vii*) distributing the Net Settlement Amount, as

well as (*viii*) any reasonable costs, fees, and expenses incurred in connection with the Escrow

Account.

41.     "Notice Program" means the program for informing potential Class

Members about the proposed Settlement, including the Postcard Notice, the Long-Form Notice,

the Claim Form, the Summary Notice, and the manner of delivering and publishing such notices

or forms.

42.     "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include, among other things:

a.      The offering and sale of VLF Interests during the Class Period, including all documents (including Private Placement Memoranda) used and representations made in connection with such offering or sale;

b.      Defendants' communications with purchasers or prospective purchasers of VLF Interests during the Class Period, including quarterly letters to investors and any other reports to investors;

c.      The performance of VLF Interests during the Class Period, including Defendants' information and explanations about such performance and any financial guidance, projections, or expectations concerning such performance;

d.      Defendants' statements about VLF's purposes, objectives, goals, investment criteria, due-diligence processes, underwriting procedures, and risk management during the Class Period;

e.      Defendants' valuation of VLF's investments and VLF Interests during the Class Period, including internal controls, underwriting procedures, and other procedures for evaluating and pricing VLF's investments, and any alleged failure to update valuations, procedures, or life-expectancy reports;

f.      Defendants' alleged failure during the Class Period to ensure adequate separation between VLF's underwriting and origination functions and to maintain adequate personnel, including on VLF's portfolio-management and risk teams;

g.      Defendants' reliance on third-party life-expectancy providers and Defendants' subsequent use of proprietary approaches to value VLF's investments;

11

h.      Alleged conflicts of interest between or among Defendants and their affiliated entities during the Class Period (including any alleged conflicts of interest between or among VLF, Jeffrey R. Serra, and Ovation Partners, LP);

i.      Any redemptions or liquidations of VLF Interests during the Class Period by Defendants, any other Releasee, or any of their affiliated entities during the Class Period;

j.      Vida Management's management of VLF during the Class Period, including Vida Management's researching, selecting, monitoring, and otherwise making decisions about VLF's investments;

k.      Magna Life Settlement's sale of, facilitation of the sale of, or provision of advice about life-settlement assets to VLF during the Class Period, and any alleged conflict of interest between Magna Life Settlement and any Defendant;

l.      VLF's management fees and performance allocations during the Class Period;

m.      Any alleged communications (whether internal to Defendants or external, and whether oral or written) relating to or evidencing any of the alleged conduct described in Section I.A.42.a-l;

n.      Any alleged misstatements or omissions during the Class Period relating to any of the matters described in Sections I.A.42.a-m;

o.      Any alleged inflation or decline in the price or value of VLF Interests during the Class Period that is related to or arises out of the alleged conduct and/or topics described in Sections I.A.42.a-n; and

12

p.    Any Claims under the TSA or any other law arising out of the alleged conduct and/or topics described in Sections I.A.42.a-o.

43.    "Plaintiffs" means Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale.

44.    "Plaintiffs' Counsel" means Goldman Scarlato & Penny, Rosca Scarlato, and Rigrodsky Law, P.A.

45.    "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing it to, Authorized Claimants as the Court shall approve.  Plaintiffs shall ask the Court to approve a Plan of Allocation substantially in the form set out in the Long-Form Notice (Exhibit E).

46.    "Postcard Notice" means the notice, as approved by the Court and as described in Section IV and in the Preliminary Approval Order, that Rosca Scarlato will cause the Claims Administrator to disseminate to potential Class Members informing them of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit D.

47.    "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered on the Court's docket.

48.    "Preliminary Approval Order" means the order concerning, among other things, preliminary approval of the proposed Settlement, certification of the Class solely for settlement purposes, provision of notice of the proposed Settlement, administration of the proposed Settlement, and scheduling of the Fairness Hearing, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit A.

49.    "Proskauer" means Proskauer Rose LLP.

13

50.    "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulation § 1.468B-1.

51.    "Released Class Claims" means each and every Claim that existed as of, on, or before the Execution Date and that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees arising out of or relating to any of the Operative Facts or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim also arises out of or relates to the purchase or other acquisition of VLF Interests, or to any other Investment Decision, during the Class Period; *provided, however*, that the term "Released Class Claims" does not include (*i*) any Suitability Claim, (*ii*) any claims asserted in any shareholder derivative action on behalf of VLF, including without limitation the derivative claims asserted in the Derivative Action, or (*iii*) any claims to enforce this Settlement Agreement.

52.    "Released Releasees' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee (including Defendants and their successors and assigns), or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Plaintiffs, any other Class Members, or any of their respective attorneys (including, without limitation, Plaintiffs' Counsel), and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of this Settlement

Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

53.     "Releasee" means each and every one of, and "Releasees" means all of, (*i*) Defendants, (*ii*) Defendants' Affiliates, (*iii*) each of Defendants' current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities (a) in which any Defendant or any Defendant's Affiliate has or had a Controlling Interest or (b) that has or had a Controlling Interest in any Defendant or any Defendant's Affiliate, (*iv*) for each of the foregoing Releasees, (*y*) to the extent the Releasee is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee, and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys (including Defendants' Counsel), advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers, and (*v*) any person purporting

to assert a Released Releasees' Claim on behalf of, for the benefit of, or derivatively for any such Releasee.

54.    "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, (*iii*) for each of the foregoing Releasors, (*y*) to the extent the Releasor is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Plaintiffs' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in the Releasor, and (*z*) to the extent the Releasor is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys (including Plaintiffs' Counsel), advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers, and (*iv*) any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasor.

55.    "Rosca Scarlato" means Rosca Scarlato, LLC.

56.    "Settlement" means the settlement contemplated by this Settlement Agreement.

57.    "Settlement Agreement" means this Stipulation of Settlement and any accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

16

58.    "Settlement Amount" means one million four hundred thousand dollars ($1,400,000).

59.    "Settlement Fund" means the Settlement Amount plus any interest that has accrued on the Settlement Amount on deposit in the Escrow Account.

60.    "Settling Parties" means Plaintiffs (on behalf of themselves and the Class Members) and Defendants.

61.    "Suitability Claim" means any claim against a broker, investment advisor, or other person or entity alleging that (*i*) such person or entity told, suggested to, recommended to, or advised a Class Member that an investment in VLF Interests would be suitable for such Class Member and (*ii*) the investment was not suitable for such Class Member because VLF Interests (a) were not sufficiently liquid, (b) would constitute too large a percentage of such Class Member's assets, and/or (c) were not consistent with the Class Member's investment risk tolerance or investment objectives and/or time frame; *provided, however*, that a Suitability Claim shall not apply to, or be a basis for or part of, any claim or attempted claim (however or by whomever brought) against any Releasee or any other person or entity affiliated with any Releasee.

62.    "Summary Notice" means the notice described in Section IV, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit F.

63.    "Supplemental Agreement" means the agreement entered into by the Settling Parties through their respective counsel that is referenced in Section XIV.D below.  The Settling Parties agree to keep the Supplemental Agreement confidential and not to disclose it or file it with the Court unless (*i*) the Court otherwise orders or (*ii*) a dispute arises among the Settling Parties concerning the Supplemental Agreement's interpretation or application.  If the

17

Supplemental Agreement must be provided to the Court, the Settling Parties shall seek leave to submit it *in camera* or to file it under seal.

64.     "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

65.     "Termination Threshold" means the threshold of requests for exclusion (as specified in the Supplemental Agreement) that gives rise to Defendants' right to terminate the Settlement Agreement pursuant to Section XIV.D.

66.     "TSA" means the Texas Securities Act.

67.     "Unknown Claims" means any and all Released Class Claims that any Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Released Releasees' Claims that any Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasors, which, if known by such Plaintiff, Class Member, or Releasee, might have affected his, her, or its decision concerning the Settlement.  As to any and all Released Class Claims and Released Releasees' Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Plaintiffs and Defendants shall expressly waive, and each other Class Member, Releasor, and Releasee shall be deemed to have waived, and by operation of the Approval Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor

at the time of executing the release and that, if known by him or
her, would have materially affected his or her settlement with the
debtor or released party.

Plaintiffs and Defendants acknowledge, and the other Class Members, Releasors, and Releasees

by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown

Claims" in the definition of Released Class Claims and Released Releasees' Claims was

specifically considered and bargained for and was a key element of the Settlement.

      68.    "Vida Management" means Vida Capital Management, LLC.

      69.    "VLF" means Vida Longevity Fund, LP.

      70.    "VLF Interests" means limited partnership interests in VLF, whether

purchased directly, or indirectly through Life Assets Trust S.A. Compartments VII and VIII,

pursuant to an offering of those limited partnership interests.

      B.    Capitalized Terms

      1.    Capitalized terms used in this Settlement Agreement, but not defined

above, shall have the meaning ascribed to them in this Settlement Agreement.

## II.    DUE-DILIGENCE DISCOVERY

      A.    Subject to the provisions of the Confidentiality Agreement, VLF will provide

Plaintiffs' Counsel with reasonable Due-Diligence Discovery regarding the claims in the

Complaint to allow Plaintiffs and Rosca Scarlato to confirm whether the proposed Settlement is

fair, reasonable, and adequate.

      B.    Due-Diligence Discovery shall consist of documents relevant to the claims in the

Complaint.  The documents will be provided in an electronic depository under the control of

Defendants' Counsel.

C.      The time period for Due-Diligence Discovery will begin on the Execution Date and will last for sixty (60) days following the Execution Date, unless the Settling Parties agree to shorten the period.

D.      Any disputes regarding Due-Diligence Discovery (including any disputes about the content of that discovery) shall be submitted to the Mediator for final, binding resolution.

E.      Due-Diligence Discovery may be used only in accordance with the terms of the Confidentiality Agreement and solely for purposes of assessing whether the proposed Settlement is fair, reasonable, and adequate, and for no other purpose, including litigation of claims in this Action or in any other action or proceeding.

F.      Subject to Sections XIV and XV below, if the Due-Diligence Discovery contemplated by this Section II causes Plaintiffs and Rosca Scarlato reasonably and in good faith to conclude that the proposed Settlement Agreement is not fair, reasonable, and adequate, Plaintiffs will have the right to terminate this Settlement Agreement within 10 days following the conclusion of the Due-Diligence Discovery.

## III.   TERMS AND CONDITIONS OF THE SETTLEMENT

### A.      Payment of Settlement Amount

1.      At its sole election, VLF will either pay or cause to be paid the Settlement Amount on behalf of all Defendants into the Escrow Account within twenty (20) Business Days following the Preliminary Approval Date, subject to the consent of Defendants' insurers or Defendants' waiver of such consent.

2.      If the Settlement Amount is not paid into the Escrow Account within twenty (20) Business Days following the Preliminary Approval Date, Rosca Scarlato shall notify Defendants' Counsel that the payment has not occurred, and VLF shall have five (5) Business

Days to comply or obtain compliance with the obligation to pay the Settlement Amount into the Escrow Account in accordance with the provisions of the preceding paragraph. If payment still has not occurred after the additional period of five (5) Business Days, Plaintiffs may, subject to Section XV below, terminate this Settlement Agreement.

3.      If Defendants' insurers do not pay the Settlement Amount as provided in this Section III.A, Defendants shall be entitled to terminate the proposed Settlement.

B.      **Escrow Account**

1.      Within five (5) Business Days following the Execution Date, Rosca Scarlato and Proskauer shall establish the Escrow Account.

2.      From its inception until the Final Settlement Date, the Escrow Account shall be under the joint control of Rosca Scarlato and Proskauer.

3.      As of the Final Settlement Date, the Escrow Account shall be under the sole control of Rosca Scarlato.

4.      The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in a bank with at least $50 billion in assets, and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent shall bear all risks related to the investment of the amounts in the Escrow Account made in accordance with the guidelines set forth in this paragraph.

5.      The Escrow Agent shall disburse proceeds of the Escrow Account only (*i*) before the Final Settlement Date, by an order of the Court or upon the written instruction of Rosca Scarlato and Proskauer and (*ii*) as of and after the Final Settlement Date, upon the written

21

instruction of Rosca Scarlato; *provided, however*, that, before the Final Settlement Date, Rosca

Scarlato may withdraw up to $25,000.00 for the Claims Administrator's fees and expenses

without first consulting with or obtaining written instruction from Proskauer.

      6.    If the Settlement Agreement is terminated as provided in this Settlement

Agreement, the Escrow Agent shall, within ten (10) Business Days following receipt of written

notice of such termination from Proskauer, return all monies then held in the Escrow Account

(including any interest that has accrued) to VLF or as instructed by Proskauer; *provided* that,

before the return of monies pursuant to this Section III.B.6, Rosca Scarlato shall advise

Proskauer of any outstanding Notice and Administrative Expenses that are in progress or are due

for payment, and, upon the written consent of Proskauer (which consent shall not be

unreasonably withheld), the Escrow Agent shall pay such expenses from the Escrow Account.

      7.    Upon the occurrence of the Final Settlement Date, and subject to

Section XV below, no portion of the Settlement Amount shall revert to VLF, any other

Defendant, or their insurers, and no Defendant, Releasee, or any other person or entity who or

that paid any portion of the Settlement Amount shall have any right to the return of the

settlement money paid into the Escrow Account, or any portion thereof, for any reason

whatsoever, including, without limitation, the number of Claim Forms submitted, the collective

amount of recognized claims of Authorized Claimants under the Plan of Allocation, the

percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net

Settlement Amount.

      8.    The Escrow Account and the funds it contains shall be deemed and

considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction

until the funds are distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

> 9.      Any dispute about payments to be made out of the Escrow Account before the Final Settlement Date will be submitted to the Mediator for final, binding resolution.

C.      **Qualified Settlement Fund**

> 1.      All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by Rosca Scarlato and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment.  Rosca Scarlato shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1.468B-0 through 1.468B-5, shall file or cause to be filed on a timely basis any required federal, state, and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund and any other Tax Expenses to be paid from the Escrow Account.  The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible.  In no event shall Defendants have any responsibility whatsoever for filing elections, other required statements, or tax returns, or for paying the costs associated therewith, any taxes due, or the expenses of notice or administration of the Escrow Account.  Rosca Scarlato and Proskauer shall cooperate to the extent necessary to comply with this Section III.

Upon request by Rosca Scarlato, VLF shall promptly provide the statement described in Treasury Regulation § 1.468B-3(e).

      2.      Upon request by Proskauer, the Claims Administrator shall promptly provide to Defendants' Counsel all information requested in connection with (*i*) any tax returns that VLF or any other Releasee must file or (*ii*) any other report or filing that VLF or any other Releasee must make concerning the Settlement Amount or any portion of it.

      D.      **Distribution of the Net Settlement Amount**

      1.      If the proposed Settlement becomes Final, the Net Settlement Amount shall be distributed pursuant to such Plan of Allocation as the Court approves.

      2.      No person or entity shall have any Claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against Defendants or any other Releasee (including Defendants' Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

      3.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate, or cancel this Settlement Agreement or affect the finality of the Approval Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

      4.      Development of the Plan of Allocation shall be exclusively the responsibility of Plaintiffs and Rosca Scarlato, *provided* that the Plan of Allocation shall not provide any Class Member (including Plaintiffs) with an amount in excess of his, her, or its recognized loss under the Plan of Allocation.

5.      Defendants, the other Releasees, and their respective counsel, including Defendants' Counsel, shall have no role in, responsibility for, or liability as to or in connection with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration, or distribution of the Net Settlement Amount, (*iii*) any tax liability that a Class Member might incur as a result of this Settlement Agreement, or (*iv*) the result of any action taken pursuant to this Settlement Agreement, the administration or processing of claims (including determinations as to the validity of Claim Forms), the amounts of claims or distribution of the Net Settlement Amount, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

6.      Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Released Class Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court.  Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses, or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

7.      Any portion of the Net Settlement Amount that cannot be distributed pursuant to the Plan of Allocation shall be distributed pursuant to the *cy pres* doctrine, with a beneficiary or beneficiaries to be agreed upon by the Settling Parties and approved by the Court.

E.      **Implementation of the Plan of Allocation**

1.      All cash distributions to Authorized Claimants shall be paid from the Net Settlement Amount pursuant to a Plan of Allocation approved by the Court.

2.      The Plan of Allocation is not a necessary term of this Settlement

Agreement, and this Settlement Agreement is not conditioned on the approval of any particular

plan of allocation.

3.      To receive a cash distribution from the Net Settlement Amount pursuant to

any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to

the procedures set out in this Settlement Agreement or by order of the Court.

4.      Unless otherwise authorized by the Court, each Class Member who wishes

to receive a distribution from the Net Settlement Amount must complete and submit a Claim

Form, as directed in the Postcard Notice, Long-Form Notice, Summary Notice, and Claim Form.

The Claim Form must be postmarked or received no later than the date stated in the Claim Form

(unless otherwise allowed by Rosca Scarlato or the Court), must be sent to the address stated in

the Claim Form, and must be accompanied by adequate supporting documentation as described

in the Claim Form.

5.      The Claim Form must be executed subject to the penalties of perjury

pursuant to 28 U.S.C. § 1746.

6.      The validity of each submitted Claim Form will initially be determined by

the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The

Claims Administrator shall advise the Class Member in writing if it determines to reject the

claim.  Rosca Scarlato shall have the right, but not the obligation, to advise the Claims

Administrator to waive, in the interests of achieving substantial justice, what Rosca Scarlato

deems to be formal or technical defects in any Claim Forms submitted.  Rosca Scarlato, its

designees or agents, Plaintiffs, Defendants' Counsel, Defendants, the other Releasees, and their

counsel shall not have any liability arising out of any such determinations.  Persons who timely

26

submit a Claim Form that is deficient or otherwise rejected shall be afforded a reasonable time (at least twenty (20) days) to cure such deficiency if it appears to be potentially curable.

7.      If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within twenty (20) days after the date of such rejection, submit to the Claims Administrator a notice and statement of reasons explaining the Class Member's grounds for contesting the rejection, along with any supporting documentation.  If a dispute concerning a claim cannot be otherwise resolved, Rosca Scarlato shall thereafter present the request for review to the Court.

8.      Each Class Member or other claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure; *provided, however*, that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of the claimant's claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of claims.

9.      Rosca Scarlato will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Final Settlement Date has occurred, directing payment of the Net Settlement Amount to Authorized Claimants from the Escrow Account.

10.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all claimants.  All Class Members whose claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement

Amount, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Approval Order and Judgment, to be entered in this Action and the Releases provided for herein and therein.

11. The administration of the Escrow Account and the Net Settlement Amount, and decisions on all disputed questions of law and fact concerning the validity of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court. All Class Members and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determinations concerning Claims Forms or claims for Settlement relief. Any Class Member pursuing such a dispute shall be responsible for his, her, or its own costs, including attorneys' fees, incurred in pursuing the dispute.

12. The Net Settlement Amount shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

13. Unless otherwise ordered by the Court or otherwise provided for herein, any Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Amount, but shall nevertheless be bound by the Release and all proceedings, orders, and judgments in the Action even if he, she, or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Released Class Claim.

IV. **NOTICE TO THE CLASS**

A. **Individual Notice**

1. Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, at least sixty (60) days before the deadline for objecting to

or opting out of the Settlement, Rosca Scarlato shall cause the Claims Administrator to mail by first-class mail a copy of the Postcard Notice to all potential Class Members who can be identified through reasonable efforts, including by review of depositary institutions' records and any other inquiries conducted by the Claims Administrator.

2.      The Claims Administrator will also post the Postcard Notice, Long-Form Notice, and Claim Form on its website by no later than the date on which the first Postcard Notices are mailed to potential Class Members.

3.      VLF shall make reasonable efforts to provide or cause its administrator to provide to the Claims Administrator, by no later than five (5) Business Days following entry of the Preliminary Approval Order, lists of all persons and entities that purchased VLF Interests during the Class Period, so that the Claims Administrator can provide notice to such potential Class Members.  To the extent practicable, the lists of potential Class Members shall be in electronic form (such as Excel) and shall contain the names and addresses (and, if available, email addresses) of all such persons and entities who can be identified through reasonable efforts from VLF's and/or its administrator's records.

B.      **Summary Notice**

1.      Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, at least fifty (50) days before the deadline for objecting to or opting out of the Settlement, the Claims Administrator shall cause a copy of the Summary Notice to be published one time through a national press service to be agreed upon by the Settling Parties.

C.    **CAFA Notice**

    1.    No later than ten (10) calendar days following the filing of this Settlement Agreement with the Court, Defendants shall cause notice to be provided to United States federal and state officials if and to the extent required by CAFA. VLF is solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days before the Fairness Hearing, Defendants shall cause to be served on Rosca Scarlato and filed with the Court proof, by affidavit or declaration, regarding compliance with the notice requirements of CAFA.

    2.    The Settling Parties shall request a schedule for the Fairness Hearing that is consistent with the notice periods prescribed in CAFA, with such hearing to be at least 110 days after entry of the Preliminary Approval Order.

D.    **Notice Costs**

    1.    All expenses incurred in connection with the provision of the Postcard Notice and Long-Form Notice and the publication of the Summary Notice will be paid from the Settlement Amount.

    2.    VLF shall be solely responsible for the costs associated with providing CAFA notice, if any.

V.    **CLAIMS ADMINISTRATOR**

A.    As provided in the Preliminary Approval Order, the Claims Administrator shall assist Plaintiffs and Rosca Scarlato in administering and implementing the Settlement contemplated by this Settlement Agreement. VLF shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not

including any acts that the Claims Administrator, Plaintiffs, and/or Plaintiffs' Counsel are required to undertake pursuant to this Settlement Agreement).

B.      The Claims Administrator shall perform various tasks as directed by Rosca Scarlato, including: (*i*) printing the Postcard Notice, Long-Form Notice, and Claim Form and mailing them to potential Class Members, (*ii*) arranging for publication of the Summary Notice, (*iii*) posting the Postcard Notice, Long-Form Notice, Claim Form, and other documents relevant to the Settlement and the Action on a website for the Settlement, (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Rosca Scarlato, (*v*) providing additional copies of the Postcard Notice, Long-Form Notice, and Claim Form, upon request, to Nominees or potential Class Members, (*vi*) receiving and maintaining any requests for exclusion from the Settlement from potential Class Members, (*vii*) receiving and processing Claim Forms from Class Members, (*viii*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation, (*ix*) operating a toll-free telephone number with access to operators to answer inquiries from potential Class Members and/or to forward such inquiries to Rosca Scarlato, and training staff members and operators about the proposed Settlement and the Plan of Allocation, and (*x*) otherwise administering and implementing this Settlement Agreement.

C.      As ordered by the Court in the Preliminary Approval Order, the Claims Administrator shall establish, and shall staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation, a toll-free telephone number for responding to inquiries from potential Class Members about this Settlement Agreement and any issues relating to the Action.

31

D.      Except as otherwise set out in this Settlement Agreement, all administration expenses associated with implementing the Settlement, including the Claims Administrator's fees and expenses, will be paid from the Settlement Amount in the Escrow Account.

E.      Plaintiffs and Rosca Scarlato have selected the Claims Administrator subject to the Court's approval and after obtaining Defendants' consent.

F.      If a settlement of the Derivative Action is achieved, Plaintiffs and Plaintiffs' Counsel will not object to having the Claims Administrator also administer any such derivative settlement; *provided, however,* that any administrator and administrative costs attributable solely to any derivative settlement will not come out of the Settlement Amount in the Escrow Account.

## VI.    COMMUNICATIONS REGARDING THE SETTLEMENT

A.      Subject to Sections VI.B and VI.E below, and except to the extent any disclosures have already been made, no further disclosure of the Settlement or its terms will be made by the Settling Parties, Plaintiffs' Counsel, or Defendants' Counsel before the Settlement Agreement is submitted to the Court for preliminary approval unless the Court requires such disclosure before such submission.

