**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIMOTHY O'HERN**, *et al.*, Individually and on Behalf of All Others Similarly Situated, | **No. 1:21-cv-00402-SRF** |
| **Plaintiffs,** | |
| v. | |
| **VIDA LONGEVITY FUND, LP**, *et al.*, | |
| **Defendants.** | |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND PLAN OF ALLOCATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

  A.   The Parties and the Lawsuit ............................................................................. 1

  B.   Procedural History ............................................................................................ 2

  C.   Negotiations and Proposed Settlement Terms ................................................ 2

  D.   Due Diligence Discovery .................................................................................. 3

  3.   Benefit to the Class ........................................................................................... 5

  4.   Releases .............................................................................................................. 5

  5.   Objections and Exclusion Requests ................................................................ 5

  6.   Attorneys' Fees, Litigation Costs, and Incentive Awards ............................ 6

III. ARGUMENT .............................................................................................................. 6

  A.   Legal Standard ................................................................................................... 6

  B.   Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class ................... 10

  C.   The Settlement Was Negotiated at Arm's Length and Is Supported by Plaintiffs and
       Experienced Counsel ...................................................................................... 12

  D.   The Settlement Provides Substantial Relief to the Settlement Class ............... 12

    1.   Avoidance of the Significant Risks of Continued Litigation ....................... 12

    2.   Anticipated Legal Fees and Expenses ........................................................... 15

    3.   Complexity, Expense, and Likely Duration of Action Warrants Approval ............... 15

    4.   Class Representatives Embrace the Settlement ............................................ 15

    5.   Completion of Due Diligence Discovery Favors Final Approval ............... 16

    6.   Risks of Maintaining the Action, Including Establishment of Liability, Loss
         Causation, and Damages, are Significant and Justify Settlement .............. 16

    7.   Ability of Defendants to Withstand a Larger Judgment Amount ............... 17

    8.   Risks and Settlement Range Reasonableness vs. Best Possible Recovery ............... 17

    9.   Side Agreement Disclosure ............................................................................ 19

  E.   The Proposed Plan of Allocation Treats All Class Members Equitably ............... 19

  F.   The Class Should Be Finally Certified .......................................................... 19

IV.  CONCLUSION ......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alves v. Main*, Civil Action No. 01-789 (DMC), 2012 U.S. Dist. LEXIS 171773, 2012 WL 6043272 (D. N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) .......................... 11, 12

*Bernhard v. TD Bank, N.A.*, No. 08-4392, 2009 U.S. Dist. LEXIS 92308, 2009 WL 3233541 (D. N.J. Oct. 5, 2009) ........................................................................................................... 12

*Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 494 F.2d 799 (3d Cir. 1974) .......... 7

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. LEXIS 1039, 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ......................................................... 19

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................................ 7, 18

*Copley v. Evolution Well Servs. Operating, LLC*, 2023 U.S. Dist. LEXIS 23452, 2023 WL 1878581 (W.D.Pa. Feb. 10, 2023) ...................................................................................... 6

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .............................................................. 7

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................................ 6

*Facebook IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .................................................................. 16

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).................................................................... *passim*

*Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)........................ 16

*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GMC")*, 55 F.3d 768 (3d Cir. 1995) ........... ................................................................................................................................. 6, 8, 9, 13

*Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 WL 4053547 (D. N.J. Oct. 13, 2010)............. 12

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3-:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................ 14

*In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 U.S. Dist. LEXIS 134005, 2022 WL 2985634 (E.D. Pa. July 27, 2022) .................................................................................. 14, 16

*In re Ikon Office Sols.*,194 F.R.D. 166 (E.D. Pa. 2000).............................................................. 13

*In re Marsh & McLennan, Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 U.S. Dist. LEXIS 120953, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................... 18

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D. N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ............................................................................................ 11

*In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...... 12

*In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.3d 35 (2d Cir. 1986) ................................................................................................................................. 13

*IPO*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................... 17

*Johnson & Johnson*, 900 F. Supp. 467 (D.N.J. 2012) ............................................................ 7

*Kanefsky v. Honeywell Int'l, Inc.*, 2022 U.S. Dist. LEXIS 80328, 2022 WL 1320827 (D. N.J. May 3, 2022)........................................................................................................................... 8

*Lake v. First Nationwide Bank*, 900 F.Supp. 726 (E.D.Pa. 1995) ........................................ 10, 13

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005).......................................... 18

*Lo v. Oxnard European Motors, LLC*, No. 11cv1009, 2011 U.S. Dist. LEXIS 144490, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011).................................................................................... 14

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 18

*NFL Players Concussion Injury Litig.* ("*NFL*"), 775 F.3d 570 (3d Cir. 2014) .................. 6, 7, 16

*Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435, 2009 WL 1854965, (N.D. Cal. June 29, 2009)................................................................................................... 19

