**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                             **Plaintiffs,**<br><br>    v.<br><br>**VIDA LONGEVITY FUND, LP,** *et al.*,<br><br>                             **Defendants.** | **No. 1:21-cv-00402-SRF** |

**MOTION FOR AN AWARD OF ATTORNEYS' FEES,**
**PAYMENT OF EXPENSES, AND FOR INCENTIVE AWARDS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ......................................................................................................... 4

    I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT ....... 4

    II.    THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND ............................................................................................. 5

    III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY OR THE LODESTAR METHOD ............................................................................................................ 6

        A.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-Recovery Method ............................................................................................ 6

        B.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar Cross-Check ........................................................................................................... 7

    IV.    OTHER FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ........ 8

        A.  The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request ............................................................... 9

        B.  The Absence of Objections to Date Supports Approval of the Fee Request .... 10

        C.  The Skill and Efficiency of the Attorneys Involved Support the Fee Request 10

        D.  Litigation Complexity Supports Fee Request Approval ................................. 12

        E.  The Risk of Non-Payment Supports Approval of the Fee Request ................. 13

        F.  The Time Devoted to This Case by Counsel Supports Approval of the Fee Request ........................................................................................................... 15

        G.  The Requested Fee of 30% of the Settlement Amount Is Within the Range of Fees Typically Awarded in Actions of This Nature ...................................... 16

        H.  The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request ...................................................................................................... 17

ii

V.    CLASS COUNSEL'S APPLICATION FOR REASONABLY INCURRED
      LITIGATION EXPENSES SHOULD BE APPROVED ...................................... 17

VI.   CLASS REPRESENTATIVES REQUEST FOR INCENTIVE AWARDS.............. 18

CONCLUSION ....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) ............................................................... 23

*Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) ............................................................................................................................................................ 9

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) ................................................ 20

*Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ..................................................................................................................................................... 20

*AT&T Corp.  Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) ........................................................... passim

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ............................................................. 20

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) ......................................... 6

*Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012) ......... 11

*Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) ..... 20

*Blum v. Stenson*, 465 U.S. 886 (1984) (Brennan, J., concurring) ................................................ 22

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................................ 4

*Brown v. Progressions Behav. Health Servs., Inc.*, 16-cv-6054, 2017 U.S. Dist. LEXIS 108487 (E.D. Pa. July 13, 2017) ............................................................................................................... 26

*Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) ....................................................... 7

*Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) ............................................................... 4

*Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 U.S. Dist. LEXIS 51089 (E.D. Pa. July 13, 2007) . 22

*Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007) ...................................................................................................................................... 15

*Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)  Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009) ............................................................................................................................... 4, 5

*Fero v. Excellus Health Plan, Inc.*, 2022 U.S. Dist. LEXIS 78331 (W.D.N.Y. Apr. 29, 2022) .. 26

*Fogarazzo v. Lehman Bros., Inc.*, No. 03-5194 (SAS) (S.D.N.Y. Feb. 23, 2011) ....................... 16

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).. 8

*Generic Pharms. Pricing Antitrust Litig.*, 2023 U.S. Dist. LEXIS 40391 (E.D. Pa. Mar. 9, 2023)

.......................................................................................................................................... 25

*Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 U.S. Dist. LEXIS 41658 (D.N.J. May 28, 2008) ... 16

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)....................................... 5, 7, 11

*Hall v. Accolade, Inc*., 17-cv-3423, 2020 U.S. Dist. LEXIS 52632 (E.D. Pa. Mar. 25, 2020) .... 26

*Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010)............................................................................................................................... 14, 23

*Hensley v Eckerhart*, 461 U.S. 424 (1983) ................................................................................ 12

*Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005)......................................................................................................................... 24

*Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ............................. 5, 8, 10, 21

*Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013) ...................................................... 8

*JDS Uniphase Corp. Sec. Litig.*, No. CO2-1486 CW (N.D. Cal. Nov. 27, 2007) ........................ 20

*La. Mun. Police Emp. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 U.S. Dist. LEXIS 112989 (D.N.J. 2009)................................................................................................ 8, 18

*Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987)....................................................................... 20

*Linerboard Antitrust Litig.*, MDL 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004), order amended by MDL 1261, 2004 U.S. Dist. LEXIS 10531 (E.D. Pa. June 4, 2004).......... 13