B.      Notwithstanding Section VI.A above, nothing shall prevent Defendants, in their sole discretion, from making whatever earlier disclosure they believe might be required or appropriate, including to regulators, attorneys, accountants, investors, and insurers, or in filings with the SEC or any other federal or state regulatory authority; *provided, however*, that Defendants shall inform Rosca Scarlato in advance of any public disclosure (other than any disclosure pursuant to Section VI.E below) made before the Settlement Agreement is filed with the Court.

C.      Each Settling Party shall have the opportunity to review any other Settling Party's press release(s) (if any), and any press releases or public statements (other than court filings) issued by Plaintiffs or Plaintiffs' Counsel concerning the proposed Settlement or Defendants must be approved by Defendants, whose approval shall not be unreasonably withheld.

D.      The Settling Parties shall cooperate in good faith to ensure that any press releases, media statements, and other public statements regarding the Settlement will be balanced, fair, accurate, and nondisparaging.

E.      VLF and Vida Management retain the right, in their sole discretion and without prior notice to or consent from Plaintiffs or Plaintiffs' Counsel, to communicate (orally or in writing) with their current and prospective investors in VLF and any other funds or accounts managed by Vida Management or an affiliate thereof, including to update them about the terms and expected timing of the proposed Settlement.

F.      The Settling Parties, Plaintiffs' Counsel, and Defendants' Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.

G.      Except as provided in the Postcard Notice, Long-Form Notice, and Summary Notice or in court filings in support of Court approval of this Settlement, and except as otherwise provided in this Section VI, the Settling Parties, Plaintiffs' Counsel, and Defendants' Counsel agree that none of them will comment publicly on the merits of the Claims or defenses asserted in the Action except in the most general terms in the context of supporting or commending the Settlement terms; *provided, however,* that nothing in this Section VI shall preclude Releasees from denying liability.  Nothing in this Settlement Agreement shall prevent Defendants (or other Releasees) from announcing the existence of the Settlement and its potential impact (if any) on VLF's financial performance, as Defendants may deem appropriate for securities-law or other

purposes (including by way of regulatory filings or press releases). Nor shall this Settlement

Agreement prevent Defendants (or other Releasees) from publicly stating, including but not

limited to in response to questions from investors, analysts, customers, or others, that they deny

Plaintiffs' allegations, have asserted or would assert defenses in the Action, and have entered

into the Settlement to avoid the further expense and distraction of continued litigation.

H.     Defendants retain the right to communicate with their investors in the normal

course of business.

## VII.    REQUESTS FOR EXCLUSION

A.     Any potential Class Member who wishes to be excluded from the Class must mail

by first-class mail, or otherwise deliver, a written request for exclusion to the Claims

Administrator at the address provided in the Postcard Notice, Long-Form Notice, or Summary

Notice, which exclusion request must be received no later than twenty-eight (28) days before the

Fairness Hearing, or as the Court may otherwise direct. A list of the persons and entities who

have validly and timely requested exclusion from the Class shall be provided by the Settling

Parties to the Court at or before the Fairness Hearing.

B.     A potential Class Member's request for exclusion must include the following

information: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a

statement that the potential Class Member wishes to request exclusion from the Class in *O'Hern*

*v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.), (*vi*) the dollars subscribed to

VLF Interests held as of the beginning of the day on January 1, 2017, (*vii*) the dollars subscribed

to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of

the day on March 19, 2021, (*viii*) the dollar value of VLF Interests sold or redeemed between

January 1, 2017 and _____ (the end of the quarter preceding the initially scheduled

date for the Fairness Hearing), (*ix*) the date of each such transaction involving each such VLF Interest, (*x*) account statements verifying all such transactions, and (*xi*) the signature of the person or entity requesting exclusion or of an authorized representative.

C.     The Settling Parties agree that a request for exclusion shall not be valid or effective unless it provides all the required information as described above and is received within the time stated above, or is otherwise accepted by the Court.

D.     Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this Section VII shall be bound by the Release and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Claims.

E.     Plaintiffs agree that they and their Affiliates will not request exclusion from the Class or the Settlement.

## VIII.   OBJECTIONS TO SETTLEMENT

A.     Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application, or to the Incentive Award Application must both serve on Rosca Scarlato and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s); *provided, however*, that a potential Class Member who requests exclusion from the Class shall not be entitled to submit an objection.  Any such objection must be received by Rosca Scarlato, Defendants' Counsel, and the Court by no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct.

B.      The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection, and shall state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class.  In addition to the reason(s) for the objection, an objection must also include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vi*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*vii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing), (*viii*) the date of each such transaction involving each such VLF Interest, and (*ix*) account statements verifying all such transactions.

C.      Any Class Member may file an objection on his, her, or its own, or through an attorney hired at his, her, or its own expense.  If a Class Member hires an attorney to represent him, her, or it in connection with filing an objection, the attorney must both serve on Rosca Scarlato and Defendants' Counsel and file with the Court a notice of appearance.  Subject to the requirements of the Preliminary Approval Order, any such notice of appearance must be received by Rosca Scarlato, Defendants' Counsel, and the Court by no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct.

D.      Any Class Member who files and serves a written objection pursuant to this Section – and, unless otherwise ordered by the Court, only such Class Members – may appear at the Fairness Hearing, either directly or through counsel hired at the Class Member's expense, to

36

object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application, or to the Incentive Award Application. Class Members or their attorneys intending to make an appearance at the Fairness Hearing must both serve on Rosca Scarlato and Defendants' Counsel and file with the Court a notice of intention to appear. Any such notice must be received by Rosca Scarlato, Defendants' Counsel, and the Court by no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct. The Court has discretion to allow appearances at the Fairness Hearing in person, by telephone, or by videoconference.

   E. Any Class Member who fails to comply with any of the provisions of this Section VIII shall waive and forfeit any and all rights he, she, or it might otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, the Plan of Allocation, the Attorneys' Fees and Expenses Application, or the Incentive Award Application, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders, and judgments in the Action.

## IX. RELEASE AND WAIVER

   A. Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, Plaintiffs and all other Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member), on behalf of themselves and the other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

1.      all Released Class Claims against each and every one of the Releasees;

2.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

3.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in this Settlement Agreement.

B.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, each and every Releasee, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Plaintiffs, Plaintiffs' Counsel, and each and all other Releasors from any and all Released Releasees' Claims, except to the extent otherwise specified in this Settlement Agreement.

38

C.     Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, Plaintiffs' Counsel and any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, and assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants, Defendants' Counsel, and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, except to the extent otherwise specified in this Settlement Agreement, and (*iv*) except as provided in Section X below, any claims for attorneys' fees and expenses in connection with the foregoing matters. Plaintiffs' Counsel represent that they have authority to release Defendants, Defendants' Counsel, and all other Releasees from any and all Claims for attorneys' fees or expenses that Labaton Sucharow LLP might claim to have.

D.     Notwithstanding Sections IX.A, IX.B, and IX.C above, nothing in the Approval Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order, or the Judgment.

E.      The releases and waivers contained in this Section were specifically considered and bargained for and are essential elements of this Settlement Agreement.

X.      **ATTORNEYS' FEES AND EXPENSES**

A.      Plaintiffs' Counsel will submit to the Court for approval an Attorneys' Fees and Expenses Application in which Plaintiffs' Counsel will apply for a collective award of attorneys' fees to Plaintiffs' Counsel and for payment or reimbursement of litigation expenses incurred in the Action by Plaintiffs' Counsel and any other attorneys who represent or represented Plaintiffs (including Labaton Sucharow LLP, if applicable). Plaintiffs' Counsel's Attorneys' Fees and Expenses Application is not the subject of any agreement between Defendants and Plaintiffs other than as set forth in this Settlement Agreement.

B.      The Attorneys' Fees and Expenses Award will be paid to Plaintiffs' Counsel as set out in this Section X.

C.      Any Attorneys' Fees and Expenses Award shall be paid to Plaintiffs' Counsel solely from the Settlement Amount immediately after the Court enters both the Approval Order and the Attorneys' Fees and Expenses Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof; *provided, however,* that Plaintiffs' Counsel must return the amount of the Attorneys' Fees and Expense Award (or the relevant portion of that award if the award is later reduced) plus interest to the Escrow Account (or to VLF or its insurers if the Escrow Account has been closed) within twenty (20) Business Days if (*i*) the Settlement is terminated after payment has been made or (*ii*) as a result of any objection, appeal, or further proceedings on remand, or successful collateral attack, the Attorneys' Fees and Expenses Award is reduced or reversed and such order reducing or reversing the award has become Final. No Releasee shall

have any responsibility for, or any liability relating to, any obligation of Plaintiffs' Counsel to make appropriate refunds or repayments to the Escrow Account or to VLF or its insurers (including any interest that must be refunded).

D.     An Attorneys' Fees and Expenses Award is not a necessary term of this Settlement Agreement and is not a condition of the Settlement embodied herein. Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling as to the Attorneys' Fees and Expenses Application. Any objection to or appeal from the Attorneys' Fees and Expenses Award shall not affect the finality of the Approval Order or the Judgment if the Court has entered them.

E.     No Releasee shall be liable or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity (including Plaintiffs and Plaintiffs' Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement. No Releasee shall have any responsibility or liability for any payment of any such fees or expenses beyond the obligation to cause the Settlement Amount to be paid.

F.     Plaintiffs' Counsel shall allocate in good faith the attorneys' fees portion of the Attorneys' Fees and Expenses Award among Plaintiffs' Counsel and any other attorneys who represent or represented Plaintiffs (including Labaton Sucharow LLP, if applicable). No Releasee shall have any responsibility whatsoever in connection with, or any liability for, the allocation of the Attorneys' Fees and Expenses Award between or among Plaintiffs' Counsel or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action.

## XI.    INCENTIVE AWARD

A.    Plaintiffs may submit an Incentive Award Application to the Court for approval, which Application will take into account the time spent by Plaintiffs in pursuing the Action (including, without limitation, the time spent consulting with Plaintiffs' Counsel and reviewing documents, filings, and factual materials in the Action) as well as any other expenses incurred by Plaintiffs directly related to their representation of the Class.

B.    Any Incentive Award made to Plaintiffs shall be paid to them from the Settlement Amount immediately after the Court enters both the Approval Order and the Incentive Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof; *provided, however,* that Plaintiffs must return the amount of the Incentive Award (or the relevant portion of that award if the award is later reduced) plus interest to the Escrow Account (or to VLF or its insurers if the Escrow Account has been closed) within twenty (20) Business Days if (*i*) the Settlement is terminated after payment has been made or (*ii*) as a result of any appeal or further proceedings on remand, or successful collateral attack, the Incentive Award is reduced or reversed, and such order reducing or reversing the award has become Final.

C.    An Incentive Award is not a necessary term of this Settlement Agreement and is not a condition of the Settlement embodied herein.  Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling as to the Incentive Award Application.  Any objection to or appeal from the Incentive Award shall not affect the finality of the Approval Order or the Judgment if the Court has entered them.

## XII.   PRELIMINARY APPROVAL

A.      Within twenty (20) days following the conclusion of Due-Diligence Discovery, Plaintiffs shall move the Court for entry of the Preliminary Approval Order, which motion shall be unopposed by Defendants.

B.      Plaintiffs and Defendants stipulate to the certification of the Class and to the certification of Plaintiffs as representatives of the Class and Rosca Scarlato as class counsel for the Class solely for the purpose of this proposed Settlement.  If the proposed Settlement is not approved by the Court or is not consummated for any other reason, Defendants reserve the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Plaintiffs as representatives of, and Rosca Scarlato as counsel for, the Class, or any other class, in the Action.

## XIII.   FINAL APPROVAL AND FINAL JUDGMENT

A.      Plaintiffs and Defendants shall jointly request that the Court enter the Approval Order and the Judgment upon the Court's approval of the Settlement contemplated by this Settlement Agreement.

## XIV.   MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.      The terms and provisions of this Settlement Agreement may be amended or expanded by written agreement of the Settling Parties; *provided, however*, that, after entry of the Approval Order and the Judgment, Rosca Scarlato, on behalf of Plaintiffs and the Class, and Defendants' Counsel, on behalf of Defendants, may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Approval Order and

Judgment and do not materially limit the rights of Class Members under this Settlement Agreement.

**B.     Mutual Termination Rights**

1.     Subject to Section XIV.B.2 below, this Settlement Agreement will terminate at the sole option and discretion of Defendants and/or Plaintiffs (on behalf of themselves and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the Complete Bar Order, the permanent injunction, and/or the terms of the Release, or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material.  If the Settling Parties disagree about whether a change is material, they will submit the dispute to the Mediator for a final, binding decision.  In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section, no later than thirty (30) days after receiving actual notice of the event prompting the termination.

2.     Notwithstanding the preceding Section XIV.B.1, neither Plaintiffs nor Plaintiffs' Counsel may terminate this Settlement Agreement on the basis of the Court's order(s) addressing the Attorneys' Fees and Expenses Application, the Incentive Award Application, and/or the Plan of Allocation, or on the basis of any modification of the Attorneys' Fees and Expenses Award, the Incentive Award, and/or the Plan of Allocation by any appellate court(s).

44

C.     **Plaintiffs' Termination Rights**

1.     In addition to the other termination rights described in Section XIV.B, Plaintiffs have the termination rights specified in Section II.F (concerning Due-Diligence Discovery) and Section III.A (concerning nonpayment of the Settlement Amount) above.

D.     **Defendants' Termination Rights**

1.     In addition to having the right to terminate this Settlement Agreement as provided in Section XIV.B above, and without limiting any other rights under this Settlement Agreement, Defendants may unilaterally withdraw from and terminate this Settlement Agreement if timely, valid requests for exclusion are received from potential Class Members in an amount that meets or exceeds the Termination Threshold as set out in the Supplemental Agreement.  Defendants must exercise any such right by no later than five (5) calendar days before the Fairness Hearing.

2.     The Claims Administrator shall promptly notify Rosca Scarlato and Defendants' Counsel of all requests for exclusion submitted by potential Class Members and shall also provide Rosca Scarlato and Defendants' Counsel with copies of any such requests for exclusion and the supporting information and documentation submitted by such persons or entities.

3.     Rosca Scarlato shall have the right to communicate with any persons or entities that submit requests for exclusion.  If any of those persons or entities withdraws his, her, or its request for exclusion such that the Termination Threshold is no longer met, Rosca Scarlato will immediately inform Defendants' Counsel, and the election termination (if made) will automatically become null and void and of no further effect.

E.     **Effect of Termination**

1.     If this Settlement Agreement is terminated in accordance with any provision of this Section XIV, the Settlement Agreement shall be withdrawn from, terminated, and deemed to be null and void, and the provisions of Section XV of this Settlement Agreement shall apply.

## XV.   GENERAL MATTERS AND RESERVATIONS

A.     If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendants nor Plaintiffs will be required for any reason or under any circumstance to exercise that option, and (*ii*) if any Settling Party exercises the option to withdraw from or terminate the Settlement, the terminating Settling Party shall do so in good faith.

B.     If (*i*) this Settlement Agreement does not become Final or is otherwise terminated pursuant to its terms, (*ii*) the Releases set out in Section IX do not become effective, or (*iii*) the Settlement does not become Final by operation of law, then:

1.     This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section XV.B;

2.     This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it (including the agreement in principle reached on January 5, 2022) shall be without prejudice to the rights of Defendants, any other Releasee, Plaintiffs, or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except with respect to

46

the payment of such Tax Expenses and Notice and Administrative Expenses that have been actually expended or incurred as described in Sections III, IV, and V above;

3.      Releasees expressly and affirmatively reserve all defenses, motions, and arguments as to all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

4.      Plaintiffs and all other Class Members expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

5.      Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of enforcement of this Section XV.B;

6.      The terms and provisions of the Confidentiality Agreement as set out in Exhibit H shall continue in full force and effect, and the use of information obtained in Due-Diligence Discovery shall continue to be governed by such Confidentiality Agreement;

7.      All monies in the Escrow Account shall be returned to VLF or its insurers as set out in Section III above;

8.      Plaintiffs' Counsel and Plaintiffs must return any payments of the Attorneys' Fees and Expenses Award and the Incentive Award in accordance with the terms of Sections X.C and XI.B above; and

9.      Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C.      All of the exhibits attached to the Settlement Agreement are incorporated by reference as though fully set forth herein.

D.      The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Class Claims and the Released Releasees' Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of Plaintiffs and/or Defendants, or any of them, in connection with this Action, the Settlement of this Action, or any of the Released Class Claims or Released Releasees' Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and the proposed Approval Order shall contain a statement reflecting the Settling Parties' compliance with Rule 11.

E.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length and in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel, and under the auspices of the experienced Mediator.

F.      Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients. Rosca Scarlato represents that it is authorized to enter into this Settlement Agreement on behalf of Goldman Scarlato & Penny.

G.      Plaintiffs, through their duly authorized representatives, represent that they (*i*) have agreed to serve as representatives of the Class proposed to be certified herein, (*ii*) have consulted with Plaintiffs' Counsel about the Action, this Settlement Agreement, and the

48

obligations of a representative of the Class, (*iii*) support the Settlement, and (*iv*) will remain in and not request exclusion from the Class and will serve as representatives of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Plaintiffs cannot represent the Class.

H.      This Settlement Agreement and the Supplemental Agreement set forth the entire agreement among the Settling Parties as to their subject matter and may not be altered or modified except by a written instrument executed by all Settling Parties' counsel.  Plaintiffs and Defendants expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement and the Supplemental Agreement, and no Settling Party has relied upon any representation or warranty not set forth expressly herein or in the Supplemental Agreement; *provided further* that the terms of the Settlement Agreement supersede the agreement in principle reached on January 5, 2022.

I.      This Settlement Agreement shall be governed by and interpreted according to the laws of the State of Delaware, excluding its conflict-of-laws provisions, except to the extent that federal law requires that federal law govern.

J.      Any action arising under or to enforce this Settlement Agreement or the Supplemental Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement other than those specifically reserved for resolution by the Mediator.  The Settling Parties and the Class Members expressly submit to the Court's jurisdiction for those purposes.

K.      Whenever this Settlement Agreement requires or contemplates that a Settling

Party shall or may give notice to the other, notice shall be provided by email and/or next-day

(excluding Saturday, Sunday, and Legal Holidays) express-delivery service as follows and shall

be deemed effective upon such email transmission or delivery to the email address or street

address, as the case may be, below:

      1.      If to Defendants, then to:

            Jonathan E. Richman
            Joshua M. Newville
            Proskauer Rose LLP
            Eleven Times Square
            New York, New York  10036-8299
            Telephone:  (212) 969-3000
            jerichman@proskauer.com
            jnewville@proskauer.com

      2.      If to Plaintiffs, then to:

            Alan L. Rosca
            Rosca Scarlato, LLC
            23250 Chagrin Blvd., Suite 100
            Beachwood, Ohio  44122
            Telephone:  (216) 946-7070
            arosca@rscounsel.law

            Paul Scarlato
            Rosca Scarlato, LLC
            161 Washington Street, Suite 1025
            Conshohocken, Pennsylvania  19428
            Telephone:  (216) 946-7070
            pscarlato@rscounsel.law

L.      All time periods set forth herein shall be computed in calendar days unless

otherwise expressly provided.  In computing any period of time prescribed or allowed by this

Settlement Agreement or by order of the Court, the day of the act, event, or default from which

the designated period of time begins to run shall not be included.  The last day of the period so

computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday, or, when the

act to be done is the filing of a paper in Court, a day on which weather conditions or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

M.      The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

N.      All Setting Parties agree that this Settlement Agreement and the Supplemental Agreement were drafted by counsel for the Settling Parties at arm's length and that no parol or other evidence may be offered to explain, construe, contradict, or clarify their terms, the intent of the Settling Parties or their counsel, or the circumstances under which the Settlement Agreement and the Supplemental Agreement were made or executed. Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement or the Supplemental Agreement.

O.      This Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability, which Releasees expressly deny. This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims. In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any other judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Settlement Agreement. Without limiting the foregoing, neither this Settlement Agreement nor

any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense.

P.    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members or to any of the Settling Parties is being given or will be given by Defendants' Counsel and/or Plaintiffs' Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have with respect to it.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

Q.    The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

R.    The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

S.       This Settlement Agreement may be signed in counterparts, each of which shall

constitute a duplicate original.  Execution by email in electronic format (including .pdf format)

shall be fully and legally binding on a Settling Party.

T.       All Releasees who are not Settling Parties are intended third-party beneficiaries

who are entitled as of the Final Settlement Date to enforce the terms of the Releases set forth in

this Settlement Agreement.

Agreed to as of this 8th day of July, 2022.


Alan L. Rosca
ROSCA SCARLATO, LLC
23250 Chagrin Blvd., Suite 100
Beachwood, Ohio  44122
(216) 946-7070
arosca@rscounsel.law

Paul Scarlato
ROSCA SCARLATO, LLC
161 Washington Street, Suite 1025
Conshohocken, Pennsylvania  19428
(216) 946-7070
pscarlato@rscounsel.law

Gina M. Serra (#5387)
RIGRODSKY LAW, P.A.
300 Delaware Avenue Suite 210
Wilmington, Delaware  19801
(302) 295-5306
gms@rl-legal.com

*Counsel for Plaintiffs and the Proposed*
*Settlement Class*

Jonathan E. Richman
Joshua M. Newville
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York  10036-8299
(212) 969-3000
jerichman@proskauer.com
jnewville@proskauer.com

Catherine G. Dearlove (#3328)
Matthew W. Murphy (#5938)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
dearlove@rlf.com
murphy@rlf.com

*Counsel for Defendants*

53

**EXHIBITS**

| | |
|---|---|
| A | Preliminary Approval Order |
| B | Approval Order |
| C | Judgment |
| D | Postcard Notice |
| E | Long-Form Notice |
| F | Summary Notice |
| G | Claim Form |
| H | Confidentiality Order |

# EXHIBIT A

EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.*, Individually and on Behalf of All Others Similarly Situated, | |
| **Plaintiffs,** | **No. 1:21-cv-00402-SRF** |
| **v.** | |
| **VIDA LONGEVITY FUND, LP,** *et al.*, | |
| **Defendants.** | |

## [PROPOSED] ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT

WHEREAS Plaintiffs Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale, on behalf of themselves and the Class (as defined below), and Defendants Vida Longevity Fund, LP, Vida Management I, LLC, Vida Capital Management, LLC, Vida Capital, Inc., Vida Capital, LLC, and Jeffrey R. Serra have entered into a Settlement Agreement that, if approved by the Court, would settle all Claims[1] that have been, could have been, or could be asserted in this Action; and

WHEREAS Plaintiffs filed a motion pursuant to Fed. R. Civ. P. 23(e)(1) asking the Court to approve the proposed Settlement preliminarily, direct that notice of the proposed Settlement be provided to Class Members, and schedule a hearing for final approval of the proposed Settlement; and

WHEREAS Plaintiffs attached to the motion the Settlement Agreement, including its annexed exhibits; and

---

[1]    To the extent capitalized terms are not defined in this Order, this Court adopts and incorporates the definitions set out in the Settlement Agreement.

WHEREAS the Court has read and considered the Settlement Agreement and the Settling Parties' submissions; and

WHEREAS the proposed Settlement is subject to the Court's final approval at the Fairness Hearing to be held as discussed below;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Preliminary Findings on Proposed Settlement**.  The Court hereby finds, pursuant to Rule 23(e)(1)(B)(i) of the Federal Rules of Civil Procedure, that it will likely be able to finally approve the proposed Settlement evidenced by the Settlement Agreement as fair, reasonable, and adequate to the Class under Rule 23(e)(2), and thus the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of it to the Class and scheduling a Fairness Hearing for further review of the proposed Settlement.  In making these findings for preliminary approval, the Court has considered a number of factors, including those specified in Federal Rule of Civil Procedure 23(e)(2) and in *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 437 (3d Cir. 2016), including the adequacy of Plaintiffs' and their counsel's representation of the Class, the arm's-length nature of the negotiations of the proposed Settlement, the adequacy of the relief to be provided to the Class, the equitable treatment of Class Members relative to each other, the nature of the Settling Parties' respective claims and defenses, the information available to the Settling Parties, and the allocation of the proposed settlement relief.  Based on those considerations, the Court preliminarily concludes that (*i*) the proposed Settlement appears to have resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their counsel, under the auspices of an experienced mediator, and appears likely to be approved, and

(*ii*) the terms and conditions of the Settlement Agreement do not have any obvious deficiencies and do not improperly grant preferential treatment to any individual Class Members.