*Ocean Power Techs., Inc.*, Civ. Nos. 3:14-CV-3799; 3:14-CV-3815; 3:14-CV-4015; 3:14-CV-4592, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016) ................................................. 7

*Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091 (D.N.J. July 29, 2013) ...................... 18

*Sch. Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1990) ................................................................ 14

*Schuler v. Meds. Co.*, No. 14-1149, 2016 WL 345218 (D.N.J. June 23, 2016) .................... 11, 14

*Shah v. Zimmer Biomet Holdings,* No. 3:16-cv-815-PPS-MGG, 2020 U.S. Dist. LEXIS 171925, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ........................................................................ 12

*Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343 (E.D. Pa. 2021) ...................................... 8

*Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289 (3d Cir. 1991)...................................................... 13

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)..... 18

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011).............................................................. 13

*Suprema Specialties, Inc. Sec. Litig.*, No. 02-168, 2008 WL 906254 (D.N.J. Mar. 31, 2008)..... 18

*Udeen v. Subaru of Am., Inc.*, No. 18-17334, 2019 U.S. Dist. LEXIS 172460, 2019 WL 4894568
(D.N.J. Oct. 4, 2019) ............................................................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ....................................... 20

*Zanghi v. FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914 (W.D. Pa. Jan. 19, 2016) ...............
...................................................................................................................................... 8, 9, 10, 13

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985) ............... 20

## **Statutes**

Fed. R. Civ. P. 23 ...................................................................................................................*passim*

iv

## I.     PRELIMINARY STATEMENT

On November 21, 2022, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement and Certification of the Class for Settlement Purposes of the above-captioned class action ("Action"), preliminarily approving the proposed Settlement, certifying the Class for Settlement purposes, appointing Timothy O'Hern, Semyon Rodkin and Dominic Cardinale ("Plaintiffs") as Class Representatives, and approving Rosca Scarlato as Class Counsel, and also approving the proposed Notice Program and the manner of providing notice to the Class (the "Preliminary Approval Order"). ECF 31. Plaintiffs now respectfully submit this motion for: (i) final approval of the settlement ("Settlement") of the Action as set forth in the July 8, 2022 Stipulation of Settlement (the "Stipulation"), submitted at ECF 30-1.[1]

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties and the Lawsuit

Plaintiffs invested in the Vida Longevity Fund, LP ("VLF" or the "Fund"), an open-ended investment fund that uses money raised from investors to purchase life settlements. The Fund bought life insurance policies at a discount to their face value for investment purposes, with a stated objective of producing a return of capital, annualized returns of 8–12%, and low market correlation. While the Fund advertised achieving the targeted return rates from inception through 2017, its fortunes began to change in 2018, and fund performance deteriorated through 2020.

Plaintiffs filed a class action complaint ("Complaint") against the Fund and Defendants Vida Management I, LLC, Capital Management, LLC, Vida Capital, Inc., and Jeffrey R. Serra ("Serra") ("Defendants"), alleging the Fund misled investors by attributing its slipping performance to one-time or extrinsic events. By the close of the third quarter of 2020, the

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as those set forth in the Stipulation.

Defendants revealed for the first time that Fund losses were caused by weaknesses in its internal processes and procedures required for the evaluation and pricing of its investments. The Complaint alleged that Defendants violated the Texas Securities Act by misrepresenting and/or failing to disclose in the Fund's offering documents the weaknesses in its internal processes and procedures, and by failing to disclose in the Fund's offering documents material conflicts of interest of the Fund's founder, Serra, conflicts which served to disadvantage the Fund.

### B.  Procedural History

Plaintiffs commenced the Action on March 19, 2021, after their Counsel had undertaken an extensive pre-filing investigation into the facts and law. Before Defendants' deadline to file an answer, Plaintiffs indicated their intent to amend. Shortly thereafter, the Fund – which had been acquired by new owners and was under new management – announced its financial results for the first quarter of 2021 ending March 30, 2021. The Fund's financial performance under the new management appeared to be turning around, and it began to generate positive returns.

While Plaintiffs remained confident of the allegations of the Complaint, they were mindful of continued litigation risks and that the new owner's recent reversal of poor Fund performance could reduce potential damages significantly. As a result, Plaintiffs evaluated whether the benefits of an early resolution of the case through mediation would outweigh expensive, time-consuming, burdensome litigation coupled with diminishing losses to the Fund investors under the new management. The parties engaged Jed Melnick Esq. (the "Mediator"), a highly experienced JAMS neutral who mediated many securities class actions successfully, to facilitate the negotiations.