*Marsh & McLennan, Co. Sec. Litig.*, No. 04-8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)......................................................................................................................... 11

*Merck & Co., Vytorin ERISA Litig.*, No. 08-CV-285, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010)................................................................................................................................... 18

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 14, 2009)......................................................................................................................................... 9

*Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2019 U.S. Dist. LEXIS 144929 (E.D. Pa. Aug. 26, 2019)................................................................................................................................. 26

*Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016)............................................................................................................. 7

*Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013)............ 5, 9

*Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................... 21

*Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ....................................... 7, 10, 12

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997).................................... 20

*Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001)........................ 23

*Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432, 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012).......................................................................... 9, 18

*Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)......... 5

*Smith v. Univ. of Pennsylvania*, 20-cv-2086, 2023 U.S. Dist. LEXIS 9094 (E.D. Pa. Jan. 18, 2023)................................................................................................. 25

*Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564 (E.D. Pa. 2012)................................ 10

*Sullivan v. DB Invs. Inc.,* 667 F.3d 273 (3d Cir. 2011).................................................. 6, 7, 10, 24

*Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 U.S. Dist. LEXIS 26572 (D.N.J. Mar. 31, 2008)........................................................................................ 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................. 6

*Torres v. Brandsafway Indus. LLC*, 21-cv-01771, 2023 U.S. Dist. LEXIS 10631 (W.D. Pa. Jan. 20, 2023).......................................................................................... 25

*Valeant Pharms. Int'l, Inc. Sec. Litig.*, 3:15-CV-07658-MAS-LHG, 2020 U.S. Dist. LEXIS 103675 (D.N.J. June 15, 2020)........................................................ 7, 16, 19

*Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR (D. Del. Aug. 5, 2008) *aff'd*, 396 F. App'x. 815 (3d Cir. 2010) ........................................................................ 9

*Vicuron Pharms. Inc. Sec. Litig.* 512 Supp. 2d at 279 (E.D. Pa. 2007)........................................ 22

*ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ............................................................................................ 12, 23

*W. Pa. Elec. Emp. Pension Fund v. Alter*, No. 2:09-cv-04730-CMR, 2014 U.S. Dist. LEXIS 193879 (E.D. Pa. Aug. 4, 2014) ........................................................................ 9

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2017 U.S. Dist. LEXIS 152725 (E.D. Pa. Sept. 20, 2017)................................................................................ 16

*Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................................................................................................... 18

## PRELIMINARY STATEMENT

Rosca Scarlato LLC, preliminarily appointed by the Court as Class Counsel for the Class, along with Plaintiffs Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale (collectively, "Plaintiffs"), preliminarily appointed as Class Representatives, have successfully negotiated a favorable settlement of this securities class action with defendants Vida Longevity Fund, LP, Vida Management I, LLC, Vida Capital Management, LLC, Vida Capital, Inc., Vida Capital, LLC and Jeffrey R. Serra (collectively, "Defendants") in the amount of $1,400,000 in cash.[1]

The proposed Settlement represents a favorable recovery for the Class, especially when viewed in light of the risks and costs attendant to further, protracted litigation. Accordingly, Class Counsel and Plaintiffs request: (i) an award of attorneys' fees in the amount of 30% of the Settlement Amount; (ii) payment of litigation expenses incurred in prosecuting and settling the Action, in the amount of $15,837.60; and (iii) Incentive Awards to the Class Representatives in the amount of $10,000 each, or $30,000 in the aggregate for their efforts as set forth in their Declarations attached to the Scarlato Declaration.[2] Class Counsel and Plaintiffs respectfully submit that the Settlement was achieved through the skill, experience, and effective advocacy of Class Counsel, who pursued the claims in the Action for the benefit of the Class.

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Stipulation of Settlement, dated as of July 8, 2022 (ECF 30-1, Exhibit 2) (the "Stipulation") or in the Declaration of Paul J. Scarlato in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees, Payment of Expenses, and for Incentive Awards (the "Scarlato Declaration ¶" or "Decl. ¶"), filed herewith. "Plaintiffs' Counsel" consists of Class Counsel, Goldman Scarlato & Penny, P.C. and Rigrodsky Law, P.A.