2.    **Proposed Certification of Class Solely for Settlement Purposes.**  Solely for purposes of the proposed Settlement, the Settling Parties have stipulated to the certification of the following Class pursuant to Fed. R. Civ. P. 23(b)(3):  all persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive, purchased or otherwise acquired VLF Interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests.  Excluded from the Class are:

a.    such persons or entities who submit valid and timely requests for exclusion from the Class;

b.    such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c.    Defendants; the agents or employees of Defendants; any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (*provided, however,* that the term "affiliate" or "affiliated with" shall not include Life Assets Trust S.A. Compartments VII and VIII); and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks.

3.    **Class Findings.**  The Court finds, pursuant to Rule 23(e)(1)(B)(ii) of the Federal Rules of Civil Procedure, that it will likely be able to certify the Class solely for purposes of the proposed Settlement.  Specifically, the Court finds that, for settlement purposes, each element required for certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and any other applicable laws has been met or will likely be met:

a.   The Class appears to be ascertainable from business records and/or from objective criteria;

b.   The Class appears to be so numerous that joinder of all members would be impractical;

c.   Plaintiffs have alleged one or more questions of fact and/or law that appear to be common to all Class Members;

d.   Based on Plaintiffs' allegations that Defendants engaged in uniform conduct affecting all Class Members, Plaintiffs' claims appear to be typical of those of the other members of the Class;

e.   Plaintiffs appear to be capable of fairly and adequately protecting the interests of the members of the Class, in that (*i*) Plaintiffs' interests appear to be consistent with those of the other Class Members, (*ii*) Rosca Scarlato, LLC ("Class Counsel") appears to be able and qualified to represent the Class, and (*iii*) Plaintiffs and Class Counsel appear to have fairly and adequately represented the Class Members in prosecuting this Action and in negotiating and entering into the proposed Settlement; and

f.   For settlement purposes, questions of law and/or fact common to members of the Class appear to predominate over any such questions affecting only individual Class Members, and a class action appears to be superior to all other available methods for the fair and efficient resolution of the Action.  In making these preliminary findings for settlement purposes, the Court has considered, among other things, (*i*) the questions of law and fact pled in the Complaint, (*ii*) the Class Members' interest in the fairness, reasonableness, and adequacy of the proposed Settlement, (*iii*) the Class Members' interests in individually controlling the prosecution of separate actions, (*iv*) the impracticability or inefficiency of prosecuting separate

4

actions, (*v*) the extent and nature of any litigation concerning the claims already commenced, and (*vi*) the desirability of concentrating the litigation of the claims in a particular forum.

4.      **Preliminary Certification of Class for Settlement Purposes.** Based on the above findings, the Court preliminarily certifies the Class solely for purposes of the proposed Settlement pursuant to Fed. R. Civ. P. 23(b)(3). This preliminary certification is made for the sole purpose of the potential consummation of the proposed settlement of the Action in accordance with the Settlement Agreement. If the Court does not grant final approval of the proposed Settlement, or if the Court's approval of the Settlement does not become Final for any reason whatsoever or is modified in any material respect that is unacceptable to a Settling Party, this preliminary class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any later attempt by or on behalf of Plaintiffs or anyone else to seek class certification in this or any other matter arising out of the facts and circumstances that gave rise to the Action.

5.      **Preliminary Certification of Plaintiffs as Class Representatives and Appointment of Class Counsel for Settlement Purposes.** The Court also finds, pursuant to Rule 23(e)(1)(B)(ii) of the Federal Rules of Civil Procedure, that, solely for purposes of the proposed Settlement, it will likely be able to certify Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale as the class representatives for the Class and to appoint Class Counsel as counsel for the Class pursuant to Fed. R. Civ. P. 23(g). The Court therefore preliminarily appoints Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale as the class representatives for the Class and Class Counsel as counsel for the Class

6.      Class Counsel has the authority to enter into the proposed Settlement on behalf of the Class and is authorized to act on behalf of the Class Members as to all acts or consents that

are required by or may be given pursuant to the Settlement Agreement or such other acts as are reasonably necessary to consummate the Settlement.

7.      **Fairness Hearing**.  Pursuant to Fed. R. Civ. P. 23(e), the Court will hold a Fairness Hearing on _____, 2022, at ____ _.m. ET (a date no fewer than 110 days following the Preliminary Approval Date), before the Honorable Sherry R. Fallon, United States Magistrate Judge for the District of Delaware, at the J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801-3555.  The Court may approve the proposed Settlement at or after the Fairness Hearing with such modifications as may be consented to by the Settling Parties and without further notice to the Class.

8.      At the Fairness Hearing, the Court will consider, among other things:

a.      whether the Court should grant final certification of the Action as a class action for settlement purposes and grant final appointment of Plaintiffs as Class representatives and Class Counsel as counsel for the Class;

b.      whether the Court should approve the proposed Settlement as fair, reasonable, and adequate;

c.      whether the Court should approve the proposed Plan of Allocation as fair and reasonable;

d.      whether an Approval Order and a Judgment, substantially in the forms attached to the Stipulation of Settlement as Exhibits B and C, respectively, should be entered dismissing the Action on the merits and with prejudice, and whether the Releases in the Settlement Agreement should be provided to the Releasees and Releasors;

e.      whether the Court should enter a permanent injunction and bar order as requested in the Settlement Agreement in the forms set out in the Approval Order, which is attached as Exhibit B to the Stipulation of Settlement;

f.      whether the Court should approve Plaintiffs' Counsel's application for an Attorneys' Fees and Expenses Award;

g.      whether the Court should approve Plaintiffs' application for an Incentive Award; and

h.      any other matters relating to the approval and implementation of the Settlement Agreement that the Court may deem appropriate.

9.      **Retention of Claims Administrator.**  The Court approves Plaintiffs' selection of Strategic Claims Services to serve as Claims Administrator.  The Claims Administrator shall perform various tasks as directed by Class Counsel, including:  (*i*) printing the Postcard Notice, Long-Form Notice, and Claim Form and mailing them to potential Class Members, (*ii*) arranging for publication of the Summary Notice, (*iii*) posting the Postcard Notice, Long-Form Notice, Claim Form, Summary Notice, and other documents relevant to the Settlement and the Action on a website for the Settlement, (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Class Counsel, (*v*) providing additional copies of the Postcard Notice, Long-Form Notice, and Claim Form, upon request, to Nominees or potential Class Members, (*vi*) operating a toll-free telephone number with access to operators to answer inquiries from potential Class Members and/or to forward such inquiries to Class Counsel, and training staff members and operators about the proposed Settlement and the Plan of Allocation, (*vii*) receiving and maintaining any requests for exclusion from the Settlement from potential Class Members, (*viii*) receiving and processing Claim Forms from Class Members, (*ix*) mailing

or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation, and (*x*) otherwise administering and implementing the Settlement Agreement.  The costs incurred by or attributed to the Claims Administrator shall be paid out of the Settlement Amount in the Escrow Account, subject to the terms of the Settlement Agreement.

10.   **Notice to Class Members.**  The Court hereby approves, as to form and content, the Postcard Notice, Long-Form Notice, Claim Form, and Summary Notice annexed to the Stipulation of Settlement as Exhibits D, E, G, and F, respectively.  The Court finds that the Postcard Notice, Long-Form Notice, Claim Form, and Summary Notice will sufficiently inform potential Class Members of all material elements of the proposed Settlement, of their right to be excluded from the Class, and of each Class Member's right and opportunity to object to the proposed Settlement.  The Court further finds that the mailing and distribution of the Postcard Notice, Long-Form Notice, and Claim Form and the publication of the Summary Notice substantially in the manner and form set forth in this Order will meet the requirements of due process, Fed. R. Civ. P. 23, and any other applicable law, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons entitled to such notice.  The Court expressly concludes that use of the Postcard Notice satisfies the requirements of due process, Fed. R. Civ. P. 23, and any other applicable law because, in the particular circumstances of this proposed Settlement, the cost of mailing a longer notice (such as the Long-Form Notice) to each potential Class Member would unduly erode the $1.4 million Settlement Amount.  The Court is aware from the Settling Parties' submissions that numerous other courts have approved the use of postcard notices such as the one proposed here.

11.    Class Counsel is authorized to pay from the Settlement Amount the Notice and Administrative Expenses incurred before the Final Settlement Date, subject to the terms of the Settlement Agreement.

12.    VLF shall make reasonable efforts to provide or cause its administrator to provide to the Claims Administrator, by no later than five (5) Business Days following the entry of this Order, lists of all persons and entities that purchased VLF Interests during the Class Period, so that the Claims Administrator can provide notice to such potential Class Members.  To the extent practicable, the lists of potential Class Members shall be in electronic form (such as Excel) and shall contain the names and addresses (and email addresses, if available) of all such persons and entities who can be identified through reasonable efforts from VLF's and/or its administrator's records.

13.    By no later than the Notice Date, which date shall be sixty (60) calendar days before the deadline for objecting to or opting out of the proposed Settlement as set forth in this Order, the Claims Administrator shall mail or cause to be mailed the Postcard Notice, substantially in the form annexed to the Stipulation of Settlement as Exhibit D, by first-class mail, postage prepaid, or by email, to all potential Class Members at the addresses set forth in the records that VLF provided or caused to be provided or at the last-known address of each such person or entity, or who are identified through further reasonable efforts.

14.    By no later than ten (10) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice (substantially in the form annexed to the Stipulation of Settlement as Exhibit F) to be published one time through a national press service to be agreed upon by the Settling Parties.

15.     The Claims Administrator shall also cause copies of the Long-Form Notice and Claim Form (collectively, the "Notice Packet") to be mailed as soon as practicable to potential Class Members who request copies of the Notice Packet.

16.     If any Postcard Notices or Notice Packets are returned to the Claims Administrator with updated addresses, or if updated addresses are otherwise reasonably available, the Claims Administrator shall remail such Postcard Notices or Notice Packets to the updated addresses.

17.     The Claims Administrator shall cause a website link (strategicclaims.net/VLF) to be established so that potential Class Members can find information relating to the Action and the proposed Settlement.  The website shall contain, among other things, copies of (*i*) the Postcard Notice and the Long-Form Notice, including the Plan of Allocation, (*ii*) the Claim Form, (*iii*) the Summary Notice, (*iv*) the Settlement Agreement (including the exhibits), (*v*) motions for approval of the proposed Settlement, and any responsive papers, (*vi*) Plaintiffs' Counsel's motion for an Attorneys' Fees and Expenses Award, and any responsive papers, (*vii*) Plaintiffs' motion for an Incentive Award, and any responsive papers, (*viii*) the Complaint, (*ix*) this Order and any subsequent Orders concerning the proposed Settlement and the Fairness Hearing, and (*x*) such other materials as Class Counsel determines should be posted.

18.     To the extent that any Nominees purchased or otherwise acquired VLF Interests during the Class Period for the benefit of other persons or entities, those Nominees are directed, within fourteen (14) days after receipt of the Postcard Notice or the Long-Form Notice (whichever is earlier), to send a list of the names and addresses (and email addresses, if available) of such beneficial owners to the Claims Administrator, which will then send Postcard Notices to those beneficial owners.  Upon full compliance with this Order, such Nominees may

seek reimbursement of their reasonable expenses actually incurred in complying with this Order, up to $0.05 per name and address (and email address, if available) provided to the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the reasonable expenses for which reimbursement is sought and reflecting compliance with these instructions, including timely mailing of the Postcard Notice.  Such properly documented reasonable expenses incurred by Nominees in compliance with the terms of this Order shall be treated as Notice and Administrative Expenses and paid consistent with paragraph 11 above and paragraph 22 below.

19.     **CAFA Notice.**  As provided in the Settlement Agreement, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. §§ 1715 *et seq.* ("CAFA"), no later than ten (10) calendar days after the Settlement Agreement has been filed with the Court. VLF shall be solely responsible for the costs of the CAFA notice and administering the CAFA notice.  No later than seven (7) calendar days before the Fairness Hearing, Defendants shall cause to be served on Class Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with 28 U.S.C. § 1715(b).

20.     The Settling Parties and their counsel may by agreement effect any amendments to or modifications of the proposed Postcard Notice, Long-Form Notice, Summary Notice, Claim Form, and Plan of Allocation without notice to or approval by the Court if such changes are not materially inconsistent with this Order and do not materially limit the rights of potential Class Members.

21.     At least seven (7) days before the Fairness Hearing, Class Counsel and/or the Claims Administrator shall serve and file with the Court proof by affidavit or declaration of the

11

mailing of the Postcard Notice, the publication of the Summary Notice, and the posting of the various materials on the Claims Administrator's website, all as required by this Order.

22.    **Notice and Administrative Costs and Taxes.**  Without further order of the Court, (*i*) as set out above, Notice and Administrative Expenses (other than the CAFA notice expenses) will be paid, consistent with the terms of the Settlement Agreement, out of the Escrow Account, and (*ii*) Class Counsel or its agents are authorized and directed to prepare any tax returns required to be filed on behalf of or concerning the Settlement Amount and other monies in the Escrow Account, to cause any Tax Expenses due and owing to be paid from the funds in the Escrow Account, and to otherwise perform all obligations as to Tax Expenses and any reporting or filings relating to them as contemplated by the Settlement Agreement.

23.    **Filing of Claims.**  To be entitled to participate in recovery from the Net Settlement Amount, each Class Member shall take the following actions and be subject to the following conditions:

a.    A properly completed and executed Claim Form must be submitted to the Claims Administrator, at the address identified in the Claim Form, postmarked or received no later than the date stated in the Claim Form (which date shall be one hundred twenty (120) days after the date of this Order).  Such deadline may be further extended by Order of the Court.  Each Claim Form shall be deemed to have been submitted when legibly postmarked (if properly addressed and mailed by first-class mail), if such Claim is actually received before the filing of a motion for an Order of the Court approving distribution of the Net Settlement Amount.  Any Claim Form submitted in any other manner shall be deemed to have been submitted on the date that the Claims Administrator actually receives it at the address designated in the Claim Form.

b.      The Claim Form submitted by each Class Member must satisfy the following conditions:  (*i*) it must be properly filled out, signed, and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (*ii*) it must be accompanied by adequate supporting documentation for the reported transactions, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, purchase and (if applicable) sale agreements, or such other documentation that the Claims Administrator or Class Counsel deems adequate; (*iii*) if the person executing the Claim Form is acting in a representative capacity, such person must provide with the Claim Form a certification of his, her, or its current authority to act on behalf of the Class Member; and (*iv*) the Claim Form must be complete, contain no material deletions or modifications of any of the matter printed in the form, and be signed under penalty of perjury.

c.      Upon receipt of a timely submitted Claim Form, the Claims Administrator shall determine whether such claim is valid, deficient, or rejected.  For each claim determined to be either deficient or rejected, the Claims Administrator shall send a deficiency or rejection letter, as appropriate, describing the basis for the determination and giving the claimant an opportunity to remedy any potentially curable deficiencies.  Claimants who timely submit Claim Forms that are deficient or otherwise rejected shall be afforded a reasonable time to cure any deficiency that appears to be potentially curable.

d.      All claimants shall submit to the jurisdiction of the Court for all matters concerning the filing of and determinations concerning their Claim Forms.

24.      **Exclusion from Class.**  All potential Class Members who wish to exclude themselves from the Class must submit timely, written requests for exclusion to the Claims

13

Administrator at the address set out in the Postcard Notice and Long-Form Notice.  The exclusion request must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) a statement that the potential Class Member wishes to request exclusion from the Class in *O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.), (*vi*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vii*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*viii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing), (*ix*) the date of each such transaction involving each such VLF Interest, (*x*) account statements verifying all such transactions, and (*xi*) the signature of the person or entity requesting exclusion or of an authorized representative.

25.     To be valid, any request for exclusion must be in writing, must contain all the information required by this Order, and must be received by the Claims Administrator no later than twenty-eight (28) days before the date of the Fairness Hearing as initially set by the Court in this Order.

26.     If the proposed Settlement is approved, any potential Class Member who has not filed a timely and valid written request for exclusion from the Class (and all Releasors related to each such Class Member) shall be bound by the Releases in the Settlement Agreement and by all proceedings, orders, and judgments in the Action, whether favorable or unfavorable, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Claims.

14

27.     At or before the Fairness Hearing, the Settling Parties shall provide to the Court a list of the persons and entities, if any, who have requested exclusion from the Class, as well as any objections to the timeliness or validity of those exclusion requests.  Persons requesting exclusion from the Class shall not be entitled to receive any payment in connection with the proposed Settlement.

28.     **Objections.**  Any Class Member who has not filed a request for exclusion from the Class and who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement, including to any terms of the Settlement Agreement, to the Plan of Allocation, and/or to the applications for an Attorneys' Fees and Expenses Award and/or an Incentive Award, must serve on Class Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s), as well as the specific reason(s), if any, for each such objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection, and shall state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class.

29.     Each objection must include the name and docket number of this case (as set out at the top of this Order) and, in addition to the reason(s) for the objection, must also include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) e-mail address, if available, (*v*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vi*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*vii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and

_____ (the end of the quarter preceding the initially scheduled date for the Fairness

15

Hearing), (*viii*) the date of each such transaction involving each such VLF Interest, and

(*ix*) account statements verifying all such transactions.

30.    All such objections must be received by the Court and by Class Counsel and

Defendants' Counsel by no later than twenty-eight (28) days before the date of the Fairness

Hearing as initially set out by the Court in this Order.  Objections must be (*i*) sent or delivered to

the following addresses:

      a.    The Court:

           Clerk of Court
           United States District Court for the District of Delaware
           J. Caleb Boggs Federal Building
           844 North King Street
           Wilmington, Delaware  19801-3555

      b.    Class Counsel:

           Alan L. Rosca, Esq.
           Rosca Scarlato, LLC
           23250 Chagrin Blvd., Suite 100
           Beachwood, Ohio  44122

      c.    Defendants' Counsel:

           Joshua M. Newville, Esq.
           Proskauer Rose LLP
           11 Times Square
           New York, New York  10036-8299

***and*** (*ii*) emailed to arosca@rscounsel.law and jnewville@proskauer.com.

31.    If a Class Member (at his, her, or its own expense) hires an attorney to represent

him, her, or it for purposes of objecting, such attorney must serve a notice of appearance on

Class Counsel and Defendants' Counsel and file it with the Court (at the addresses set out above)

so that it is received by no later than twenty-eight (28) days before the date of the Fairness

Hearing as initially set by the Court in this Order.

16

32.     Any Class Member who does not make an objection in the time and manner provided in the Postcard Notice and Long-Form Notice and this Order shall be deemed to have waived such objection, shall be bound by the terms of the Settlement Agreement and the Approval Order and Judgment, and shall be foreclosed forever from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, unless otherwise allowed by the Court.

33.     Potential Class Members who exclude themselves from the proposed Settlement and the Class are not entitled to object to the proposed Settlement.

34.     **Appearance at the Fairness Hearing.**  Any Class Member may appear at the Fairness Hearing either directly or through counsel retained at the Class Member's expense to address the fairness, reasonableness, or adequacy of any aspect of the proposed Settlement. Class Members or their attorneys intending to appear at the Fairness Hearing must serve a notice of intention to appear, setting forth, among other things, the name, address, telephone number, and e-mail address (if available) of the Class Member (and, if applicable, of the Class Member's attorney).  Such notice of intention to appear must be served on Class Counsel and Defendants' Counsel and filed with the Court (at the addresses set out in paragraph 30 above) so that it is received by no later than twenty-eight (28) days before the date of the Fairness Hearing as initially set by the Court in this Order.  Any Class Member (or attorney) who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.  It is within the Court's discretion to allow appearances at the Fairness Hearing in person, by telephone, or by videoconference.

35.     Any Class Member who wishes to appear at the Fairness Hearing to object to the proposed Settlement, proposed Plan of Allocation, Attorneys' Fees and Expenses Application, and/or Incentive Application must also comply with the provisions of paragraphs 28 through 33 above

36.     **Preliminary Injunction.**  Pending final determination of whether the proposed Settlement should be approved, the Court orders as follows:

            a.     Plaintiffs and all other Class Members (and their attorneys, accountants, agents, advisors, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are preliminarily enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims;

            b.     All persons and entities are preliminarily enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims; and

18

c.      All Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities, are preliminarily enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Released Releasees' Claims.

37.      **Communications with Class Members.**  Releasees shall maintain the right to communicate orally and in writing with investors or prospective investors (including potential Class Members) in the normal course of business and as provided in Section VI of the Settlement Agreement.

38.      **Filing of Papers.**  All papers in support of the proposed Settlement shall be filed and served as set forth below:

a.      Any motions for final approval of the proposed Settlement and Plan of Allocation and/or any motions for an Attorneys' Fees and Expenses Award and/or an Incentive Award must be filed by no later than thirty-five (35) days before the date of the Fairness Hearing as initially set by the Court in this Order.

b.      Any oppositions to any motions for final approval of the proposed Settlement or the Plan of Allocation, and/or for an Attorneys' Fees and Expenses Award and/or an Incentive Award, must be filed with the Court and received by Class Counsel and Defendants' Counsel, at the addresses and email addresses set out in paragraph 30, by no later than twenty-eight (28) days before the date of the Fairness Hearing as initially set by the Court in this Order.

c.      Any reply papers in support of final approval of the proposed Settlement, the Plan of Allocation, and/or an Attorneys' Fees and Expenses Award and/or Incentive Award, and any responses to objections submitted pursuant to paragraph 28 or to oppositions submitted

pursuant to paragraph 38.b, must be filed and served by no later than seven (7) days before the date of the Fairness Hearing as initially set by the Court in this Order.

39.    **Qualified Settlement Fund.**  The Escrow Account, held by Strategic Claims Services (which the Court approves as the Escrow Agent), into which the Settlement Amount will be paid shall be considered a Qualified Settlement Fund *in custodia legis* of the Court, in accordance with Treas. Reg. §§ 1.468B-0 through 1.468B-5.

40.    **Confidentiality Agreement.**  The Confidentiality Agreement annexed as Exhibit H to the Stipulation of Settlement is hereby incorporated into this Order, and any breach of the Confidentiality Agreement shall be deemed a breach of a court order.  Pursuant to Fed. R. Evid. 502(d), the Court hereby orders that any disclosures made pursuant to the Confidentiality Agreement shall not constitute a waiver of privilege or other protection in any federal or state proceeding.

41.    **Termination of Settlement.**  This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (*i*) the proposed Settlement is not finally approved by the Court, or does not become Final, pursuant to the terms of the Settlement Agreement or (*ii*) the proposed Settlement is terminated in accordance with the terms of the Settlement Agreement or does not become effective as required by its terms for any other reason; *provided, however*, that paragraph 40 of this Order (concerning the Confidentiality Agreement) shall remain in effect even if the rest of this Order becomes null and void pursuant to this paragraph 41.  In such event, the Settlement Agreement shall become null and void and of no further force and effect in accordance with its terms, and it shall not be used or referred to for any purpose whatsoever except as set out in Section XV of the Settlement Agreement.

20

42.    **Use of Order.**   Except as to paragraph 40, this Order shall be of no force or effect if the proposed Settlement does not become Final.  This Order shall not be construed or used as an admission, concession, or declaration by or against the Releasees of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed or used as an admission, concession, or declaration by or against Plaintiffs or any other Class Member that his, her, its, or their claims lack merit or that the relief requested in the Complaint is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims that he, she, or it might have.

43.    **Sharing of Papers.**   Class Counsel and Defendants' Counsel shall promptly furnish each other with copies of any and all objections or written requests for exclusion that come into their possession.