### C.  Negotiations and Proposed Settlement Terms

The parties participated in an all-day mediation with Mr. Melnick on October 14, 2021 (the "Mediation"). Prior to the Mediation, the parties prepared and exchanged thorough confidential statements discussing their respective positions. While the Mediation did not result in a settlement,

it was the catalyst for continued dialog throughout the following months, including the exchange of confidential documents that addressed, among other things, an appropriate damages calculus. The parties finally reached an agreement in principle on January 5, 2022, and thereafter negotiated the Stipulation, dated July 8, 2022. The Stipulation is subject to certain terms and conditions, and requires Defendants to pay the sum of $1.4 million to satisfy Plaintiffs' claims, in exchange for a release.[2] Two conditions in the Stipulation are highly relevant to this motion: (i) Plaintiffs' right to conduct due-diligence discovery prior to submitting the Settlement for Court approval, to further confirm that the Settlement is fair, reasonable, and adequate, and (ii) the Stipulation hinged upon the Court's final approval.

### D.  Due Diligence Discovery

#### 1.  The Settlement

Because the parties reached a Settlement before formal discovery began – albeit after Plaintiffs, through Counsel, conducted extensive pre-discovery fact-finding and investigation – Plaintiffs maintained the right to conduct due diligence discovery to confirm the fairness of the Settlement, and to terminate the Settlement if the due diligence discovery caused them to conclude, reasonably and in good faith, that the proposed Settlement was not reasonable, or adequate. *See* Stipulation § II(A), at p. 24; Decl. ¶16.[3] Defendants produced in response over 5 gigabytes of data consisting of 2,698 documents related to Plaintiffs' claims. *Id.* ¶18. Plaintiffs conducted an extensive review of the discovery received from Defendants by using Plaintiffs' Counsel's e-

---

[2] *See* Stipulation, at Exhibit 2 of the October 19, 2022 Scarlato Decl. (ECF 30) at ¶51 (defining "Released Class Claims"), ¶52 (defining "Released Releasees' Claims"), and ¶53 (defining "Releasee").

[3] The Declaration of Paul J. Scarlato in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees, Payment of Expenses and for Incentive Awards is submitted herewith. References to that Declaration will be made herein as "Decl. ¶."

discovery platform, and on September 12, 2022, informed Defendants that Plaintiffs intended to proceed with the Settlement. *Id.* ¶¶19-20.

This motion now seeks this Court's final approval of the Settlement, which calls for Defendants to pay $1.4 million into a Settlement Fund for the benefit of the Class. The Settlement Fund will satisfy: (i) Authorized Claimants' claims as defined in the Stipulation; (ii) costs and expenses incurred for the Settlement notice and administration ("Notice and Administration Expenses"); (iii) attorneys' fees; (iv) costs and expenses incurred by Plaintiffs' Counsel; and (v) Incentive Awards for the Plaintiffs, as may be approved by the Court.

## 2. The Class

The Court's November 21, 2022 Preliminary Approval Order resolved Plaintiffs' Motion for Preliminary Approval favorably, and made certain findings that (a) the Class appears to be ascertainable, and (b) so numerous that joinder of all members is impracticable; (c) Plaintiffs have alleged one of more questions of fact and/or law common to all Class Members; (d) Plaintiffs claims appear to be typical; (e) Plaintiffs and proposed Class Counsel appear to be adequate, and (g) questions of law and/or fact appear to predominate. *Id.* ¶3. Based on those findings, the Court preliminarily certified the Class for Settlement purposes, preliminarily appointed Plaintiffs as Class Representatives, and preliminarily appointed Rosca Scarlato LLC as Class Counsel. *Id.* The Court also approved the form and manner of Notice and directed that Notice be sent to the Class. *Id.* (ECF No. 31). Class Representatives have fully complied with the Preliminary Approval Order. Decl. ¶24. The Court-approved Claims Administrator, SCS, received a contact list from Defendants' Counsel containing 5,765 prospective Class Members, with mailing addresses for 5,761 of them and email addresses for the remaining four (4) prospective Class members. Decl. ¶27. Pursuant to the Court-approved Notice Plan, the Postcard Notice was sent by first-class mail to all 5,761 and emailed to the four prospective Class Members

for whom no mailing address was provided. *Id. See* Declaration of Cornelia Viera Concerning (a) Mailing of the Notice to Class Members; (b) Mailing of the CAFA Notice; and (c) Report on Exclusions and Objections. *See* Ex. 4 to the Decl. Moreover, the Summary Notice was published via *Globe Newswire* for dissemination across the internet on January 30, 2023. Decl., Ex. 4, ¶7.

### 3. Benefit to the Class

The "Settlement Amount" of $1,400,000 in cash, paid into escrow by the Defendants, which, if approved, shall constitute the "Net Settlement Fund"[4] from which *pro rata* distributions will be made to Class Members who follow the agreed upon administrative procedures. *See* Decl. ¶¶34-39. Importantly, the "Net Settlement Fund" is the only known source of recompense for any Class Member regarding losses suffered in connection with the disputed VLF securities.