[2] The Scarlato Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action and a description of the services Plaintiffs' Counsel provided for the benefit of the Class; the nature of the claims; the negotiations leading to the Settlement; the risks and uncertainties of the litigation; and the facts and circumstances underlying Class Counsel's requests for fees and expenses.

To achieve the recovery here, Class Counsel devoted substantial resources to pursuing the claims by, among other things, conducting a thorough and wide-ranging factual investigation concerning the alleged misrepresentations and omissions made by Defendants regarding the Vida Longevity Fund, LP ("VLF" or the "Fund"), which investigation involved a careful review of documents related to the Fund, including but not limited to various iterations of the Fund's Private Placement Memorandum, the Fund's Limited Partnership Agreement as amended, quarterly Fact Sheets reporting on the Fund's performance, audited financial statements, periodic letters sent by the Fund to investors, documents related to Ovation Partners' investments in the Fund, Ovation Partners' Forms ADV obtained from the SEC Form ADV Part 2 Data Archive, Vida Capital Management, LLC's Form ADV filings, FINRA Brokercheck, filings with the Texas and Florida Secretary of State offices, investor statements, subscription documents, investor forms, a Vida slide deck, organization charts, documents obtained by Class Counsel via public records requests from the Florida Office of Insurance Regulations, documents obtained from the Texas and Florida Insurance Commissions and the National Association of Insurance Commissioners regarding Magna Life Settlements, court filings related to Life Partners Holdings, Inc., deed and lien records filed with the Travis County (Texas) Clerk's Recording Division. and multiple Edgar filings by entities related to the Fund. Decl. ¶5.

Class Counsel prepared a detailed Class Action Complaint (the "Complaint") based on the above-described investigation. *Id.* at ¶6. In addition, Class Counsel consulted with an expert to obtain a preliminary estimate of out-of-pocket losses, engaged in a rigorous mediation process with Jeb Melnick of JAMS, including preparing a detailed mediation brief, attending a full-day mediation, and participating in lengthy follow-up negotiations, and engaged in extensive confirmatory discovery, which included Class Counsel's review and analysis of documents

contained in approximately 5.74 GB of data containing 2,698 individual files produced by Defendants pursuant to document categories requested by Class Counsel. *See generally* Decl.

Class Counsel were unaided by any governmental investigation of the alleged securities violations. Counsel's efforts to date have been without compensation of any kind and a fee has been wholly contingent upon the result achieved. As compensation for their efforts on behalf of the Class and the risks of non-payment it faced in bringing the Action on a contingent basis, Class Counsel now seeks, on behalf of themselves and Plaintiffs' Counsel, an attorneys' fee award of 30% of the Settlement Amount, which would be only 83% of the value of counsel's time, i.e., a negative lodestar "multiplier" of 0.83. The attorneys' fee request is fair and reasonable when one considers, among other things: (i) the result achieved for the Class; (ii) the complexities and risks faced by counsel during the litigation; and (iii) the amount of fees awarded by courts within the Third Circuit and this district in comparable cases. Furthermore, the Class Representatives, who actively supervised the Action, have authorized the Fee Application as reasonable. *See* Declarations of Class Representatives attached to the Scarlato Decl. as Exhibits 1-3.

In addition, while the deadline set by the Court for Class Members to object to the requested attorneys' fees and expenses has not yet passed, no objections to the requests for fees and expenses have been received to date. Decl. ¶67. Defendants provided the Claims Administrator with a class list containing 5,765 Class members. Pursuant to the Preliminary Approval Order, 5,761 copies of the Postcard Notice have been mailed via first-class mail to Class Members on that list, and the Postcard Notice was emailed to the four remaining Class Members for which no physical address was provided. In addition, the Summary Notice was published in Global Newswire on January 30, 2023. *See* Declaration of Cornelia Viera Concerning: (A) Mailing of the Notice to Class Members; (B) Mailing of the CAFA Notice; and

(C) Report on Requests for Exclusion and Objections (the "Mailing Decl."), attached as Exhibit 4 to the Scarlato Declaration, at ¶¶ 4-6.  The Postcard Notice advised potential Class Members that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, for payment of litigation expenses in an amount not to exceed $50,000, and for Incentive Awards not to exceed $30,000 in the aggregate.  *See* Ex. 4 at ¶ 5. The actual expenses sought by Class Counsel are below the amounts set forth in the Notice, even when including the Incentive Awards. For the reasons set forth herein and in the Scarlato Declaration, Class Counsel respectfully submits that the attorneys' fees requested are fair and reasonable under the particular circumstances now before this Court, and that the expenses and Incentive Awards requested are reasonable and should be approved.