44.    **Potential Continuance of Fairness Hearing.**   The Court reserves the right to adjourn the date of the Fairness Hearing, and any adjournment thereof, without further notice to potential Class Members.  The Court may decide to hold the Fairness Hearing telephonically or by videoconference without further notice to the Class.  Any Class Member (or his, her, or its counsel) who wishes to appear at the Fairness Hearing should consult the Court's calendar and/or the Claims Administrator's website for any change in date, time, or format of the hearing.

45.    **Retention of Jurisdiction.**   The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 2022.


_____
United States Magistrate Judge

21

128256084v6

# EXHIBIT B

EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,** | No. 1:21-cv-00402-SRF |
| **Plaintiffs,** | |
| **v.** | |
| **VIDA LONGEVITY FUND, LP, *et al.*,** | |
| **Defendants.** | |

**[PROPOSED] ORDER APPROVING**
**CLASS-ACTION SETTLEMENT**

WHEREAS Plaintiffs Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale, on behalf of themselves and the Class (as defined below), and Defendants Vida Longevity Fund, LP, Vida Management I, LLC, Vida Capital Management, LLC, Vida Capital, Inc., Vida Capital, LLC, and Jeffrey R. Serra have entered into a Settlement Agreement to settle the claims asserted in this Action; and

WHEREAS Plaintiffs and Defendants have applied to the Court pursuant to Fed. R. Civ. P. 23(e) for an Order granting final approval of the proposed settlement in accordance with the Settlement Agreement, which sets forth the terms and conditions of the proposed settlement (the "Settlement"); and

WHEREAS, on _____, 2022, the Court entered the Preliminary Approval Order preliminarily approving the proposed Settlement, preliminarily certifying the Class for settlement purposes, directing notice to be sent and published to potential Class Members, and scheduling a hearing (the "Fairness Hearing") to consider whether to approve the proposed

Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's application for an Attorneys'

Fees and Expenses Award, and Plaintiffs' application for an Incentive Award; and

WHEREAS the Court held the Fairness Hearing on _____, 2022 to determine,

among other things, (*i*) whether the terms and conditions of the proposed Settlement are fair,

reasonable, and adequate and should therefore be approved; (*ii*) whether the Class should be

finally certified for settlement purposes; (*iii*) whether notice to the Class was implemented

pursuant to the Preliminary Approval Order and constituted due and adequate notice to potential

Class Members in accordance with the Federal Rules of Civil Procedure, the United States

Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable

law; (*iv*) whether to approve the proposed Plan of Allocation; (*v*) whether to enter an order and

judgment dismissing the Action on the merits and with prejudice as to Defendants and against all

Class Members, and releasing all the Released Class Claims and Released Releasees' Claims as

provided in the Settlement Agreement; (*vi*) whether to enter the requested permanent injunction

and bar order as provided in the Settlement Agreement; (*vii*) whether and in what amount to

grant an Attorneys' Fees and Expenses Award to Plaintiffs' Counsel; and (*viii*) whether and in

what amount to grant an Incentive Award to Plaintiffs; and

WHEREAS the Court received submissions before and heard argument at the Fairness

Hearing;

NOW, THEREFORE, based on the written submissions received before the Fairness

Hearing, the arguments at the Fairness Hearing, and the other materials of record in this action, it

is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. **Incorporation of Settlement Documents.** This Order incorporates and makes a

part hereof the Settlement Agreement dated as of July 8, 2022, including its defined terms.  To

the extent capitalized terms are not defined in this Order, this Court adopts and incorporates the definitions set out in the Settlement Agreement.[1]

2.     **Jurisdiction.**  The Court has jurisdiction over the subject matter of the Action, the Plaintiffs, and all other Class Members (as defined below) and has jurisdiction to enter this Order and the Judgment.

3.     **Final Class Certification**.  The Court grants certification of the Class solely for purposes of the Settlement pursuant to Fed. R. Civ. P. 23(b)(3).  The Class is defined to consist of all persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive, purchased or otherwise acquired VLF Interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests.  Excluded from the Class are:

a.     such persons or entities who submitted valid and timely requests for exclusion from the Class;

b.     such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c.     Defendants; the agents or employees of Defendants; any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (*provided, however,* that the term "affiliate" or "affiliated with" shall not include Life Assets Trust S.A. Compartments VII and VIII); and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks.

---

[1]     Selected definitions from the Settlement Agreement are set out in the Appendix to this Order.

4.     This certification of the Class is made for the sole purpose of consummating the Settlement of the Action in accordance with the Settlement Agreement.  If the Court's approval of the Settlement does not become Final for any reason whatsoever, or if it is modified in any material respect deemed unacceptable by a Settling Party, this class certification shall be deemed void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever, including in any later attempt by or on behalf of Plaintiffs or anyone else to seek class certification in this or any other matter.

5.     For purposes of the settlement of the Action, and only for those purposes, the Court finds that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) and any other applicable laws have been satisfied, in that:

a.     The Class is ascertainable from business records and/or from objective criteria;

b.     The Class is so numerous that joinder of all members would be impractical;

c.     One or more questions of fact and/or law are common to all Class Members;

d.     Plaintiffs' claims are typical of those of the other members of the Class;

e.     Plaintiffs have been and are capable of fairly and adequately protecting the interests of the members of the Class, in that (*i*) Plaintiffs' interests have been and are consistent with those of the other Class Members, (*ii*) Rosca Scarlato, LLC ("Class Counsel") has been and is able and qualified to represent the Class, and (*iii*) Plaintiffs and Class Counsel have fairly and adequately represented the Class Members in prosecuting this Action and in negotiating and entering into the proposed Settlement; and

4

f.      For settlement purposes, questions of law and/or fact common to members of the Class predominate over any such questions affecting only individual Class Members, and a class action is superior to all other available methods for the fair and efficient resolution of the Action.  In making these findings for settlement purposes, the Court has considered, among other things, (*i*) the questions of law and fact pled in the Complaint, (*ii*) the Class Members' interest in the fairness, reasonableness, and adequacy of the proposed Settlement, (*iii*) the Class Members' interests in individually controlling the prosecution of separate actions, (*iv*) the impracticability or inefficiency of prosecuting separate actions, (*v*) the extent and nature of any litigation concerning these claims already commenced, and (*vi*) the desirability of concentrating the litigation of the claims in a particular forum.

6.      **Final Certification of Plaintiffs and Appointment of Class Counsel for Settlement Purposes.**  Solely for purposes of the proposed Settlement, the Court hereby confirms its (*i*) certification of Plaintiffs as representatives of the Class and (*ii*) appointment of Class Counsel as counsel for the Class pursuant to Fed. R. Civ. P. 23(g).

7.      **Notice.**  The Court finds that the distribution of the Postcard Notice, Long-Form Notice, and Claim Form, the publication of the Summary Notice, and the notice methodology as set forth in the Preliminary Approval Order all were implemented in accordance with the terms of that Order.  The Court further finds that the Postcard Notice, Long-Form Notice, Claim Form, Summary Notice, and notice methodology (*i*) constituted the best practicable notice to potential Class Members, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the nature and terms of the proposed Settlement, the effect of the Settlement Agreement (including the release of claims), their right to object to the proposed Settlement, their right to exclude themselves from the Class,

and their right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice (including any State and/or federal authorities entitled to receive notice under the Class Action Fairness Act of 2005), and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.  The Court confirms its prior ruling that, in the circumstances of the Action and this Settlement, the use of the Postcard Notice as part of the Notice Program was reasonable and appropriate.

8.      **Final Settlement Approval.**  The Court finds that the proposed Settlement resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their experienced counsel – under the auspices of Jed Melnick, Esq., of JAMS, serving as mediator – and was entered into in good faith.  The terms of the Settlement Agreement do not have any material deficiencies, do not improperly grant preferential treatment to any individual Class Member, and treat Class Members equitably relative to each other. Accordingly, the proposed Settlement as set forth in the Settlement Agreement is hereby fully and finally approved as fair, reasonable, and adequate, consistent and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and the Rules of the Court, and in the best interests of the Class Members.

9.      The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Amount among eligible Class Members.

10.      In making these findings and in concluding that the relief provided to the Class is fair, reasonable, and adequate, the Court considered, among other factors, the considerations

outlined in Federal Rule of Civil Procedure 23(e)(2) and in *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 437 (3d Cir. 2016), including (*i*) the complexity, expense, and likely duration of the litigation if it were to continue, including the costs, risks, and delay of trial and appeal; (*ii*) the reaction of the potential Class Members to the proposed Settlement, including the number of exclusion requests and the number of objections; (*iii*) the stage of the proceedings and the amount of discovery and other materials available to Class Counsel, including the Due-Diligence Discovery provided to Class Counsel; (*iv*) the risks of establishing liability and damages, including the nature of the claims asserted and the strength of Plaintiffs' claims and Defendants' defenses as to liability and damages; (*v*) Plaintiffs' risks of obtaining certification of a litigation class and of maintaining certification through trial; (*vi*) the ability of Defendants to withstand a greater judgment; (*vii*) the range of reasonableness of the Settlement Amount in light of the best possible recovery; (*viii*) the range of reasonableness of the Settlement Amount to a possible recovery in light of all the attendant risks of litigation; (*ix*) the availability of opt-out rights for potential Class Members who do not wish to participate in the Settlement; (*x*) the effectiveness of the procedures for processing Class Members' claims for relief from the Settlement Fund and distributing such relief to eligible Class Members; (*xi*) the terms of the proposed award of attorneys' fees, including the timing of the payment; (*xii*) the terms of the Supplemental Agreement; (*xiii*) the treatment of Class Members relative to each other; (*xiv*) the adequacy of Plaintiffs' and Class Counsel's representation of the Class; (*xv*) the arm's-length nature of the negotiation of the proposed Settlement; (*xvi*) the involvement of a respected and experienced mediator (Mr. Melnick); (*xvii*) the experience and views of the Settling Parties' counsel; (*xviii*) the submissions and arguments made throughout the proceedings

7

by the Settling Parties; and (*xix*) the submissions and arguments made at and in connection with the Fairness Hearing.

11.     The Settling Parties are directed to implement and consummate the Settlement Agreement in accordance with its terms and provisions.  The Court approves the documents submitted to the Court in connection with the implementation of the Settlement Agreement.

12.     **Releases.**  Pursuant to this Approval Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Plaintiffs and all other Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member), on behalf of themselves and the other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

        a.     all Released Class Claims against each and every one of the Releasees;

        b.     all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

        c.     all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs

(including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

13.     Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, each and every Releasee, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Plaintiffs, Plaintiffs' Counsel, and each and all other Releasors from any and all Released Releasees' Claims, except to the extent otherwise specified in the Settlement Agreement.

14.     Pursuant to this Order and the Judgment, without further action by anyone, and subject to paragraph 15 below, on and after the Final Settlement Date, Plaintiffs' Counsel and any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, and assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of this Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants, Defendants' Counsel, and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements

or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, except to the extent otherwise specified in the Settlement Agreement, and (*iv*) except as provided in paragraph 21 below, any claims for attorneys' fees and expenses in connection with the foregoing matters.

15.     Notwithstanding paragraphs 12 through 14 above, nothing in this Order or in the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, this Order, or the Judgment.

16.     **Permanent Injunction.**  The Court orders as follows:

a.     Plaintiffs and all other Class Members (and their attorneys, accountants, agents, advisors, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims;

b.     All persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending

action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims; and

      c.      All Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any such persons or entities, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to Released Releasees' Claims.

17.      Notwithstanding paragraph 16 above, nothing in this Order or in the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement, this Order, or the Judgment.

18.      **<u>Complete Bar Order.</u>**  To effectuate the Settlement, the Court hereby enters the following Complete Bar Order:

      a.      Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from or is based upon a Released Class Claim or Suitability Claim and the alleged injury to such person or entity arises from or is based upon that person's or entity's alleged liability to the Class or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts that such person or entity has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this

subparagraph are intended to preclude any liability of any of the Releasees to any person or

entity for indemnification, contribution, or otherwise on any Claim that is or arises from or is

based upon a Released Class Claim or Suitability Claim and where the alleged injury to such

person or entity arises from or is based upon that person's or entity's alleged liability to the Class

or any Class Member; *provided, however,* that, if the Class or any Class Member obtains any

judgment against any such person or entity based upon, arising out of, or relating to any Released

Class Claim or Suitability Claim for which such person or entity and any of the Releasees are

found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an

amount that is the greater of (*i*) an amount that corresponds to such Releasee's or Releasees'

percentage of responsibility for the loss to the Class or Class Member and (*ii*) the amount paid by

or on behalf of Defendants to the Class or Class Member for common damages, unless the court

entering such judgment orders otherwise.

        b.     Each and every Releasee is permanently barred, enjoined, and restrained

from commencing, prosecuting, or asserting any Claim against any other person or entity

(including any other Releasee) arising under any federal, state, or foreign statutory or common-

law rule, however styled, whether for indemnification or contribution or otherwise denominated,

including Claims for breach of contract and for misrepresentation, where the Claim is or arises

from or is based upon a Released Class Claim or Suitability Claim and the alleged injury to such

Releasee arises from that Releasee's alleged liability to the Class or any Class Member,

including any Claim in which any Releasee seeks to recover from any person or entity (including

another Releasee) (*i*) any amounts that any such Releasee has or might become liable to pay to

the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending

any Claim by the Class or any Class Member.  All such Claims are hereby extinguished,
discharged, satisfied, and unenforceable.

       c.     Notwithstanding anything stated in the Complete Bar Order, if any person
or entity (for purposes of this subparagraph, a "petitioner") commences against any of the
Releasees any action either (*i*) asserting a Claim that is or arises from or is based upon a
Released Class Claim or Suitability Claim and where the alleged injury to such petitioner arises
from that petitioner's alleged liability to the Class or any Class Member or (*ii*) seeking
contribution or indemnity for any liability or expenses incurred in connection with any such
Claim, and if such action or Claim is not barred by a court pursuant to this paragraph 18 or
otherwise, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by
that Releasee against (*i*) such petitioner, (*ii*) any person or entity who is or was controlled by,
controlling, or under common control with the petitioner, whose assets or estate are or were
controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner
has succeeded, and (*iii*) any person or entity that participated with any of the preceding persons
or entities described in items (*i*) and/or (*ii*) of this subparagraph in connection with the assertion
of the Claim brought against the Releasee(s).

       d.     If any term of the Complete Bar Order entered by the Court is held to be
unenforceable after the date of entry, such provision shall be substituted with such other
provision as may be necessary to afford all of the Releasees the fullest protection permitted by
law from any Claim that is based upon, arises out of, or relates to any Released Class Claim.

       e.     Notwithstanding the Complete Bar Order or anything else in the
Settlement Agreement, (*i*) nothing shall prevent the Settling Parties from taking such steps as are
necessary to enforce the terms of the Settlement Agreement, and (*ii*) nothing shall release,

interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that provides coverage respecting the conduct and Claims at issue in the Action.

19.    **No Admissions.**  This Order and the Judgment, the Settlement Agreement, the offer of the Settlement Agreement, and compliance with the Judgment or the Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability, or by any of the Releasors of any infirmity in Plaintiffs' Claims.  This Order, the Judgment, and the Settlement Agreement are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims.  In no event shall this Order, the Judgment, the Settlement Agreement, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Settlement Agreement.  Without limiting the foregoing, this Order, the Judgment, the Settlement Agreement, and any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession (*i*) of any kind against the Settling Parties or the other Releasees and Releasors in the Action, any other action, or any judicial, administrative, regulatory, or other proceeding, (*ii*) of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense, or (*iii*) by Plaintiffs or the Class of the infirmities of any claims, causes of action, or remedies.

20.     Notwithstanding anything in paragraph 19 above, this Order, the Judgment, and/or the Settlement Agreement may be filed in any action against or by any Releasee to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, injunction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

21.     **Attorneys' Fees and Expenses Award.**  Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of ____% of the Settlement Amount and expenses in the amount of $_____.  Those amounts shall be paid out of the Settlement Fund (as that term is defined in the Settlement Agreement) pursuant to the terms set out in Section X of the Settlement Agreement.  The Court finds that the Attorneys' Fees and Expenses Award is fair, reasonable, and appropriate.

22.     In making this award of attorneys' fees and reimbursement of expenses, the Court has considered and found that:  (a) the Settlement has created a fund of $1.4 million that has been paid into escrow pursuant to the terms of the Settlement and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement; (b) the fees sought by Plaintiffs' Counsel have been reviewed and approved as fair and reasonable by Plaintiffs; (c) both the Postcard Notice (which was mailed to all potential Class Members who could be identified with reasonable effort) and the Long-Form Notice (which was available to any potential Class Member by request or on the Settlement website) stated that Plaintiffs' Counsel would apply for attorneys' fees in an amount not to exceed 30% of the Settlement Amount and reimbursement of litigation expenses in an amount not to exceed $50,000; (d) Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill and perseverance; (e) the Action raised complex issues; (f) the Action presented significant risks to establishing liability and

damages; and (g) the amount of attorneys' fees and expenses is fair and reasonable and consistent with awards in similar cases.

23.     **Incentive Award.**  The Court finds that the requested Incentive Award of $_____ to Plaintiffs is reasonable in the circumstances.  This amount shall be paid out of the Settlement Fund pursuant to the terms set out in Section XI of the Settlement Agreement.

24.     **Modification of Settlement Agreement.**  Without further approval from the Court, the Settling Parties are hereby authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement (including its exhibits) that (*i*) are not materially inconsistent with this Order and the Judgment and (*ii*) do not materially limit the rights of Class Members under the Settlement Agreement.

25.     **Dismissal of Action.**  The Action, including all Claims that have been asserted, is hereby dismissed on the merits and with prejudice, without fees or costs to any Settling Party except as otherwise provided in the Settlement Agreement.

26.     **Retention of Jurisdiction.**  Without in any way affecting the finality of this Order and the Judgment, and subject to the Mediator's ability to make final, binding, and nonappealable rulings as prescribed in the Settlement Agreement, the Court expressly retains continuing and exclusive jurisdiction over the Settlement and all Settling Parties, the Class Members, and anyone else who appeared before this Court for all matters relating to the Action, including the administration, consummation, interpretation, implementation, or enforcement of the Settlement Agreement or of this Order and the Judgment, and for any other reasonably necessary purposes, including:

        a.      enforcing the terms and conditions of the Settlement Agreement, this Order, and the Judgment (including the Complete Bar Order and the permanent injunction);

16

       b.      resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order, or the Judgment (including whether a person or entity is or is not a Class Member and whether Claims or causes of action allegedly related to the Released Class Claims are or are not barred by this Order and the Judgment or the Release);

       c.      entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment, including whether to impose a bond on any parties who appeal from this Order or the Judgment; and

       d.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

27.    **Rule 11 Findings.**  The Court finds that the Complaint filed in the Action was filed on a good-faith basis in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.  The Court finds that all Settling Parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

28.    **Termination.**  If the Settlement does not become Final in accordance with the terms of the Settlement Agreement, or is terminated pursuant to the Settlement Agreement (including pursuant to Section XIV), this Order and the Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement; *provided, however,* that paragraph 40 of the Preliminary Approval Order (concerning the Confidentiality Agreement) shall remain in effect even if this Order and the Judgment are rendered null and void.

29.    **Entry of Judgment.**  There is no just reason to delay the entry of this Order and the Judgment, and immediate entry by the Clerk of Court is expressly directed pursuant to

Rule 58 of the Federal Rules of Civil Procedure.  Any appeal from this Order or other proceeding

seeking subsequent judicial review of this Order pertaining solely to (*i*) the attorneys' fees or

expenses awarded to Plaintiffs' Counsel, (*ii*) the Incentive Award to Plaintiffs, and/or (*iii*) the

Plan of Allocation shall not in any way delay or preclude this Order from becoming Final under

the terms of the Settlement Agreement.

SO ORDERED this ____ day of _____, 2022.


_____
United States Magistrate Judge

EXHIBIT B – Appendix A

## APPENDIX OF SELECTED SETTLEMENT DEFINITIONS

"**Action**" means the securities class action now pending in this Court and captioned *O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.), including any other cases that have been or might be consolidated into that action as of the Final Settlement Date.

"**Operative Facts**" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include, among other things:

a.      The offering and sale of VLF Interests during the Class Period, including all documents (including Private Placement Memoranda) used and representations made in connection with such offering or sale;

b.      Defendants' communications with purchasers or prospective purchasers of VLF Interests during the Class Period, including quarterly letters to investors and any other reports to investors;

c.      The performance of VLF Interests during the Class Period, including Defendants' information and explanations about such performance and any financial guidance, projections, or expectations concerning such performance;

d.      Defendants' statements about VLF's purposes, objectives, goals, investment criteria, due-diligence processes, underwriting procedures, and risk management during the Class Period;

e.      Defendants' valuation of VLF's investments and VLF Interests during the Class Period, including internal controls, underwriting procedures, and other procedures for evaluating and pricing VLF's investments, and any alleged failure to update valuations, procedures, or life-expectancy reports;

f.      Defendants' alleged failure during the Class Period to ensure adequate separation between VLF's underwriting and origination functions and to maintain adequate personnel, including on VLF's portfolio-management and risk teams;

g.      Defendants' reliance on third-party life-expectancy providers and Defendants' subsequent use of proprietary approaches to value VLF's investments;

h.      Alleged conflicts of interest between or among Defendants and their affiliated entities during the Class Period (including any alleged conflicts of interest between or among VLF, Jeffrey R. Serra, and Ovation Partners, LP);

i.      Any redemptions or liquidations of VLF Interests during the Class Period by Defendants, any other Releasee, or any of their affiliated entities during the Class Period;

j.      Vida Management's management of VLF during the Class Period, including Vida Management's researching, selecting, monitoring, and otherwise making decisions about VLF's investments;

k.      Magna Life Settlement's sale of, facilitation of the sale of, or provision of advice about life-settlement assets to VLF during the Class Period, and any alleged conflict of interest between Magna Life Settlement and any Defendant;

l.      VLF's management fees and performance allocations during the Class Period;

m.      Any alleged communications (whether internal to Defendants or external, and whether oral or written) relating to or evidencing any of the alleged conduct described in Section I.A.42.a-l;

n.      Any alleged misstatements or omissions during the Class Period relating to any of the matters described in Sections I.A.42.a-m;

o.      Any alleged inflation or decline in the price or value of VLF Interests during the Class Period that is related to or arises out of the alleged conduct and/or topics described in Sections I.A.42.a-n; and

p.      Any Claims under the TSA or any other law arising out of the alleged conduct and/or topics described in Sections I.A.42.a-o.

"**Released Class Claims**" means each and every Claim that existed as of, on, or before the Execution Date and that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees arising out of or relating to any of the Operative Facts or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim also arises out of or relates to the purchase or other acquisition of VLF Interests, or to any other Investment Decision, during the Class Period; *provided*, *however*, that the term "Released Class Claims" does not include (*i*) any Suitability Claim, (*ii*) any claims asserted in any shareholder derivative action on behalf of VLF, including without limitation the derivative claims asserted in the Derivative Action, or (*iii*) any claims to enforce this Settlement Agreement.

"**Released Releasees' Claims**" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee (including Defendants and their successors and assigns), or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Plaintiffs, any other Class Members, or any of their respective attorneys

(including, without limitation, Plaintiffs' Counsel), and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of this Settlement Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

"**Releasee**" means each and every one of, and "Releasees" means all of, (*i*) Defendants, (*ii*) Defendants' Affiliates, (*iii*) each of Defendants' current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities (a) in which any Defendant or any Defendant's Affiliate has or had a Controlling Interest or (b) that has or had a Controlling Interest in any Defendant or any Defendant's Affiliate, (*iv*) for each of the foregoing Releasees, (*y*) to the extent the Releasee is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee, and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys (including Defendants' Counsel), advisors, administrators, accountants, consultants, assigns, assignees, representatives,

partners, successors-in-interest, insurance carriers, and reinsurers, and (*v*) any person purporting to assert a Released Releasees' Claim on behalf of, for the benefit of, or derivatively for any such Releasee.