### 4. Releases

The parties agreed in the Stipulation to a release for Class Members releasing the Defendants from prospective liability related to the Action, except for those injured investors who opt-out or object timely and within the established procedures. *See* Stipulation at ¶51 (defining "Released Class Claims"). The scope of the negotiated release of claims is not overly broad and supports final approval of the Settlement.

### 5. Objections and Exclusion Requests

The Court's Preliminary Approval Order sets forth the procedures under which any Class Member(s) may object to the Settlement, the Plan of Allocation, and/or the application for an award of attorneys' fees or expenses., and sets forth the date for filing. ECF 31 at ¶¶28-33. While the deadline set by the Court for Class Members to object has not yet passed, to date no one has

---

[4] *See* Stipulation, at Exhibit 2 of the October 19, 2022 Scarlato Decl. (ECF 30) at ¶ 38 defining "Net Settlement Amount" to mean "the Settlement Fund less (i) any Tax Expenses paid or owing, (ii) any Notice and Administrative Expenses paid or owing, and (iii) the Attorneys' Fees and Expenses Award and the Incentive Award."

objected to the fee or expense request. Class Counsel will respond to any objections that may be received in its reply papers. Decl. ¶68.

Similarly, the Preliminary Approval Order sets forth the process for Class Members to exclude themselves from the Class. ECF 31, ¶24. To date, no requests for exclusion have been received. Decl., Ex. 4 at ¶10. The Court-approved Claims Administrator (SCS) has indicated that "[a]s of the date of this declaration, SCS has not received any objections, and SCS has not been notified that an objection was filed." Declaration of Cornelia Viera Concerning (a) Mailing of the Notice to Class Members; (b) Mailing of the CAFA Notice; and (c) Report on objections. *Id.*

### 6.  Attorneys' Fees, Litigation Costs, and Incentive Awards

Plaintiffs moved separately on even date for Court approval of attorneys' fees, litigation costs, and Incentive Awards.

## III.    ARGUMENT

### A.  Legal Standard

Third Circuit courts have long emphasized it is a well-settled principle that there exists a "strong presumption in favor of voluntary settlement agreements." *Copley v. Evolution Well Servs. Operating, LLC*, 2023 U.S. Dist. LEXIS 23452, at *5, 2023 WL 1878581 (W.D.Pa. Feb. 10, 2023), citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). Settlements are especially favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GMC")*, 55 F.3d 768, 784 (3d Cir. 1995). Judicial class action settlement review is a two-step process consisting of preliminary approval and a subsequent fairness hearing to consider final approval. *Udeen v. Subaru of Am., Inc.*, No. 18-17334, 2019 U.S. Dist. LEXIS 172460, 2019 WL 4894568 (D.N.J. Oct. 4, 2019); *In re NFL Players Concussion Injury Litig.* ("*NFL*"), 775 F.3d 570, 581-83 (3d Cir. 2014); *GMC*, 55 F.3d at 785.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement with a review of the Settlement substance and process to ensure it is fair, reasonable, and adequate, and not the result of collusion. *In re Ocean Power Techs., Inc*., Civ. Nos. 3:14-CV-3799; 3:14-CV-3815; 3:14-CV-4015; 3:14-CV-4592, 2016 U.S. Dist. LEXIS 158222, at *33 (D.N.J. Nov. 15, 2016), citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties. . . ."). *Id.*at *54-55, citing *In re Johnson & Johnson*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012); *accord*, *e.g*., *NFL*, 821 F.3d at 436-37.

Prior to the December 1, 2018 amendment to Rule 23, Third Circuit courts looked to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), citing *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974); *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 494 F.2d 799, 803 (3d Cir. 1974), and its progeny, including *NFL*, at the final approval stage. The *Girsh* factors developed in this Circuit are as follows:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.

The Advisory Committee Notes to the December 1, 2018 amendments emphasize "[t]he goal of this amendment is not to displace any factor," but "to focus the court and the lawyers" on the "core concerns" identified in Rule 23(e)(2)(A)-(D). Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. Those core Rule 23(e)(2) factors require courts to

consider: (a) whether Plaintiffs and their Counsel represented the Class adequately; (b) whether the Settlement was negotiated at arm's length; (c) whether the relief provided to the Class is adequate in view of (i) "the cost, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class"; (iii) "the terms of any proposed award of attorney's fees" to plaintiffs' counsel; and (iv) any and all agreements between the settling parties; and (d) whether the proposal treats Class members equitably relative to each other. *Id.*

To render final approval of a proposed class action settlement, courts must consider the substantive settlement terms as well as the negotiating process that produced the compromise. *Zanghi v. FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914, at *47 (W.D. Pa. Jan. 19, 2016), citing *Girsh*, 521 F.2d at 157; *see FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914, at *47, citing *GMC*, 55 F.3d at 796 (The *Girsh* analysis requires a "substantive inquiry into the terms of the settlement relative to the likely rewards of litigation," and "a procedural inquiry into the negotiation process.").