## **ARGUMENT**

### I.    **PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND CREATED BY THE SETTLEMENT**

The Supreme Court and Circuit Courts recognize that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a [common] fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)   Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).[3] Courts within the Third Circuit have consistently adhered to these teachings. *See, e.g.*, *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create,

---

[3] All internal quotations and citations are omitted unless otherwise noted.

discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29, 2013); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefits they have bestowed on class members.").

The award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"). Indeed, the United States Supreme Court has repeatedly recognized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement' of the securities laws and are a necessary supplement to [SEC] action").

Plaintiffs' Counsel's efforts in the present case exemplify the importance of such private cases. No other investigation or proceeding has yielded any monetary recovery for VLF investors.

## II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Class Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Class. In this Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund. *See Sullivan v.*

*DB Invs. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp.  Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class.  *See Rite Aid*, 396 F.3d at 300; *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 3:15-CV-07658-MAS-LHG, 2020 U.S. Dist. LEXIS 103675, at *60 (D.N.J. June 15, 2020) (noting the percentage-of-recovery method is "generally favored in common fund cases"); *In re Ocean Power Techs., Inc. Sec. Litig.*, No.  3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *76 (D.N.J. Nov. 15, 2016).

The Third Circuit has "several times reaffirmed that the application of a percentage-of-recovery method is appropriate in common-fund cases."  *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n.1).  While the percentage award should be "cross-checked" against the lodestar method to ensure its reasonableness, *Sullivan*, 667 F.3d at 330, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.

### III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY OR THE LODESTAR METHOD

#### A.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-Recovery Method

The requested fee of 30% of the Settlement Amount is reasonable under the percentage-of-recovery method.  While no general rule exists, fee awards in this Circuit generally range from 19% to 45% of the settlement fund, and most commonly from 25% to one-third.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995);

*Ikon*, 194 F.R.D. at 194) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."); s*ee also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *La. Mun. Police Emp. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 U.S. Dist. LEXIS 112989, at *25 (D.N.J. 2009) (same).

A review of attorneys' fees awarded in securities class actions settlements in the Third Circuit supports the reasonableness of the requested fee. *See, e.g., Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at *40-41 (D.N.J. Sept. 14, 2009) (awarding 33% of $13.5 million settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432, 2012 U.S. Dist. LEXIS 75213, at *20-21 (D.N.J. May 31, 2012) (awarding  33.3%  of  $12.25 million  settlement); *Par Pharm.*, 2013 WL 3930091, at *11 (awarding 30% of $8.1 million settlement); *In re Veritas Software Corp. Sec. Litig.*, No. 1:04-cv-00831-SLR, slip op. at 2 (D. Del. Aug. 5, 2008) *aff'd*, 396 F. App'x. 815 (3d Cir. 2010) (awarding 30% of $21.5 million settlement); *W. Pa. Elec. Emp. Pension Fund v. Alter*, No. 2:09-cv-04730-CMR,  2014 U.S. Dist. LEXIS 193879 (E.D. Pa. Aug. 4, 2014) (awarding 30% of $13.25 million settlement). Awards of 30% are also common in cases with much larger settlement amounts. *See, e.g., In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 U.S. Dist. LEXIS 68, at *59 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.5 million settlement net of expenses); *Ikon*, 194 F.R.D. at 192-97 (awarding 30% of $111 million settlement net of expenses).

Accordingly, the requested fee is comparable to fees awarded in similar cases.