"**Releasor**" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, (*iii*) for each of the foregoing Releasors, (*y*) to the extent the Releasor is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Plaintiffs' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in the Releasor, and (*z*) to the extent the Releasor is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys (including Plaintiffs' Counsel), advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers, and (*iv*) any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasor.

"**Suitability Claim**" means any claim against a broker, investment advisor, or other person or entity alleging that (*i*) such person or entity told, suggested to, recommended to, or advised a Class Member that an investment in VLF Interests would be suitable for such Class Member and (*ii*) the investment was not suitable for such Class Member because VLF Interests (a) were not sufficiently liquid, (b) would constitute too large a percentage of such Class Member's assets, and/or (c) were not consistent with the Class Member's investment risk

tolerance or investment objectives and/or time frame; *provided, howev*er, that a Suitability Claim shall not apply to, or be a basis for or part of, any claim or attempted claim (however or by whomever brought) against any Releasee or any other person or entity affiliated with any Releasee.

"**VLF Interests**" means limited partnership interests in VLF, whether purchased directly, or indirectly through Life Assets Trust S.A. Compartments VII and VIII, pursuant to an offering of those limited partnership interests.

EXHIBIT C

**EXHIBIT C**

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN**, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>         **Plaintiffs,**<br><br> **v.**<br><br>**VIDA LONGEVITY FUND, LP**, *et al.*,<br><br>         **Defendants.** | **No. 1:21-cv-00402-SRF** |

## [PROPOSED] JUDGMENT

Consistent with the terms of the Order Approving Class-Action Settlement entered on _____ __, 2022 (the "Approval Order), the settlement of this class action on the terms set forth in the parties' Stipulation of Settlement dated as of July 8, 2022, including all exhibits (collectively, the "Settlement Agreement"), is approved as fair, reasonable, and adequate, and consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law, and in the best interests of the Class Members.  Unless otherwise defined in this Judgment, the capitalized terms in the Judgment have the same meaning as in the Settlement Agreement.

1. The Court finally certifies the following Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3):  all persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive, purchased or otherwise acquired VLF Interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests.  Excluded from the Class are:

a.        such persons or entities who submitted valid and timely requests for exclusion from the Class;

b.        such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c.        Defendants; the agents or employees of Defendants; any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (*provided, however,* that the term "affiliate" or "affiliated with" shall not include Life Assets Trust S.A. Compartments VII and VIII); and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks.

2.        The Postcard Notice, Long-Form Notice, Claim Form, Summary Notice, and notice methodology implemented pursuant to the Court's Preliminary Approval Order entered _____, 2022 (*i*) constituted the best practicable notice to potential Class Members, (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Action, the effect of the Settlement Agreement (including the Releases), their right to object to the proposed Settlement, and their right to exclude themselves from the Class, and Class Members' right to appear at the Fairness Hearing, (*iii*) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (*iv*) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.

3.      The claims in the Action are dismissed on the merits and with prejudice according to the terms of the Settlement Agreement and the Approval Order, without costs to any party except as provided therein.

4.      The release, permanent injunction, and Complete Bar Order as set out in the Approval Order shall be effective as to all persons and entities identified in them.

5.      Neither the Approval Order nor this Judgment applies to the persons or entities who submitted timely and valid exclusion requests and are named on the list annexed as Exhibit 1.

6.      Without affecting the extent to which this Judgment and the Approval Order are final for purposes of any appeals, and subject to the Mediator's ability to make final, binding, and nonappealable rulings as prescribed in the Settlement Agreement, this Court retains continuing and exclusive jurisdiction over the Action as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Judgment, and the Approval Order, and for any other reasonably necessary purposes.

7.      JUDGMENT in this Action is hereby entered in accordance with Federal Rule of Civil Procedure 58 this ___ day of _____, 2022.  The Clerk of Court is respectfully directed to mark this case closed.

IT IS SO ORDERED.

_____
United States Magistrate Judge

3

EXHIBIT D

*Please read it carefully.*

VLF Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Ste. 205
Media, PA  19063

**Court-Ordered Legal Notice;**
**Forwarding Service Requested**

*Important Notice about a Securities*
*Class-Action Settlement*

*You might be entitled to a*
*payment.*
*This Notice might affect your legal*
*rights.*

[NAME 1]
[NAME 2]
[NAME 3]
[ADDRESS 1]
[ADDRESS 2]

PRESORTED
FIRST-CLASS
MAIL U.S.
POSTAGE PAID

*Vida Longevity Fund Securities Litigation*, Case No. 1:21-cv-00402-SRF (D. Del.)
*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT STRATEGICCLAIMS.NET/VLF OR CALL 1-866-274-4004 FOR MORE INFORMATION.*

The U.S. District Court for the District of Delaware (the "Court") has preliminarily approved a proposed Settlement of claims against Vida Longevity Fund, LP ("VLF") and various affiliated entities and persons (collectively, "Defendants"). The proposed Settlement would resolve a class-action lawsuit alleging that Defendants made false or misleading misstatements or omissions about VLF's valuation, valuation processes, and relations with affiliated parties. Defendants deny the allegations.

You received this notice because you might have purchased or acquired direct or indirect VLF limited-partnership interests between January 1, 2017 and March 19, 2021, inclusive, and you might be a Settlement Class Member. The Settlement provides that, in exchange for dismissal and release of claims against Defendants, Defendants will pay $1,400,000. That amount, plus any interest earned, less attorneys' fees and expenses and any Incentive Award, will be divided among Settlement Class Members who timely submit valid Claim Forms. The proposed Settlement amounts to approximately 5.4% of total estimated net out-of-pocket losses before deduction of any fees and expenses. The average estimated recovery per $1,000 dollars of damaged VLF Interests could be approximately $54 before deduction of any fees and expenses. The actual amount paid to eligible Class Members who participate in the Settlement could be more or less than that figure, depending on the number of persons who submit valid Claim Forms. Plaintiffs and Defendants disagree about how much would be recoverable if Plaintiffs prevailed on their claims. Plaintiffs believe that the proposed Settlement is fair, reasonable, and in the best interests of the Class considering the strengths and weaknesses of the claims, the uncertainties of complex litigation, and the concrete benefits provided by the Settlement. Defendants have agreed to settle to avoid the continuing burden and expense of this Action. For a full description of your rights and to make a claim, please review the Stipulation of Settlement and obtain a copy of the Notice of Pendency and Proposed Settlement of Securities Class Action ("Notice") and Claim Form by visiting the website: www.strategicclaims.net/VLF (the "Website"). You may submit your claim online at the Website or request copies of the Notice and Claim Form by: (1) mail: VLF Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Ste. 205, Media, PA 19063; (2) toll-free call: (866) 274-4004; or (3) email: info@strategicclaims.net.

To qualify for payment, you must submit a Claim Form, which can be found on the Website. **Claim Forms are due by _____, 2022,** and should be mailed to the address above or submitted electronically through the Website. If you do not want to be legally bound by the Settlement, you must exclude yourself by _____, 2022. If you exclude yourself, you cannot get money from this Settlement. If you stay in the Settlement, you may object to it by _____, 2022. The Notice explains how to exclude yourself or to object.

*Vida Longevity Fund Securities Litigation*, Case No. 1:21-cv-00402-SRF (D. Del.)
*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT STRATEGICCLAIMS.NET/VLF OR CALL 1-866-274-4004 FOR MORE INFORMATION.*

The Court will hold a hearing on _____, 2022, at __:00 _.m. (ET), at the United States District Court for the District of Delaware, 844 North King Street, Wilmington, DE 19801-3555, Courtroom ___, to consider whether to approve the Settlement, the Plan of Allocation, and a request by Lead Counsel for no more than 30% of the Settlement Amount for their attorneys' fees, plus up to $50,000 in expenses, and an Incentive Award to Plaintiffs of no more than $30,000 ($10,000 per Plaintiff) for their time and expenses in pursuing the Action.  The proposed attorneys' fees and expenses represent approximately $19 per every $1,000 of damaged VLF Interests.  Plaintiffs' counsel is Alan L. Rosca, Rosca Scarlato, LLC, 23250 Chagrin Boulevard, Suite 100, Beachwood, Ohio 44122, (216) 946-7070.  You may, but do not have to, attend the hearing and ask to be heard by the Court. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means.

128372487v4

# EXHIBIT E

**EXHIBIT E**

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                                **Plaintiffs,**<br><br>    **v.**<br><br>**VIDA LONGEVITY FUND, LP,** *et al.*,<br><br>                                **Defendants.** | No. 1:21-cv-00402-SRF |

### NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

*<u>A federal court authorized this Notice.  This is not a solicitation from a lawyer.</u>*

**This notice is about the proposed settlement of a securities class action against Vida Longevity Fund and affiliated defendants.  You might be a member of the class in that lawsuit, and you might be eligible to receive money under the proposed settlement.**

**NOTICE OF PENDENCY OF CLASS ACTION:**  Your rights might be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the District of Delaware (the "Court") if you purchased or otherwise acquired limited partnership interests of Vida Longevity Fund, LP ("VLF") during the period from January 1, 2017 through March 19, 2021, inclusive (the "Class Period").[1]

**NOTICE OF SETTLEMENT:**  The Court-appointed class representatives, Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale ("Plaintiffs"), on behalf of themselves and the Class (as defined in ¶ 18 below), have reached a proposed settlement of the Action for $1,400,000 in cash.

**PLEASE READ THIS NOTICE CAREFULLY.  It explains important rights you might have, including the possible receipt of a payment from the Settlement.  If you are a member of the Class, your legal rights will be affected whether or not you act.**

If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in it, please contact Class Counsel or the Claims Administrator (*see* ¶ 78 below).  DO NOT contact the Court, VLF, the other Defendants, or their counsel.

---

[1]    All capitalized terms not defined in this Notice have the meanings given to them in the Settlement Agreement dated July 8, 2022.  The Settlement Agreement is available at <u>www.strategicclaims.net/VLF</u>.

1. **Description of the Action and the Class:**  This Notice relates to a proposed settlement of claims in a class action brought by investors alleging that VLF and certain affiliated entities and persons (collectively, "Defendants") violated the Texas Securities Act by making false or misleading statements about VLF's valuations, valuation methodology, and dealings with affiliated parties.  A more detailed description of the Action is in ¶¶ 11-17 below. The proposed Settlement, if approved by the Court, will settle claims of the Class, as defined in ¶ 18 below.

2. **Statement of the Class's Recovery:**  Subject to Court approval, Plaintiffs, on behalf of themselves and the Class, have agreed to settle the Action in exchange for $1,400,000 in cash (the "Settlement Amount"), to be deposited into an escrow account.  The Net Settlement Amount (*i.e.*, the Settlement Amount plus any interest earned (the "Settlement Fund") less (*i*) any Tax Expenses; (*ii*) any Notice and Administrative Expenses; and (*iii*) any attorneys' fees and expenses awarded by the Court, including any Incentive Award to Plaintiffs directly related to their representation of the Class) will be distributed to eligible Class Members in accordance with a Plan of Allocation that the Court approves.  The proposed Plan of Allocation is in ¶¶ 45-61 below.

3. **Estimate of Amount of Recovery:**  Plaintiffs' damages expert calculated the estimated total out-of-pocket losses suffered by Class Members as $26 million.  The proposed Settlement amounts to approximately 5.4% of estimated losses.  That amount represents an estimated average recovery, before attorneys' fees and expenses, of approximately $54 for each $1,000 of damaged VLF Interests purchased or acquired during the Class Period.  That amount, however, is only an estimate.  Distributions of settlement relief to eligible Class Members will be made based on the Plan of Allocation set forth below (*see* ¶¶ 45-61) or such other plan of allocation as the Court might order.

4. **Estimated Amount of Potential Recovery:**  Plaintiffs and Defendants (the "Parties") do not agree on the estimated amount that would be recoverable if Plaintiffs were to prevail in the Action.  Among other things, Defendants do not agree with the claim that they violated the Texas securities laws or that any Class Members suffered any damages as a result of Defendants' alleged conduct.

5. **Attorneys' Fees and Expenses Sought:**  Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis, have not received any payment of attorneys' fees for their representation of the Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action.  Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, as well as for payment of expenses paid or incurred in connection with the institution, prosecution, and resolution of the Action in an amount not to exceed $50,000.  Plaintiffs will apply for an Incentive Award, which will take into account the time they spent in pursuing the action as well as the reasonable costs and expenses they incurred directly related to their representation of the Class.  The requested Incentive Award will not exceed $30,000 ($10,000 per Plaintiff).  The proposed attorneys' fees and expenses represent approximately $19 for each $1,000 of damaged VLF Interests purchased or acquired during the Class Period.  Any fees and expenses that the Court awards to Plaintiffs' Counsel and Plaintiffs will be paid from the Settlement Fund.  Class Members are not personally liable for any such fees or expenses.

6.    **Identification of Attorneys' Representatives:**   Plaintiffs and the Class are represented by Class Counsel:  Alan L. Rosca of Rosca Scarlato, LLC, 23250 Chagrin Blvd., Suite 100, Beachwood, Ohio 44122, (216) 946-7070, arosca@rscounsel.law; and Paul Scarlato of Rosca Scarlato, 161 Washington Street, Suite 1025, Conshohocken, Pennsylvania 19428, (216) 946-7070, pscarlato@rscounsel.law.

7.    **Reasons for the Settlement:**   Plaintiffs' main reasons for entering into the Settlement include the substantial and certain recovery for the Class without the risk or delays inherent in further litigation.  The substantial recovery under the Settlement must be considered against the significant risk that a smaller recovery—or no recovery at all—might be achieved after contested motions, a trial, and the likely appeals that would follow.  That process could last several years.  Moreover, even if Plaintiffs could succeed in establishing liability, they would need to prove damages.  VLF's performance since the Action was filed has substantially reduced Plaintiffs' original expectations about potential damages.  Defendants, who deny all allegations of wrongdoing, are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM *POSTMARKED* NO LATER THAN _____, 2022.** | This is the only way to be eligible to receive a payment from the Settlement.  If you are a Class Member and you remain in the Class, you will be bound by the Settlement as approved by the Court, and you will give up any Released Class Claims (defined in ¶ 31 below) against Defendants and the other Releasees (defined in ¶ 32 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION THAT IS *RECEIVED* NO LATER THAN _____, 2022.** | If you exclude yourself from the Class, you will not be eligible to receive any payment from the Settlement.  This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Releasees concerning the Released Class Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION THAT IS *RECEIVED* NO LATER THAN _____, 2022.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, the request for attorneys' fees and expenses, or the proposed Incentive Award to Plaintiffs, you may write to the Court and explain why you do not like them.  You cannot object to any of those matters unless you are a Class Member and do not exclude yourself from the Class. |

| **GO TO A HEARING ON _____, 2022 AT \_\_:\_\_ \_\_.M. (ET), AND FILE A NOTICE OF INTENTION TO APPEAR THAT IS *RECEIVED* NO LATER THAN _____, 2022.** | If you file a written objection and notice of intention to appear by _____, 2022, you may speak in Court, at the Court's discretion, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses or the Incentive Award to Plaintiffs.  If you submit a written objection, you may (but do not have to) attend the hearing and, at the Court's discretion, speak about your objection.  The Court may change the date of the Fairness Hearing and may also order that the Hearing be held by telephone or videoconference, in which case instructions about date, time, and how to participate will be posted on www.strategicclaims.net/VLF. |
| **DO NOTHING.** | If you are a member of the Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement.  You will, however, remain a member of the Class, which means that you give up your right to sue about the claims that are resolved by the Settlement, and you will be bound by any orders or judgment entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice? ......... Page [\_\_]
What Is This Case About? ......... Page [\_\_]
How Do I Know If I Am Affected By The Settlement?
    Who Is Included In Class? ......... Page [\_\_]
What Are Plaintiffs' Reasons For Settling? ......... Page [\_\_]
What Might Happen Without A Settlement? ......... Page [\_\_]
How Are Class Members Affected By The Action And The Settlement? ......... Page [\_\_]
How Do I Participate In The Settlement?  What Do I Need To Do? ......... Page [\_\_]
How Much Will My Payment Be? ......... Page [\_\_]
What Payment Are The Attorneys For The Class Seeking?
    How Will The Lawyers Be Paid? ......... Page [\_\_]
What If I Do Not Want To Be A Member Of The Class?
    How Do I Exclude Myself? ......... Page [\_\_]
When And Where Will The Court Decide Whether To Approve The
    Settlement? Do I Have To Participate In The Hearing?  May I Speak At
    The Hearing If I Don't Like The Settlement? ......... Page [\_\_]
What If I Bought Limited Partnership Interests On Someone Else's Behalf? ......... Page [\_\_]
Can I See The Court File?  Whom Should I Contact If I Have
    Questions? ......... Page [\_\_]

4

## WHY DID I GET THIS NOTICE?

8.    The Court directed that you be notified of the proposed Settlement because you or someone in your family or an investment account for which you serve as a custodian might have purchased or otherwise acquired VLF Interests (limited partnership interests in VLF, purchased either directly, or indirectly through Life Assets Trust S.A. Compartments VII and VIII, pursuant to an offering of those limited partnership interests) during the Class Period (January 1, 2017 through March 19, 2021, inclusive).  You therefore might be a Class Member in this Action, so you have a right to know about your options before the Court rules on the Settlement.  You also are entitled to understand how this class action might generally affect your legal rights.

9.    This Notice is to inform you of the existence of this case, that it is a class action, how you might be affected by it, and how to exclude yourself from the Class if you wish to do so.  The Notice is also to inform you of the terms of the proposed Settlement, of your right to object to it, and of a court hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and litigation expenses, and Plaintiffs' application for an Incentive Award (the "Fairness Hearing"). *See* ¶¶ 68-71 below for details about the Fairness Hearing.

10.    This Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement and a Plan of Allocation, payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing. Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.    VLF is a limited partnership that invests in life-settlement assets.  Plaintiffs allege that, during the Class Period, VLF's offering materials made false or misleading statements and omissions that inflated the price or value of VLF Interests.  Defendants deny those allegations.

12.    On March 19, 2021, Plaintiffs filed a class-action complaint in the Court asserting claims under the Texas Securities Act against VLF, its general partner, the general partner's control person, and other persons and entities affiliated with them.  The Complaint charges that VLF's performance began to deteriorate in 2018 and that VLF attributed that performance to certain one-time or extrinsic events, but failed to disclose that its losses had resulted from weaknesses in VLF's internal processes and procedures for evaluating and pricing the fund's investments.  VLF also allegedly failed to disclose supposed conflicts of interest involving its founder.

13.    Pursuant to the Parties' and the Court's agreement, Defendants did not respond to the Complaint.  Instead, the Parties decided to explore whether they could resolve the case without expensive, time-consuming, and burdensome litigation.

14.    The Parties participated in a full-day mediation on October 14, 2021 with Jed D. Melnick, Esq., of JAMS (the "Mediator"), but did not reach an agreement.  After further discussions over the next several months, the Parties signed an agreement in principle on January 5, 2022 to settle the Action for $1,400,000, subject to certain terms and conditions,

including execution of a formal settlement agreement, Plaintiffs' conducting Due-Diligence Discovery, and approval by the Court.

15.   On July 8, 2022, the Parties entered into the Settlement Agreement, which contains the complete terms and conditions of the Settlement.  The Settlement Agreement is available at www.strategicclaims.net/VLF.  You should read it if you want a full understanding of its terms.

16.   The Settlement Agreement was subject to Plaintiffs' completion of Due-Diligence Discovery to confirm the fairness of the Settlement.  Pursuant to the Settlement Agreement, Plaintiffs could withdraw from and terminate the Settlement if information produced during Due-Diligence Discovery caused them reasonably and in good faith to conclude that the proposed Settlement was not fair, reasonable, and adequate.  After conducting that discovery, Plaintiffs chose to proceed with the Settlement.

17.   On _____, 2022, the Court preliminarily approved the Settlement, authorized notice to be disseminated to potential Class Members, and scheduled the Fairness Hearing to consider whether to grant final approval of the Settlement.

---

### HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE CLASS?

---

18.   If you are a member of the Class, you are subject to the Settlement unless you timely and validly request to be excluded from it.  The Class consists of:

> all persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive (the "Class Period"), purchased or otherwise acquired VLF limited partnership interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests.

Excluded from the Class are:

a.  such persons or entities who submit valid and timely requests for exclusion from the Class (for information on how to request exclusion, see "What If I Do Not Want To Be A Member Of The Class?  How Do I Exclude Myself?" on page __ below);

b.  such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees (defined below in ¶ 32) arising out of or related to the Released Class Claims (defined below in ¶ 31); and

c.  Defendants; the agents or employees of Defendants; any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (*provided, however,* that the term "affiliate" or "affiliated with" does not include Life Assets Trust S.A. Compartments VII and VIII); and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks.

**PLEASE NOTE:  Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to a payment from the Settlement.**

**If you are a Class Member and you wish to be eligible to receive a payment from the Settlement, you must submit the Claim Form that is available with this Notice, as well as the required supporting documentation described in the Claim Form, postmarked no later than _____, 2022.**

| WHAT ARE PLAINTIFFS' REASONS FOR SETTLING? |
|---|

19.   Plaintiffs and Plaintiffs' Counsel believe that the claims asserted against Defendants have merit.  They recognize, however, the difficulties, expense, and length of continued proceedings necessary to pursue their claims through motion practice, trial, and appeal, as well as the risks they would face in establishing liability and damages.

20.   Without a settlement, Defendants would move to dismiss the Complaint, and Plaintiffs would face significant hurdles in defeating that motion.  But even if Plaintiffs were to succeed in doing so, they would face additional challenges in developing facts to survive summary judgment or to prove Defendants' liability at trial.  Plaintiffs would face challenges showing that Defendants' statements about VLF's valuations and valuation processes were materially false or misleading.  Defendants likely would contend that, because VLF's life-settlement assets do not have objectively ascertainable market values, valuations of those assets are inherently subjective, and Defendants did not misrepresent their opinions or beliefs about those assets.  Defendants also would likely contend that they adhered to and did not misrepresent the valuation processes and methodologies described in VLF's offering materials, that they used reputable and independent valuation agents and auditors, and that the alleged relationships between VLF and its founder were sufficiently disclosed.

21.   Moreover, even if Plaintiffs could succeed in establishing liability, they would need to prove damages.  VLF's performance since the Action was filed has substantially reduced Plaintiffs' original expectations about potential damages.

22.   In light of these risks, the amount of the Settlement, the immediacy of recovery to the Class, and the Due-Diligence Discovery that Plaintiffs conducted, Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class.  They believe that the Settlement provides a substantial benefit to the Class, namely $1,400,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action could produce a smaller recovery, or no recovery, after motion practice, potential trial, and appeal, possibly years in the future.

23.   Defendants deny the claims asserted against them and deny that the Class was harmed by or suffered any damages from the conduct alleged in the Action.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

| WHAT MIGHT HAPPEN WITHOUT A SETTLEMENT? |
|---|

24.     If there were no Settlement, and if Plaintiffs failed to establish any essential legal or factual element of their claims, neither Plaintiffs nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful on a motion to dismiss

or in proving any of their defenses at summary judgment, at trial, or on appeal, the Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

**HOW ARE CLASS MEMBERS AFFECTED
BY THE ACTION AND THE SETTLEMENT?**

25.   As a Class Member, you are represented by Plaintiffs and Class Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You do not need to retain your own counsel, but, if you choose to do so, he or she must file a notice of appearance on your behalf and must serve copies of that notice on the attorneys listed in the section titled "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

26.   If you are a Class Member and wish to remain in the Class, you may **file a claim** for money from the Settlement Fund by following the instructions in the section titled "How Do I Participate In The Settlement?  What Do I Need To Do?," below.

27.   If you are a potential Class Member and do *not* wish to remain in the Class, you may **exclude yourself** from the Class by following the instructions in the section titled "What If I Do Not Want To Be A Member Of The Class?  How Do I Exclude Myself?," below.