Courts in this Circuit continue to apply *Girsh* in addition to Rule 23(e)(2)'s considerations. *See, e.g., Kanefsky v. Honeywell Int'l, Inc.*, 2022 U.S. Dist. LEXIS 80328, at *9-11 n. 3, 2022 WL 1320827, at *4 n. 3 (D. N.J. May 3, 2022); *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355-56 (E.D. Pa. 2021) (The Rule 23(e)(2) "factors are in many respects a codification of various factors set forth in *Girsh*."). Rule 23(e)(2) of the Federal Rules of Civil Procedure provides a list of factors for the Court's consideration to determine whether a proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). The Court should evaluate those factors and determine whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the Settlement was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i)  the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class,

> including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and the proposal treats class members equitably relative to each other; and
> (D) the proposal treats class members equitably relative to each other.

*Id.* The Advisory Committee's Rule 23 amendment note explains at subsections (A) and (B) the "procedural" fairness of a settlement, and at (C) and (D) the "substantive" fairness of the settlement to be considered. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to amendments (2018) ("[t]he sheer number of factors" considered in various judicial circuits "can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2))." *Id.* The 2018 Amendment further "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.; see also Zanghi v. FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914, at \*47, 2016 WL 223721 (W.D. Pa. Jan. 19, 2016), citing *GMC*, 55 F.3d at 796 (discussing the necessary substantive and procedural inquiries for final settlement approval). The *Girsh* test includes "procedural" and "substantive" factors similar to those of the 2018 amendments. *FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914, at \*47, 2016 WL 223721 (W.D. Pa. Jan. 19, 2016), citing *Girsh*, 521 F.2d at 157.

The Court focused on the necessary factors when it determined at pages 2-3 of the Preliminary Approval Order that: "(i) the proposed Settlement appears to have resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their counsel, under the auspices of an experienced mediator, and appears likely to be approved, and (ii) the terms and conditions of the Settlement Agreement do not have any obvious deficiencies and do not improperly grant preferential treatment to any individual Class Members." (ECF 31).

**B.  Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class**

The Settlement was negotiated by seasoned counsel who are experienced in complex securities litigation and were acting on an informed basis on behalf of the respective parties' best interests. *See* Decl., Exs. 5-6. A court should not substitute its own view of what an "ideal" settlement might be, versus the one proposed by the parties for approval, and "[s]ignificant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class." *FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914, at *47, citing *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D.Pa. 1995) (internal quotations omitted). Plaintiffs' Counsel conducted a thorough investigation relating to the claims, defenses, and underlying events that are the subject of the Action prior to drafting, filing, and serving the complaint. (ECF 1, 30).

Before commencing the Action, Plaintiffs' counsel undertook an exacting scrutiny of publicly available documents on various platforms, including the Securities and Exchange Commission ("SEC") Investment Advisor Public Disclosure and Edgar databases (including SEC Forms ADV Archive), FINRA Brokercheck, Texas and Florida Secretaries of State records, National Association of Insurance Commissioners records, Texas and Florida Insurance Commissions filings, deeds and liens recorded with the Travis County (Texas) Clerk's Recording Division, and two Public Records Requests to the Florida Insurance Regulations Office. Decl. ¶5. In addition, Plaintiffs' counsel spoke with multiple Vida investors and other individuals with relevant knowledge, and obtained a significant volume of important non-public documents directly relevant to the issues in this case. *Id.*

Plaintiffs' Counsel followed the initial investigation by: (i) researching and drafting a detailed Complaint; (ii) engaging in multiple, substantive exchanges with opposing counsel on the key facts and legal claims in the case; (iii) participating in extensive settlement negotiations, including a lengthy mediated session with an experienced JAMS-credentialed private Mediator;

and (iv) obtaining a preliminary estimate of aggregate class damages. Decl. ¶¶6-11. Because Plaintiffs' Counsel was cognizant that a settlement was reached early in the litigation process without formal discovery – albeit after Counsel had assembled a substantial volume of evidence directly relevant to the issues in this case through their own, pre-discovery investigation – the Stipulation explicitly reserved the right for Plaintiffs' Counsel to conduct due diligence discovery to further confirm the Settlement's fairness. Decl. ¶16. Plaintiffs' Counsel reviewed thousands of pages of documents as part of its due diligence review, completed prior to requesting this Court's approval of this Settlement. Decl. ¶20.