### B.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar Cross-Check

The Third Circuit recommends that counsel's lodestar be used as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable

and to avoid a "windfall" to counsel. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[4]

Here, Plaintiff's Counsel devoted a total of 654.70 hours to the prosecution and resolution of the Action. See Exs. 5 and 6. Plaintiff's Counsel's lodestar – which is derived by multiplying the hours spent on the litigation by each firm's current hourly rates for attorneys, paralegals and other professional support staff – is $505,967.50. *Id.* Accordingly, the requested 30% fee, which equates to $420,000, represents a *negative* "multiplier" of 0.83 on counsel's lodestar – meaning Plaintiff's Counsel are seeking 83% of their lodestar. Decl. ¶ 57.

A percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award. *See Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564, 572 (E.D. Pa. 2012) (where fee resulted in a 0.89 lodestar multiplier it was "well under the generally acceptable range and provides strong additional support for approving the attorneys' fee request"); *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with a negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *In re Marsh & McLennan, Co. Sec. Litig.*, No. 04-8144, 2009 U.S. Dist. LEXIS 120953, at *58-59 (S.D.N.Y. Dec. 23, 2009) (reasoning that where the multiplier is negative, the lodestar cross-check "unquestionably supports the requested percentage fee award."). Accordingly, the requested 30% fee is reasonable.

## IV.    OTHER FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Third Circuit has set forth the following criteria for courts to consider when reviewing

---

[4] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of
> the Class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved; (4) the
> complexity and duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted to the case by
> plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195, n.1.   Three other factors may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations;" (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained;" and (3) any "innovative terms of settlement." *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F. 3d at 338-40).  The fee award factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'"  *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301).

An analysis of the relevant factors further confirms that the fee requested here is fair and reasonable and should be approved.

### A.   The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award.  *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *26 (E.D. Pa. Jan. 25, 2016).  Here, Class Counsel has secured a Settlement that provides for a substantial and certain payment of $1,400,000 for the benefit of the Class.  As detailed in the Scarlato Declaration, Class Counsel consulted with a damages expert who estimated out-of-pocket losses suffered by the Class as approximately $26 million.  Decl. ¶ 22. Accordingly, the Settlement recovers approximately 5.4% of out-of-pocket

losses, a quite favorable recovery in light of Defendants' countervailing arguments, and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all.

The Settlement will also benefit a large number of investors. To date, the Claims Administrator has mailed 5,765 Postcard Notices to potential Class Members. *See* Decl. Ex. 4, at ¶ 5. Accordingly, while the deadline for submission of the Claim Forms is not until March 21, 2023, a large number of Class Members can be expected to benefit from the Settlement. *See, e.g., In re Linerboard Antitrust Litig.*, MDL 1261, 2004 U.S. Dist. LEXIS 10532, at *14-18 (E.D. Pa. June 2, 2004), order amended by MDL 1261, 2004 U.S. Dist. LEXIS 10531 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

### B. The Absence of Objections to Date Supports Approval of the Fee Request

The Postcard Notice, Long-Form Notice, and Summary Notice provided a summary of the terms of the Settlement, stated that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, and advised Class Members that they could object to the Settlement, Plan of Allocation, or fee request and explained the procedure for doing so. *See* Ex. 4 at Exs. B-D. While the deadline to object has not yet passed, no objections have been received to date.[5]

### C. The Skill and Efficiency of the Attorneys Involved Support the Fee Request

The skill and efficiency of counsel is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the

---

[5] The deadline for submitting objections is March 21, 2023. Decl. ¶68. As provided in the Preliminary Approval Order, ECF 31, Class Counsel will file reply papers no later than April 11, 2023, addressing any objections that may be received.

performance and quality of opposing counsel." *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355, at *63-65 (D.N.J. Oct. 13, 2010).

The proposed Settlement required considerable skill to achieve.  Class Counsel was required to contend with, among other things, issues particular to the life settlement industry, as well as difficult materiality, falsity, causation, and damages challenges.  In particular, there were substantial risks to establishing material falsity and scienter given Defendants' claim that all of the information Plaintiffs contend was not disclosed, was actually disclosed in other public documents. *See* Decl. at ¶¶46-52. Moreover, proving damages presented a particular challenge here, as the Fund's performance experienced a sharp turnaround shortly after the Complaint was filed, resulting in diminishing losses for the Class as the case proceeded.