28.   If you are a Class Member and wish to **object** to the Settlement, the Plan of Allocation, Plaintiffs' Counsel's application for attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section titled "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

29.   If you are a Class Member and do not exclude yourself from the Class, you will be bound by any orders issued by the Court even if you have pending or later file any claim or lawsuit against the Releasees (as defined in ¶ 32 below) relating to the Released Class Claims (as defined in ¶ 31 below).  If the Settlement is approved, the Court will enter a final approval order (the "Approval Order") and a judgment (the "Judgment").  The Approval Order and Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Final Settlement Date, Plaintiffs and all other Class Members, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such (the "Releasors"), or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.   all Released Class Claims (as defined in ¶ 31 below) against each and every one of the Releasees (as defined in ¶ 32 below);

b.   all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or

8

its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

c.   all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

30.   In addition, the Judgment and Approval Order will provide that:

a.   all Class Members (and their attorneys, accountants, agents, advisors, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims; and

b.   all persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims.

31.   "Released Class Claims" means each and every Claim that existed as of, on, or before the Execution Date and that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees arising out of or relating to any of the Operative Facts (as defined in the Stipulation of Settlement) or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim also arises out of or relates to the purchase or other acquisition of VLF Interests, or to any other Investment Decision, during the Class Period; *provided, however,* that the term "Released Class Claims" does not include (*i*) any Suitability Claim, (*ii*) any claims asserted in any shareholder derivative action on behalf of VLF, or (*iii*) any claims to enforce the Settlement Agreement

32.   "Releasees" means VLF; the other Defendants; Defendants' Affiliates; each of Defendant's current and former officers, directors, employees, agents, representatives, counsel, advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns,

9

assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers; and other certain persons and entities affiliated with or related to them.  The full definition of Releasees is set forth in the Settlement Agreement, available at www.strategicclaims.net/VLF.

33.   The Judgment and Approval Order will also provide that, upon the Final Settlement Date, all Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any of them, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to Released Releasees' Claims.

34.   "Released Releasees Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee (including Defendants and their successors and assigns), or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Plaintiffs, any other Class Members, or any of their respective attorneys (including, without limitation, Plaintiffs' Counsel), and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of the Settlement Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

35.   To be eligible for a payment from the Settlement, you must be a member of the Class and must timely complete and return the Claim Form with adequate supporting documentation *postmarked* no later than _____, 2022.  A Claim Form is available with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.strategicclaims.net/VLF.  You may also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at 1-866-274-4004 or by emailing the Claims Administrator at info@strategicclaims.net.  Please retain all records of your ownership of and transactions in VLF Interests, as they will be needed to document your Claim.  The Parties and the Claims Administrator might not have information about your transactions in VLF Interests.

36.   If you request exclusion from the Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Amount.  You should not submit a Claim Form if you request exclusion from the Class.

37.   Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before _____, 2022 will be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a member of the Class and be bound by the provisions of the Settlement Agreement, including the terms of any Judgment entered and the releases given.  This means that each Class Member releases the Released Class Claims (as defined in ¶ 31 above) against the Releasees (as defined in ¶ 32 above) and will be barred and enjoined from prosecuting any of the Released Class Claims against any of the Releasees whether or not such Class Member submits a Claim Form.

38.   The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

39.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court as to his, her, or its Claim Form.

## HOW MUCH WILL MY PAYMENT BE?

40.   At this time, it is not possible to determine to how much any individual Class Member might receive from the Settlement.

41.   Pursuant to the Settlement, Defendants have agreed to pay or cause to be paid a total of $1,400,000 in cash (the "Settlement Amount").   The Settlement Amount will be deposited into an escrow account.  The Settlement Amount plus any interest earned on it is called the "Settlement Fund."  If the Settlement is approved by the Court, and if the Final Settlement Date occurs, the "Net Settlement Amount" (that is, the Settlement Fund less (*i*) any Tax Expenses, (ii) any Notice and Administrative Expenses, and (iii) any attorneys' fees and expenses awarded to Plaintiffs' Counsel and any Incentive Award to Plaintiffs) will be distributed to Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court might approve.

42.   The Net Settlement Amount will not be distributed unless and until the Court has approved the Settlement and a Plan of Allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

43.   Defendants are not entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Amount, or the Plan of Allocation.

44.   Approval of the Settlement is independent from approval of a Plan of Allocation. Any determination about a Plan of Allocation will not affect the Settlement, if approved.

### PROPOSED PLAN OF ALLOCATION

45.   The Plan of Allocation seeks to distribute the Net Settlement Amount fairly to those Class Members who filed timely, valid Claim Forms and suffered economic loss as a result of the alleged violations of the Texas securities laws.  Calculations made under the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are those calculations intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement.  Computations under the Plan of Allocation are only a method to weigh the claims of Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Amount.

46.   For losses to be compensable damages under the Texas securities laws, the disclosure of the allegedly misrepresented information must have been the cause of the decline in the price or value of the VLF Interests.  In this case, Plaintiffs allege that Defendants made false statements and omitted material facts that had the effect of artificially inflating the price or value of VLF Interests.

47.    In developing the Plan of Allocation, Plaintiffs' damages expert calculated the estimated total out-of-pocket losses allegedly suffered by Class Members.

48.    Recognized Loss Amounts for transactions in VLF Interests are calculated under the Plan of Allocation as explained in ¶ 50 below.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

49.    Based on the formula stated below, a "Recognized Loss Amount" will be calculated for each purchase of VLF Interests during the Class Period that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, the Recognized Loss Amount for that transaction will be zero.

50.    Each Authorized Claimant will be allocated a *pro rata* share of the Net Settlement Amount based on his, her, or its Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants.  Recognized Loss Amounts will be calculated as follows for VLF Interests purchased or acquired (including free receipts) during the Class Period:

- For VLF Interests sold, redeemed, or otherwise disposed of before _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing), the Recognized Loss Amount is the dollar amount invested in those specific VLF Interests during the Class Period less the dollar value received from the sale, redemption, or other disposition of those VLF Interests.

- For VLF Interests still held as of _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing), the Recognized Loss Amount is the dollar amount invested in VLF Interests during the Class Period less the dollar value of those VLF Interests still held as of the last day of the quarter preceding the initially scheduled date for the Fairness Hearing, as reflected on your quarterly statement.

## ADDITIONAL PROVISIONS

51.    The Net Settlement Amount will be allocated among all Authorized Claimants whose Distribution Amount (defined in ¶ 57 below) is $10.00 or greater.

52.    **Calculation of Claimant's "Recognized Claim":**  A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above for all purchases of VLF Interests during the Class Period.

53.    **FIFO Matching:**  If a Class Member made more than one purchase/acquisition or sale/redemption of VLF Interests during the Class Period, all purchases/acquisitions and sales/redemptions will be matched on a First In, First Out ("FIFO") basis.  Class Period sales/redemptions will be matched first against any holdings of VLF Interests at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

54.    **"Purchase/Sale" Dates:**  Purchases of VLF Interests will be deemed to have occurred on the date when a limited partner was admitted to VLF, as opposed to the payment date.  Redemptions of VLF Interests will be deemed to have occurred on the applicable

redemption date, and sales of VLF Interests will be deemed to have occurred on the date when the transferee was admitted to VLF. "Purchases" eligible under the Settlement and this Plan of Allocation include all purchases or other acquisitions of VLF Interests in exchange for value, as long as the purchase is adequately documented. However, the receipt or grant of VLF Interests by gift, inheritance, or operation of law during the Class Period shall not be deemed a purchase or sale/redemption for the calculation of a Claimant's Recognized Loss Amount; nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/sale of the VLF Interests unless (*i*) the donor or decedent purchased the VLF Interests during the Class Period; (*ii*) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (*iii*) no Claim was submitted by or on behalf of the donor, the decedent, or anyone else as to those VLF Interests.

55. **Total Gains and Losses:** The Claims Administrator will determine whether the Claimant had a "Total Gain" or a "Total Loss" on his, her, or its overall transactions in VLF Interests during the Class Period based on the calculation of Recognized Loss Amounts as defined in ¶ 50 above.

56. If a Claimant had a Total Gain from his, her, or its overall transactions in VLF Interests, the value of the Claimant's Recognized Claim will be zero, and the Claimant will not be eligible to receive a payment in the Settlement, but will nonetheless be bound by the Settlement. If a Claimant suffered an overall Total Loss from his, her, or its overall transactions in VLF Interests, but that Total Loss was less than the Claimant's Recognized Claim, then the Claimant's Recognized Claim will be limited to the amount of the Total Loss.

57. **Determination of Distribution Amount:** The Net Settlement Amount will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. A "Distribution Amount" will be calculated for each Authorized Claimant. That Distribution Amount shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Amount.

58. If an Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant.

59. After the initial distribution of the Net Settlement Amount, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. If any monies remain after the initial distribution, and if Class Counsel, in consultation with the Claims Administrator, determine that an additional distribution would be cost-effective, the Claims Administrator, no less than seven (7) months after the initial distribution, will redistribute the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution, to Authorized Claimants who cashed their initial distributions and would receive at least $10.00 from such redistribution. Additional redistributions to Authorized Claimants who cashed their prior checks and would receive at least $10.00 in such additional redistributions may occur thereafter if Class Counsel, in consultation with the Claims Administrator, determine that additional redistributions, after the deduction of any additional fees and expenses incurred in administering the Settlement (including for such redistributions), would be cost-effective. At such time as it is determined that the redistribution of any remaining funds would not be cost-effective, Class Counsel will

distribute the remaining amount to one or more nonprofit organizations to be agreed upon by the Settling Parties and approved by the Court.

60.   Payment pursuant to the proposed Plan of Allocation, or such other plan of allocation as the Court may approve, will be conclusive against all Claimants.  No person or entity shall have any claim against the Settling Parties, their respective counsel, any other Releasees, the Claims Administrator, or any other agent designated by Class Counsel arising from distributions made substantially in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or any order of the Court.  The Settling Parties, their respective counsel, and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Amount, any Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

61.   The Plan of Allocation set forth herein is the plan that Plaintiffs, after consultation with their damages expert, are proposing to the Court for approval.  The Court may approve this plan as proposed, or it may modify the Plan of Allocation without further notice to the Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.strategicclaims.net/VLF.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?
## HOW WILL THE LAWYERS BE PAID?

62.   Plaintiffs' Counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Class; nor have Plaintiffs' Counsel been paid for their litigation expenses.  Before final approval of the Settlement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount. Plaintiffs' Counsel have a retention agreement with Plaintiffs that provides for a contingency fee to be awarded to Plaintiffs' Counsel after approval by the Court.  When they file a motion for attorneys' fees, Plaintiffs' Counsel will also apply for payment of litigation expenses paid or incurred by Plaintiffs' Counsel in an amount not to exceed $50,000, and for an Incentive Award to Plaintiffs directly related to their representation of the Class, in an amount not to exceed $30,0000 ($10,000 per Plaintiff).   The Court will determine the amount of any award of attorneys' fees and expenses to Plaintiffs' Counsel or any Incentive Award to Plaintiffs. Whatever amounts the Court might approve will be paid from the Settlement Fund.  Class Members will not be personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE CLASS?
## HOW DO I EXCLUDE MYSELF?

63.   Each Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Class, addressed to *VLF Securities Litigation*, EXCLUSIONS, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063. The Request for Exclusion must be ***received* no later than _____, 2022**. You will not be able to exclude yourself from the Class after that date.

64.   A potential Class Member's request for exclusion must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a statement that the potential Class Member wishes to request exclusion from the Class in *O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.), (*vi*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vii*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*viii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing), (*ix*) the date of each such transaction involving each such VLF Interest, (*x*) account statements verifying all such transactions, and (*xi*) the signature of the person or entity requesting exclusion or of an authorized representative.   A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

65.   If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Class Claim against any of the Releasees.

66.   If you ask to be excluded from the Class, you will not be eligible to receive any payment from the Net Settlement Amount.

67.   Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds an amount agreed to by the Settling Parties.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO PARTICIPATE IN THE HEARING?  MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

68.   The Fairness Hearing will be held on _____, 2022 at __:__ _.m. (ET), before Magistrate Judge Sherry R. Fallon, either in-person at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801-3555, Courtroom __, or by telephone or video, to determine, among other things, (*i*) whether the proposed Settlement as provided for in the Settlement Agreement is fair, reasonable, and adequate to the Class and should be finally approved; (*ii*) whether, for purposes of the Settlement only, the Action should be certified as a class action on behalf of the Class, Plaintiffs should be certified as representatives for the Class, and Class Counsel should be appointed as counsel for the Class; (*iii*) whether the Action should be dismissed with prejudice against Defendants and whether the Releases specified in the Settlement Agreement (and in this Notice) should be granted; (*iv*) whether the proposed Plan of Allocation should be approved as fair and reasonable; (*v*) whether Plaintiffs' Counsel's motion for attorneys' fees and expenses and Plaintiffs' motion for an Incentive Award should be approved; and (*vi*) any other matters that may properly be brought before the Court in connection with the Settlement.  The Court reserves the right to certify the Class; approve the Settlement, the Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and expenses, and Plaintiffs' application for an Incentive Award; and/or consider any other matter related to the Settlement at or after the Fairness Hearing without further notice to the members of the Class.

15

69.   **Please Note:** The date and time of the Fairness Hearing may change without further written notice to the Class.  In addition, the Court might decide to conduct the Fairness Hearing by telephonic or video conference, or otherwise allow counsel for the Parties and for Class Members to appear at the hearing by phone or video, without further written notice to the Class.  **To determine whether the date and time of the Fairness Hearing have changed, or whether Class Members must or may participate by phone or video, you should monitor the Court's docket and the Settlement website, www.strategicclaims.net/VLF, before making plans to attend the Fairness Hearing in person.**  Any updates about the Fairness Hearing, including any changes to the date or time of the hearing or updates about in-person, telephonic, or video appearances at the hearing, will be posted to the Settlement website, www.strategicclaims.net/VLF.  Also, if the Court requires or allows Class Members to participate in the Fairness Hearing by telephone or video, the information for accessing the hearing will be posted to the website.

70.   Class Members do not need to participate in the Fairness Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Class Member does not speak at or otherwise observe the hearing.  You can participate in the Settlement without attending the Fairness Hearing.  You do not need to appear at the Fairness Hearing or take any other action to show your approval of the Settlement.

71.   Any Class Member who does not request exclusion from the Class may object to the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award.  Objections must be in writing.  You must **file** any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the District of Delaware at the address set forth below **on or before _____, 2022**.  You must also serve the papers on Class Counsel and Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before _____, 2022**.

| **Clerk's Office** | **Class Counsel** | **Defendants' Counsel** |
|---|---|---|
| Clerk of Court<br>United States District Court<br>  for the District of Delaware<br>J. Caleb Boggs Federal<br>  Building<br>844 North King Street<br>Wilmington, DE 19801-3555 | Alan L. Rosca, Esq.<br>Rosca Scarlato, LLC<br>23250 Chagrin Blvd., Suite 100<br>Beachwood, OH 44122 | Joshua M. Newville, Esq.<br>Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036-8299 |

You must also *email* the objection and any supporting papers **on or before _____, 2022** to arosca@rscounsel.law and jnewville@proskauer.com.

72.   Any objection must state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection, and shall state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class.  In addition to the reason(s) for the objection, an objection must also include the name and docket number of this case (*O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-

SRF (D. Del.)) and the following information about the Class Member: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vi*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*vii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing), (*viii*) the date of each such transaction involving each such VLF Interest, and (*ix*) account statements verifying all such transactions. You may not object to any aspect of the Settlement if you exclude yourself from the Class or are not a member of the Class.

73.    You may file a written objection without having to speak at the Fairness Hearing. You may not, however, speak at the Fairness Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

74.    If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for an award of attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award, and if you have timely filed and served a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Class Counsel and Defendants' Counsel at the addresses set forth in ¶ 71 above so that it is ***received on or before _____, 2022***. Persons who intend to object and present evidence at the Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they might call to testify and any exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the Court's discretion.

75.    You are not required to hire an attorney to represent you in making written objections or in appearing at the Fairness Hearing. However, if you decide to hire an attorney, you may do so at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Class Counsel and Defendants' Counsel at the addresses set forth in ¶ 71 above so that the notice is ***received on or before _____, 2022***.

76.    **Unless the Court orders otherwise, any Class Member who does not object as described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, Plaintiffs' Counsel's motion for an award of attorneys' fees and expenses, and Plaintiffs' application for an Incentive Award.**

## WHAT IF I BOUGHT VLF INTERESTS ON SOMEONE ELSE'S BEHALF?

77.    Class Counsel and the Claims Administrator intend to send Postcard Notices to potential Class Members listed as VLF subscribers during the Class Period based on records maintained by VLF's administrator. If you purchased or otherwise acquired VLF Interests during the period from January 1, 2017 through March 19, 2021, inclusive, for the beneficial interest of persons or organizations other than yourself, you must, within fourteen (14) calendar days after receipt of the Postcard Notice or this Notice (whichever is earlier), provide a list of the names, addresses, and email addresses (if available) of all such beneficial owners to *VLF Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street,

Suite 205, Media, PA 19063, or info@strategicclaims.net.  The Claims Administrator will then send the Postcard Notices to the beneficial owners.  Copies of the Postcard Notice, this Notice, and the Claim Form may also be obtained from the Settlement website, www.strategicclaims.net/VLF, by calling the Claims Administrator toll-free at 1-866-274-4004, or by emailing the Claims Administrator at info@strategicclaims.net.

## CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

78.    This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information, you should review the papers on file in the Action, including the Settlement Agreement, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801, or through the court's online docket.  Copies of the Settlement Agreement and any related orders entered by the Court are also posted on the Settlement website, www.strategicclaims.net/VLF.

All inquiries concerning this Notice and the Claim Form should be directed to:

*VLF Securities Litigation*          and/or          Alan L. Rosca, Esq.
c/o Strategic Claims Services                    Rosca Scarlato, LLC
P.O. Box 230                             23250 Chagrin Blvd., Suite 100
600 N. Jackson St., Suite 205                  Beachwood, OH 44122
Media, PA  19063                            (216) 946-7070
Tel:  866-274-4004                        arosca@rscounsel.law
Fax:  610-565-7985
info@strategicclaims.net
www.strategicclaims.net/VLF

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF COURT, DEFENDANTS, OR THEIR COUNSEL ABOUT THIS NOTICE.**

Dated: _____, 2022          By Order of the Court
                                   United States District Court
                                   District of Delaware

18

EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                                          **Plaintiffs,**<br><br>     **v.**<br><br>**VIDA LONGEVITY FUND, LP,** *et al.*,<br><br>                                          **Defendants.** | No. 1:21-cv-00402-SRF |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND
PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING;
AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO:**     All persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive (the "Class Period"), purchased or otherwise acquired limited partnership interests in Vida Longevity Fund, LP ("VLF"), either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII.[1]

**PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS WILL BE AFFECTED
BY A CLASS-ACTION LAWSUIT PENDING IN THIS COURT.**

        YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Delaware (the "Court"), that the above-captioned securities class action (the "Action") is pending in the Court.

        YOU ARE ALSO NOTIFIED that the Plaintiffs have reached a proposed settlement of the Action for $1,400,000 in cash (the "Settlement"), which, if approved, will resolve all claims in the Action.

        A hearing will be held on _____, 2022, at __:__ _.m. (ET)**, before Magistrate Judge Sherry R. Fallon, either in-person at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801-3555, Courtroom __, or by telephone or videoconference, to determine (*i*) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (*ii*) whether, solely for purposes of the Settlement, the Action should be certified as a class action on behalf of the Class, Plaintiffs should be certified as representatives for the Class, and Plaintiffs' counsel should be appointed as counsel for the Class; (*iii*) whether the Action should be dismissed with

---

[1]     Certain persons and entities are excluded from the Class definition, as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice"), available at www.strategicclaims.net/VLF.

prejudice against Defendants and whether the releases specified in the Settlement Agreement dated July 8, 2022 (and in the Notice) should be granted; (*iv*) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (*v*) whether Plaintiffs' Counsel's motion for an award of attorneys' fees and expenses and Plaintiffs' application for an Incentive Award should be approved.  If the hearing is held by telephone or videoconference, information on how to participate will be posted at www.strategicclaims.net/VLF.

**If you are a Class Member, your rights will be affected by the pending Action and the Settlement, and you might be entitled to a payment from the Settlement**.  If you have not yet received the Notice and Claim Form, you may get copies of them by contacting the Claims Administrator, *VLF Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063; telephone 1-866-274-4004; or info@strategicclaims.net.  You also can file claims online or download copies of the Notice and Claim Form from the Settlement website, www.strategicclaims.net/VLF.

If you are a Class Member, you must **file a claim** online or submit a Claim Form **no later than _____, 2022** to be eligible to receive a payment from the Settlement.  If you are a Class Member and do not submit a proper Claim Form, you will not be eligible for a payment, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a Class Member and wish to **exclude yourself** from the Class, you must submit a request for exclusion that is ***received* no later than _____, 2022**, in accordance with the instructions in the Notice.  If you properly exclude yourself from the Class, you will not be bound by any judgments or orders entered by the Court in the Action, and you will not be eligible to receive a payment from the Settlement.  Excluding yourself is the only option that might allow you to be part of any other current or future lawsuit against Defendants or any of the other released parties concerning the claims being resolved by the Settlement, even if you have pending or later file another lawsuit or other proceeding against the Releasees related to the claims covered by the Settlement.

Any **objections** to the proposed Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and litigation expenses, and Plaintiffs' application for an Incentive Award must be filed with the Court and delivered to Plaintiffs' counsel and Defendants' Counsel such that they are ***received* no later than _____, 2022**, in accordance with the instructions in the Notice.

**All questions about this notice, the Settlement, or your eligibility to participate in it should be directed to the Claims Administrator or Plaintiffs' counsel.  Please do not contact the Court, the Clerk's office, Defendants, or their lawyers about this notice.**

2

Requests for the Notice and Claim Form should be made to:

*VLF Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA  19063
Tel.:  866-274-4004
Fax:  610-565-7985
Email:  info@strategicclaims.net
www.strategicclaims.net/VLF

Inquiries other than requests for the Notice and Claim Form should be made to counsel for the Class:

ROSCA SCARLATO, LLC
Alan L. Rosca, Esq.
23250 Chagrin Blvd., Suite 100
Beachwood, OH  44122
(216) 946-7070
arosca@rscounsel.law

By Order of the Court

EXHIBIT G

**EXHIBIT G**

***VLF Securities Litigation***
**c/o Strategic Claims Services**
**P.O. Box 230**
**600 N. Jackson Street, Suite 205**
**Media, PA  19063**
**Toll-Free Number:  1-866-274-4004**
**Fax:  610-565-7985**
**Email:  info@strategicclaims.net**
**Website:  www.strategicclaims.net/VLF**

# PROOF OF CLAIM AND RELEASE FORM

**IT IS HIGHLY RECOMMENDED TO COMPLETE YOUR CLAIM ONLINE AT**
**www.strategicclaims.net/VLF**

To be eligible to receive a share of the Net Settlement Amount in connection with the Settlement of this Action, you must file your claim online or complete this Proof of Claim and Release Form ("Claim Form").  If you file your claim online, you must do so by _____, **2022**.  If you fill out this Claim Form, you must mail it by first-class mail to the address above, with supporting documentation, ***postmarked or emailed* no later than _____, 2022**.

If you do not complete your claim online or submit your Claim Form by the date specified, your claim might be rejected, and you might be precluded from being eligible to receive a payment from the Settlement.

Complete your claim online at www.strategicclaims.net/VLF, or submit your Claim Form to the Claims Administrator at the address given above or by email to info@strategicclaims.net/VLF.  Do not mail or deliver your Claim Form to the Court, Plaintiffs' Counsel, Defendants' Counsel, or any of the Parties to the Action.

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | __ |
| **PART II – GENERAL INSTRUCTIONS** | __ |
| **PART III – SCHEDULE OF TRANSACTIONS IN VLF INTERESTS** | __ |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | __ |

## PART I – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications about this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.  Complete names of all persons and entities must be provided.