As noted, Third Circuit courts "traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class." *Alves v. Main*, Civil Action No. 01-789 (DMC), 2012 U.S. Dist. LEXIS 171773, at *72, 2012 WL 6043272, at *22 (D. N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 543 (D. N.J. 1997) ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."), *aff'd*, 148 F.3d 283 (3d Cir. 1998). The extensive scope of that due diligence discovery, which covered all core issues, in addition to the important records and information that Plaintiffs' Counsel was able to obtain pre-discovery through its own efforts and investigation, provided Counsel with a sound basis to determine whether the Settlement would serve the best interests of Plaintiffs and the Settlement Class, and thereby warrants Court approval. *See, e.g., Schuler v. Meds. Co.*, No. 14-1149, 2016 WL 345218, at *7 (D.N.J. June 23, 2016) ("[a]lthough there has been no formal discovery, Counsel has ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement."). Because that review of thousands of VLF documents from the due diligence discovery – in addition to the important records and information obtained by Plaintiffs' Counsel before formal discovery – confirmed fairness, Counsel submits the Settlement before the

Court serves the best interests of the Class and should therefore be afforded substantial weight.

### C. The Settlement Was Negotiated at Arm's Length and Is Supported by Plaintiffs and Experienced Counsel

The Settlement was negotiated at arm's length with the Mediator's assistance. *See Shah v. Zimmer Biomet Holdings,* No. 3:16-cv-815-PPS-MGG, 2020 U.S. Dist. LEXIS 171925, at *18, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) (finding that Mr. Melnick is a "highly respected and experienced" mediator who has mediated many securities class actions and is a "leading mediator in this field"). Decl. ¶¶9-11. While a resolution of the Action was not achieved during the Mediation, it did position the parties to continue productive negotiations in the following weeks that ultimately resulted in an agreement in principle, after the Mediator's proposal. Decl. ¶10.

The arm's-length nature of the negotiations, with the experienced Mediator's involvement, strongly supports concluding the Settlement is without collusion. *See In re ViroPharma Inc. Sec. Litig.,* No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) ("an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties."), quoting *Hall v. AT&T Mobility LLC,* No. 07-5325, 2010 WL 4053547, at *7 (D. N.J. Oct. 13, 2010); *see Alves,* 2012 U.S. Dist. LEXIS 171773, at *72, 2021 WL 6043272 at *22: *Bernhard v. TD Bank, N.A.,* No. 08-4392, 2009 U.S. Dist. LEXIS 92308, at *73-74, 2009 WL 3233541, at *2 (D. N.J. Oct. 5, 2009). Because the Settlement is the Mediator-facilitated residue of non-collusive arm's-length negotiation that was embraced by Plaintiffs, and endorsed by experienced counsel, final Court approval is warranted.

### D. The Settlement Provides Substantial Relief to the Settlement Class

#### 1. Avoidance of the Significant Risks of Continued Litigation

The Settlement creates a settlement fund of $1,400,000 that will provide substantial benefit to the Class, including avoidance of omnipresent risks of the continued litigation. While Plaintiffs are confident the claims are strong, they recognize this Action, like most securities cases, is fraught

with impediments to proving liability and damages. *See In re Ikon Office Sols.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting "securities fraud" cases are "inherently complex").

The Settlement must be evaluated "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). And in conducting the analysis, the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GMC*, 55 F.3d at 806; *FreightCar Am., Inc.*, 2016 U.S. Dist. LEXIS 5914, at *47, citing *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D. Pa. 1995) (Court should not substitute its own view of what an "ideal" settlement might be).

Significant risks loomed about whether the claims could withstand motions to dismiss, for class certification, and summary judgment, and whether Plaintiffs would be able to convince a jury their theories were accurate, versus Defendants' competing narrative. Plaintiffs would have to prove the Defendants' offering materials contained material misrepresentations and omissions, and those in fact caused the investor losses. Defendants would have likely argued: (i) the Fund's underperformance was caused by a host of unrelated exogenous factors that negatively impacted the Fund at various times during the Class Period, and (ii) any alleged conflicts of interest were adequately disclosed in publicly available sources. Significant risk in discovery regarding these issues would exist if the Action were to continue, as well as the motion practice between the parties it would likely foment, and that the case could ultimately turn on highly contested expert testimony, which may or may not be favorable to Plaintiffs and the Class. Decl. ¶21.

Should Plaintiffs have successfully navigated these many barriers to establish liability, they would have then had to overcome formidable challenges to prove damages and loss causation, which generally requires expert testimony. *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 301 (3d Cir. 1991), citing *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)

(observing "it is virtually impossible to predict accurately which [expert] testimony w[ill] be credited, and ultimately, which damages w[ill] be found to have been caused by actionable, rather than the myriad [of] nonactionable factors such as general market conditions."), *aff'd*, 798 F.3d 35 (2d Cir. 1986). Had the Action continued, Defendants would attempt to undermine Plaintiffs' loss causation theory which if accepted in whole or in part by the factfinder, could have eliminated or at least drastically reduced any potential recovery.