With respect to "the experience and expertise" of counsel, as set forth in the firm resumes attached to the respective declarations of Plaintiffs' Counsel, Plaintiffs' Counsel are highly experienced and skilled firms in the securities litigation field, and each firm has a long and successful track record in securities cases throughout the country.  *See* Decl. Exs. 5 and 6. "The quality of opposing counsel is also important in evaluating the quality of counsel's work." *Hall*, 2010 U.S. Dist. LEXIS 109355, at *63-65; *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *19-20 (D.N.J. Nov. 28, 2007).  Class Counsel was opposed in this litigation by one of the nation's elite law firms, Proskauer, a prominent firm with undeniable experience and skill in the securities arena.  The ability of Class Counsel to obtain a favorable outcome for the Class in the face of this formidable legal opposition further confirms the quality of Class Counsel's representation.

### D.  Litigation Complexity Supports Fee Request Approval

Securities litigation is regularly acknowledged to be particularly complex and expensive. *See, e.g., Valeant Pharms.*, 2020 U.S. Dist. LEXIS 103675, at *45; *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2017 U.S. Dist. LEXIS 152725 at *23 (E.D. Pa. Sept. 20, 2017) (approving counsel's fee request and noting that "[s]ecurities litigation is tough stuff"); *Fogarazzo v. Lehman Bros., Inc.*, No. 03-5194 (SAS) (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 U.S. Dist. LEXIS 41658, at *10 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive.").

The Action alleged violations of the Texas Securities Act ("TSA") by misrepresenting and/or failing to disclose in the Fund's offering materials the weaknesses in its internal processes and procedures, and by failing to disclose material conflicts of interest of the Fund's founder. Decl. ¶6. The claims raise a panoply of difficult legal and factual issues, rooted within the life settlement industry, that required sophisticated analysis.  Decl. ¶6.  Continued litigation would have included additional briefing on class certification, as well as the completion of fact and expert discovery, and it is unknown whether the Action would withstand class certification and a summary judgment challenge, as well as whether Plaintiffs would be able to convince a jury to accept its theories over Defendants' competing narrative. Decl. ¶21. For example, although Class Counsel believes that Plaintiff have a strong case for liability, to prove their case, Plaintiffs would need to show that Defendants made false or misleading material statements and/or omissions about the Fund's internal processes and procedures and its founder's conflicts of interest, and did so with scienter. These alleged violations would be difficult for a jury to assess and were vigorously disputed by Defendants, who would offer plausible alternative explanations supported by experts.  There was

a very real risk that a jury would conclude that the Defendants did not act with the requisite intent. *See AT&T*, 455 F.3d at 170 (re-emphasizing that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request").

Had this litigation continued, Plaintiffs would have been required to conduct further extensive factual document and deposition discovery and substantial expert discovery, including preparation of expert reports and depositions. After the close of discovery, Defendants would undoubtedly have moved for summary judgment and would have vigorously challenged Plaintiffs' experts' testimony. *Id.* Substantial time and expense would need to be expended in order to prepare the case for trial, filing and responding to myriad *in limine* motions, and the trial itself would be protracted and uncertain. Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process.  Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Even a victory at trial is not a guarantee of ultimate success . . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

Considering the magnitude, expense, and complexity of this securities case, especially when compared against the significant and certain recovery achieved by the Settlement, the attorney's fee request is reasonable.

### E.  The Risk of Non-Payment Supports Approval of the Fee Request

Plaintiffs' Counsel undertook the Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave them uncompensated for their investment of time, as well as for their substantial expenses.  The risk of

non-payment is an important factor favoring an award of attorneys' fees. *See*, *e.g.*, *Schering-Plough*, 2012 U.S. Dist. LEXIS 75213, at *20-21 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Vytorin ERISA Litig.*, No. 08-CV-285, 2010 U.S. Dist. LEXIS 12344, at *40 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Sealed Air*, 2009 U.S. Dist. LEXIS 112989\ at *25 (same); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 U.S. Dist. LEXIS 26572 at *29-30 (D.N.J. Mar. 31, 2008) (same); *see also Valeant Pharms.*, 2020 U.S. Dist. LEXIS 103675 at *68 (noting that the risk of nonpayment weighed in favor of the requested fee, where, among other things, the "recovery was uncertain due to the difficulty of prevailing in securities cases generally").