Beneficial Owner's Name
First Name

Last Name

Joint Beneficial Owner's Name (*if applicable*)
First Name

Last Name

If this claim is submitted for an IRA, and if you would like any check that you might be eligible to receive to be made payable to the IRA, please include "IRA" in the "Last Name" box above (*e.g.*, Jones IRA).

Entity Name (if the Beneficial Owner is not an individual)

Name of Representative, if applicable (*executor, administrator, trustee, c/o, etc.*), if different from Beneficial Owner

Last 4 digits of Social Security Number or Taxpayer Identification Number

Street Address

City

State/Province

Zip Code

Foreign Postal Code (if applicable)

Foreign Country (if applicable)

Telephone Number (Day)

Telephone Number (Evening)

Email Address (email address is not required, but, if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this claim)

**Type of Beneficial Owner:**

Specify one of the following:

☐ Individual(s)       ☐ Corporation       ☐ UGMA Custodian       ☐ IRA

☐ Partnership       ☐ Estate       ☐ Trust       ☐ Other (describe: _____)

## PART II – GENERAL INSTRUCTIONS

1.       You should completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") provided with this Claim Form, including the Plan of Allocation of the Net Settlement Amount set forth in the Notice. The Notice describes the proposed Settlement, how Class Members are affected by it, and the manner in which the Net Settlement Amount will be distributed if the Court approves the Settlement and Plan of Allocation. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and understand the Notice, including the terms of the releases provided for in this Claim Form.

2.       By submitting this Claim Form, you will be making a request to receive a payment from the Settlement described in the Notice. IF YOU ARE NOT A CLASS MEMBER (*see* the definition of the Class on page [___] of the Notice, which explains who is included in and who is excluded from the Class), OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, SUBMITTED A REQUEST FOR EXCLUSION FROM THE CLASS, DO NOT SUBMIT A CLAIM FORM. **YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A CLASS MEMBER.** If you are excluded from the Class, any Claim Form that you submit, or that is submitted on your behalf, will not be accepted.

3.       Submission of this Claim Form does not guarantee that you will be eligible to receive a payment from the Settlement. The distribution of the Net Settlement Amount will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.

4.       Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) in, and holdings of, limited partnership interests in Vida Longevity Fund, LP ("VLF") during the relevant period. On this schedule, provide all of the requested information about your holdings, purchases, acquisitions, and sales/redemption of VLF Interests (including free transfers and deliveries), whether such transactions resulted in a profit or a loss. **Failure to report all transaction and holding information during the requested time period could result in the rejection of your claim.**

5.       <u>**Please note**</u>: The Settlement applies only to VLF Interests purchased during the Class Period (*i.e.*, from January 1, 2017 through March 19, 2021, inclusive). VLF Interests are limited partnership interests in VLF, whether purchased directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII.

6.       You must submit genuine and sufficient documentation for all of your transactions in and holdings of VLF Interests as set forth in the Schedule of Transactions in Part III of this Claim Form. Documentation may consist of copies of subscription agreements, statements from your broker or investment adviser containing the transactional and holding information found in a broker confirmation slip or account statement, or other documents containing transaction information relating to VLF Interests (purchase/sale date, amount price, etc.). The Parties and the Claims Administrator might not independently have information about your investments in VLF Interests. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OF THE DOCUMENTS OR EQUIVALENT DOCUMENTS FROM YOUR FINANCIAL ADVISER OR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MIGHT RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. **Please keep a copy of all documents that you send to the Claims Administrator. Also, do not highlight any portion of the Claim Form or any supporting documents.**

7.       Use Part I of this Claim Form titled "CLAIMANT INFORMATION" to identify the beneficial owner(s) of the VLF Interests. The complete name(s) of the beneficial owner(s) must be entered. If you held

the VLF Interests in your own name, you were the beneficial owner as well as the record owner. If there were joint beneficial owners, each one must sign this Claim Form, and their names must appear as "Claimants" in Part I.

8.    **One Claim should be submitted for each separate legal entity.** Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions or transactions in the name of a trust with transactions made solely in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity, no matter how many separate accounts that entity has.

9.    Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

    (a)    expressly state the capacity in which they are acting;

    (b)    identify the name, account number, last four digits of the Social Security Number (or taxpayer identification number), address, and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the VLF Interests; and

    (c)    furnish evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers' demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

10.    By submitting a signed Claim Form, you will be swearing that you:

    (a)    own(ed) the VLF Interests you have listed in the Claim Form; or

    (b)    are expressly authorized to act on behalf of the owner of those VLF Interests.

11.    By submitting a signed Claim Form, you will be swearing to the truth of the statements it contains and the genuineness of the documents attached to it, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and might subject you to civil liability or criminal prosecution.

12.    If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing. The claims process will take substantial time to complete fully and fairly. Please be patient.

13.    **PLEASE NOTE:** As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Amount. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant.

14.    If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, Strategic Claims Services, at the above address, by email at info@strategicclaims.net, or by toll-free phone at 1-866-274-4004, or you can visit the Settlement website, www.strategicclaims.net/VLF, where you can file your claim online or download copies of the Claim Form and Notice.

**IMPORTANT:  PLEASE NOTE**

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD.  THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM WITHIN 60 DAYS AFTER YOUR SUBMISSION.  IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CONTACT THE CLAIMS ADMINISTRATOR TOLL-FREE AT 1-866-274-4004.**

## PART III – SCHEDULE OF TRANSACTIONS IN VLF INTERESTS

Use this section to provide information on your holdings and transactions in VLF Interests during the requested time periods.  Please state if the interest in VLF was acquired indirectly through offshore entity Life Assets Trust S.A. Compartments VII and/or VIII ("Comp. VII or VIII").  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, ¶ 6 above.

| **1.  HOLDINGS AS OF DECEMBER 31, 2016**– State the total number or value of VLF Interests held as of the end of the day on December 31, 2016.  (Must be documented.)  If none, write "zero" or "0." _____ | | | | Confirm Proof of Position Enclosed ○ |
|---|---|---|---|---|
| **2.  PURCHASES/ACQUISITIONS FROM JANUARY 1, 2017 THROUGH MARCH 19, 2021, INCLUSIVE** – Separately list each and every purchase or acquisition (including free receipts) of VLF Interests on January 1, 2017 through and including March 19, 2021.  (Must be documented.) | | | | |
| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Dollars Subscribed to VLF Interests | Type of VLF Interest (Class A, B or C) | If Offshore, Identify Whether Life Assets Trust S.A. Comp. VII or VIII | Confirm Proof of Purchase Enclosed |
|     /     / | | | | ○ |
|     /     / | | | | ○ |
|     /     / | | | | ○ |
|     /     / | | | | ○ |
| **3.  SALES/REDEMPTIONS FROM JANUARY 1, 2017 THROUGH _____ (end of quarter preceding 28 days before initially scheduled Fairness Hearing)** – Separately list each and every sale, redemption, or other disposition of VLF Interests from January 1, 2017 through _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing). (Must be documented.) | | | | **IF NONE, CHECK HERE** ○ |
| Date of Sale/Redemption (List Chronologically) (Month/Day/Year) | Dollar Value of VLF Interests Sold/Redeemed | Identify if Redemption or Private Sale | | Confirm Proof of Sale Enclosed |
|     /     / | | | | ○ |
|     /     / | | | | ○ |
|     /     / | | | | ○ |
|     /     / | | | | ○ |
| **4.  HOLDINGS AS OF _____ (end of quarter preceding 28 days before initially scheduled Fairness Hearing)** – State the total number or value of VLF Interests held as of _____ (the end of the quarter preceding the initially scheduled date for the Fairness Hearing). (Must be documented.)  If none, write "zero" or "0." _____ | | | | Confirm Proof of Position Enclosed ○ |
| **IF YOU NEED ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT.  PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE.  IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX.** ☐ | | | | |

## PART IV - RELEASE OF CLAIMS AND SIGNATURE

## YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW
## AND SIGN ON PAGE __ OF THIS CLAIM FORM.

1. I (we) hereby acknowledge that, pursuant to the terms set forth in the Settlement Agreement, without further action by anyone, upon the Final Settlement Date, I (we), on behalf of myself (ourselves) and my (our) (the claimant(s)') heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such ("Releasors"), or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

   a. all Released Class Claims (as defined in the Notice) against each and every one of the Releasees (as defined in the Notice);

   b. all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

   c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

2. In addition, the Judgment and Approval Order will provide that:

   a. all Class Members (and their attorneys, accountants, agents, advisors, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims; and

   b. all persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of

any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims.

**CERTIFICATION**

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) agree(s) to the release above and certifies (certify) that:

1.      I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.      The claimant(s) is a (are) Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Class as set forth in the Notice;

3.      The claimant(s) did ***not*** submit a request for exclusion from the Class;

4.      I (we) own(ed) the VLF Interests identified in the Claim Form and have not assigned the claim against any of the Defendants or their Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.      The claimant(s) has (have) not submitted any other claim covering the same purchases of VLF Interests and knows (know) of no other person's having done so on the claimant's (claimants') behalf;

6.      The claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

7.      I (we) agree to furnish such additional information about this Claim Form as Class Counsel, the Claims Administrator, or the Court may require;

8.      The claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the determination by the Court of the validity or amount of this claim, and waives any right of appeal or review as to such determination;

9.      I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

10.      The claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (i) the claimant(s) is (are) exempt from backup withholding or (ii) the claimant(s) has (have) not been notified by the IRS that he, she, or it is subject to backup withholding as a result of a failure to report all interest or dividends or (iii) the IRS has notified the claimant(s) that he, she, or it is no longer subject to backup withholding. **If the IRS has notified the claimant(s) that he, she, it, or they is (are) subject to backup withholding, please cross out the language in the preceding sentence stating that the claim is not subject to backup withholding.**

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of claimant                                                                                                      Date

_____

Print claimant name here

_____

Signature of joint claimant, if any                                    Date

_____

Print joint claimant name here

***If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:***

_____

Signature of person signing on behalf of claimant          Date

_____

Print name of person signing on behalf of claimant here

_____

Capacity of person signing on behalf of claimant, if other than an individual, *e.g.*, executor, president, trustee, custodian, etc.  (Must provide evidence of authority to act on behalf of claimant – see ¶ 9 on page [___] of this Claim Form.)

# <u>REMINDER CHECKLIST</u>

1. Sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Attach only *copies* of acceptable supporting documentation, as these documents will not be returned to you. Keep the original documents.

3. Do not highlight any portion of the Claim Form or any supporting documents.

4. Keep copies of the completed Claim Form and documentation for your own records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days after your submission.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll-free at 1-866-274-4004.**

6. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address.  If you change your name, inform the Claims Administrator.

7. If you have any questions or concerns about your claim, contact the Claims Administrator at the address below, by email at info@strategicclaims.net, or by toll-free phone at 1-866-274-4004, or you may visit www.strategicclaims.net/VLF.  DO NOT call VLF or its counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, *POSTMARKED* **NO LATER THAN _____, 2022,** ADDRESSED AS FOLLOWS (UNLESS YOU HAVE FILED YOUR CLAIM ONLINE):

*VLF Securities Litigation*
**c/o Strategic Claims Services**
**P.O. Box 230**
**600 N. Jackson Street, Suite 205**
**Media, PA  19063**
**Tel.:  866-274-4004**
**Fax:  610-565-7985**
**Email:  info@strategicclaims.net**
**www.strategicclaims.net/VLF**

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before _____, 2022 is shown on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually *received* by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

130371028v5

# EXHIBIT H

EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   **Plaintiffs,**<br><br>    v.<br><br>VIDA LONGEVITY FUND, LP, *et al.*,<br><br>                                   **Defendants.** | No. 1:21-cv-00402-SRF |

CONFIDENTIALITY AGREEMENT
AND [PROPOSED] ORDER

This Confidentiality Agreement and [Proposed] Order (the "Agreement") is entered into in this putative class action (the "Action") as of July 8, 2022, between and among plaintiffs Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale ("Plaintiffs"), Goldman Scarlato & Penny PC, Rosca Scarlato, LLC, and Rigrodsky Law, P.A. ("Plaintiffs' Counsel"), defendants Vida Longevity Fund, LP ("VLF"), Vida Management I, LLC, Vida Capital Management, LLC, Vida Capital, Inc., Vida Capital, LLC, and Jeffrey Serra (collectively with VLF, "Defendants"), and Proskauer Rose LLP and Richards Layton & Finger, P.A. ("Defendants' Counsel").[1]

WHEREAS, on March 19, 2021, Plaintiffs filed the Complaint against Defendants in the Action; and

WHEREAS, on October 14, 2021, Plaintiffs and Defendants (the "Settling Parties") participated in a full day of mediation led by Jed D. Melnick, Esq., of JAMS, to try to resolve the Action; and

---

[1]     Unless otherwise specified, all capitalized terms shall have the definitions used in the Settlement Agreement dated as of July 8, 2022 (the "Settlement Agreement").

WHEREAS, on January 5, 2022, the Settling Parties signed an agreement in principle on the primary terms of a settlement, which was subject to various conditions; and

WHEREAS the Settling Parties have agreed to a proposed settlement of the Action (as documented in the Settlement Agreement), subject to various conditions, including Plaintiffs' conducting Due-Diligence Discovery and the Court's approval of the proposed Settlement; and

WHEREAS, solely for purposes of conducting Due-Diligence Discovery on the proposed Settlement, notifying potential Class Members of the proposed Settlement, preparing a proposed Plan of Allocation to distribute the Net Settlement Amount to eligible Class Members, and calculating such distributions to eligible Class Members (collectively, the "Permitted Purposes"), Plaintiffs have asked that Plaintiffs' Counsel be given access to documents and information relating to the issues raised in the Complaint and to the other Permitted Purposes; and

WHEREAS Defendants seek and intend to preserve all objections to discovery in the Action and in any other actions or proceedings in any forum and to protect all applicable privileges and protections – including the attorney-client privilege and the attorney work-product protection – that might apply to such discovery materials;

NOW, THEREFORE, solely to advance Plaintiffs' Due-Diligence Discovery and the other Permitted Purposes, in consideration of the mutual promises and covenants made in this Agreement, with the intent to be legally bound by the terms of this Agreement, and understanding that the Court may enforce the terms of this Agreement, Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel agree as follows:

1.      All non-public documents, facts, opinions, estimates, and other information that are in or come into the possession of Plaintiffs or Plaintiffs' Counsel solely from Defendants or Defendants' Counsel – including, without limitation, writings, emails, drawings, graphs, charts,

photographs, microfilm, microfiche, drafts, deposition transcripts, non-identical copies of documents, and data compilations (including, without limitation, electronic or computerized data compilations) from which information can be obtained – and all non-public information (whether oral or written) that is contained in those materials or is otherwise provided to Plaintiffs or Plaintiffs' Counsel under the terms of this Agreement, or otherwise becomes known to Plaintiffs or Plaintiffs' Counsel solely from Defendants or Defendants' Counsel, shall be deemed to be "Settlement Information." Any notes or other writings in connection with the Permitted Purposes shall also be deemed to be Settlement Information that is subject to the terms of this Agreement, but shall remain in the possession, custody, or control of the Party or his, her, or its counsel who created such work product or privileged material.

2.      Due-Diligence Discovery shall proceed for a period of 60 days from commencement (unless the Settling Parties agree to shorten the period), subject to reasonable extensions of time if necessary and agreed to by the Settling Parties. Documents will be made available to Plaintiffs' Counsel in electronic form by electronic transfer or on physical media (*e.g.*, a hard drive).

3.      Only the following individuals ("Eligible Persons") shall be allowed access to Settlement Information:

a.      Plaintiffs;

b.      attorneys who are either partners in, or members or employees of, Plaintiffs' Counsel, as well as non-attorney employees of Plaintiffs' Counsel;

c.      any other attorneys whom Plaintiffs' Counsel designate solely for purposes of reviewing the proposed settlement of the Action or implementing the other Permitted Purposes, and for no other purposes whatsoever;

3

d.     non-attorney employees of any other attorneys designated pursuant to paragraph 3.c above, necessary to assist Plaintiffs' Counsel or any of those other attorneys in reviewing Settlement Information solely for purposes of assessing the proposed settlement of the Action or implementing the other Permitted Purposes;

e.     consultants or experts retained by Plaintiffs' Counsel, or by any other attorneys designated pursuant to paragraph 3.c above, necessary to assist those attorneys in reviewing Settlement Information solely for purposes of assessing the proposed settlement of the Action or implementing the other Permitted Purposes, and whose identities (other than the Claims Administrator's) shall not be disclosed to Defendants; *provided, however,* that, if the Action does not ultimately settle, and if litigation continues, the disclosure and discovery provisions of Fed. R. Civ. P. 26 and any Local Rules of Court governing experts will apply; and

f.     the Mediator who mediated the proposed settlement of the Action and who has ongoing responsibilities under the proposed Settlement, as well as employees of the Mediator.

4.     Except for Plaintiffs' Counsel (including their employees) and the Mediator (including his assistants), any and all individuals given access to Settlement Information pursuant to paragraph 3 above shall, before being granted such access, be given a copy of this Agreement and agree, by executing the undertaking in the form attached as Exhibit A, to be subject to all of its terms.  Plaintiffs' Counsel and their employees agree to the terms of this Confidentiality Agreement without having to sign Exhibit A.

5.     Settlement Information shall be used solely for the purpose of conducting Due-Diligence Discovery, evaluating the proposed settlement of the Action, and implementing the other Permitted Purposes, and for no other purpose whatsoever (including pursuing claims in the

4

Action or in any other proceeding).  All Eligible Persons allowed access to Settlement Information pursuant to paragraph 3 above shall keep all Settlement Information strictly confidential and shall not disclose, disseminate, discuss, or otherwise publish such material or information in whole or in part, directly or indirectly, by any manner, method, or means whatsoever, to any other person, firm, or entity, including any media organization; nor shall they use any Settlement Information in connection with any purchase or sale of, or any other investment decision relating to, securities of VLF or any affiliated entity; *provided, however, that:*

       a.      Eligible Persons may discuss Settlement Information among themselves to the extent they deem appropriate and consistent with the terms of this Agreement;

       b.      Before any discussions take place regarding Settlement Information as provided in this paragraph 5, all prospective recipients of Settlement Information must be given a copy of this Agreement and agree, by executing the undertaking in the form attached as Exhibit A, to be bound by to its terms (except to the extent otherwise provided in paragraph 4 above); and

       c.      Nothing in this Agreement prevents Defendants or (with Defendants' consent) Defendants' Counsel from sharing Defendants' own Settlement Information as they deem appropriate.

6.      Plaintiffs' Counsel shall ensure that the undertakings required pursuant to paragraphs 4 and 5 above have been obtained and shall retain those undertakings (except to the extent that this Agreement otherwise requires).

7.      If any Settlement Information is in a language other than English, and if Plaintiffs' Counsel wishes to translate that material, Defendants' Counsel will make reasonable

5

efforts to work with Plaintiffs' Counsel to devise a method for obtaining translations at Plaintiffs' Counsel's expense; *provided, however,* that Defendants and Defendants' Counsel shall not otherwise have any obligation to provide translations of Settlement Information.

8.      If any Eligible Person or any other person or entity given access to Settlement Information pursuant to this Agreement (collectively, the "Recipients") receives a request to produce Settlement Information by any means, including by subpoena, written interrogatories, or deposition, the recipient of such request (the "Receiving Party") shall give Defendants' Counsel immediate written notice of such request as provided in this Agreement, so that Defendants may take any measures they deem appropriate (including seeking a protective order or attempting to quash such request) to oppose or limit disclosures, to require that disclosure be made under seal, or to seek any other available remedy.  Any Receiving Party shall not oppose any efforts by Defendants and/or their counsel to take whatever measures they deem appropriate to protect Settlement Information from disclosure; *provided, however*, that such Receiving Party (*i*) shall not be required to bring any motion, or join in any motion filed by Defendants or their counsel, to prevent disclosure of Settlement Information and (*ii*) shall be able to make any other arguments he, she, or it deems appropriate to the extent such arguments are not contrary to Defendants' or their counsel's arguments regarding disclosure.  If a protective order cannot be obtained, and if a Receiving Party is compelled by a court order to disclose Settlement Information, such entity or individual shall disclose only such portion of such information that the court requires to be disclosed.  Any Receiving Party so compelled shall give Defendants' Counsel immediate written notice of the information to be disclosed as far in advance of its disclosure as is practicable and shall give Defendants' Counsel a duplicate production of all documents that are required to be disclosed; *provided, however,* that the Receiving Party need

6

not include in that duplicate production any materials protected by the Receiving Party's own attorney work-product privilege or other applicable legal privilege. If Defendants seek to have the disclosed information filed under seal, the Receiving Party will cooperate with Defendants' efforts to do so.

9.     If (*i*) after conducting their due diligence of the Settlement Information, Plaintiffs decide to terminate the proposed settlement, (*ii*) the proposed settlement is terminated for any other reason before being finally approved by the Court, or (*iii*) the proposed settlement is not approved by the Court (or by any appellate court), then Plaintiffs, Plaintiffs' Counsel, and any other Recipient shall, within ten business days after being notified by Defendants' Counsel to do so, certify to Defendants' Counsel that such person or entity has destroyed all Settlement Information that has been provided, including copies of any such Settlement Information. In any of the circumstances described in this paragraph, Defendants' Counsel shall be deemed to have custody and control of all Settlement Information, including all Settlement Information duplicated for any Recipient; *provided, however,* that Defendants' Counsel will not be deemed to have custody or control over any attorney work product or other legally privileged material generated by any Recipient. If any Recipient creates any documents of any kind based on or related to Settlement Information, he, she, or it will collect and destroy all such documents and so certify in writing to Defendants' Counsel; *provided, however,* that such Recipient may keep copies of attorney work product or other legally privileged material that he, she, or it generated, if such material does not explicitly quote from or verbatim reflect Settlement Information.

10.     If the Court approves the proposed Stipulation of Settlement, and if the Court's approval of the settlement becomes Final, the provisions of paragraph 9 concerning destruction of Settlement Information shall apply within ten business days after the settlement becomes

Final; *provided, however,* that, until such time as the relevant Settlement Information is no longer needed, Plaintiffs' Counsel and their consultants may retain any Settlement Information needed to implement the Plan of Allocation and distribute the Net Settlement Amount to eligible Class Members. Any person or entity subject to paragraphs 9 and 10 shall provide Defendants' Counsel with a certification attesting to the destruction of such Settlement Information.

11.     Production of Settlement Information shall not be deemed to be, and neither Plaintiffs nor Plaintiffs' Counsel (nor any other Recipient) will argue that such production is, (*i*) a general waiver of the attorney-client privilege, the attorney work-product doctrine, or any other potentially applicable privilege or protection (including for trade secrets or proprietary information), (*ii*) a specific waiver of any privilege or protection applicable to the documents or information being produced, or (*iii*) an admission or indication that the documents or information are relevant to, or would or should be discoverable in, the Action or in any other litigation or proceeding in any forum.

12.     Pursuant to Federal Rule of Evidence 502(d), the parties to this Agreement agree, and will ask the Court to so order by signing this Agreement, that the attorney-client privilege and attorney work-product protection are not waived in this Court, any other federal court, or any state court by production of Settlement Information in connection with Due-Diligence Discovery or other Permitted Purposes in this Action.

13.     If Defendants inadvertently make available as Settlement Information any materials that are privileged or otherwise protected, in whole or in part, under the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, immunity, or protection, such production shall in no way prejudice or otherwise constitute a waiver of any claim of privilege, immunity, or other protection. Defendants may retrieve such inadvertently

8

produced Settlement Information by giving Plaintiffs' Counsel written notice of the privilege claim and the identity of the inadvertently produced materials promptly after learning or discovering that such inadvertent production has been made. Upon receipt of such notice, Plaintiffs' Counsel and any other Recipient who has received such Settlement Information shall promptly return (or, at Defendants' expense, destroy) any and all copies of the inadvertently produced materials. Any Recipient who has received inadvertently produced Settlement Information may not use it, or any information gleaned from it, for any purpose.