Plaintiffs' damages expert's reasonable estimate of the aggregate out-of-pocket losses was approximately $26 million. The Settlement recovers approximately 5.4% of those losses without risk. Courts routinely approve settlements that recovered comparable or even smaller percentages of maximum damages. *See, e.g.*, *Schuler*, 2016 WL 345218 at *8 (approving $4,250,000 settlement reflecting circa 4.0% of estimated recoverable damages, and noting percentage "falls squarely within the range of previous settlement approvals"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3-:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498, at *9, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5M settlement equal to 3.5% of maximum damages, noting amount was within median recent securities class actions settlements).

Finally, in the absence of a settlement, with the omnipresent "certainty of delay," even if Plaintiffs were to prevail at every future litigation stage, any potential recovery would only occur many years in the future, substantially postponing any payment to the Settlement Class, if ever, and perhaps only after one or more costly appeals. *See generally Lo v. Oxnard European Motors, LLC*, No. 11cv1009, 2011 U.S. Dist. LEXIS 144490, at *14, 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (commenting on the "certainty of delay" and the "uncertainty of recovery through continued litigation.") (citation omitted). *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 U.S. Dist. LEXIS 134005, at *14, 2022 WL 2985634 (E.D. Pa. July 27, 2022), citing *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting the court encourages settlement of

complex litigation "that otherwise could linger for years"). By contrast, the Settlement before the Court offers the *only* known opportunity for definite and tangible recompense to the Class. Achieving compromise at this juncture spares the Class the uncertainty of litigation, and appeals, that would hinder any outcome – *win or lose* – for many years to come.

### 2.   Anticipated Legal Fees and Expenses

As set forth in the Notice, Plaintiffs' Counsel requests, on behalf of themselves and co-counsel, attorneys' fees not greater than 30% of the Settlement Amount, plus accrued interest, and litigation expenses of no more than $50,000. The amounts of attorneys' fees and expenses are within the Court's sound discretion and payable from the Settlement Amount once the Settlement becomes Final. *See* Stipulation § X, at pp. 40-41. As set forth in the Fee Application, a fee request of up to 30% would be consistent with many other common fund awards approved in this Circuit. Plaintiffs refer the Court to the Fee Application and will not repeat the same arguments here.

### 3.   Complexity, Expense, and Likely Duration of Action Warrants Approval

The first of the *Girsh* factors, namely, the complexity, expense, and likely duration of the litigation, warrants Court approval. The expense of pursuing the Action would not have been economically justifiable for any individual plaintiff to undertake, absent the use of class action litigation. The complexity of the issues in the Action and the creative novel litigation theories developed by Plaintiffs' Counsel likely would have been unavailable to any independent litigant. Enduring years of protracted litigation activity would have been unwise.

### 4.   Class Representatives Embrace the Settlement

The reaction of the Plaintiffs to the Settlement has been decidedly favorable, and they have been closely connected to and involved in the litigation process and the negotiation activities described above. Decl. ¶¶42-43. Plaintiffs agree with the opinion of Class Counsel that the

Settlement constitutes a positive outcome of the Action and provides a remedy where none would have otherwise existed for the injured VLF Fund investors. This too weighs in favor of approval.

### 5.   Completion of Due Diligence Discovery Favors Final Approval

Informal discovery may be sufficient for class counsel to evaluate a settlement, and formal discovery is not required for plaintiffs "to assess the merits of their claims and their likelihood of success." *Healthcare Servs. Grp.*, 2022 U.S. Dist. LEXIS 134005, at \*25, citing *NFL*, 821 F.3d at 436-37 (as amended May 2, 2016) (holding that formal discovery is ***not required*** and, "[i]n some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that" is fair). The determinative criterion is "whether the parties had adequate information about their claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at \*11, 2015 WL 6971424, at \*4 (S.D.N.Y. Nov. 9, 2015).

The parties are well apprised of the relative strengths and weaknesses of various claims and defenses, as a result of (1) the extensive pre-discovery investigation by Counsel, and (2) the comprehensive due diligence discovery activities undertaken by Counsel as an express condition of the Settlement. Decl. ¶¶16-20. Class Counsel therefore "developed an informed basis from which to negotiate a reasonable compromise." *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). Plaintiffs submit this factor also supports final approval.

### 6.   Risks of Maintaining the Action, Including Establishment of Liability, Loss Causation, and Damages, are Significant and Justify Settlement

Maintaining the class action through trial, establishing liability, damages, and loss causation, and the lack of certainty in establishing any or all of these to the fact-finder's satisfaction at trial is a persistent risk an approved Settlement would avoid. The Class Representatives approved the Settlement while mindful of these risks and determined it served their and the

Settlement Class' collective best interests to accept the Settlement, further demonstrating that Court approval of the Settlement is reasonable, necessary, and appropriate.

### 7. Ability of Defendants to Withstand a Larger Judgment Amount

While the ability of the Defendants to withstand a greater judgment amount may not be as favorable as the other *Girsh* factors, the Defendants have litigated the Action vigorously to date, and as one might expect, disavow any culpability whatsoever in the Settlement. Continuing the Action to trial might possibly result in a larger award than the Net Settlement Fund, but the risk of not establishing liability, damages, and/or loss causation to the satisfaction of the fact-finder is one the Plaintiffs determined was not a risk worth taking, even though the Defendants could withstand a larger judgment amount.