In undertaking this responsibility, Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, including to compensate staff and cover the considerable costs that a case such as this requires. With cases of this type typically taking years to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Plaintiffs' Counsel received no compensation during the course of the litigation and advanced or incurred $15,837.60 in expenses for the benefit of the Class.

The risk of no recovery in complex cases of this type is real. Indeed, even if Plaintiffs had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that would likely take years. Despite the most vigorous and skillful efforts, a firm's success in contingent litigation such as this is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions in expenses and received ***nothing*** for

their efforts.[6] Indeed, even judgments initially affirmed on appeal by an appellate panel are no assurance of a recovery. *See*, *e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. This strongly favors approval of the requested fee.

### F. The Time Devoted to This Case by Counsel Supports Approval of the Fee Request

As discussed above and detailed in the Scarlato Declaration and the individual declarations submitted by Plaintiffs' Counsel who helped prosecute the Action, Counsel have devoted 654.70 hours to the prosecution and resolution of the Action. *See* Decl. ¶57. The time and effort expended by Plaintiffs' Counsel in prosecuting this Action and achieving the Settlement show that the requested fee is justified. Counsel's rates range from $750 to $1,000 per hour for partners, $695 per hour for of counsels/senior counsels, $395 to $475 per hour for associates, and $200 to $275 for paralegals and legal support staff.[7] And, if the Court approves the Settlement, Class Counsel

---

[6] For illustrative examples, *see*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 U.S. Dist. LEXIS 15608, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. CO2-1486 CW (N.D. Cal. Nov. 27, 2007) (Defense verdict after four weeks of trial).

[7] Current hourly rates were used, as permitted by the United States Supreme Court and the other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa.

will continue to spend considerable time for the benefit of the Class by working through the settlement administration and distribution process, without seeking any additional compensation.

Class Counsel respectfully submits that this *Gunter* factor weighs in favor of the requested attorneys' fee.

### G. The Requested Fee of 30% of the Settlement Amount Is Within the Range of Fees Typically Awarded in Actions of This Nature

As shown above, the requested fee of 30% of the Settlement Amount is within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor supports approval of the requested fee. Additionally, the lack of government investigation and the fact that all benefits of the settlement are attributable to the efforts of Counsel support approval of the fee request.

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, there was no governmental civil or criminal investigation or prosecution of the alleged securities fraud that produced helpful evidence or findings and, accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Class Counsel in this Action. This fact increases the reasonableness of the requested fee award. *See, e.g.*, *AT&T*, 455 F.3d at 173; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 U.S. Dist. LEXIS 51089 at *17 n. 4 (E.D. Pa. July 13, 2007); *In re Vicuron Pharms. Inc. Sec. Litig.* 512 Supp. 2d at 279, 287 (E.D. Pa. 2007).

---

2003); *Ikon*, 194 F.R.D. at 195.

**H.   The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request**

In this Circuit, the requested fee should also be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165.   A 30% fee is at the lower end of the range of typical attorneys' fees in non-class contingent fee cases, which fees typically range from 30 to 40 percent of the recovery. *See, e.g.*, *id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 903 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). The requested fee of 30% of the Settlement Amount is consistent with private standards.

**V.   CLASS COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED**

Counsel requests reimbursement of $15,837.60 in expenses incurred in connection with the pursuit and settlement of this Action. Counsel's fee declarations attest to the amount and accuracy of their expenses.  Exs. 5, 6.  There has been no objection to the expense request to-date. Decl. ¶68.

In a class action like this, counsel "is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *54-55 (same); *Hall*, 2010 U.S. Dist. LEXIS 109355, at *75-76 ("Courts generally approve "expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants.").  The expense categories Counsel seeks payment for are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

A significant component of Counsel's expenses are the Plaintiffs' share of the mediation costs which total $13,150, or approximately 84% of total expenses. Decl. ¶62. Another component of the litigation expenses was for litigation support services, which were needed to produce and host the substantial volume of electronic documents produced in the Action. These expenses amount to $477.03. *Id.* The other expenses for which Counsel seek payment are the types of expenses that are necessarily incurred in litigation. *Id.*

The Postcard Notice, Long-Form Notice and Summary Notice each informed potential Class Members that Class Counsel would apply for payment of expenses in an amount not to exceed $50,000. The actual amount of expenses requested, $15,837.60, is below the amount listed in the Notice documents, even with the proposed $30,000 in total Incentive Awards included.