14.     If the proposed settlement of the Action is not approved, nothing in this Agreement shall preclude Plaintiffs from seeking the production of documents and information from Defendants pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court; *provided, however,* that, (*i*) without Defendants' express written agreement to the contrary, Plaintiffs shall not make discovery requests that refer directly to Settlement Information in any such request or in any proceeding relating to this Action or any other action or proceeding in any forum; (*ii*) Plaintiffs, Plaintiffs' Counsel, and any other Recipients shall not use any Settlement Information in any proceeding relating to this Action or any other action or proceeding in any forum, or in any other manner except to the extent such information is properly obtained through discovery in the course of the Action or any other action or proceeding and is used only to the extent permitted by the applicable court and rules; and (*iii*) Plaintiffs and any other Recipient shall not be able to use the fact that Plaintiffs' Counsel or anyone else was allowed access to Settlement Information to argue that any such documents or information exist or should or must be disclosed.

15.     If any Party needs to include Settlement Information in any filing with the Court, such Party will file such information under seal, unless Defendants otherwise agree.

16.     Defendants reserve all rights in this Action, and in any other pending or future proceeding, to object on any ground whatsoever to the production of any document included within Settlement Information.

17.     Any violation of this Agreement shall entitle Defendants to injunctive or other equitable relief as a remedy for the violation without proof of actual damages and without limiting any other remedies that Defendants might have.  In agreeing to be subject to the terms of this Agreement, Plaintiffs, Plaintiffs' Counsel, and any other individuals allowed access to Settlement Information agree to submit to the jurisdiction of the Court in which this Action is pending for all matters concerning the enforcement of the terms of this Agreement.

18.     Any notice to Defendants required by this Agreement shall be addressed to the following:

> Jonathan E. Richman
> Joshua M. Newville
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York  10036-8299
> (212) 969-3000
> jerichman@proskauer.com
> jnewville@proskauer.com
>
> Catherine G. Dearlove
> Matthew M. Murphy
> Richards Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, Delaware  19801
> (302) 651-7700
> dearlove@rlf.com
> murphy@rlf.com

19.     Unless modified by the parties, this Agreement shall survive the final determination of, and shall remain in full force and effect after the conclusion of all proceedings

in, the Action. The Court in which the Action is pending shall have and retains jurisdiction to enforce and ensure compliance with this Agreement's terms.

20.     Any waiver of or failure to enforce any term of this Agreement shall not constitute a waiver of any other term or a waiver in any other circumstance.

21.     This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, excluding its conflict-of-laws provisions.

22.     Rosca Scarlato, LLC represents that it is authorized to sign this Agreement on behalf of Goldman Scarlato & Penny PC.

23.     This Agreement may be signed in counterparts, each of which shall constitute a

duplicate original. Execution by facsimile shall be fully and legally binding.

Agreed to as of this 8th day of July, 2022.

Alan L. Rosca
ROSCA SCARLATO, LLC
23250 Chagrin Blvd., Suite 100
Beachwood, Ohio 44122
(216) 946-7070
arosca@rscounsel.law

Paul Scarlato
ROSCA SCARLATO, LLC
161 Washington Street, Suite 1025
Conshohocken, Pennsylvania 19428
(216) 946-7070
pscarlato@rscounsel.law

Gina M. Serra (#5387)
RIGRODSKY LAW, P.A.
300 Delaware Avenue Suite 210
Wilmington, Delaware 19801
(302) 295-5306
gms@rl-legal.com

*Counsel for Plaintiffs and the Proposed*
*Settlement Class*

Jonathan E. Richman
Joshua M. Newville
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
(212) 969-3000
jerichman@proskauer.com
jnewville@proskauer.com

Catherine G. Dearlove (#3328)
Matthew W. Murphy (#5938)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dearlove@rlf.com
murphy@rlf.com

*Counsel for Defendants*

SO ORDERED this 12th day of July , 2022

United States Magistrate Judge

12

EXHIBIT H

EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN**, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                       **Plaintiffs,**<br><br>   v.<br><br>**VIDA LONGEVITY FUND, LP**, *et al.*,<br><br>                       **Defendants.** | No. 1:21-cv-00402-SRF |

## UNDERTAKING REGARDING SETTLEMENT INFORMATION

I hereby attest that I have been provided with a copy of the attached Confidentiality Agreement and [Proposed] Order (the "Agreement") and that I understand that Settlement Information (as that term is defined in the Agreement) will be provided to me pursuant to all of the terms, conditions, and restrictions in the Agreement. Those terms, conditions, and restrictions include, among others, the requirement that Settlement Information be used only to evaluate the proposed Settlement and for other Permitted Purposes, and for no other purpose, including in connection with litigating the Action or in connection with any other action or proceeding pending in any other court or forum (including arbitration).

I further attest that I have read the Agreement and that I understand that, by signing this Undertaking, I have agreed, as a condition to my receipt of Settlement Information, to be bound by the Agreement and all of its terms, including, without limitation, the Agreement's confidentiality provisions and the provisions stating that the Court in which the Action is pending shall have personal jurisdiction over me to enforce the terms of the Agreement.

I further agree and attest to my understanding that, if I should fail to abide by the terms of the Agreement, I may be subject to claims for damages and sanctions, including monetary sanctions and/or sanctions by way of contempt of court, for such failure.

I represent and warrant that I have not been, and am not now, an employee of, consultant to, or otherwise retained by or affiliated with, any competitor of Vida Longevity Fund, LP or any affiliated entity.

_____        _____

EXHIBIT 3

## ROSCA SCARLATO LLC
### CLEVELAND, OH/CONSHOHOCKEN, PA

**ROSCA SCARLATO LLC** ("Rosca Scarlato" or the "Firm") prosecutes securities fraud, ERISA, and consumer fraud class actions, as well as corporate governance derivative cases and investor arbitration claims nationwide on behalf of investors. Through their prior firms, including most recently Goldman Scarlato & Penny, P.C., Rosca Scarlato founding partners Alan Rosca and Paul Scarlato have represented the interests of victims of securities fraud, violations of ERISA, corporate misconduct, anticompetitive conduct, deceptive consumer practices, and unscrupulous financial advisors. Messrs. Rosca and Scarlato formed Rosca Scarlato on January 1, 2022, to continue the representation of their new and existing clients in those practice areas. The Firm's lawyers have helped recover hundreds of millions of dollars on behalf of their clients and helped to institute meaningful changes in business practices that seek to ensure robust competition in commercial markets, honest and fair disclosures in financial markets, and truthful advertising in retail markets.

**ALAN L. ROSCA**.   Mr. Rosca focuses his legal practice on complex financial and commercial matters, particularly in the areas of securities litigation, investment fraud, ERISA, and international investment disputes. He often represents investors in disputes with financial industry members arising out of investment fraud or misconduct. He prosecutes claims on behalf of investors through class actions in state or federal courts, and FINRA arbitrations. He also practices in the areas of wage-and-hour and other labor-related disputes, whistleblower matters, and antitrust cases, with a focus on market manipulation.

Alan was a lecturer and adjunct professor of Securities Regulation at Cleveland-Marshall College of Law, Cleveland State University, starting in 2012. Alan has served as co-lead counsel,

or is currently involved in a leading role, in class actions on behalf of investors who lost money as a result of alleged investment fraud or Ponzi schemes, as well as in other class action matters arising out of wage-and-hour or business disputes, including *Florio v. Goldman Sachs Group Inc. et al.* (S.D.N.Y.) (class action under the PSLRA); *Paulson v. Two Rivers Water and Farming Co., et. al* (D. Co.) (class action under the Colorado Securities Act); *Yao Yi Liu v. Wilmington Trust Company* (W.D.N.Y.) (representing victims of a Ponzi scheme); *Gregory v. Zions Bancorporation* (D. Utah) (representing victims of a Ponzi scheme); *Chang v. Wells Fargo bank, N.A.* (N.D. Ca.) (representing victims of a Ponzi scheme); *Elliott v. Bank of Oklahoma* (D.N.J.) (representing victims of a Ponzi scheme); *Miller v. Anderson (First Energy Derivative Litigation),* (N.D. Oh); and *O'Hearn v. Vida Longevity Fund, LP, et al.* (D. De) (class action under the Texas Securities Act); *Hanson v. Berthel Fisher & Company Financial Services, Inc., et al*. (N.D. Iowa) (representing investors in an allegedly fraudulent real estate investment program); *Carol Prock v. Thompson National Properties, LLC, et al*. (C.D. Ca.) (representing investors in an allegedly fraudulent real estate investment program); *Spaude v. Mysyk* (N.D. Oh) (representing investors in an allegedly fraudulent oil-and-gas investment scheme); *Jennifer Roth v. Life Time Fitness, Inc.* (D. Minn.) (representing fitness instructors seeking unpaid wages for work that was required by defendants); *Aleem v. Pearce & Durick* (D.N.D.) (representing investors in a fraudulent investment scheme); *Hay v. United Development Funding IV et al*. (N.D. Texas) (representing investors in an allegedly fraudulent real estate investment scheme); *Fastrich v. Continental General Insurance Company* (D. Neb.) (representing   insurance agents seeking payment of certain fees and commissions allegedly owed to such agents).

Alan received his Juris Doctor degree *summa cum laude* from Cleveland-Marshall College of Law in May 2008. While in law school he served as a Managing Editor of the Cleveland State

Law Review, received the Dean's (full) scholarship for the entire Juris Doctor program, was on the Dean's List, and won the "Best Oralist" award in the Jessup Moot Court competition, Pacific Region. He passed the Ohio Bar exam in top 1%, with the highest grade in the state to the multi-state (federal law) section.

He is admitted to practice law in Ohio, District of Columbia, United States Supreme Court, and several other federal courts federal courts nationwide. He is a member of the Public Investors Arbitration Bar Association, the Cleveland Metropolitan Bar Association, where he served as the Chair of the Unlicensed Practice of Law Committee, and the Cleveland Diplomatic Corps. He also holds a Master of Business Administration degree from Baldwin-Wallace College, Ohio. He is a speaker on Ponzi schemes, investment fraud, cryptocurrencies, and attorney professionalism.

PAUL J. SCARLATO.   Paul Scarlato has concentrated his practice on the litigation of complex class actions since 1989. He has litigated numerous cases under the federal and state securities laws, ERISA, consumer, antitrust and common law involving companies in a broad range of industries, and has litigated many cases involving financial and accounting fraud.

In securities fraud cases, Mr. Scarlato was one of three lead attorneys for the class in *Kaufman v. Motorola, Inc.,* (N.D. Il.), a securities fraud class action that settled weeks before trial. Mr. Scarlato served as lead counsel in *Seidman v. American Mobile Systems, Inc.,* (E.D. Pa.), a securities class action that resulted in a settlement for the plaintiff class, again on the eve of trail, and served as co-lead counsel in *In re: Corel Corporation Securities Litigation* (E.D. Pa.) (securities fraud class action).

Mr. Scarlato has played a key role in numerous other securities fraud class actions over the course of his career, including as a member of the plaintiffs' teams that prosecuted *In re Broadcom Securities Litigation*, which resulted in a settlement of $150 million for the class, and *AOL Time Warner Securities Litigation*, which resulted in a settlement of over $2.5 billion for investors, *In*

*re Monster Worldwide, Inc. Securities Litigation* ($47.5 million settlement in case arising out of options backdating), *In re Mercury Interactive Securities Litigation* ($117.5 million settlement, options backdating), *In re SafeNet, Inc. Securities Litigation* ($25 million settlement, options backdating), and *In re Semtech Securities Litigation* ($20 million settlement, options backdating). Mr. Scarlato was one of the lead lawyers in *Leibovic v. United Shore Financial Services* (E.D. Mich.) (data breach class action), and *Afzal v. BMW of North America, LLC*, (D.N.J.) (product defect class action), and served on the plaintiffs' Executive Committee in *Vikram Bhatia, D.D.S. v. 3M Company*, Case No. 16-cv-01304 (D. Minn.) (product defect class action), and is counsel in *In re Platinum and Palladium Antitrust Litigation,* Case No. 14-cv-09391 (S.D.N.Y), and *In re Treasury Securities Auction Antitrust Litigation*, Case No. 15-md-02673 (S.D.N.Y.).

Mr. Scarlato, along with Mr. Rosca, currently serves as one of the lead counsel in *Florio v. Goldman Sachs Group Inc. et al.* (S.D.N.Y.) (class action under the PSLRA); *Paulson v. Two Rivers Water and Farming Co., et. al* (D. Co.) (class action under the Colorado Securities Act); *Yao Yi Liu v. Wilmington Trust Company* (W.D.N.Y.) (representing victims of a Ponzi scheme); *Gregory v. Zions Bancorporation* (D. Utah) (representing victims of a Ponzi scheme); *Chang v. Wells Fargo bank, N.A.* (N.D. Ca.) (representing victims of a Ponzi scheme); *Elliott v. Bank of Oklahoma* (D.N.J.) (representing victims of a Ponzi scheme); *Miller v. Anderson (First Energy Derivative Litigation),* (N.D. Oh); and *O'Hearn v. Vida Longevity Fund, LP, et al.* (D. De) (class action under the Texas Securities Act).

Mr. Scarlato graduated from Moravian College in 1983 with a degree in accounting, and received his Juris Doctor degree from the Widener University School of Law in 1986. Mr. Scarlato served as law clerk to the Honorable Nelson Diaz, of the Court of Common Pleas of Philadelphia County, and thereafter to the Honorable James T. McDermott of the Pennsylvania Supreme Court.

After his clerkships, and prior to becoming a litigator, Mr. Scarlato was a member of the tax department of "big four" accounting firm where he provided a broad range of accounting services to large business clients in a variety of industries.

Mr. Scarlato is a member of the bars of the Commonwealth of Pennsylvania and the State of New Jersey, and those of various federal district and circuit courts.

EXHIBIT 4

# STRATEGIC CLAIMS SERVICES

Strategic Claims Services
600 North Jackson Street
Suite 3
Media, PA 19063

**PHONE**
866.274.4004
610.891.9852

**FAX**
610.565.7985

**EMAIL**
pmulholland@strategicclaims.net

"Your able and conscientious handling of this matter is much appreciated."

Honorable William C. Connor
United States District Judge
Southern District of New York
Administration of the Texaco ERISA
Litigation Settlement

## KEY INDIVIDUALS

### Paul Mulholland, CPA, CVA
#### President

*As the founder, Mr. Mulholland is the key liaison with counsel on all administrative cases. He holds a BS degree in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a Certified Valuation Analyst. He is a member of the AICPA and NACVA.*

### Matthew Shillady
#### Operations Manager

*Mr. Shillady overlooks all areas of operations and systems management. Matthew is an expert in database management and computer systems. Matthew Shillady is a graduate of Penn State University. He holds a BS degree in Information Sciences and Technology Integration with substantial experience in data integration and database systems. Mr. Shillady has been with Strategic Claims since June of 2003.*

### Josephine Bravata
#### Quality Assurance Manager

*Ms. Bravata is involved with all areas of claims administration. She supervises the claims processing, database management, notification, bank reconciliations, check distributions and preparation of reports. Ms. Bravata joined the Company in 2001 after graduating from Neumann University. She has a BS degree in Accounting and a Minor in Computer and Information Management.*

"I want to express my appreciation for the excellent work that Strategic Claims Services has provided to-date in administering the Blue Cross settlement. You and your staff have been timely, responsive and have made the claims administration process efficient and effective. Thank you for all your hard work."

Mike Karnuth, Esq.
Krislov & Associates, Ltd.

## CLAIMANT COMMUNICATION

*Phone Calls*
We tailor our Call Center to the needs of each settlement, we can provide an automated approach using the latest IVR technology or, if counsel perfers, we offer a more personal approach and have one of our highly trained staff answer the phone and help the Class member with any issue they may have. We also offer call tracking for each case, detailing the claimants question, and reporting on the total number of calls received.

*Email*
If a client requests it, we can provide a dedicated email address for each settlement where Class members can correspond and recieve prompt answers from one of our highly trained staff.

*Website*
On request, we can provide a dedicated website for a settlement where all pertinent data and forms can be easily accessed by class members. Using these websites Class Counsel can quickly and easily communicate to the class with ongoing updates and status changes in the Settlement.

## DISTRIBUTION

*Checks*
We have handled distributions of all sizes and values, ranging from a few hundred checks, to hundreds of thousands of checks worth millions of dollars. We monitor all our bank accounts on a daily basis using a Postive Pay system to ensure our clients that only checks we issued will be cashed

*Taxation*
SCS can handle all taxation needs for a settlement. From calculating and paying taxes on the interest earned in the Settlement Fund, to withholding Federal and State taxes on wage cases, our staff of Certified Public Accounts ensure that all filing requirements are met.

Copyright © 2009 Strategic Claims Services

## OUR MISSION

*Strategic Claims Services strives to offer high quality claims administration and unmatched solutions to its clients while maintaining exceptional client relationships.*

*» We supply customized reports and detailed reviews of the administration process so clients can stay well informed and up-to-date on any aspect of the administration process.*

*» We provide unsurpassed customer relations through our fully trained claims administrators who answer each call personally and assist our clients with their knowledge and expertise.*

*» We tailor a solution to each class action to ensure compliance with all the court and settlement documents.*

## OUR HISTORY

Strategic Claims Services (SCS) was established in 1999 to provide support in managing, planning, implementing and administering class action litigations. The highly skilled staff consists of Certified Public Accountants, Information Technology professionals, experienced managers, bookkeepers and support staff.

With over a decade of experience in hundreds of cases involving notification, claims processing and distribution. SCS develops a custom solution for each and every client to ensure the highest quality service at a competitive price. SCS is devoted to offering paramount quality control throughout all dimensions of the claims administration process.

As an innovator in claims administration services, SCS is a technology driven organization with a proven track record to handle cases of all sizes in a cost-effective and efficient manner. The firm also provides tailored proposals, data management, and consultation.

## CLASS NOTIFICATION

Strategic Claims Services offers many different options for both notices and claim forms. Based on the Client's requirements, SCS can compare the notice documents to ensure compliance with the settlement documents and the Court's requirements. SCS can also design Claim Forms to ensure Class Members fully understand and comply with the requirements of each settlement.

We can also provide assistance with publishing Legal Notice through newspapers, press releases, and websites. Using our contacts in the publishing industry we can negotiate favorable rates in most major newspapers, allowing the class to benefit from reduced publication costs.

*Our Services Include:*
*» Direct Mailed Notice*

*» Email Campaigns*

*» Notice Design and Proofing*

*» Claim Form Design*

*» Custom Websites for each settlement*

*» Customize Class Data*

*» Updating Out-of-Date Class Data (National Change of Address, Skip-tracing methods)*

*» Providing compliance affidavits/declarations for publications and direct mailing*

## DATA MANAGEMENT

One of the most important steps in class action administration is creating and maintaining accurate class lists. Based on the client's needs, we develop a custom database to hold all the class member's pertinent data.

Our Information Technology Specialists can:
*» Convert most data formats for use in the class database*

*» Database Management and Design*

*» Website Design and Updates*

*» Design custom reports for clients based on class data*

*» Removal of duplicate records*

*» Class-wide loss calculations*

## CLAIMS PROCESSING

Our staff is well trained in all aspects of claims processing, with a focus on quality control and customer service. Each claim is reviewed in detail to ensure compliance with all settlement requirements. Using our custom built software, we ensure each claim is calculated accurately and quickly. The scope of our work includes, but is not limited to the following:

*» Determining the validity of each claim filed*

*» Calculation of losses for each claim*

*» Communication with claimants to cure invalid claims*

*» Quality assurance for all high value claims*

*» Final reporting to Counsel and the Court*

*» Electronic Claim Processing*

During the administration process we are in constant communication with counsel concerning all matters. We provide regular status reports from the initial mailing through the final disposition of funds.

"Strategic Claims Services (SCS) provides excellent customer service, and the best price in the business. SCS's attention to detail, high quality work, quick and accurate turn around are the hallmarks of its true professionalism. Ready access to SCS's president, Paul Mulholland, and his personal involvement assures me everything is done right. You can't beat SCS – they're simply the best in the industry."
John F. Innelli
Innelli & Robertson

# SUMMARY

### SCS Experience and Qualifications

SCS has been in business since 1999. SCS has administered over 500 class action cases over the last 20 years including over 300 security cases, many of which included settlements with multiple securities.  SCS has handled over $2 billion in settlement funds.  SCS is considered one of the leading notice and claims administrator in the United States and has never had a claim filed against us in any manner. Please visit our website at www.strategicclaims.net.

### Quality Assurance

SCS has never had a claim filed against it.  This is the result of our strong quality control procedures.  For example, our database will insert the high and low trading prices and reported trading volume (adjusted for market maker trading or specialist trading) for each day in the class period and verify the information in the claims are within these parameters. Additional quality assurance steps include but are not limited to review of any unusual trading on claims; large claims using a P.O. Box as an address; large transactions by non-institutions claimants; review of suspicious documentation by claimants; follow-up phone calls to brokers to authenticate non-institutional purchasers; as well as various random sampling of claims for additional quality assurance review. SCS operates similar to large public accounting firm where a staff member, supervisor, manager and an executive all are involved in reviewing claims.  Our quality control department will then perform statistical sampling and other procedures in reviewing claims before signing off.  Besides setting up the database to detect inconsistencies, our fraud prevention procedures consists of several steps including a sampling of claims to verify the supporting documentation is authentic (i.e. contact brokers); performing a sampling of skip tracing to make sure that social security numbers and names are a proper match as well as other procedures.  In addition to our list of fraudulent claimants from other cases, we communicate with the FBI for any updated list of fraudulent claimants from previous cases.

SCS has a variety of security measures in place to ensure all personal information is kept safe and secure. These measures include, but are not limited to, SSL encryption of all data submitted through our website; internal monitoring of all computer usage by employees; live antivirus scanning of all files received/sent along with weekly updates and scanning of all servers and computers on our network; password protected and restricted access for employees working with personal data; use of a monitored and secure VPN for remote access; daily, weekly and monthly backups to secure offsite storage; and 24/7 notifications to immediately address any irregularities.

## PAUL MULHOLLAND, CPA
### (CURRICULUM VITAE)

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999. SCS is a litigation support firm specializing in the administration of class action cases and in providing damages analyses in class action matters. SCS has administered over 500 class action settlements and calculated over 150 damage analyses since its inception. The Company also specializes in the preparation and compliance of federal and state income taxes for Qualified Settlement Funds. For more information on SCS visit its website at **www.strategicclaims.net**.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Valley Forge Administrative Services, Inc. Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters and for claims processing and administration of class action settlements. He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio. He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand. He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a member of the AICPA. He serves on several advisory boards and board of directors for several companies in the Philadelphia area. Mr. Mulholland was an adjunct professor of accounting and finance at Neumann University located in Aston, PA.

PAUL MULHOLLAND, CPA
EXPERT TESTIMONY AND DEPOSITIONS

**Expert Testimony:**

Celia L. Hale., et al., v. Wal-Mart Stores, Inc
Jackson County, Missouri
Case No. 01-CV-218710 (Division 1)                          June 2008

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                   June 2004

Barter v. Southmoore Golf Associates                       March 21, 2000 and
(Common Pleas of Northhampton County (No. 199-C-1815)      March 22, 2000

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   March 1995

**Depositions:**

Fosamax Products
Liability Litigation No. 1:06-MD-1789 (JFK)
(MDL No. 1789)
USDC for the Southern District of New York                 June 14, 2007

Aredia and Zometa Products
Liability Litigation No. 3:06-MD-1760
(MDL No. 1760)
USDC for the Middle District of Tennessee
at Nashville                                               May 31, 2007

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                   June 2004

In Re: Curative Health Services, Inc. Securities Litigation
(Master File No. CV99-2074) United States District Court
Eastern District of New York                               February 2002

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   January 1995

**Mediation Presentation:**

Alibaba Group Holding Limited Securities Litigation
Civil Action 1:15-md-02361 (CN)
USDC Southern District of New York
Mediation Presentation to Honorable Layne R Phillips        March 2019