### 8. Risks and Settlement Range Reasonableness vs. Best Possible Recovery

The Settlement is even more significant when considered against the substantial costs, risks, and delays of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The relief provided by the Settlement is concrete, guaranteed, and immediate, while the results from continued litigation against the Defendants are uncertain and would be delayed at best, and at worst could result in no recovery at all. Without this Settlement, it could be several years before the benefits afforded to the Class under this Settlement could be realized after trial, if ever.

Defendants are sophisticated and well-funded opponents with the resources to defend the claims through trial and potentially multiple appeals. There is little if any doubt that continued litigation against the Defendants could span years and be costly to the parties and a burden on scarce judicial resources. Defeating summary judgment, achieving a litigated verdict at trial, and sustaining any such verdict through the appeals process is a prolonged, complex, and risky proposition that would require significant additional time and expense. *See In re IPO*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (observing that "motions would be filed raising every possible kind

of pre-trial, trial and post-trial issue conceivable"); *In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) (Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate."); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168, 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (finding complexity supports final approval). The substantial risk of continued litigation weighs in favor of approving the Settlement.

Apart from substantial risk and expense, courts overwhelmingly recognize the delay of resolution of the litigation is by itself a significant consideration when approving a settlement. As the Court explained in *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003), "even if a [plaintiff] or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery." *Id.* Inevitable litigation delays "not just at the trial stage, but through post-trial motions and the appellate process, would cause Settlement Class Members to wait years for any recovery, further reducing its value." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002), citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 467 (2d Cir. 1974); *see In re Marsh & McLennan*, *Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 U.S. Dist. LEXIS 120953, at *18, 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (noting the additional expense and uncertainty of "inevitable appeals," compared with the certain benefit of Settlement, which "provides certain and substantial recompense to the Class members now"); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement); *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. LEXIS 1039, at *8,

1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("[E]ven assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away").

The relief provided under the Settlement readily falls within the range of reasonable results given the complexity of the case and the significant barriers that stand between today and a final, implemented judgment. *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435, at *5, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair"); Fed. R. Civ. P. 23(e)(2)(C)(i). This too weighs in favor of final approval.

### 9. Side Agreement Disclosure

The Stipulation, including its exhibits, is the only agreement by and between the parties, aside from a standard, non-disclosure agreement that allows Defendants to terminate the Settlement if exclusion requests exceed a specified threshold. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3). The lack of any side agreements favors final Settlement approval.

### E. The Proposed Plan of Allocation Treats All Class Members Equitably

As the Court noted in its Preliminary Approval, the Settlement does not treat any Plaintiff or any segment of the Class preferentially. (ECF 31). Rather, all Class Members, including Plaintiffs, will receive a *pro rata* Net Settlement Amount pursuant to a Court-approved Plan of Allocation All Class Members harmed as a result of the alleged wrongdoing and who have an eligible claim will receive a *pro rata* share of the Net Settlement Amount based on their "Recognized Loss Amount" under the Plan. *See* Stipulation Exhibit E (Long-Form Notice) ¶¶52, 56-57. The fair and equal treatment of all Class Members warrants final approval of the Settlement.

### F. The Class Should Be Finally Certified

Plaintiffs' Preliminary Approval Motion set forth detailed arguments why certification of the Class for Settlement purposes is appropriate. ECF 30. The Court acknowledged those arguments in preliminarily certifying the Class for Settlement purposes and making findings. ECF

31. Since the Court's Preliminary Approval Order, nothing has changed to alter those findings. The Notice program satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable"—i.e., it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), and it was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Accordingly, the Court should grant final certification of the Class for Settlement purposes. *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."). The Plaintiffs respectfully submit that the proposed Settlement satisfies the requirements of *Girsh* and Rule 23(e)(2) and should be approved.

## IV.     CONCLUSION

Based on the foregoing, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant the instant motion and enter the included proposed Final Approval Order and proposed Judgment.

Dated:  March 14, 2023

**RIGRODSKY LAW, P.A.**

*/s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Email: sdr@rl-legal.com
          gms@rl-legal.com
          hwm@rl-legal.com

Alan L. Rosca

**ROSCA SCARLATO, LLC**
23250 Chargin Blvd., Suite 100
Beachwood, OH 44122

Telephone: (216) 946-7070
Email: arosca@rscounsel.law

Paul J. Scarlato

**ROSCA SCARLATO, LLC**
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216)-946-7070
Email: pscarlato@rscounsel.law

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2023, a true and correct copy of the foregoing Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Declaration of Paul J. Scarlato has been filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

*/s/ Seth D. Rigrodsky*
Seth D. Rigrodsky