## VI.   CLASS REPRESENTATIVES REQUEST FOR INCENTIVE AWARDS

Class Counsel and the Class Representatives seek Incentive Awards of $10,000 for each of the three Class Representatives, for a total of $30,000, for the time and effort they expended in this Action over the course of two years. As described in the Class Representatives' Declarations, they have been committed to pursuing the Class's claims since their appointment and have taken an active role in so doing. "The purpose of [incentive award] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011). Courts "award such costs … to both reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 24, 2005).

The Class Representatives actively and effectively fulfilled their obligations as representatives of the Class, complying with all of the demands placed upon them during the litigation and settlement of the Action. The Class Representatives: (i) communicated with Counsel frequently regarding the posture and progress of the Action; (ii) reviewed pleadings and motions filed in the Action; (iii) discussed mediation strategy and evaluated settlement proposals; and (iv) participated directly in the mediated session. *See* Decl. Exs. 1-3. These efforts required the Class Representatives to dedicate significant time and resources to the Action that they would have otherwise devoted to their regular duties.

Numerous courts within the Third Circuit have approved similar payments to compensate representative plaintiffs under similar circumstances. *See, e.g., In re Generic Pharms. Pricing Antitrust Litig*., 2023 U.S. Dist. LEXIS 40391 (E.D. Pa. March 9, 2023) (Service awards of $20,000 to each of the four class representatives (for a total of $80,000)); *Torres v. Brandsafway Indus. LLC*, 21-cv-01771, 2023 U.S. Dist. LEXIS 10631 at *9 (W.D. Pa. Jan. 20, 2023) ($10,000 service award); *Smith v. Univ. of Pennsylvania*, 20-cv-2086, 2023 U.S. Dist. LEXIS 9094, at *9 (E.D. Pa. Jan. 18, 2023) ($10,000 service award); *Brown v. Progressions Behav. Health Servs., Inc*., 16-cv-6054, 2017 U.S. Dist. LEXIS 108487, at *3 (E.D. Pa. July 13, 2017) ($10,000 service award); *Myers v. Jani-King of Phila., Inc*., No. 09-1738, 2019 U.S. Dist. LEXIS 144929 (E.D. Pa. Aug. 26, 2019) ($10,000 service award); *Hall v. Accolade, Inc*., 17-cv-3423, 2020 U.S. Dist. LEXIS 52632 (E.D. Pa. Mar. 25, 2020) ($10,000 service award); *See also Fero v. Excellus Health Plan, Inc*., 2022 U.S. Dist. LEXIS 78331 at *13 (W.D.N.Y. Apr. 29, 2022) (Representative plaintiff service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.").

There has been no objection so far from potential Class Members to the proposed Incentive Awards, which were disclosed in the Postcard Notice, Long-Form Notice and Summary Notice. Counsel and Plaintiffs respectfully submit that the amount sought here is reasonable based on Plaintiffs' active involvement in the Action from inception to settlement. *See* Decl. ¶68.

## <u>CONCLUSION</u>

For all the foregoing reasons, Class Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Amount, or $420,000, $15,837.60 for litigation expenses incurred in connection with the prosecution of the Action, and an aggregate amount of $30,000 in the aggregate to the Class Representatives as Incentive Awards.

Dated:  March 14, 2023

**RIGRODSKY LAW, P.A.**

*/s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Email: sdr@rl-legal.com
      gms@rl-legal.com
      hwm@rl-legal.com

Alan L. Rosca
**ROSCA SCARLATO, LLC**
23250 Chargin Blvd., Suite 100
Beachwood, OH 44122
Telephone: (216) 946-7070
Email: arosca@rscounsel.law

Paul J. Scarlato
**ROSCA SCARLATO, LLC**
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216)-946-7070
Email: pscarlato@rscounsel.law

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2023, a true and correct copy of the foregoing Motion for an Award of Attorneys' Fees, Payment of Expenses, and for Incentive Awards, and the Declaration of Paul J. Scarlato has been filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

*/s/ Seth D. Rigrodsky*
Seth D. Rigrodsky
