# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **TIMOTHY O'HERN**, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    **Plaintiffs,**<br><br>    **v.**<br><br>**VIDA LONGEVITY FUND, LP**, *et al.*,<br><br>                                    **Defendants.** | **No. 1:21-cv-00402-SRF** |

### DECLARATION OF PAUL J. SCARLATO IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND CLASS COUNSEL'S MOTION FOR AN AWARD OF <u>ATTORNEYS' FEES, PAYMENT OF EXPENSES AND FOR INCENTIVE AWARDS</u>

I, PAUL J. SCARLATO, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.     I am a member of the law firm of Rosca Scarlato LLC ("RS"), which was preliminarily appointed as Class Counsel for Plaintiffs Timothy O'Hern, Seymon Rodkin, and Dominic Cardinale, preliminarily appointed as Class Representatives for the Class ("Class Representatives").[1] Prior to that, I was a shareholder in Goldman, Scarlato & Penny, P.C., one of Plaintiffs' Counsel where I remain a Partner. I have been actively involved throughout the prosecution and resolution of this action (the "Action"), am familiar with its proceedings, and have personal knowledge of the matters set forth below based upon my close supervision of the material aspects of the Action.

2.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, as well as Class Counsel's Motion for an Award of Attorneys' Fees, Payment of Expenses, and for Incentive Awards (the "Fee Application"). Both motions have the full support of the Class Representatives. *See* Declarations of Timothy O'Hern, Seymon Rodkin, and Dominic Cardinale dated March 12 and 13, 2023, attached as Exhibits 1-3 hereto.[2] To date, there have been no objections to any aspect of the Settlement.

I.     **PRELIMINARY STATEMENT**

3.     Class Representatives have succeeded in obtaining a favorable recovery for the Class in the amount of $1,400,000 in cash. As set forth in the Stipulation of Settlement

---

[1] All capitalized terms not otherwise defined below have the same meaning as in the Stipulation of Settlement, dated as of July 8, 2022 (the "Stipulation", ECF 30-1, Exhibit 2).

[2] Citations to "Exhibit" or "Ex.___" refer to exhibits to this Declaration. For clarity, exhibits that themselves have attached exhibits will be referenced as "Ex. __-__." The first numerical reference is to the designation of the entire exhibit and the second alphabetical reference is to the exhibit designation within the exhibit itself.

("Stipulation") dated July 8, 2022 (ECF 30-1), in exchange for this payment, the proposed Settlement resolves all claims asserted in the Action by Plaintiffs and the Class (Released Class Claims) against the Releasees.

### A.   Factual Investigation and the Complaint

4.      Plaintiffs and the Class are investors the Vida Longevity Fund, LP ("VLF" or the "Fund"), an open-ended investment fund that invests money in life settlements. According to Plaintiffs' complaint ("Complaint"), the Fund's stated objective was to achieve a return of capital plus a cumulative compounded return rate of approximately 8-12%. The Fund purportedly achieved that targeted rate of return from inception through 2017, Then, in 2018, the Fund's performance began to deteriorate with an annual return of just 5.65%. The Fund's underperformance continued in 2019 with an annual return of just 5.49%. Then in 2020, the Fund posted a negative annual return of (12.66%).

5.      This Action was filed on March 19, 2021. ECF 1. Prior to filing the Complaint, Class Counsel conducted an extensive and wide-ranging factual investigation concerning the alleged misrepresentations and omissions made by Defendants regarding the Vida Longevity Fund, LP ("VLF" or the "Fund"). Counsel's pre-filing investigation involved a careful review of voluminous documents related to the Fund and related entities, including but not limited to various iterations of the Fund's Private Placement Memorandum, multiple amendments to the Fund's Limited Partnership Agreement, quarterly Fact Sheets reporting on the Fund's performance, audited financial statements, periodic letters sent by the Fund to investors, documents related to Ovation Partners, L.P.'s ("Ovation") investments in the Fund, Ovation's Forms ADV obtained from the SEC Form ADV Part 2 Data Archive, Vida Capital Management, LLC's Form ADV filings, information contained on FINRA's Brokercheck, filings with the Texas and Florida

Secretary of State offices, investor statements, subscription documents, investor forms, Vida marketing presentations, organization charts, documents obtained by Class Counsel via public records requests from the Florida Office of Insurance Regulations, documents obtained from the Texas and Florida Insurance Commissions and the National Association of Insurance Commissioners regarding Magna Life Settlements, court filings related to Life Partners Holdings, Inc., deed and lien records filed with the Travis County Clerk's Recording Division. and multiple Edgar filings by entities related to the Fund. In addition, Class Counsel spoke with multiple Vida investors and other individuals with relevant knowledge, and obtained a significant volume of important non-public documents directly relevant to the issues in this case.

6.     Based on the above-described investigation, Class Counsel prepared a detailed Complaint against Defendants alleging that the Fund's offering materials, through which the Fund was offered and sold, misrepresented and/or failed to disclose (i) serious weaknesses in the Fund's internal processes and procedures, and (ii) material conflicts of interest regarding Defendant Serra and his alternate investment fund, Ovation. The Complaint asserted three violations of the TSA; the sale of securities through misrepresentation and omission, Tex. Rev. Civ. Art. 581-33-A, against all Defendants; a claim for control person liability, Tex. Rev. Civ. Art. 581-33-F(1) against defendants Serra and the General Partner; and for materially aiding the sale of securities through misrepresentation and omission, Tex. Rev. Civ. Art. 581-33 (A)(2), against defendants Vida Management, Vida, Inc., and Vida Capital.

7.     Subsequent to the Complaint's filing, counsel for the parties conferred by phone about the timing of Defendants' responsive pleading. During that call, Plaintiffs indicated that Plaintiffs' intent to amend their Complaint.

8.     At or about that time, the Fund released its financial results for the 2021 first quarter.  Those results showed a reversal from the negative returns posted in 2020, and a seeming return to positive performance. While Class Counsel remained confident in the allegations of the Complaint, Class Counsel was cognizant that the Fund was now operating under new ownership, and that the remedial steps announced in 2020 to address performance issues appeared to be taking hold. Moreover, Class Counsel was aware that if the Fund's performance continued in a positive direction, the damages suffered by the Class might be substantially diminished, and possibly eliminated. Accordingly, Class Counsel inquired whether Defendants would be willing to focus their efforts on reaching a possible settlement that would benefit Fund investors rather than spending money on costly litigation. The parties thereafter agreed to explore a possible resolution through mediation with the assistance of a highly experienced mediator, Jed Melnick, Esquire, of JAMS.

**B.     Mediation**

9.     The parties scheduled a mediation for October 14, 2021, before Mr. Melnick. Prior to the mediation, the parties prepared detailed mediation statements explaining their case, and identifying the strengths and addressing potential weaknesses, supported by documents. The parties submitted their mediation statements and exhibits to the mediator in advance of the mediation, and exchanged them with each other.[3]

10.     On October 14, 2021, the parties participated in an all-day, arms-length mediation with Mr. Melnick. Each of the Class Representatives attended and participated in the mediation. While the parties were unable to achieve a negotiated resolution on that date, the parties continued

---

[3] Prior to the mediation date, the Fund posted its results for the second quarter 2021 that showed that the Fund's return to profitability continued.

their negotiations. Following extensive additional negotiations, the parties reached the Settlement for $1.4 million cash, and executed a Term Sheet on January 5, 2022.

11.     The settlement discussions were at all times arm's-length and under the purview of an experienced mediator. Class Representatives do not believe that a better outcome could have been secured through a negotiated settlement.

       **C.**     **The Stipulation of Settlement**

12.     The parties then negotiated a formal Stipulation of Settlement which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action. Defendants have agreed to release all claims, concerning the prosecution and Settlement of the Action, against Class Representatives and the other members of the Class. Once the Settlement reaches the Final Settlement Date, the Plaintiff's claims against the Releasees will be forever dismissed with prejudice.

13.     The Stipulation set forth other terms and conditions of the Settlement, including the proposed Plan of Allocation, and the Notice Program for providing notice of the Settlement to the Class. See ECF 30-1 at § IV. Importantly, the Stipulation also provided for due-diligence discovery regarding the claims in the Complaint to allow Class Counsel to confirm whether the proposed Settlement is fair, reasonable and adequate. *Id.* at § II.

14.     The parties also negotiated and drafted the exhibits to the Stipulation, including the proposed preliminary approval order, final approval order, the form of judgment, the Postcard Notice, the Long-Form Notice, Summary Notice, Claim Form, and Confidentiality Order. ECF 30-1.

15.     The parties spent significant time drafting and conferring on, and ultimately memorializing, the terms of the Settlement in the Stipulation, and its associated exhibits, which

was executed on July 8, 2022 and filed with the Court on October 19, 2022. ECF 30-1, along with

Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement. ECF 30.

### D.    Due-Diligence Discovery

16.    As an important condition of the Settlement, the Stipulation also provided for due-

diligence discovery regarding the claims in the Complaint to allow Class Counsel to confirm

whether the proposed Settlement is fair, reasonable and adequate. *Id.* at § II.

17.    The process began after the Stipulation was executed, and prior to the production

of documents, with Defendants submitting, on July 11, 2022, the proposed, negotiated

confidentiality order attached to the Stipulation as Exhibit H for the Court's approval. ECF 24.

The Court approved the agreement by Order dated July 12, 2022. ECF 25.

18.    Concurrent therewith, the parties agreed on the scope of discovery and reached an

agreement as to twenty-nine (29) categories of documents related to the claims in the Complaint.

Thereafter, based on the enormous volume of the production, Plaintiffs refined their requests for

targeted categories of documents. Based on the refined requests, Defendants produced 5.4 GB of

data across four volumes, containing 2,698 files in 16 folders.

19.    Class Counsel loaded Defendants' production onto their NextPoint e-discovery

document management database. From there, Class Counsel was able to review those documents

using targeted searches. To efficiently focus on the most relevant documents, Class Counsel used

the document platform's software tools to analyze and search the data. The documents were culled

based on legal issues, custodians, and relevant time periods in order to narrow the scope of the

review universe.

20.    Class Counsel reviewed an extensive volume of documents produced by

Defendants relating to the claims set forth in the Complaint. The review of the due-diligence

discovery confirmed to class Counsel that the Settlement was fair, reasonable and adequate. Following that review, Class Counsel notified Defendants on September 12, 2022, that Plaintiffs intend to proceed with the Settlement.

### E.    Reasons for the Settlement

21.    In deciding to settle, Class Representatives and Class Counsel took into consideration the significant risks associated with advancing the claims alleged in the operative complaint, the risks of surviving a motion to dismiss, certifying a class, and the complexity of likely additional proceedings, including *Daubert* motions directed at experts, summary judgment motions, and trial. The Settlement was achieved in the face of staunch opposition by Defendants who would have, had the Settlement not been reached, continued to raise serious challenges to each of the elements of Plaintiffs' claims. The Settlement eliminates these risks while providing a guaranteed recovery to the Settlement Class in a timely manner.

22.    In addition, Class Counsel considered the diminishing out-of-pocket losses when deciding whether to settle. Class Counsel consulted with an expert on damages who preliminarily estimated that the losses suffered by the Members of the Class were approximately $26 million. However, as the Fund continued its turn-around and continued to report positive returns, the out-of-pocket losses suffered by VLF investors who continued to hold, continued to diminish.

23.    The $1,400,000 Settlement, therefore, represents a recovery of approximately 5.4% of the provable out-of-pocket losses — a favorable recovery that is well within the range of reasonableness, particularly in light of the countervailing legal and factual arguments tenaciously pursued by Defendants and the attendant litigation risks.

## II.   CLASS REPRESENTATIVES' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER AND THE REACTION OF THE SETTLEMENT CLASS

24.     On November 21, 2022, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement (the "Preliminary Approval Order"). ECF 31. Pursuant to the Preliminary Approval Order, the Court: (i) preliminarily approved the Settlement finding that it will likely be able to finally approve the proposed Settlement as fair, reasonable and adequate under Fed. R. Civ. P. 23; (ii) preliminarily certified the Class for Settlement purposes, and preliminarily appointed Timothy O'Hern, Semyon Rodkin and Domenic Cardinale as the Class Representatives for the Class, and preliminarily approved Rosca Scarlato LLC as Class Counsel; (iii) approved the forms and content of the Postcard Notice, Long-Form Notice, Claim Form and Summary Notice, and approved the manner of providing notice to the Class. *Id.*

25.     Pursuant to the Preliminary Approval Order, the Court appointed Strategic Claims Services ("SCS") as the Claims Administrator and instructed SCS to disseminate copies of the Postcard Notice by first-class mail, postage prepaid, or by email, to all potential Class Members at the addresses set forth in the records VLF provided. In addition, the Court instructed SCS to publish the Summary Notice.

26.     Exhibit 4 hereto is the Declaration of Cornelia Viera Concerning (A) Mailing of the Notice to Class Members; (B) Mailing of the CAFA Notice; and (C) Report on Requests for Exclusion and Objections, dated March 13, 2023 (the "Mailing Declaration"). The Postcard Notice, attached as Exhibit B to the Mailing Declaration provides Class Members with information about the terms of the Settlement and, among other things: their right to opt-out of the Class; their right to object to the Settlement, the manner for submitting a Claim Form to be eligible for a payment from the net proceeds of the Settlement, and how to obtain additional information about the Settlement, including how to obtain or access the Long-Form Notice. The Postcard Notice also

Case 1:21-cv-00402-SRF Document 37 Filed 03/14/23 Page 10 of 114 PageID #: 419

informed Settlement Class Members of Class Counsel's intention to apply for an award of attorneys' fees of no more than 30% of the Settlement Fund, for payment of litigation expenses in an amount not to exceed $50,000, and for Incentive Awards to the Class Representatives not to exceed $30,000 in the aggregate.

27.     As detailed in the Mailing Declaration, on January 20, 2023, SCS mailed the Postcard Notice via first-class mail to 5,761 Class Members, and emailed the Postcard Notice to four Class Members for which a mailing address was not provided. *Id.* ¶5. In addition to the mailing and emailing of the Postcard Notice, to date, SCS has mailed the Long-Form Notice with a Clam Form to nine Class Members who so requested. *Id.* ¶6 and Exhibit C attached thereto.

28.     On January 30, 2023, SCS caused the Summary Notice to be published via *Globe Newswire* for dissemination across the internet. *Id*. at ¶7 and Exhibit C attached thereto.

29.     On January 20, 2023, SCS established a settlement webpage on its website at www.StrategicClaims.net/VLF, to provide Class Members with information, including the current case status, case deadlines, and important documents such as the Claim Form, the Long-Form Notice including the Plan of Allocation, the Postcard Notice, the Summary Notice, the Joint Stipulation and Order to Modify the Plan of Allocation and Correct Dates, the Preliminary Approval Order, the Stipulation, and the Complaint. *Id*. at ¶9.

30.     The Postcard Notice, Long-Form Notice, Summary Notice, Claim Form and Settlement webpage (collectively, the "Notice Program Documents") each informed Class Members that, in order to qualify for a payment from the Net Settlement Amount, a Claim Form must be timely filed either online at www.strategicclaims.net/VLF, or by mail, with a postmark of no later than March 21, 2023.

31.     Pursuant to the terms of the Preliminary Approval Order, and as set forth in the Notice Program Documents, the deadline for Class Members to submit objections to the Settlement is March 21, 2023, and the deadline to request exclusion from the Class is the same. To date, no objections to the Settlement or requests for exclusion from the Class have been received and the Claims Administrator. *Id*. at ¶¶10-11.

32.     Class Counsel will respond to any future objections and exclusion requests and report additional claim information in its reply papers, which are due April 11, 2023.

33.     The Mailing Declaration also demonstrates Defendants' compliance with the notice provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711-1715. *Id*. at ¶3.

## III.     PLAN OF ALLOCATION

34.     As set forth in the Long-Form Notice, after the deduction of Court-awarded attorneys' fees and expenses, Incentive Awards, Notice and Administration Expenses, Tax Expenses, and any other fees or expenses approved by the Court, the balance of the Settlement Fund (the "Net Settlement Amount") will be distributed to eligible claimants by the Claims Administrator according to the plan of allocation approved by the Court (the "Plan of Allocation" or "Plan").

35.     The proposed Plan of Allocation, which was set forth in full in the Long-Form Notice (Ex. C to Ex. 4 at ¶¶45-61), is designed to achieve an equitable and rational distribution of the Net Settlement Amount. The Plan treats all Class Members equitably. All Class Members that show a Recognized Loss Amount, and who submit timely, valid Claim Forms, ("Authorized Claimants"), will receive a *pro rata* share of the Net Settlement Amount. *Id.* at ¶¶49-50. The Plan focuses on out-of-pocket losses, and the Recognized Loss Amount is calculated based on the

amount that the Class Member paid for their VLF investments less any amounts received in return due to sale, redemption, or other disposal. *Id* at ¶50. For VLF interests still held as of December 31, 2022, the Recognized Loss Amount will be the dollar amount invested in VLF interests during the Class Period less the dollar value of those VLF interests still held as of December 31, 2022 as reflected on the Class Member's quarterly statement. *Id. See also* ECF 32. The Plan of Allocation provides for distribution of the Net Settlement Amount among Authorized Claimants on a *pro rata* basis based on their Recognized Loss Amounts calculated according to the Plan's formula. Class Counsel believes that the Plan provides a fair and reasonable method to equitably distribute the Net Settlement Amount among Authorized Claimants.

36.     The Court-approved Claims Administrator, SCS, under Class Counsel's direction, will determine the Authorized Claimant's Recognized Loss Amounts using the transactional information provided in their Claim Form. Claim Forms may be submitted to the Claims Administrator through the mail, online using the case webpage or via email. The Class Representatives' Recognized Loss Amounts will be determined in the same manner.

37.     After the Settlement becomes Final, in accordance with the terms of the Stipulation, the Plan of Allocation, any such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Amount will be distributed to Authorized Claimants. Any portion of the Net Settlement Amount that cannot be distributed pursuant to the Plan of Allocation shall be distributed pursuant to the *cy pres* doctrine, with a beneficiary or beneficiaries to be agreed upon by the Settling parties and approved by the Court.

38.     To date, there have been no objections to the proposed Plan of Allocation.

39.     In sum, the proposed Plan of Allocation was designed to fairly and rationally allocate the Net Settlement Amount among Authorized Claimants. Accordingly, Class Counsel

respectfully submits that the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

## IV.   CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES

40.     For their efforts on behalf of the Class Representatives and the Class, Class Counsel is applying for compensation from the Settlement Fund, on behalf of all Plaintiffs' Counsel on a percentage basis. As explained in Class Counsel's Fee Application, courts within the Third Circuit recognize that the percentage method is the appropriate method of fee recovery and the prevailing method of determining attorneys' fees in the Third Circuit.

41.     Consistent with the Notice Program Documents, Class Counsel seeks a fee award of 30% of the Settlement Fund, *i.e.,* $420,000, plus accrued interest, if any. Class Counsel also requests payment of its expenses incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $15,837.60, plus the Class Representatives' request for Incentive Awards of $30,000 in the aggregate for their efforts on behalf of the Class. Class Counsel submits that, for the reasons discussed below and in the accompanying Fee Application, such awards would be reasonable and appropriate under the circumstances before the Court.

### A.   Class Representatives Support the Settlement and the Fee and Expense Application

42.     The Class Representatives played a central role in monitoring and participating in the Action by, among other things, (i) providing key records to Class Counsel and helping identify individuals with knowledge and useful evidence, (ii) working with Class Counsel to flesh out the critical facts to support the legal theories in the pleadings, (iii) regularly communicating with Class Counsel regarding the posture and progress of the Action; (iv) reviewing and/or discussing significant pleadings, and briefs filed in the Action; (v) substantively participating in the mediation; and (vi) evaluating and approving the proposed Settlement. *See* Exs. 1-3 hereto.

43.     Class Representatives evaluated and fully support the Settlement and the Fee Application. *See id*. In coming to this conclusion, Class Representatives considered the efficient prosecution of the action, the amount and quality of the work performed, and the recovery obtained for the Class. Class Representatives agreed to allow Class Counsel to apply for 30% of the Settlement Fund.

**B.     The Favorable Settlement Achieved**

44.     Here, as described above, the $1.4 million Settlement is a favorable result, particularly when considered in view of the substantial risks and obstacles to recovery if the Action were to continue through decisions on class certification and summary judgment, to trial, and through likely post-trial motions and appeals.

45.     As set forth in detail above, the recovery obtained for the Class was the result of thorough and diligent investigative and prosecutorial efforts, complicated motion practice, and extensive discovery efforts. As a result of this Settlement, thousands of Class Members will benefit and receive compensation for their losses and avoid the very substantial risk of no recovery (or significantly less recovery) in the absence of a settlement.

**C.     The Risks and Unique Complexities of Contingent Class Action Litigation**

46.     This Action presented substantial challenges from the outset of the case. These case-specific risks, which were made evident to Class Counsel and Class Representatives through correspondence and in Defendants' mediation submissions.

47.     This Action was undertaken on a contingent basis. From the outset, Class Counsel understood that it was embarking on a complex and expensive litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Class Counsel and Plaintiffs' Counsel were obligated to ensure

that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and cover the considerable costs that a case such as this requires. With no promise of recovery, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Class Counsel received no compensation during the course of the over two years of prosecuting this Action but, along with other Plaintiffs' Counsel have dedicated 654.70 hours of time with a lodestar value of $505,967.50 and have incurred $15,837.60 in expenses in prosecuting the Action for the benefit of the Class. *See* Declarations of Plaintiffs' Counsel, Exs. 5 and 6 hereto.

48.     Even with the most vigorous and competent of efforts, success in contingent-fee litigation, such as this, is never assured. Class Counsel knows from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint, win at trial, or convince sophisticated defendants to engage in serious settlement negotiations at meaningful levels. Class Counsel is aware of many hard-fought lawsuits in which, because of the discovery of facts unknown when the case was commenced—like that which existed in the Action—or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of plaintiff's bar produced no fee for counsel.

49.     Federal appellate reports are filled with opinions affirming dismissals with prejudice in securities cases. The many appellate decisions affirming summary judgment and directed verdicts for defendants show that surviving a motion to dismiss is not a guarantee of recovery. *See, e.g.*, *In re Oracle Corp., Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Phillips v. Sci.-Atlanta, Inc.*, 489 F. App'x 339

(11th Cir. 2012); *In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68 (1st Cir. 2012); *McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007); *In re Digi Int'l, Inc. Sec. Litig.*, 14 F. App'x. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001).

50.     Even successfully certifying a class and successfully opposing a motion for summary judgment would not guarantee that Class Representatives would prevail at trial. Indeed, while only a few securities class actions have been tried before a jury, several have been lost in their entirety, such as *In re JDS Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL), slip op. (N.D. Cal. Nov. 27, 2007), or partially lost, such as *In re Clarent Corp. Securities Litigation*, Case No. C-01-3361 CRB, slip op. (N.D. Cal. Feb. 16, 2005).

51.     Even plaintiffs who succeed at trial may find their verdict overturned. *See, e.g.*, *In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542 (S.D. Fla. 2010) (after plaintiff's jury verdict, court granted defendants' motion for judgment as a matter of law on loss causation grounds), *aff'd*, 688 F. 3d 713 (11th Cir. 2012) (trial court erred, but defendants entitled to judgment as matter of law for lack of loss causation); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) (reversing plaintiff's jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiff's verdict obtained after two decades of litigation). And, the path to maintaining a favorable jury verdict can be arduous and time consuming. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 WL 5927988

(9th Cir. June 23, 2010) (trial court rejecting unanimous verdict for plaintiffs, which was later reinstated by the Ninth Circuit Court of Appeals) and judgment re-entered (*id.*) after denial by the United States Supreme Court of defendants' Petition for Writ of Certiorari (*Apollo Grp. Inc. v. Police Annuity & Benefit Fund*, 131 S. Ct. 1602 (2011)).

52.     As noted above, this case presented significant risk factors concerning liability and damages. Were this Settlement not achieved, and even if Class Representatives prevailed at trial, Class Representatives and Class Counsel potentially faced years of costly and risky appellate litigation against Defendants, with ultimate success far from certain and the prospect of no recovery significant. Class Counsel therefore respectfully submits that based upon the considerable risk factors present, this case involved a very substantial contingency risk to counsel.

### D.      The Time and Labor of Plaintiffs' Counsel

53.     The work undertaken by all of Plaintiffs' Counsel in investigating and prosecuting this case and arriving at the present Settlement in the face of serious hurdles, has been time-consuming and challenging. As explained above, counsel conducted a robust investigation into the class's claims; researched and prepared a comprehensive Complaint, drafted a detailed mediation statement, conducted an all-day arms-length mediation, continued with settlement discussions, negotiated and executed a Term Sheet, negotiated a complex Stipulation with exhibits, formulated an extensive Notice Program, reviewed extensive due-diligence discovery, prepared a motion for preliminary approval, and motion for final approval of the Settlement. Class Counsel's work will continue should the Settlement be approved as Class Counsel will be required to oversee the Claims and distribution process and report to the Court thereon.

54.     Attached as Exhibits 5 and 6 are the Declarations detailing Plaintiffs' Counsel's time and expenses. Included with these Declarations are schedules that report the amount of time

spent by the attorneys and professional staff of Plaintiffs' Counsel and the "lodestar" calculations, *i.e.,* their hours multiplied by their hourly rates.

55.     At all times throughout the pendency of the Action, Plaintiffs' Counsel's efforts were driven and focused on advancing the litigation to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible.

56.     The hourly rates of Plaintiffs' Counsel here range from $750 to $1,000 for partners, $695 for of counsels, $395 to $475 for associates, and $200 to $275 for paralegals. *See Id.* It is respectfully submitted that the hourly rates for Plaintiffs' Counsel are reasonable and customary for this type of complex and highly specialized commercial litigation.

57.     Plaintiffs' Counsel have expended 654.70 hours in the prosecution and investigation of the Action through March 14, 2023. *See* Exs. 5 and 6. The resulting lodestar is $505,967.50, which does not include any time that will necessarily be spent from this date forward administering the Settlement, preparing for and attending the Settlement Hearing, and assisting Class Members. *Id*. Pursuant to a lodestar "cross-check," applied within the Third Circuit, the requested fee of 30% of the Settlement Fund (or $420,000) results in a negative "multiplier" of 0.83 on the lodestar – meaning that Plaintiffs' Counsel are seeking less than their lodestar in fees.

### E.     The Skill Required and Quality of the Work

58.     Plaintiffs' Counsel are experienced and skilled class action litigation law firms. The expertise and experience of Plaintiffs' Counsel's attorneys are described in the firm resumes attached to Exhibits 5 and 6.

### F.     Standing and Caliber of Defendants' Counsel

59.     The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Defendants were

represented by Proskauer, a prestigious and highly experienced defense firm, which vigorously represents its clients. In the face of this experienced, formidable, and well-financed opposition, Class Counsel was nonetheless able to persuade Defendants to settle the case on terms favorable to the Class.

## V.    CLASS COUNSEL'S REQUEST FOR LITIGATION EXPENSES

60.    Class Counsel seeks payment from the Settlement Fund of $15,837.60 in Litigation Expenses reasonably and necessarily incurred by all Plaintiffs' Counsel in connection with prosecuting the claims against Defendants. *See* Exs. 5 and 6. The Notice Program Documents inform the Class that Class Counsel will apply for payment of Litigation Expenses of no more than $50,000. *See* Exhibits B, C, and D to Ex. 4 hereto. The amount requested is below this cap. To date, no objection to Class Counsel's request for expenses has been raised.

61.    As attested to, Plaintiffs' Counsel's expenses are reflected on the books and records maintained by Plaintiffs' Counsel. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. Plaintiffs' Counsel's Declarations identify the specific category of expense – *e.g.*, mediation fees, document management and storage fees, travel expenses, overnight delivery expenses, and miscellaneous expenses.

62.    A significant component of Plaintiffs' Counsel's expenses is Plaintiffs' share of the mediator costs, which total $13,150.00 or approximately 84% of the total request. *See* Ex. 5. Costs related to e-discovery total $477.03. *Id.* The remaining expenses are for anticipated travel and small items such as delivery/messengers ($159.00), and obtaining certificates of good standing, etc.

63.     All of the Litigation Expenses incurred, which total $15,837.60, were necessary to the successful prosecution and resolution of the claims against Defendants. Accordingly, it is respectfully submitted that the expenses incurred by Plaintiffs' Counsel should be paid in full from the Settlement Fund.

## VI.    CLASS REPRESENTATIVES' REQUEST FOR INCENTIVE AWARDS

64.     Additionally, Class Representatives seek Incentive Awards for the significant time and effort they dedicated to the representation of the Class in the amount of $10,000 for each of the three Class Representatives, for an aggregate amount of $30,000, which, when included with Plaintiffs' Counsel's expenses, is below the $50,000 that the Notice Program Documents informed the Class would be the cap on expenses. The amount of time and effort devoted to this Action by Class Representatives is detailed in the accompanying Declarations of Plaintiffs attached as Exhibits 1-3. Class Counsel respectfully submit that the amount requested by Class Representatives is warranted in the case, given the Class Representatives' extensive work, time, and dedication in advocating for the Class Members' interests.

65.     As more fully discussed in the Fee Application and in Class Representatives' supporting Declarations, Class Representatives have been committed to pursuing the Class's claims since they became involved in the Action. Class Representatives actively and effectively fulfilled their obligations as representatives of the Class, complying with all of the many demands placed upon them during the litigation and Settlement of the Action. For instance, Class Representatives (i) regularly communicated with Class Counsel regarding the posture and progress of the Action; (ii) reviewed pleadings, motions, mediation submissions and Settlement papers filed in the Action; (iii) discussed mediation strategy and attended the all-day mediation, and evaluated settlement proposals. *See id*.

66.     The efforts expended by Class Representatives during the course of the Action are precisely the types of activities courts have found support reimbursement to Class Representatives, and support Class Counsel's request.

## VII.    THE REACTION OF THE CLASS TO THE FEE AND EXPENSE APPLICATION

67.     As mentioned above, the Notice Program Documents advised Class Members that Class Counsel would seek an award of attorneys' fees not to exceed 30% of the Settlement Fund, and payment of expenses in an amount not greater than $50,000, and Incentive Awards not to exceed $30,000 in the aggregate for their representation of the Class. *See* Exhibits B through DE of Ex. 4. The Notice Program Documents have also been available on the case webpage maintained by the Claims Administrator since January 20, 2023. (*id.* at ¶9).

68.     While the deadline set by the Court for Class Members to object to the requested fees and expenses has not yet passed, to date no one has objected to the fee or expense request. Class Counsel will respond to any objections that may be received in its reply papers.

## VIII.   CONCLUSION

69.     In view of the significant recovery for the Class and the substantial risks of this litigation, as described above and in the accompanying motions, Class Representatives and Class Counsel respectfully submit that the Settlement should be approved as fair, reasonable, and adequate, and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate, the Class should be finally certified and the Judgment and Final Approval order should be entered. In view of the recovery in the face of substantial risks; the quality, efficiency, and amount of work performed; the contingent nature of the fee; and the standing and experience of Plaintiffs' Counsel, as described above and in the accompanying memorandum of law, Class Counsel respectfully submits that a fee in the amount of 30% of the Settlement Fund be awarded,

that its expenses in the amount of $15,837.60 be paid, and that Class Representatives be awarded

Incentive Awards of $10,000 each or $30,000 in the aggregate.

     I declare under penalty of perjury that the foregoing is true and correct. Executed on March

14, 2023.

*/s/ Paul J. Scarlato*

PAUL J. SCARLATO

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIDA LONGEVITY FUND, LP, *et al.*,<br><br>Defendants. | No. 1:21-cv-00402-LPS |

**DECLARATION OF TIMOTHY O'HERN**

I, Timothy O'Hern, hereby declare as follows:

1. I am one of the Plaintiffs in the above-captioned action (the "Action"). I submit this Declaration in support of (I) Plaintiffs' Motion for Final Approval of the Proposed Settlement, and (II) Plaintiffs' Motion for an Award of Attorneys' Fees, Payment of Expenses and Service Awards to Plaintiffs.

2. I live in the State of Kentucky. I have been a businessman and an investor for the substantial majority of my career. Since 1993, I have been the owner of a Papa John's franchisee that operates numerous units in multiple states primarily in the Midwest. Between 1995 and 2018, I served in various capacities at Papa John's, a publicly traded company listed on NASDAQ, from Construction Manager to Franchise Director, Vice President of Development, Senior Vice President of Development, and more recently Chief Development Officer of the company.

3. After ending my affiliation with Papa John's in 2018, I have helped manage my family's various business interests, including investments in private and publicly traded companies. As a business owner, senior officer of a publicly traded company, and investor, I have acquired substantial experience throughout my career with various aspects of running a large company, as well as with investments in a variety of investment opportunities.

4. At all relevant times to this matter, I have been an investor in Vida Longevity Fund, LP ("Vida"), the Defendant in this case. I invested a total of $200,000 of my savings in Vida, between 2017 and 2019. In early 2021, after I learned from Vida account statements that I suffered losses on that investment, I sought to learn more about Vida's situation and the reasons for those losses, and understand my legal rights and potential options to recover those losses.

5. Through my research over the Internet, I found our lead attorneys in this case, Alan Rosca and Paul Scarlato, and reached out to them regarding our Vida losses.

6. I had several email communications and phone calls with Mr. Rosca in connection with our Vida investments. I provided Vida-related records and information about my Vida investment to Mr. Rosca and his colleagues, to assist them evaluate my potential legal options.

7. Following our email communications and telephone conversations, I hired Mr. Rosca and his colleagues to represent me in this case and seek compensation for my Vida related losses.

8. Thereafter, I spent a significant amount of time obtaining and sending to my lawyers records and information related to Vida. Also, I reviewed important case documents including the complaint filed in this case and Plaintiffs' mediation statement, and kept in touch with them about the progress of my case.

9. In addition, I spoke and exchanged emails with my lawyer, Mr. Rosca and his colleagues, on a regular basis to learn about the status of the case and any developments, and provide information that he and his colleagues needed.

10. Throughout this entire matter, I conveyed my opinions to my lawyers about the important steps in the case, and I approved of their efforts to try and resolve the case. I attended the mediation via Zoom and conferred with my attorneys during the mediation, in an attempt to reach a resolution of this matter. While the mediation was not successful, I continued to communicate with my attorneys as they worked to try and resolve the case through subsequent negotiations with Defendants' counsel. Based on my understanding of the merits of this case and the strength of our claims, I also approved of the settlement they reached.

business of Vida and various facts alleged in the pleadings this case, I believe that the proposed settlement is fair, reasonable, and adequate, and should be approved. My support for the proposed settlement is based upon, among other things, my understanding of the allegations, defenses, and likelihood of success at trial based on the evidence collected in this case as explained to me by my lawyers.

12. I also support my attorneys' fee and expense reimbursement request. My attorneys worked diligently in this action since early 2021 without pay and spent their own money for case expenses, in order to achieve this Settlement that confers financial benefits to the class members, which benefits they would not have received absent this action and settlement. My attorneys routinely discussed the progress of the litigation with me and kept me informed through every stage of the litigation, beginning with the initial investigation through the mediation and subsequent settlement negotiations. In my opinion, my attorneys deserve the fee and expense reimbursement award they are seeking.

13. My attorneys are seeking an award of $10,000 for the time and effort I spent over the two years helping to investigate the claims alleged in this Action, providing relevant records and information, and supervising and assisting my attorneys in this litigation, including (1) helping my lawyers collect evidence regarding Vida's conduct, (2) communicating extensively with my counsel relating to their investigation, strategy and actions in the litigation, including the investigation, initiation, progress, status, and direction of the litigation and extensive settlement negotiations; (3) reviewing documents filed with the Court by both parties and other information provided by my attorneys in conjunction with this action; (4) searching for and retrieving documents and information to be produced in discovery; (5) participating in the remote mediation and conferring with my counsel during the subsequent settlement discussions.

14. From my initial interactions with attorney Rosca in early 2021 through today, I estimate that I have spent approximately 50 hours performing my duties as a class representative to help vindicate the rights of the Vida investors. Most of that time was spent during business hours and required me to turn my attention away from my work running my family's businesses and overseeing our various investment and business interests.

15. I have not received, been promised or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a Plaintiff in this action except any service award that the Court may grant in recognition of the time and effort I spent in the prosecution of this action and my contribution to achieving the benefits to be conferred on the class of Vida investors.

16. I do not have any claim or interest that is adverse to other Vida investors.

17. I declare under the penalty of perjury that the foregoing is true and correct. Executed on 13th day of March, 2023.

Timothy O'Hern

2

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                    **Plaintiffs,**<br><br>   v.<br><br>VIDA LONGEVITY FUND, LP, *et al.*,<br><br>                    **Defendants.** | No. 1:21-cv-00402-LPS |

## DECLARATION OF SEMYON RODKIN

I, Semyon Rodkin, hereby declare as follows:

1.      I am one of the Plaintiffs in the above-captioned action (the "Action"). I submit this Declaration in support of (I) Plaintiffs' Motion for Final Approval of the Proposed Settlement, and (II) Plaintiffs' Motion for an Award of Attorneys' Fees, Payment of Expenses and Service Awards to Plaintiffs.[1]

2.      I live in the State of New York. I am an engineer, hold a masters in mechanical engineering degree, and have helped design commercial, high-rise residential, affordable housing, hospitality, schools, retail, hospitals and building infrastructure projects. At all times relevant to this matter, I was a partner in Rodkin Cardinale P.C., an engineering consulting firm that specializes in engineering services for residential and commercial buildings, with a focus on green building design and energy efficiency, which I co-founded in 2004. In that capacity, I helped run

---

[1] Capitalized terms not defined here are defined in the Stipulation of Settlement (Dkt. 30-1, Ex. 2).

the company and substantively work on the company's various engineering projects. My partner in Rodkin Cardinale P.C. is Dominic Cardinale, who is also a Plaintiff in this case.

3.    At all relevant times to this matter, I have been an investor in Vida Longevity Fund, LP ("Vida"), the Defendant in this case. I invested a total of $250,000 of my savings in Vida, in 2018. In early 2021, after I learned from Vida account statements that I suffered losses on that investment, I spoke with my partner, Mr. Cardinale, who I knew was also a Vida investor, about our losses. We sought to learn more about Vida's situation and the reasons for those losses, and understand our legal rights and potential options to recover those losses.

4.    Through our research over the Internet, Mr. Cardinale and I found our lead attorneys in this case, Alan Rosca and Paul Scarlato, and reached out to them regarding our Vida losses.

5.    Mr. Cardinale and I had several email communications and phone calls with Mr. Rosca in connection with our Vida investments. I provided Vida-related records and information about my Vida investment to Mr. Rosca and his colleagues, to assist them evaluate our potential legal options.

6.    Following our email communications and telephone conversations, Mr. Cardinale and I hired Mr. Rosca and his colleagues to represent us in this case and seek compensation for our Vida related losses.

7.    Thereafter, I spent a significant amount of time obtaining and sending to my lawyers records and information related to Vida. Also, I reviewed important case documents including the complaint filed in this case and Plaintiffs' mediation statement, and kept in touch with them about the progress of our case.

8.      In addition, I spoke and exchanged emails with my lawyer, Mr. Rosca, on a regular basis to learn about the status of the case and any developments, and provide information that he and his colleagues needed.

9.      Throughout this entire matter, I conveyed my opinions to my lawyers about the important steps in the case, and I approved of their efforts to try and resolve the case. I attended the mediation via Zoom and conferred with my attorneys during the mediation, in an attempt to reach a resolution of this matter. While the mediation was not successful, I continued to communicate with my attorneys as they worked to try and resolve the case through subsequent negotiations with Defendants' counsel. Based on my understanding of the merits of this case and the strength of our claims, I also approved of the settlement they reached.

10.     I believe that the proposed settlement is fair, reasonable, and adequate, and should be approved. My support for the proposed settlement is based upon, among other things, my understanding of the allegations, defenses, and likelihood of success at trial based on the evidence collected in this case as explained to me by my lawyers.

11.     I also support my attorneys' fee and expense reimbursement request. My attorneys worked diligently in this action since early 2021 without pay and spent their own money for case expenses, in order to achieve this Settlement that confers financial benefits to the class members, which benefits they would not have received absent this action and settlement. My attorneys routinely discussed the progress of the litigation with me and kept me informed through every stage of the litigation, beginning with the initial investigation through the mediation and subsequent settlement negotiations. In my opinion, my attorneys deserve the fee and expense reimbursement award they are seeking.

12.     My attorneys are seeking an award of $10,000 for the time and effort I spent over the two years helping to investigate the claims alleged in this Action, providing relevant records and information, and supervising and assisting my attorneys in this litigation, including (1) helping my lawyers collect evidence regarding Vida's conduct, (2) communicating extensively with my counsel relating to their investigation, strategy and actions in the litigation, including the investigation, initiation, progress, status, and direction of the litigation and extensive settlement negotiations; (3) reviewing documents filed with the Court by both parties and other information provided by my attorneys in conjunction with this action; (4) searching for and retrieving documents and information to be produced in discovery; (5) participating in the remote mediation and conferring with my counsel during the subsequent settlement discussions.

13.     From my initial interactions with attorney Rosca in early 2021 through today, I estimate that I have spent over 60 hours performing my duties as a class representative to help vindicate the rights of the Vida investors. Most of that time was spent during business hours and required me to turn my attention away from my professional duties at Rodkin Cardinale. My professional hourly rate at Rodkin Cardinale is $250.00.

14.     I have not received, been promised or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a Plaintiff in this action except any service award that the Court may grant in recognition of the time and effort I spent in the prosecution of this action and my contribution to achieving the benefits to be conferred on the class of Vida investors.

15.     I do not have any claim or interest that is adverse to other Vida investors.

16.     I declare under the penalty of perjury that the foregoing is true and correct. Executed on 12 day of March, 2023.

Semyon Rodkin

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,

                                    **Plaintiffs,**

    v.

VIDA LONGEVITY FUND, LP, *et al.*,

                                    **Defendants.**

No. 1:21-cv-00402-LPS

## DECLARATION OF DOMINIC CARDINALE

I, Dominic Cardinale, hereby declare as follows:

    1.    I am one of the Plaintiffs in the above-captioned action (the "Action"). I submit this Declaration in support of (I) Plaintiffs' Motion for Final Approval of the Proposed Settlement, and (II) Plaintiffs' Motion for an Award of Attorneys' Fees, Payment of Expenses and Service Awards to Plaintiffs.[1]

    2.    I live in the State of New York. I am an engineer, and hold an engineering degree from Empire State College. At all times relevant to this matter, I was a partner in Rodkin Cardinale

---

[1] Capitalized terms not defined here are defined in the Stipulation of Settlement (Dkt. 30-1, Ex. 2).

P.C., an engineering consulting firm that specializes in engineering services for residential and commercial buildings, with a focus on green building design and energy efficiency, and thereafter a Principal with Skyline Engineering. In that capacity, I help run the company and substantively work on the company's various engineering projects. Prior to Rodkin Cardinale, I was a partner in another engineering firm for approximately 21 years. My partner in Rodkin Cardinale P.C. and thereafter Skyline Engineering has been Semyon Rodkin, who is also a Plaintiff in this case.

3.      At all relevant times to this matter, I have been an investor in Vida Longevity Fund, LP ("Vida"), the Defendant in this case. I invested a total of $250,000 of my savings in Vida, in 2018. In early 2021, after I learned from Vida account statements that I suffered losses on that investment, I spoke with my partner, Mr. Rodkin, who I knew was also a Vida investor, about our losses. We sought to learn more about Vida's situation and the reasons for those losses, and understand our legal rights and potential options to recover those losses.

4.      Through our research over the Internet, Mr. Rodkin and I found our lead attorneys in this case, Alan Rosca and Paul Scarlato, and reached out to them regarding our Vida losses.

5.      Mr. Rodkin and I had several email communications and phone calls with Mr. Rosca in connection with our Vida investments. I provided Vida-related records and information about my Vida investment to Mr. Rosca and his colleagues, to assist them evaluate our potential legal options.

6.      Following our email communications and telephone conversations, I hired Mr. Rosca and his colleagues to represent us in this case and seek compensation for our Vida related losses.

7.      Thereafter, I spent a significant amount of time obtaining and sending to my lawyers records and information related to Vida. Also, I reviewed important case documents

2

including the complaint filed in this case and Plaintiffs' mediation statement, and kept in touch with them about the progress of our case.

8.      In addition, I spoke and exchanged emails with my lawyer, Mr. Rosca, on a regular basis to learn about the status of the case and any developments, and provide information that he and his colleagues needed.

9.      Throughout this entire matter, I conveyed my opinions to my lawyers about the important steps in the case, and I approved of their efforts to try and resolve the case. I attended the mediation via Zoom and conferred with my attorneys during the mediation, in an attempt to reach a resolution of this matter. While the mediation was not successful, I continued to communicate with my attorneys as they worked to try and resolve the case through subsequent negotiations with Defendants' counsel. Based on my understanding of the merits of this case and the strength of our claims, I also approved of the settlement they reached.

10.      I believe that the proposed settlement is fair, reasonable, and adequate, and should be approved. My support for the proposed settlement is based upon, among other things, my understanding of the allegations, defenses, and likelihood of success at trial based on the evidence collected in this case as explained to me by my lawyers.

11.      I also support my attorneys' fee and expense reimbursement request. My attorneys worked diligently in this action since early 2021 without pay and spent their own money for case expenses, in order to achieve this Settlement that confers financial benefits to the class members, which benefits they would not have received absent this action and settlement. My attorneys routinely discussed the progress of the litigation with me and kept me informed through every stage of the litigation, beginning with the initial investigation through the mediation and

subsequent settlement negotiations. In my opinion, my attorneys deserve the fee and expense reimbursement award they are seeking.

12.     My attorneys are seeking an award of $10,000 for the time and effort I spent over the two years helping to investigate the claims alleged in this Action, providing relevant records and information, and supervising and assisting my attorneys in this litigation, including (1) helping my lawyers collect evidence regarding Vida's conduct, (2) communicating extensively with my counsel relating to their investigation, strategy and actions in the litigation, including the investigation, initiation, progress, status, and direction of the litigation and extensive settlement negotiations; (3) reviewing documents filed with the Court by both parties and other information provided by my attorneys in conjunction with this action; (4) searching for and retrieving documents and information to be produced in discovery; (5) participating in the remote mediation and conferring with my counsel during the subsequent settlement discussions.

13.     From my initial interactions with attorney Rosca in early 2021 through today, I estimate that I have spent over 60 hours performing my duties as a class representative to help vindicate the rights of the Vida investors. Most of that time was spent during business hours and required me to turn my attention away from my professional duties at Rodkin Cardinale. My professional hourly rate at Rodkin Cardinale is $250.

14.     I have not received, been promised or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a Plaintiff in this action except any service award that the Court may grant in recognition of the time and effort I spent in the prosecution of this action and my contribution to achieving the benefits to be conferred on the class of Vida investors.

15.     I do not have any claim or interest that is adverse to other Vida investors.

4

16.     I declare under the penalty of perjury that the foregoing is true and correct. Executed on 12th day of March, 2023.

Dominic Cardinale

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

TIMOTHY O'HERN, *et al.*, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiffs,

vs.

VIDA LONGEVITY FUND, LP, *et al.*,

        Defendants.

No. 1:21-cv-00402-SRF

## DECLARATION OF CORNELIA VIEIRA CONCERNING: (A) MAILING OF THE NOTICE TO CLASS MEMBERS; (B) MAILING OF THE CAFA NOTICE; AND (C) REPORT ON EXCLUSIONS AND OBJECTIONS

I, Cornelia Vieira, declare as follows:

1.    I am a Project Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein. I have over five years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred (500) class action cases since its inception.

2.    Pursuant to the Order Preliminarily Approving Proposed Settlement, dated November 21, 2022 (the "Preliminary Approval Order"), SCS was approved to serve as Claims Administrator[1] in connection with the Settlement of the above-captioned action. I submit this declaration in order to provide the Court and the Parties with information regarding the mailing of the Notice to Class Members, the mailing of CAFA notice, as well as updates concerning other aspects of the Settlement administration process.

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation of Settlement dated July 8, 2022 (the "Settlement Agreement").

## CAFA NOTICE

3.      On the dates of October 21, 2022 and October 24, 2022, SCS mailed a Notice of Proposed Class Action Settlement pursuant to Section 1715 of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ("CAFA"), to the 58 state and territories Attorneys General where Class Members resided, the United States Attorney General, and the Securities and Exchange Commission Chairman, by certified return receipt through the United States Postal Service. The mailing consisted of: (i) a letter regarding the Settlement approved by Defendants' Counsel describing the mailing (the "CAFA Letter"), and (ii) a CD-ROM containing copies of the documents referenced in the CAFA Letter. Attached as **Exhibit A** is a copy of the CAFA Letter that SCS mailed.

## MAILING AND EMAILING OF NOTICE TO CLASS MEMBERS

4.      SCS received the class list from Defendants' Counsel on December 22, 2022 containing 5,765 Class Members, with addresses noted for 5,761 Class Members, and email addresses noted for some Class Members.

5.      Pursuant to the Preliminary Approval Order, on January 20, 2023, SCS arranged for printing and mailing of a Postcard Notice via first-class mail to 5,761 Class Members. The class data was run through the United States Postal Service national change of address service to obtain new address information prior to the mailing. Furthermore, on January 20, 2023, SCS emailed the Postcard Notice to those 4 Class Members where no mailing address had been provided, for a total of 5,765 Postcard Notices sent. A copy of the Postcard Notice is attached as **Exhibit B.**

6.     In addition to the mailing and emailing of the Postcard Notice, to date SCS has mailed the Long-Form Notice with a Claim Form to 9 Class Members who so requested. A copy of the Long-Form Notice with Claim Form is attached as **Exhibit C**.

## PUBLICATION OF THE SUMMARY NOTICE

7.     Pursuant to the Preliminary Approval Order, the Summary Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Fairness Hearing, and (III) Motion for Attorneys' Fees and Litigation Expenses ("Summary Notice") was published in *Globe Newswire* on January 30, 2023, as shown in **Exhibit D.**

## TOLL-FREE PHONE LINE

8.     SCS maintains a toll-free telephone number (1-866-274-4004) for Class Members to call and obtain information about the Settlement. SCS has promptly responded to each telephone inquiry and will continue to address Class Member Inquiries.

## SETTLEMENT WEBSITE

9.     On January 20, 2023, SCS established a settlement webpage on its website at www.strategicclaims.net/VLF. The webpage is accessible 24 hours a day, 7 days a week.  The webpage contains the current status; the case deadlines; and the important documents such as the Claim Form, the Long-Form Notice including the Plan of Allocation, the Postcard Notice, the Summary Notice, the Joint Stipulation and Order to Modify Plan of Allocation and Correct Dates, the Preliminary Approval Order, the Motion for Preliminary Approval Order, the Settlement Agreement (including the exhibits), and the Complaint.

## REPORT ON EXCLUSIONS AND OBJECTIONS

10.     The notices and the settlement webpage informed Class Members that written requests for exclusion are to be mailed to SCS such that they are received no later than March

21, 2023. SCS has been monitoring all mail delivered for this case. As of the date of this declaration, SCS has received no exclusion requests.

11.     The notices and the settlement website informed Class Members that written objections to the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award must be filed with the Clerk of the Court, and mailed and emailed to Class Counsel and Defendants' Counsel by no later than March 21, 2023. As of the date of this declaration, SCS has not received any objections, and SCS has not been notified that an objection was filed.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 13th day of March 2023, in Media, Pennsylvania.

_____
Cornelia Vieira

# EXHIBIT A



Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

Jonathan E. Richman
Member of the Firm
d 212.969.3448
f 212.969.2900
jerichman@proskauer.com
www.proskauer.com

October 21, 2022

<u>By certified mail</u>

The Honorable Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Re:     ***O'Hern v. Vida Longevity Fund, LP,***
        **United States District Court for the District of Delaware,**
        <u>**Case No. 1:21-cv-00402-SRF**</u>

Dear Sir:

Pursuant to the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, this letter notifies you of a proposed settlement of a putative class action captioned *O'Hern v. Vida Longevity Fund, LP*, Case No. 1:21-cv-00402-SRF (D. Del.), brought under the Texas Securities Act (the "Action").

The CD enclosed with this notice includes copies of the following materials as PDF files readable with Adobe Acrobat:

| Exhibit | Description |
|---------|-------------|
| 1.      | Complaint in the Action, filed March 19, 2021. |
| 2.      | Stipulation of Settlement in the Action, dated as of July 8, 2022, attaching Exhibits A through H.  The Stipulation of Settlement was filed with the District Court on October 19, 2022 as Exhibit 2 to the Declaration of Paul J. Scarlato, together with Plaintiffs' memorandum in support of issuance of a preliminary approval order. |
| 3.      | Plaintiffs' memorandum of law in support of motion for issuance of a preliminary approval order in the Action, dated October 19, 2022. |

If you are unable to access, or prefer to receive paper copies of, any of the documents on the enclosed CD, please contact me.

# Proskauer≫

The Honorable Merrick B. Garland
October 21, 2022
Page 2

The Complaint included on the enclosed CD as Exhibit 1 satisfies the notice requirements of
28 U.S.C. § 1715(b)(l).

The Stipulation of Settlement included on the enclosed CD as part of Exhibit 2 satisfies the
notice requirements of 28 U.S.C. §§ 1715(b)(4)-(5).  The parties also executed a confidential,
nonpublic Supplemental Agreement concerning the Termination Threshold described in
Section XIV.D of the Stipulation of Settlement.  The Supplemental Agreement was not filed with
the court, but we will make it available to you on a confidential basis if necessary.

The proposed Postcard Notice, Long-Form Notice, Summary Notice, and Claim Form attached
as Exhibits D, E, F, and G, respectively, to the Stipulation of Settlement included on the enclosed
CD as part of Exhibit 2 satisfy the notice requirements of 28 U.S.C. § 1715(b)(3).

The court has not yet entered any final judgment or notice of dismissal.  However, the proposed
Approval Order and Final Judgment attached as Exhibits B and C, respectively, to the Stipulation
of Settlement included on the enclosed CD as part of Exhibit 2 address the notice requirements
of 28 U.S.C. § 1715(b)(6).

This notice and the accompanying materials are intended to satisfy any and all notification
obligations that Defendants might have under CAFA with respect to the Action.

Should you have any questions, please do not hesitate to contact me.

Sincerely,


Jonathan E. Richman

Enclosures

cc:    Alan L. Rosca, Esq. (w/o exhibits), Counsel for Plaintiffs and the class
       Paul Scarlato, Esq. (w/o exhibits), Counsel for Lead Plaintiffs and the class

# EXHIBIT B

VLB Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Ste. 205
Media, PA  19063

PRESORTED
FIRST-CLASS
MAIL U.S.
POSTAGE PAID

**Court-Ordered Legal Notice;**
**Forwarding Service Requested**

*Important Notice about a Securities*
*Class-Action Settlement*

*You might be entitled to a*
*payment.*
*This Notice might affect your legal*
*rights.*

*Please read it carefully.*

Mail ID
Name1
Name2
Address1
Address2
City, State, Zip

*Vida Longevity Fund Securities Litigation, Case No. 1:21-cv-00402-SRF (D. Del.)*

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*VISIT WWW.STRATEGICCLAIMS.NET/VLF OR CALL 1-866-274-4004 FOR MORE INFORMATION.*

The U.S. District Court for the District of Delaware (the "Court") has preliminarily approved a proposed Settlement of claims against Vida Longevity Fund, LP ("VLF") and various affiliated entities and persons (collectively, "Defendants"). The proposed Settlement would resolve a class-action lawsuit alleging that Defendants made false or misleading statements or omissions about VLF's valuation, valuation processes, and relations with affiliated parties. Defendants deny the allegations.

You received this notice because you might have purchased or acquired direct or indirect VLF limited-partnership interests between January 1, 2017 and March 19, 2021, inclusive, and you might be a Settlement Class Member. The Settlement provides that, in exchange for dismissal and release of claims against Defendants, Plaintiffs will pay $1,400,000. That amount, plus any interest earned, less attorneys' fees and expenses and any Incentive Award, will be divided among Settlement Class Members who timely submit valid Claim Forms. The proposed Settlement amounts to approximately 5.4% of total estimated net out-of-pocket losses before deduction of any fees and expenses. The average estimated recovery per $1,000 dollars of damaged VLF Interests could be approximately $54 before deduction of any fees and expenses. The actual amount paid to eligible Class Members who participate in the Settlement could be more or less than that figure, depending on the number of persons who submit valid Claim Forms. Plaintiffs and Defendants disagree about how much would be recoverable if Plaintiffs prevailed on their claims. Plaintiffs believe that the proposed Settlement is fair, reasonable, and in the best interests of the Class considering the strengths and weaknesses of the claims, the uncertainties of complex litigation, and the concrete benefits provided by the Settlement. Defendants have agreed to settle to avoid the continuing burden and expense of this Action. For a full description of your rights and to make a claim, please review the Stipulation of Settlement and obtain a copy of the Notice of Pendency and Proposed Settlement of Securities Class Action ("Notice") and Claim Form by visiting the website: www.strategicclaims.net/VLF (the "Website"). You may submit your claim online at the Website or request copies of the Notice and Claim Form by: (1) mail: VLF Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Ste. 205, Media, PA 19063; (2) toll-free call: (866) 274-4004; or (3) email: info@strategicclaims.net.

To qualify for payment, you must submit a Claim Form, which can be found on the Website. **Claim Forms are due by March 21, 2023,** and should be mailed to the address above or submitted electronically through the Website. If you do not want to be legally bound by the Settlement, you must exclude yourself by March 21, 2023. If you exclude yourself, you cannot get money from this Settlement. If you stay in the Settlement, you may object to it by March 21, 2023. The Notice explains how to exclude yourself or to object.

The Court will hold a hearing on April 18, 2023, at 1:00 p.m. (ET), at the United States District Court for the District of Delaware, 844 North King Street, Wilmington, DE 19801-3555, to consider whether to approve the Settlement, the Plan of Allocation, and a request by Lead Counsel for no more than 30% of the Settlement Amount for their attorneys' fees, plus up to $50,000 in expenses, and an Incentive Award to Plaintiffs of no more than $30,000 ($10,000 per Plaintiff) for their time and expenses in pursuing the Action. The proposed attorneys' fees and expenses represent approximately $19 per every $1,000 of damaged VLF Interests. Plaintiffs' counsel is Alan L. Rosca, Rosca Scarlato, LLC, 2000 Auburn Drive, Suite 200, Beachwood, Ohio 44122, (216) 946-7070. You may, but do not have to, attend the hearing and ask to be heard by the Court. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means.

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.,* Individually and on Behalf of All Others Similarly Situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**VIDA LONGEVITY FUND, LP,** *et al.,*<br><br>**Defendants.** | **No. 1:21-cv-00402-SRF** |

**NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

**This notice is about the proposed settlement of a securities class action against Vida Longevity Fund and affiliated defendants.  You might be a member of the class in that lawsuit, and you might be eligible to receive money under the proposed settlement.**

NOTICE OF PENDENCY OF CLASS ACTION:  Your rights might be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the District of Delaware (the "Court") if you purchased or otherwise acquired limited partnership interests of Vida Longevity Fund, LP ("VLF") during the period from January 1, 2017 through March 19, 2021, inclusive (the "Class Period").[1]

NOTICE OF SETTLEMENT:  The Court-appointed class representatives, Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale ("Plaintiffs"), on behalf of themselves and the Class (as defined in ¶ 18 below), have reached a proposed settlement of the Action for $1,400,000 in cash.

**PLEASE READ THIS NOTICE CAREFULLY.  It explains important rights you might have, including the possible receipt of a payment from the Settlement.  If you are a member of the Class, your legal rights will be affected whether or not you act.**

If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in it, please contact Class Counsel or the Claims Administrator (*see* ¶ 78 below).  DO NOT contact the Court, VLF, the other Defendants, or their counsel.

1. **Description of the Action and the Class:**  This Notice relates to a proposed settlement of claims in a class action brought by investors alleging that VLF and certain affiliated entities and persons (collectively, "Defendants") violated the Texas Securities Act by making false or

---

[1]     All capitalized terms not defined in this Notice have the meanings given to them in the Settlement Agreement dated July 8, 2022.  The Settlement Agreement is available at www.strategicclaims.net/VLF.

misleading statements about VLF's valuations, valuation methodology, and dealings with affiliated parties. A more detailed description of the Action is in ¶¶ 11-17 below. The proposed Settlement, if approved by the Court, will settle claims of the Class, as defined in ¶ 18 below.

2.    **Statement of the Class's Recovery:** Subject to Court approval, Plaintiffs, on behalf of themselves and the Class, have agreed to settle the Action in exchange for $1,400,000 in cash (the "Settlement Amount"), to be deposited into an escrow account. The Net Settlement Amount (*i.e.*, the Settlement Amount plus any interest earned (the "Settlement Fund") less (*i*) any Tax Expenses; (*ii*) any Notice and Administrative Expenses; and (*iii*) any attorneys' fees and expenses awarded by the Court, including any Incentive Award to Plaintiffs directly related to their representation of the Class) will be distributed to eligible Class Members in accordance with a Plan of Allocation that the Court approves. The proposed Plan of Allocation is in ¶¶ 45-61 below.

3.    **Estimate of Amount of Recovery:** Plaintiffs' damages expert calculated the estimated total out-of-pocket losses suffered by Class Members as $26 million. The proposed Settlement amounts to approximately 5.4% of estimated losses. That amount represents an estimated average recovery, before attorneys' fees and expenses, of approximately $54 for each $1,000 of damaged VLF Interests purchased or acquired during the Class Period. That amount, however, is only an estimate. Distributions of settlement relief to eligible Class Members will be made based on the Plan of Allocation set forth below (*see* ¶¶ 45-61) or such other plan of allocation as the Court might order.

4.    **Estimated Amount of Potential Recovery:** Plaintiffs and Defendants (the "Parties") do not agree on the estimated amount that would be recoverable if Plaintiffs were to prevail in the Action. Among other things, Defendants do not agree with the claim that they violated the Texas securities laws or that any Class Members suffered any damages as a result of Defendants' alleged conduct.

5.    **Attorneys' Fees and Expenses Sought:** Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis, have not received any payment of attorneys' fees for their representation of the Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, as well as for payment of expenses paid or incurred in connection with the institution, prosecution, and resolution of the Action in an amount not to exceed $50,000. Plaintiffs will apply for an Incentive Award, which will take into account the time they spent in pursuing the action as well as the reasonable costs and expenses they incurred directly related to their representation of the Class. The requested Incentive Award will not exceed $30,000 ($10,000 per Plaintiff). The proposed attorneys' fees and expenses represent approximately $19 for each $1,000 of damaged VLF Interests purchased or acquired during the Class Period. Any fees and expenses that the Court awards to Plaintiffs' Counsel and Plaintiffs will be paid from the Settlement Fund. Class Members are not personally liable for any such fees or expenses.

6.    **Identification of Attorneys' Representatives:** Plaintiffs and the Class are represented by Class Counsel:   Alan L. Rosca of Rosca Scarlato, LLC, 2000 Auburn Drive, Suite 200, Beachwood, Ohio 44122, (216) 946-7070, arosca@rscounsel.law; and Paul Scarlato of Rosca Scarlato, 161 Washington Street, Suite 1025, Conshohocken, Pennsylvania 19428, (216) 946-7070, pscarlato@rscounsel.law.

7.    **Reasons for the Settlement:** Plaintiffs' main reasons for entering into the Settlement include the substantial and certain recovery for the Class without the risk or delays inherent in further litigation. The substantial recovery under the Settlement must be considered against the significant risk that a smaller recovery—or no recovery at all—might be achieved after contested

motions, a trial, and the likely appeals that would follow.  That process could last several years.  Moreover, even if Plaintiffs could succeed in establishing liability, they would need to prove damages.  VLF's performance since the Action was filed has substantially reduced Plaintiffs' original expectations about potential damages.  Defendants, who deny all allegations of wrongdoing, are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further litigation.

| **YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT:** | |
|---|---|
| **SUBMIT A CLAIM FORM** *POSTMARKED* **NO LATER THAN MARCH 21, 2023.** | This is the only way to be eligible to receive a payment from the Settlement.  If you are a Class Member and you remain in the Class, you will be bound by the Settlement as approved by the Court, and you will give up any Released Class Claims (defined in ¶ 31 below) against Defendants and the other Releasees (defined in ¶ 32 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION THAT IS** *RECEIVED* **NO LATER THAN MARCH 21, 2023.** | If you exclude yourself from the Class, you will not be eligible to receive any payment from the Settlement.  This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Releasees concerning the Released Class Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION THAT IS** *RECEIVED* **NO LATER THAN MARCH 21, 2023.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, the request for attorneys' fees and expenses, or the proposed Incentive Award to Plaintiffs, you may write to the Court and explain why you do not like them.  You cannot object to any of those matters unless you are a Class Member and do not exclude yourself from the Class. |
| **GO TO A HEARING ON APRIL 18, 2023 AT 1:00 P.M. (ET), AND FILE A NOTICE OF INTENTION TO APPEAR THAT IS** *RECEIVED* **NO LATER THAN MARCH 21, 2023.** | If you file a written objection and notice of intention to appear by March 21, 2023, you may speak in Court, at the Court's discretion, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses or the Incentive Award to Plaintiffs.  If you submit a written objection, you may (but do not have to) attend the hearing and, at the Court's discretion, speak about your objection.  The Court may change the date of the Fairness Hearing and may also order that the Hearing be held by telephone or videoconference, in which case instructions about date, time, and how to participate will be posted on www.strategicclaims.net/VLF. |
| **DO NOTHING.** | If you are a member of the Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement.  You will, however, remain a member of the Class, which means that you give up your right to sue about the claims that are resolved by the Settlement, and you will be bound by any orders or judgment entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice?                                                   Page 4
What Is This Case About?                                                     Page 5
How Do I Know If I Am Affected By The Settlement?
    Who Is Included In The Class?                                            Page 5
What Are Plaintiffs' Reasons For Settling?                                   Page 6
What Might Happen Without A Settlement?                                      Page 7
How Are Class Members Affected By The Action And The Settlement?             Page 7
How Do I Participate In The Settlement?  What Do I Need To Do?               Page 9
How Much Will My Payment Be?                                                 Page 10
What Payment Are The Attorneys For The Class Seeking?
    How Will The Lawyers Be Paid?                                            Page 13
What If I Do Not Want To Be A Member Of The Class?
    How Do I Exclude Myself?                                                 Page 13
When And Where Will The Court Decide Whether To Approve The
    Settlement? Do I Have To Participate In The Hearing?  May I Speak At
    The Hearing If I Don't Like The Settlement?                             Page 14
What If I Bought VLF Interests On Someone Else's Behalf?                     Page 16
Can I See The Court File?  Whom Should I Contact If I Have Questions?        Page 16

## WHY DID I GET THIS NOTICE?

8.     The Court directed that you be notified of the proposed Settlement because you or someone in your family or an investment account for which you serve as a custodian might have purchased or otherwise acquired VLF Interests (limited partnership interests in VLF, purchased either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those limited partnership interests) during the Class Period (January 1, 2017 through March 19, 2021, inclusive).  You therefore might be a Class Member in this Action, so you have a right to know about your options before the Court rules on the Settlement.  You also are entitled to understand how this class action might generally affect your legal rights.

9.     This Notice is to inform you of the existence of this case, that it is a class action, how you might be affected by it, and how to exclude yourself from the Class if you wish to do so.  The Notice is also to inform you of the terms of the proposed Settlement, of your right to object to it, and of a court hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and litigation expenses, and Plaintiffs' application for an Incentive Award (the "Fairness Hearing").  *See* ¶¶ 68-71 below for details about the Fairness Hearing.

10.    This Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a Plan of Allocation, payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

| WHAT IS THIS CASE ABOUT? |
|---|

11.   VLF is a limited partnership that invests in life-settlement assets.  Plaintiffs allege that, during the Class Period, VLF's offering materials made false or misleading statements and omissions that inflated the price or value of VLF Interests.  Defendants deny those allegations.

12.   On March 19, 2021, Plaintiffs filed a class-action complaint in the Court asserting claims under the Texas Securities Act against VLF, its general partner, the general partner's control person, and other persons and entities affiliated with them.  The Complaint charges that VLF's performance began to deteriorate in 2018 and that VLF attributed that performance to certain one-time or extrinsic events, but failed to disclose that its losses had resulted from weaknesses in VLF's internal processes and procedures for evaluating and pricing the fund's investments.  VLF also allegedly failed to disclose supposed conflicts of interest involving its founder.

13.   Pursuant to the Parties' and the Court's agreement, Defendants did not respond to the Complaint.  Instead, the Parties decided to explore whether they could resolve the case without expensive, time-consuming, and burdensome litigation.

14.   The Parties participated in a full-day mediation on October 14, 2021 with Jed D. Melnick, Esq., of JAMS (the "Mediator"), but did not reach an agreement.  After further discussions over the next several months, the Parties signed an agreement in principle on January 5, 2022 to settle the Action for $1,400,000, subject to certain terms and conditions, including execution of a formal settlement agreement, Plaintiffs' conducting Due-Diligence Discovery, and approval by the Court.

15.   On July 8, 2022, the Parties entered into the Settlement Agreement, which contains the complete terms and conditions of the Settlement.  The Settlement Agreement is available at www.strategicclaims.net/VLF.  You should read it if you want a full understanding of its terms.

16.   The Settlement Agreement was subject to Plaintiffs' completion of Due-Diligence Discovery to confirm the fairness of the Settlement.  Pursuant to the Settlement Agreement, Plaintiffs could withdraw from and terminate the Settlement if information produced during Due-Diligence Discovery caused them reasonably and in good faith to conclude that the proposed Settlement was not fair, reasonable, and adequate.  After conducting that discovery, Plaintiffs chose to proceed with the Settlement.

17.   On November 21, 2022, the Court preliminarily approved the Settlement, authorized notice to be disseminated to potential Class Members, and scheduled the Fairness Hearing to consider whether to grant final approval of the Settlement.

| HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE CLASS? |
|---|

18.   If you are a member of the Class, you are subject to the Settlement unless you timely and validly request to be excluded from it.  The Class consists of:

All persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive (the "Class Period"), purchased or otherwise acquired VLF limited partnership interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests.

Excluded from the Class are:

a.  such persons or entities who submit valid and timely requests for exclusion from the Class (for information on how to request exclusion, see "What If I Do Not Want To Be A Member Of The Class?  How Do I Exclude Myself?" on page 13 below);

b.  such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees (defined below in ¶ 32) arising out of or related to the Released Class Claims (defined below in ¶ 31); and

c.  Defendants; the agents or employees of Defendants; any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants during the Class Period (*provided, however,* that the term "affiliate" or "affiliated with" does not include Life Assets Trust S.A. Compartments VII and VIII); and any judge or judicial officer who may hear any aspect of this case, and his or her law clerks.

**PLEASE NOTE:  Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to a payment from the Settlement.**

**If you are a Class Member and you wish to be eligible to receive a payment from the Settlement, you must submit the Claim Form that is available with this Notice, as well as the required supporting documentation described in the Claim Form, postmarked no later than March 21, 2023.**

## WHAT ARE PLAINTIFFS' REASONS FOR SETTLING?

19.  Plaintiffs and Plaintiffs' Counsel believe that the claims asserted against Defendants have merit.  They recognize, however, the difficulties, expense, and length of continued proceedings necessary to pursue their claims through motion practice, trial, and appeal, as well as the risks they would face in establishing liability and damages.

20.  Without a settlement, Defendants would move to dismiss the Complaint, and Plaintiffs would face significant hurdles in defeating that motion.  But even if Plaintiffs were to succeed in doing so, they would face additional challenges in developing facts to survive summary judgment or to prove Defendants' liability at trial.  Plaintiffs would face challenges showing that Defendants' statements about VLF's valuations and valuation processes were materially false or misleading.  Defendants likely would contend that, because VLF's life-settlement assets do not have objectively ascertainable market values, valuations of those assets are inherently subjective, and Defendants did not misrepresent their opinions or beliefs about those assets.  Defendants also would likely contend that they adhered to and did not misrepresent the valuation processes and methodologies described in VLF's offering materials, that they used reputable and independent valuation agents and auditors, and that the alleged relationships between VLF and its founder were sufficiently disclosed.

21.  Moreover, even if Plaintiffs could succeed in establishing liability, they would need to prove damages.  VLF's performance since the Action was filed has substantially reduced Plaintiffs' original expectations about potential damages.

22.  In light of these risks, the amount of the Settlement, the immediacy of recovery to the Class, and the Due-Diligence Discovery that Plaintiffs conducted, Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class.  They believe that the Settlement provides a substantial benefit to the Class, namely $1,400,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action could produce a smaller recovery, or no recovery, after motion practice, potential trial, and appeal, possibly years in the future.

23.   Defendants deny the claims asserted against them and deny that the Class was harmed by or suffered any damages from the conduct alleged in the Action.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN WITHOUT A SETTLEMENT?

24.   If there were no Settlement, and if Plaintiffs failed to establish any essential legal or factual element of their claims, neither Plaintiffs nor the other members of the Class would recover anything from Defendants.  Also, if Defendants were successful on a motion to dismiss or in proving any of their defenses at summary judgment, at trial, or on appeal, the Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

## HOW ARE CLASS MEMBERS AFFECTED
## BY THE ACTION AND THE SETTLEMENT?

25.   As a Class Member, you are represented by Plaintiffs and Class Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You do not need to retain your own counsel, but, if you choose to do so, he or she must file a notice of appearance on your behalf and must serve copies of that notice on the attorneys listed in the section titled "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

26.   If you are a Class Member and wish to remain in the Class, you may **file a claim** for money from the Settlement Fund by following the instructions in the section titled "How Do I Participate In The Settlement?  What Do I Need To Do?," below.

27.   If you are a potential Class Member and do *not* wish to remain in the Class, you may **exclude yourself** from the Class by following the instructions in the section titled "What If I Do Not Want To Be A Member Of The Class?  How Do I Exclude Myself?," below.

28.   If you are a Class Member and wish to **object** to the Settlement, the Plan of Allocation, Plaintiffs' Counsel's application for attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award, and if you do not exclude yourself from the Class, you may present your objections by following the instructions in the section titled "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

29.   If you are a Class Member and do not exclude yourself from the Class, you will be bound by any orders issued by the Court even if you have pending or later file any claim or lawsuit against the Releasees (as defined in ¶ 32 below) relating to the Released Class Claims (as defined in ¶ 31 below).  If the Settlement is approved, the Court will enter a final approval order (the "Approval Order") and a judgment (the "Judgment").  The Approval Order and Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Final Settlement Date, Plaintiffs and all other Class Members, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such (the "Releasors"), or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.   all Released Class Claims (as defined in ¶ 31 below) against each and every one of the Releasees (as defined in ¶ 32 below);

b.  all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

c.  all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP) or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

30. In addition, the Judgment and Approval Order will provide that:

a.  all Class Members (and their attorneys, accountants, agents, advisors, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims; and

b.  all persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims.

31. "Released Class Claims" means each and every Claim that existed as of, on, or before the Execution Date and that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees arising out of or relating to any of the Operative Facts (as defined in the Stipulation of Settlement) or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim also arises out of or relates to the purchase or other acquisition of VLF Interests, or to any other Investment Decision, during the Class Period; *provided, however,* that the term "Released Class Claims" does not include (*i*) any Suitability Claim, (*ii*) any claims asserted in any shareholder derivative action on behalf of VLF, or (*iii*) any claims to enforce the Settlement Agreement

32.  "Releasees" means VLF; the other Defendants; Defendants' Affiliates; each of Defendant's current and former officers, directors, employees, agents, representatives, counsel, advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers; and other certain persons and entities affiliated with or related to them. The full definition of Releasees is set forth in the Settlement Agreement, available at www.strategicclaims.net/VLF.

33.  The Judgment and Approval Order will also provide that, upon the Final Settlement Date, all Releasees, and anyone purporting to act on behalf of, for the benefit of, or derivatively for any of them, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to Released Releasees' Claims.

34.  "Released Releasees Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee (including Defendants and their successors and assigns), or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Plaintiffs, any other Class Members, or any of their respective attorneys (including, without limitation, Plaintiffs' Counsel), and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of the Settlement Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

35.  To be eligible for a payment from the Settlement, you must be a member of the Class and must timely complete and return the Claim Form with adequate supporting documentation *postmarked* **no later than March 21, 2023**.  A Claim Form is available with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.strategicclaims.net/VLF.  You may also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at 1-866-274-4004 or by emailing the Claims Administrator at info@strategicclaims.net.  Please retain all records of your ownership of and transactions in VLF Interests, as they will be needed to document your Claim.  The Parties and the Claims Administrator might not have information about your transactions in VLF Interests.

36.  If you request exclusion from the Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Amount.  You should not submit a Claim Form if you request exclusion from the Class.

37.  Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked on or before March 21, 2023 will be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a member of the Class and be bound by the provisions of the Settlement Agreement, including the terms of any Judgment entered and the releases given.  This means that each Class Member releases the Released Class Claims (as defined in ¶ 31 above) against the Releasees (as defined in ¶ 32 above) and will be barred and enjoined from prosecuting any of the Released Class Claims against any of the Releasees whether or not such Class Member submits a Claim Form.

38.   The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

39.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court as to his, her, or its Claim Form.

## HOW MUCH WILL MY PAYMENT BE?

40.   At this time, it is not possible to determine how much any individual Class Member might receive from the Settlement.

41.   Pursuant to the Settlement, Defendants have agreed to pay or cause to be paid a total of $1,400,000 in cash (the "Settlement Amount").  The Settlement Amount will be deposited into an escrow account.  The Settlement Amount plus any interest earned on it is called the "Settlement Fund."  If the Settlement is approved by the Court, and if the Final Settlement Date occurs, the "Net Settlement Amount" (that is, the Settlement Fund less (*i*) any Tax Expenses, (ii) any Notice and Administrative Expenses, and (iii) any attorneys' fees and expenses awarded to Plaintiffs' Counsel and any Incentive Award to Plaintiffs) will be distributed to Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court might approve.

42.   The Net Settlement Amount will not be distributed unless and until the Court has approved the Settlement and a Plan of Allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

43.   Defendants are not entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Amount, or the Plan of Allocation.

44.   Approval of the Settlement is independent from approval of a Plan of Allocation.  Any determination about a Plan of Allocation will not affect the Settlement, if approved.

## PROPOSED PLAN OF ALLOCATION

45.   The Plan of Allocation seeks to distribute the Net Settlement Amount fairly to those Class Members who filed timely, valid Claim Forms and suffered economic loss as a result of the alleged violations of the Texas securities laws.  Calculations made under the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are those calculations intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement.  Computations under the Plan of Allocation are only a method to weigh the claims of Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Amount.

46.   For losses to be compensable damages under the Texas securities laws, the disclosure of the allegedly misrepresented information must have been the cause of the decline in the price or value of the VLF Interests.  In this case, Plaintiffs allege that Defendants made false statements and omitted material facts that had the effect of artificially inflating the price or value of VLF Interests.

47.   In developing the Plan of Allocation, Plaintiffs' damages expert calculated the estimated total out-of-pocket losses allegedly suffered by Class Members.

48.   Recognized Loss Amounts for transactions in VLF Interests are calculated under the Plan of Allocation as explained in ¶ 50 below.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

49.   Based on the formula stated below, a "Recognized Loss Amount" will be calculated for each purchase of VLF Interests during the Class Period that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, the Recognized Loss Amount for that transaction will be zero.

50.   Each Authorized Claimant will be allocated a *pro rata* share of the Net Settlement Amount based on his, her, or its Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants.  Recognized Loss Amounts will be calculated as follows for VLF Interests purchased or acquired (including free receipts) during the Class Period:

- For VLF Interests sold, redeemed, or otherwise disposed of before December 31, 2022, the Recognized Loss Amount is the dollar amount invested in those specific VLF Interests during the Class Period less the dollar value received from the sale, redemption, or other disposition of those VLF Interests.

- For VLF Interests still held as of December 31, 2022, the Recognized Loss Amount is the dollar amount invested in VLF Interests during the Class Period less the dollar value of those VLF Interests still held as of the last day of the quarter preceding the initially scheduled date for the Fairness Hearing, as reflected on your quarterly statement.

## ADDITIONAL PROVISIONS

51.   The Net Settlement Amount will be allocated among all Authorized Claimants whose Distribution Amount (defined in ¶ 57 below) is $10.00 or greater.

52.   **Calculation of Claimant's "Recognized Claim":**  A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above for all purchases of VLF Interests during the Class Period.

53.   **FIFO Matching:**  If a Class Member made more than one purchase/acquisition or sale/redemption of VLF Interests during the Class Period, all purchases/acquisitions and sales/redemptions will be matched on a First In, First Out ("FIFO") basis.  Class Period sales/redemptions will be matched first against any holdings of VLF Interests at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

54.   **"Purchase/Sale" Dates:**  Purchases of VLF Interests will be deemed to have occurred on the date when a limited partner was admitted to VLF, as opposed to the payment date. Redemptions of VLF Interests will be deemed to have occurred on the applicable redemption date, and sales of VLF Interests will be deemed to have occurred on the date when the transferee was admitted to VLF.  "Purchases" eligible under the Settlement and this Plan of Allocation include all purchases or other acquisitions of VLF Interests in exchange for value, as long as the purchase is adequately documented.  However, the receipt or grant of VLF Interests by gift, inheritance, or operation of law during the Class Period shall not be deemed a purchase or sale/redemption for the calculation of a Claimant's Recognized Loss Amount; nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/sale of the VLF Interests unless (*i*) the donor or decedent purchased the VLF Interests during the Class Period; (*ii*) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (*iii*) no Claim was submitted by or on behalf of the donor, the decedent, or anyone else as to those VLF Interests.

55.   **Total Gains and Losses:**  The Claims Administrator will determine whether the Claimant had a "Total Gain" or a "Total Loss" on his, her, or its overall transactions in VLF Interests during the Class Period based on the calculation of Recognized Loss Amounts as defined in ¶ 50.

56.   If a Claimant had a Total Gain from his, her, or its overall transactions in VLF Interests, the value of the Claimant's Recognized Claim will be zero, and the Claimant will not be eligible to receive a payment in the Settlement, but will nonetheless be bound by the Settlement.  If a Claimant suffered an overall Total Loss from his, her, or its overall transactions in VLF Interests, but that Total Loss was less than the Claimant's Recognized Claim, then the Claimant's Recognized Claim will be limited to the amount of the Total Loss.

57.   **Determination of Distribution Amount:**  The Net Settlement Amount will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. A "Distribution Amount" will be calculated for each Authorized Claimant.  That Distribution Amount shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Amount.

58.   If an Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant.

59.   After the initial distribution of the Net Settlement Amount, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. If any monies remain after the initial distribution, and if Class Counsel, in consultation with the Claims Administrator, determine that an additional distribution would be cost-effective, the Claims Administrator, no less than seven (7) months after the initial distribution, will redistribute the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution, to Authorized Claimants who cashed their initial distributions and would receive at least $10.00 from such redistribution.  Additional redistributions to Authorized Claimants who cashed their prior checks and would receive at least $10.00 in such additional redistributions may occur thereafter if Class Counsel, in consultation with the Claims Administrator, determine that additional redistributions, after the deduction of any additional fees and expenses incurred in administering the Settlement (including for such redistributions), would be cost-effective.  At such time as it is determined that the redistribution of any remaining funds would not be cost-effective, Class Counsel will distribute the remaining amount to one or more nonprofit organizations to be agreed upon by the Settling Parties and approved by the Court.

60.   Payment pursuant to the proposed Plan of Allocation, or such other plan of allocation as the Court may approve, will be conclusive against all Claimants.  No person or entity shall have any claim against the Settling Parties, their respective counsel, any other Releasees, the Claims Administrator, or any other agent designated by Class Counsel arising from distributions made substantially in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or any order of the Court.  The Settling Parties, their respective counsel, and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Amount, any Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

61.   The Plan of Allocation set forth herein is the plan that Plaintiffs, after consultation with their damages expert, are proposing to the Court for approval.  The Court may approve this plan as proposed, or it may modify the Plan of Allocation without further notice to the Class.  Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.strategicclaims.net/VLF.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?
## HOW WILL THE LAWYERS BE PAID?

62.   Plaintiffs' Counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Class; nor have Plaintiffs' Counsel been paid for their litigation expenses.  Before final approval of the Settlement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount. Plaintiffs' Counsel have a retention agreement with Plaintiffs that provides for a contingency fee to be awarded to Plaintiffs' Counsel after approval by the Court.  When they file a motion for attorneys' fees, Plaintiffs' Counsel will also apply for payment of litigation expenses paid or incurred by Plaintiffs' Counsel in an amount not to exceed $50,000, and for an Incentive Award to Plaintiffs directly related to their representation of the Class, in an amount not to exceed $30,0000 ($10,000 per Plaintiff).  The Court will determine the amount of any award of attorneys' fees and expenses to Plaintiffs' Counsel or any Incentive Award to Plaintiffs.  Whatever amounts the Court might approve will be paid from the Settlement Fund.  Class Members will not be personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE CLASS?
## HOW DO I EXCLUDE MYSELF?

63.   Each Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Class, addressed to *VLF Securities Litigation*, EXCLUSIONS, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063.  The request for exclusion must be ***received*** **no later than March 21, 2023**.  You will not be able to exclude yourself from the Class after that date.

64.   A potential Class Member's request for exclusion must include the following information: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a statement that the potential Class Member wishes to request exclusion from the Class in *O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.), (*vi*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vii*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*viii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and December 31, 2022, (*ix*) the date of each such transaction involving each such VLF Interest, (*x*) account statements verifying all such transactions, and (*xi*) the signature of the person or entity requesting exclusion or of an authorized representative.  A request for exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

65.   If you do not want to be part of the Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Class Claim against any of the Releasees.

66.   If you ask to be excluded from the Class, you will not be eligible to receive any payment from the Net Settlement Amount.

67.   Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds an amount agreed to by the Settling Parties.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO PARTICIPATE IN THE HEARING?  MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

68.   The Fairness Hearing will be held on **April 18, 2023 at 1:00 p.m. (ET)**, before Magistrate Judge Sherry R. Fallon, either in-person at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801-3555, or by telephone or video, to determine, among other things, (*i*) whether the proposed Settlement as provided for in the Settlement Agreement is fair, reasonable, and adequate to the Class and should be finally approved; (*ii*) whether, for purposes of the Settlement only, the Action should be certified as a class action on behalf of the Class, Plaintiffs should be certified as representatives for the Class, and Class Counsel should be appointed as counsel for the Class; (*iii*) whether the Action should be dismissed with prejudice against Defendants and whether the Releases specified in the Settlement Agreement (and in this Notice) should be granted; (*iv*) whether the proposed Plan of Allocation should be approved as fair and reasonable; (*v*) whether Plaintiffs' Counsel's motion for attorneys' fees and expenses and Plaintiffs' motion for an Incentive Award should be approved; and (*vi*) any other matters that may properly be brought before the Court in connection with the Settlement.  The Court reserves the right to certify the Class; approve the Settlement, the Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and expenses, and Plaintiffs' application for an Incentive Award; and/or consider any other matter related to the Settlement at or after the Fairness Hearing without further notice to the members of the Class.

69.   **Please Note:** The date and time of the Fairness Hearing may change without further written notice to the Class.  In addition, the Court might decide to conduct the Fairness Hearing by telephonic or video conference, or otherwise allow counsel for the Parties and for Class Members to appear at the hearing by phone or video, without further written notice to the Class.  **To determine whether the date and time of the Fairness Hearing have changed, or whether Class Members must or may participate by phone or video, you should monitor the Court's docket and the Settlement website, www.strategicclaims.net/VLF, before making plans to attend the Fairness Hearing in person.**  Any updates about the Fairness Hearing, including any changes to the date or time of the hearing or updates about in-person, telephonic, or video appearances at the hearing, will be posted to the Settlement website, www.strategicclaims.net/VLF.  Also, if the Court requires or allows Class Members to participate in the Fairness Hearing by telephone or video, the information for accessing the hearing will be posted to the website.

70.   Class Members do not need to participate in the Fairness Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Class Member does not speak at or otherwise observe the hearing.  You can participate in the Settlement without attending the Fairness Hearing.  You do not need to appear at the Fairness Hearing or take any other action to show your approval of the Settlement.

71.   Any Class Member who does not request exclusion from the Class may object to the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award.  Objections must be in writing.  You must **file** any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the District of Delaware at the address set forth below **on or before March 21, 2023**.  You must also serve the papers on Class Counsel and Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before March 21, 2023**.

14

| **Clerk's Office** | **Class Counsel** | **Defendants' Counsel** |
|---|---|---|
| Clerk of Court<br>United States District Court<br>  for the District of Delaware<br>J. Caleb Boggs Federal<br>  Building<br>844 North King Street<br>Wilmington, DE 19801 | Alan L. Rosca, Esq.<br>Rosca Scarlato, LLC<br>2000 Auburn Drive, Suite 200<br>Beachwood, OH 44122 | Joshua M. Newville, Esq.<br>Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036 |

You must also ***email*** the objection and any supporting papers **on or before March 21, 2023** to arosca@rscounsel.law and jnewville@proskauer.com.

72.    Any objection must state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection, and shall state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class.  In addition to the reason(s) for the objection, an objection must also include the name and docket number of this case (*O'Hern v. Vida Longevity Fund, LP*, No. 1:21-cv-00402-SRF (D. Del.)) and the following information about the Class Member:   (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) the dollars subscribed to VLF Interests held as of the beginning of the day on January 1, 2017, (*vi*) the dollars subscribed to VLF Interests purchased or otherwise acquired between January 1, 2017 through the end of the day on March 19, 2021, (*vii*) the dollar value of VLF Interests sold or redeemed between January 1, 2017 and December 31, 2022, (*viii*) the date of each such transaction involving each such VLF Interest, and (*ix*) account statements verifying all such transactions.  You may not object to any aspect of the Settlement if you exclude yourself from the Class or are not a member of the Class.

73.    You may file a written objection without having to speak at the Fairness Hearing.  You may not, however, speak at the Fairness Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

74.    If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for an award of attorneys' fees and expenses, or Plaintiffs' application for an Incentive Award, and if you have timely filed and served a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Class Counsel and Defendants' Counsel at the addresses set forth in ¶ 71 above so that it is ***received*** **on or before March 21, 2023**.  Persons who intend to object and present evidence at the Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they might call to testify and any exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the Court's discretion.

75.    You are not required to hire an attorney to represent you in making written objections or in appearing at the Fairness Hearing.  However, if you decide to hire an attorney, you may do so at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Class Counsel and Defendants' Counsel at the addresses set forth in ¶ 71 above so that the notice is ***received*** **on or before March 21, 2023**.

76.    **Unless the Court orders otherwise, any Class Member who does not object as described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, Plaintiffs'**

Counsel's motion for an award of attorneys' fees and expenses, and Plaintiffs' application for an Incentive Award.

## WHAT IF I BOUGHT VLF INTERESTS ON SOMEONE ELSE'S BEHALF?

77.   Class Counsel and the Claims Administrator intend to send Postcard Notices to potential Class Members listed as VLF subscribers during the Class Period based on records maintained by VLF's administrator.  If you purchased or otherwise acquired VLF Interests during the period from January 1, 2017 through March 19, 2021, inclusive, for the beneficial interest of persons or organizations other than yourself, you must, within fourteen (14) calendar days after receipt of the Postcard Notice or this Notice (whichever is earlier), provide a list of the names, addresses, and email addresses (if available) of all such beneficial owners to *VLF Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, or info@strategicclaims.net.  The Claims Administrator will then send the Postcard Notices to the beneficial owners.  Copies of the Postcard Notice, this Notice, and the Claim Form may also be obtained from the Settlement website, www.strategicclaims.net/VLF, by calling the Claims Administrator toll-free at 1-866-274-4004, or by emailing the Claims Administrator at info@strategicclaims.net.

## CAN I SEE THE COURT FILE?
## WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

78.   This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information, you should review the papers on file in the Action, including the Settlement Agreement, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801, or through the court's online docket.  Copies of the Settlement Agreement and any related orders entered by the Court are also posted on the Settlement website, www.strategicclaims.net/VLF.

All inquiries concerning this Notice and the Claim Form should be directed to:

| *VLF Securities Litigation* | and/or | Alan L. Rosca, Esq. |
|---|---|---|
| c/o Strategic Claims Services | | Rosca Scarlato, LLC |
| P.O. Box 230 | | 2000 Auburn Drive, Suite 200 |
| 600 N. Jackson St., Suite 205 | | Beachwood, OH 44122 |
| Media, PA  19063 | | Tel: 216-946-7070 |
| Tel:  866-274-4004 | | arosca@rscounsel.law |
| Fax:  610-565-7985 | | |
| info@strategicclaims.net | | |
| www.strategicclaims.net/VLF | | |

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF COURT, DEFENDANTS, OR THEIR COUNSEL ABOUT THIS NOTICE.**

Dated: November 21, 2022                    By Order of the Court
                                            United States District Court
                                            District of Delaware

*VLF Securities Litigation*
**c/o Strategic Claims Services**
**P.O. Box 230**
**600 N. Jackson Street, Suite 205**
**Media, PA  19063**
**Toll-Free Number:  1-866-274-4004**
**Fax:  610-565-7985**
**Email:  info@strategicclaims.net**
**Website:  www.strategicclaims.net/VLF**

# PROOF OF CLAIM AND RELEASE FORM

### IT IS HIGHLY RECOMMENDED TO COMPLETE YOUR CLAIM ONLINE AT
### www.strategicclaims.net/VLF

To be eligible to receive a share of the Net Settlement Amount in connection with the Settlement of this Action, you must file your claim online or complete this Proof of Claim and Release Form ("Claim Form").  If you file your claim online, you must do so by **March 21, 2023**.  If you fill out this Claim Form, you must mail it by first-class mail to the address above, with supporting documentation, ***postmarked or emailed*** **no later than March 21, 2023**.

If you do not complete your claim online or submit your Claim Form by the date specified, your claim might be rejected, and you might be precluded from being eligible to receive a payment from the Settlement.

Complete your claim online at www.strategicclaims.net/VLF, or submit your Claim Form to the Claims Administrator at the address given above or by email to info@strategicclaims.net/VLF.  Do not mail or deliver your Claim Form to the Court, Plaintiffs' Counsel, Defendants' Counsel, or any of the Parties to the Action.

| **TABLE OF CONTENTS** | **PAGE #** |
|---|---|
| **PART I – CLAIMANT INFORMATION** | **2** |
| **PART II – GENERAL INSTRUCTIONS** | **3** |
| **PART III – SCHEDULE OF TRANSACTIONS IN VLF INTERESTS** | **6** |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | **7** |

# PART I – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications about this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.  Complete names of all persons and entities must be provided.

Beneficial Owner's Name
First Name                                                    Last Name

Joint Beneficial Owner's Name (*if applicable*)
First Name                                                    Last Name

If this claim is submitted for an IRA, and if you would like any check that you might be eligible to receive to be made payable to the IRA, please include "IRA" in the "Last Name" box above (*e.g.*, Jones IRA).

Entity Name (if the Beneficial Owner is not an individual)

Name of Representative, if applicable (*executor, administrator, trustee, c/o, etc.*), if different from Beneficial Owner

Last 4 digits of Social Security Number or Taxpayer Identification Number

Street Address

City                                                    State/Province    Zip Code

Foreign Postal Code (if applicable)          Foreign Country (if applicable)

Telephone Number (Day)                          Telephone Number (Evening)

Email Address (email address is not required, but, if you provide it, you authorize the Claims Administrator to use it in providing you with information relevant to this claim)

**Type of Beneficial Owner:**

Specify one of the following:

☐ Individual(s)          ☐ Corporation          ☐ UGMA Custodian          ☐ IRA

☐ Partnership          ☐ Estate          ☐ Trust          ☐ Other (describe: _____)

## PART II – GENERAL INSTRUCTIONS

1.      You should completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") provided with this Claim Form, including the Plan of Allocation of the Net Settlement Amount set forth in the Notice.  The Notice describes the proposed Settlement, how Class Members are affected by it, and the manner in which the Net Settlement Amount will be distributed if the Court approves the Settlement and Plan of Allocation.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and understand the Notice, including the terms of the releases provided for in this Claim Form.

2.      By submitting this Claim Form, you will be making a request to receive a payment from the Settlement described in the Notice.  IF YOU ARE NOT A CLASS MEMBER (*see* the definition of the Class on page 5 of the Notice, which explains who is included in and who is excluded from the Class), OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, SUBMITTED A REQUEST FOR EXCLUSION FROM THE CLASS, DO NOT SUBMIT A CLAIM FORM.  **YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A CLASS MEMBER.**  If you are excluded from the Class, any Claim Form that you submit, or that is submitted on your behalf, will not be accepted.

3.      Submission of this Claim Form does not guarantee that you will be eligible to receive a payment from the Settlement.  The distribution of the Net Settlement Amount will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.

4.      Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) in, and holdings of, limited partnership interests in Vida Longevity Fund, LP ("VLF") during the relevant period.  On this schedule, provide all of the requested information about your holdings, purchases, acquisitions, and sales/redemption of VLF Interests (including free transfers and deliveries), whether such transactions resulted in a profit or a loss.  **Failure to report all transaction and holding information during the requested time period could result in the rejection of your claim.**

5.      <u>**Please note**</u>:  The Settlement applies only to VLF Interests purchased during the Class Period (*i.e.*, from January 1, 2017 through March 19, 2021, inclusive).  VLF Interests are limited partnership interests in VLF, whether purchased directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII.

6.      You must submit genuine and sufficient documentation for all of your transactions in and holdings of VLF Interests as set forth in the Schedule of Transactions in Part III of this Claim Form. Documentation may consist of copies of subscription agreements, statements from your broker or investment adviser containing the transactional and holding information found in a broker confirmation slip or account statement, or other documents containing transaction information relating to VLF Interests (purchase/sale date, amount price, etc.).  The Parties and the Claims Administrator might not independently have information about your investments in VLF Interests.  IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OF THE DOCUMENTS OR EQUIVALENT DOCUMENTS FROM YOUR FINANCIAL ADVISER OR BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MIGHT RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.  Also, do not highlight any portion of the Claim Form or any supporting documents.**

7.      Use Part I of this Claim Form titled "CLAIMANT INFORMATION" to identify the beneficial owner(s) of the VLF Interests.  The complete name(s) of the beneficial owner(s) must be entered.  If you held

Page 3

the VLF Interests in your own name, you were the beneficial owner as well as the record owner.  If there were joint beneficial owners, each one must sign this Claim Form, and their names must appear as "Claimants" in Part I.

8.     **One Claim should be submitted for each separate legal entity.**  Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions or transactions in the name of a trust with transactions made solely in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity, no matter how many separate accounts that entity has.

9.     Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a)     expressly state the capacity in which they are acting;

(b)     identify the name, account number, last four digits of the Social Security Number (or taxpayer identification number), address, and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the VLF Interests; and

(c)     furnish evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers' demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

10.     By submitting a signed Claim Form, you will be swearing that you:

(a)     own(ed) the VLF Interests you have listed in the Claim Form; or

(b)     are expressly authorized to act on behalf of the owner of those VLF Interests.

11.     By submitting a signed Claim Form, you will be swearing to the truth of the statements it contains and the genuineness of the documents attached to it, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and might subject you to civil liability or criminal prosecution.

12.     If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing.  The claims process will take substantial time to complete fully and fairly.  Please be patient.

13.     **PLEASE NOTE:**  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Amount.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation, and no distribution will be made to that Authorized Claimant.

14.     If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, Strategic Claims Services, at the above address, by email at info@strategicclaims.net, or by toll-free phone at 1-866-274-4004, or you can visit the Settlement website, www.strategicclaims.net/VLF, where you can file your claim online or download copies of the Claim Form and Notice.

**IMPORTANT:  PLEASE NOTE**

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD.  THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM WITHIN 60 DAYS AFTER YOUR SUBMISSION.  IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CONTACT THE CLAIMS ADMINISTRATOR TOLL-FREE AT 1-866-274-4004.**

## PART III – SCHEDULE OF TRANSACTIONS IN VLF INTERESTS

Use this section to provide information on your holdings and transactions in VLF Interests during the requested time periods.  Please state if the interest in VLF was acquired indirectly through offshore entity Life Assets Trust S.A. Compartments VII and/or VIII ("Comp. VII or VIII").  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, ¶ 6 above.

| 1. **HOLDINGS AS OF DECEMBER 31, 2016**– State the total number or value of VLF Interests held as of the end of the day on December 31, 2016.  (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position Enclosed ○ |
|---|---|

**2. PURCHASES/ACQUISITIONS FROM JANUARY 1, 2017 THROUGH DECEMBER 31, 2022, INCLUSIVE** – Separately list each and every purchase or acquisition (including free receipts) of VLF Interests on January 1, 2017 through and including December 31, 2022.  (Must be documented.)

| Date of Purchase/ Acquisition (List Chronologically) (Month/Day/Year) | Dollars Subscribed to VLF Interests | Type of VLF Interest (Class A, B or C) | If Offshore, Identify Whether Life Assets Trust S.A. Comp. VII or VIII | Confirm Proof of Purchase Enclosed |
|---|---|---|---|---|
| /    / | | | | ○ |
| /    / | | | | ○ |
| /    / | | | | ○ |
| /    / | | | | ○ |

**3. SALES/REDEMPTIONS FROM JANUARY 1, 2017 THROUGH DECEMBER 31, 2022** – Separately list each and every sale, redemption, or other disposition of VLF Interests from January 1, 2017 through December 31, 2022.  (Must be documented.)   **IF NONE, CHECK HERE** ○

| Date of Sale/Redemption (List Chronologically) (Month/Day/Year) | Dollar Value of VLF Interests Sold/Redeemed | Identify if Redemption or Private Sale | Confirm Proof of Sale Enclosed |
|---|---|---|---|
| /    / | | | ○ |
| /    / | | | ○ |
| /    / | | | ○ |
| /    / | | | ○ |

| 4. **HOLDINGS AS OF DECEMBER 31, 2022**– State the total number or value of VLF Interests held as of December 31, 2022.  (Must be documented.)  If none, write "zero" or "0." _____ | Confirm Proof of Position Enclosed ○ |
|---|---|

**IF YOU NEED ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT.  PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE.  IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX.** ☐

## PART IV - RELEASE OF CLAIMS AND SIGNATURE

### YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW
### AND SIGN ON PAGE 9 OF THIS CLAIM FORM.

1. I (we) hereby acknowledge that, pursuant to the terms set forth in the Settlement Agreement, without further action by anyone, upon the Final Settlement Date, I (we), on behalf of myself (ourselves) and my (our) (the claimant(s)') heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such ("Releasors"), or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

   a. all Released Class Claims (as defined in the Notice) against each and every one of the Releasees (as defined in the Notice);

   b. all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

   c. all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs (including, without limitation, Labaton Sucharow LLP)or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in the Settlement Agreement.

2. In addition, the Judgment and Approval Order will provide that:

   a. all Class Members (and their attorneys, accountants, agents, advisors, heirs, executors, administrators, trustees, predecessors, successors, Affiliates, representatives, and assigns) who have not validly and timely requested exclusion from the Class – and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons or entities – are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefit or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention in the Action if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating to the Released Class Claims; and

   b. all persons and entities are permanently enjoined from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) or other proceeding on behalf of

Page 7

any Class Members as to the Releasees, if such other lawsuit is based on or related to the Released Class Claims.

**CERTIFICATION**

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) agree(s) to the release above and certifies (certify) that:

1.      I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.      The claimant(s) is a (are) Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Class as set forth in the Notice;

3.      The claimant(s) did *not* submit a request for exclusion from the Class;

4.      I (we) own(ed) the VLF Interests identified in the Claim Form and have not assigned the claim against any of the Defendants or their Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.      The claimant(s) has (have) not submitted any other claim covering the same purchases of VLF Interests and knows (know) of no other person's having done so on the claimant's (claimants') behalf;

6.      The claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

7.      I (we) agree to furnish such additional information about this Claim Form as Class Counsel, the Claims Administrator, or the Court may require;

8.      The claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the determination by the Court of the validity or amount of this claim, and waives any right of appeal or review as to such determination;

9.      I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

10.      The claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (i) the claimant(s) is (are) exempt from backup withholding or (ii) the claimant(s) has (have) not been notified by the IRS that he, she, or it is subject to backup withholding as a result of a failure to report all interest or dividends or (iii) the IRS has notified the claimant(s) that he, she, or it is no longer subject to backup withholding.  **If the IRS has notified the claimant(s) that he, she, it, or they is (are) subject to backup withholding, please cross out the language in the preceding sentence stating that the claim is not subject to backup withholding.**

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of claimant                                                                    Date

_____

Print claimant name here

_____

Signature of joint claimant, if any                                                Date

_____

Print joint claimant name here

***If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:***

_____

Signature of person signing on behalf of claimant                      Date

_____

Print name of person signing on behalf of claimant here

_____

Capacity of person signing on behalf of claimant, if other than an individual, *e.g.*, executor, president, trustee, custodian, etc.  (Must provide evidence of authority to act on behalf of claimant – see ¶ 9 on page 4 of this Claim Form.)

# **REMINDER CHECKLIST**

1. Sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Attach only *copies* of acceptable supporting documentation, as these documents will not be returned to you. Keep the original documents.

3. Do not highlight any portion of the Claim Form or any supporting documents.

4. Keep copies of the completed Claim Form and documentation for your own records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days after your submission.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll-free at 1-866-274-4004.**

6. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address.  If you change your name, inform the Claims Administrator.

7. If you have any questions or concerns about your claim, contact the Claims Administrator at the address below, by email at info@strategicclaims.net, or by toll-free phone at 1-866-274-4004, or you may visit www.strategicclaims.net/VLF.  DO NOT call VLF or its counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, *POSTMARKED* **NO LATER THAN MARCH 21, 2023,** ADDRESSED AS FOLLOWS (UNLESS YOU HAVE FILED YOUR CLAIM ONLINE):

***VLF Securities Litigation***
**c/o Strategic Claims Services**
**P.O. Box 230**
**600 N. Jackson Street, Suite 205**
**Media, PA  19063**
**Tel.:  866-274-4004**
**Fax: 610-565-7985**
**Email:  info@strategicclaims.net**
**www.strategicclaims.net/VLF**

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before March 21, 2023 is shown on the envelope and it is mailed First Class, and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually *received* by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

# EXHIBIT D

 **Gmail**

**Josephine Bravata <jbravata@strategicclaims.net>**

---

## GlobeNewswire Release Distribution Confirmation: Rosca Scarlato LLC
1 message

**donotreply@globenewswire.com** <donotreply@globenewswire.com>
To: jbravata@strategicclaims.net
Cc: jbravata@strategicclaims.net

Mon, Jan 30, 2023 at 9:01 AM



# Release Distribution Confirmation

## Rosca Scarlato, LLC Announces Proposed Class Action Settlement on Behalf of Purchasers of Vida Longevity Fund, LP limited partnership interests

**Cross time: 01/30/23 09:00 AM ET: Eastern Time - View release on GlobeNewswire.com**

**This email message serves as a formal confirmation that your release was transmitted on GlobeNewswire's distribution network as requested, including any fax or email broadcasts.**

**If you have any questions, comments or concerns, please reply to this message, contact your account manager, or call our Customer Service Center at 800-307-6627, or 310-642-6930**

---

This message was distributed by GlobeNewswire.
2321 Rosecrans Ave. Ste 2200, El Segundo, CA, 90245, USA. +1-800-307-6627. www.globenewswire.com
You received this email because you have an account with GlobeNewswire.

If you have any questions, please send an email to support@globenewswire.com or Contact Us



# Rosca Scarlato, LLC Announces Proposed Class Action Settlement on Behalf of Purchasers of Vida Longevity Fund, LP limited partnership interests

Your publication date and time will appear here. | Source: **Rosca Scarlato LLC**







WILMINGTON, Del., Jan. 06, 2023 (GLOBE NEWSWIRE) -- Rosca Scarlato, LLC announces that the United States District Court for the District of Delaware has approved the following announcement of a proposed class action settlement that would benefit purchasers of Vida Longevity Fund, LP limited partnership interests:

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO:** All persons and entities who, during the period from January 1, 2017 through March 19, 2021, inclusive (the "Class Period"), purchased or otherwise acquired limited partnership interests in Vida Longevity Fund, LP ("VLF"), either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII.[1]

**Please read this notice carefully. your rights will be affected by a class-action lawsuit pending in this court.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Delaware (the "Court"), that the above-captioned securities class action (the "Action") is pending in the Court.

YOU ARE ALSO NOTIFIED that the Plaintiffs have reached a proposed settlement of the Action for $1,400,000 in cash (the "Settlement"), which, if approved, will resolve all claims in the Action.

A hearing will be held on **April 18, 2023, at 1:00 p.m. (ET)**, before Magistrate Judge Sherry R. Fallon, either in-person at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Wilmington, Delaware 19801-3555, or by telephone or videoconference, to determine (*i*) whether the proposed Settlement should be approved as fair, reasonable, and adequate;

(*ii*) whether, solely for purposes of the Settlement, the Action should be certified as a class action on behalf of the Class, Plaintiffs should be certified as representatives for the Class, and Plaintiffs' counsel should be appointed as counsel for the Class; (*iii*) whether the Action should be dismissed with prejudice against Defendants and whether the releases specified in the Settlement Agreement dated July 8, 2022 (and in the Notice) should be granted; (*iv*) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (*v*) whether Plaintiffs' Counsel's motion for an award of attorneys' fees and expenses and Plaintiffs' application for an Incentive Award should be approved. If the hearing is held by telephone or videoconference, information on how to participate will be posted at www.strategicclaims.net/VLF.

**If you are a Class Member, your rights will be affected by the pending Action and the Settlement, and you might be entitled to a payment from the Settlement**. If you have not yet received the Notice and Claim Form, you may get copies of them by contacting the Claims Administrator, *VLF Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063; telephone 1-866-274-4004; or info@strategicclaims.net. You also can file claims online or download copies of the Notice and Claim Form from the Settlement website, www.strategicclaims.net/VLF.

If you are a Class Member, you must **file a claim** online or submit a Claim Form **no later than March 21, 2023** to be eligible to receive a payment from the Settlement. If you are a Class Member and do not submit a proper Claim Form, you will not be eligible for a payment, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a Class Member and wish to **exclude yourself** from the Class, you must submit a request for exclusion that is *received* **no later than March 21, 2023**, in accordance with the instructions in the Notice. If you properly exclude yourself from the Class, you will not be bound by any judgments or orders entered by the Court in the Action, and you will not be eligible to receive a payment from the Settlement. Excluding yourself is the only option that might allow you to be part of any other current or future lawsuit against Defendants or any of the other released parties concerning the claims being resolved by the Settlement, even if you have pending or later file another lawsuit or other proceeding against the Releasees related to the claims covered by the Settlement.

Any **objections** to the proposed Settlement, the proposed Plan of Allocation, Plaintiffs' Counsel's motion for attorneys' fees and litigation expenses, and Plaintiffs' application for an Incentive Award must be filed with the Court and delivered to Plaintiffs' counsel and Defendants' Counsel such that they are *received* **no later than March 21, 2023**, in accordance with the instructions in the Notice.

**All questions about this notice, the Settlement, or your eligibility to participate in it should be directed to the Claims Administrator or Plaintiffs' counsel. Please do not contact the Court, the Clerk's office, Defendants, or their lawyers about this notice.**

Requests for the Notice and Claim Form should be made to:

*VLF Securities Litigation*

c/o Strategic Claims Services

P.O. Box 230

600 N. Jackson Street, Suite 205

Media, PA 19063

Tel.: 866-274-4004

Fax: 610-565-7985

Email: info@strategicclaims.net

www.strategicclaims.net/VLF

Inquiries other than requests for the Notice and Claim Form should be made to counsel for the Class:

ROSCA SCARLATO, LLC

Alan L. Rosca, Esq.

2000 Auburn Drive, Suite 200

Beachwood, OH 44122

Tel: 216-946-7070

arosca@rscounsel.law

By Order of the Court

[1] Certain persons and entities are excluded from the Class definition, as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice"), available at www.strategicclaims.net/VLF.

---

**Tags**

Class Action

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **TIMOTHY O'HERN,** *et al.***, Individually and on Behalf of All Others Similarly Situated,** | **No. 1:21-cv-00402-SRF** |
| **Plaintiffs,** | |
| **v.** | |
| **VIDA LONGEVITY FUND, LP,** *et al.***,** | |
| **Defendants.** | |

**DECLARATION OF PAUL J. SCARLATO ON BEHALF OF
ROSCA SCARLATO, LLC AND GOLDMAN SCARLATO & PENNY, P.C. IN
SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES**

I, PAUL J. SCARLATO, declare as follows, pursuant to 28 U.S.C. §1746:

1.      I am a partner in the law firm of Goldman Scarlato & Penny, P.C.("GSP"). As of January 1, 2022, I am also a member of Rosca Scarlato, LLC ("RS"), preliminarily appointed by the Court as Class Counsel in the above-captioned class action (the "Action"). RS and GSP are collectively referred to as the "Firms." I submit this declaration in support of Class Counsel's application for an award of attorneys' fees and expenses in connection with services rendered in the Action from inception through March 14, 2023 (the "Time Period").  I have knowledge of the matters set forth herein based on personal knowledge, my review of the Firms' records, and consultation with other personnel of the Firms.

2.      The Firms are counsel of record for Plaintiffs Timothy O'Hern, Seymon Rodkin, and Dominic Cardinale, preliminarily appointed as Class Representatives for the Class.

3.      The Firms were involved in all aspects of the litigation, from inception to final approval as described in more detail in the Declaration of Paul J. Scarlato in Support of Plaintiffs'

1

Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees, Payment of Expenses and for Incentive Awards filed herewith. In more general terms, the Firms conducted the extensive pre-filing investigation, drafted the Complaint, prepared Plaintiffs' mediation statement, conducted the October 14, 2021 mediation with Mr. Melnick on behalf of Plaintiffs, negotiated the final Settlement and Term Sheet, negotiated and prepared the Stipulation of Settlement and exhibits, including the Postcard Notice, Long-Form Notice, Summary Notice and Claim Form, formulated the Notice Program, selected Strategic Claims Services as Claims Administrator, reviewed and analyzed the due diligence discovery, prepared the motion for preliminary approval of the Settlement, and for preliminary certification of the Class, oversaw the dissemination of the Postcard Notice and the publication of the Summary Notice, provided assistance to multiple Class Members with questions on how to submit Claim Forms, and prepared the final approval papers.

4.      The information in this Declaration regarding the Firms' time, including in the schedule attached hereto as Exhibit 1, was prepared from daily time records regularly prepared and maintained by the Firms in the ordinary course of business. I reviewed the Firms' daily time records to confirm their accuracy. The purpose of this review was to confirm both the accuracy of the entries in the time records as well as the necessity for, and reasonableness of, the time and expenses committed to the Action. Based on this review, I believe that the time reflected in the Firms' lodestar calculation and the litigation expenses for which payment is sought are reasonable and were necessary for the effective and efficient prosecution and resolution of the Action. In addition, I believe that the expenses are all of the type that would normally be charged to a fee-paying client in the non-contingent marketplace.

2

5.      The schedule attached hereto as Exhibit 1 is a summary reflecting the amount of time spent by each attorney and professional support staff employee of the Firms who were involved in the Action, and the lodestar calculation based on the Firms' current hourly rates. For personnel who are no longer employed by the Firms, the lodestar calculation is based upon the rates for such personnel in his or her final year of employment by the Firms. Time expended in preparing this Fee Application has not been included in this request.

6.      The total number of hours expended on the Action by the Firms' attorneys and professional support staff employees during the Time Period was 605.2.  The total resulting lodestar for the Firms is $464,405.00.

7.      The hourly rates for the attorneys and professional support staff of the Firms included in Exhibit 1 are the Firms' usual and customary hourly rate. The Firms' lodestar figures are based upon the Firms' hourly rates, which do not include charges for expense items. Expense items are recorded separately and are not duplicated in the Firms' hourly rates.

8.      As detailed in Exhibit 2, the Firms have incurred a total of $15,678.60 in unreimbursed litigation expenses in connection with the prosecution of the Action. The expenses are reflected on the books and records of the Firms. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of March 2023, at Conshohocken, PA.


    /s/ Paul J. Scarlato
_____

Paul J. Scarlato
*Attorney for Plaintiffs and the Class*

3

## EXHIBIT 1

### RS/GSP TIME REPORT
### Inception through March 14, 2023

| NAME | HOURS | HOURLY RATE | LODESTAR |
|------|-------|-------------|----------|
| **Members/Partners** | | | |
| Alan Rosca | 169.40 | $800 | $135,520.00 |
| Mark Goldman | 3.00 | $725 | $2,175.00 |
| Paul Scarlato | 356.70 | $825 | $293,277.50 |
| **Associates/Of Counsel** | | | |
| Brittany May | 0.50 | $395 | $197.50 |
| Edward Pekarek | 27.70 | $695 | $19,251.50 |
| Sean Rexroad | 4.00 | $475 | $1,900.00 |
| **Paralegals** | | | |
| Ryan Graham | 3.70 | $205 | $1,028.50 |
| Violet Bunici | 40.20 | $275 | $11,055.00 |
| **TOTAL** | **605.20** | | **$464,405.00** |

4

**EXHIBIT 2**

**RS/GSP EXPENSE REPORT**

| CATEGORY | AMOUNT ($) |
|---|---|
| Document Discovery | $447.03 |
| Court Filing Fees | $41.30 |
| Work-Related Transportation/Meals/Lodging[1] | $2,000.00 |
| Mediation Fees | $13,150.00 |
| Online Legal and Factual Research | $10.27 |
| **TOTAL EXPENSES:** | **$15,678.60** |

---

[1] Included in this total is an estimate of $2,000 for the costs of attending the final settlement hearing, if required. If more than $2,000 is incurred, $2,000 will be the cap on the amount to be reimbursed to RS. If less than $2,000 is incurred, then only the amount incurred will be reimbursed.

**EXHIBIT 3**

## ROSCA SCARLATO LLC
### CLEVELAND, OH/CONSHOHOCKEN, PA

**ROSCA SCARLATO LLC** ("Rosca Scarlato" or the "Firm") prosecutes securities fraud, ERISA, and consumer fraud class actions, as well as corporate governance derivative cases and investor arbitration claims nationwide on behalf of investors. Through their prior firms, including most recently Goldman Scarlato & Penny, P.C., Rosca Scarlato founding partners Alan Rosca and Paul Scarlato have represented the interests of victims of securities fraud, violations of ERISA, corporate misconduct, anticompetitive conduct, deceptive consumer practices, and unscrupulous financial advisors. Messrs. Rosca and Scarlato formed Rosca Scarlato on January 1, 2022, to continue the representation of their new and existing clients in those practice areas. The Firm's lawyers have helped recover hundreds of millions of dollars on behalf of their clients and helped to institute meaningful changes in business practices that seek to ensure robust competition in commercial markets, honest and fair disclosures in financial markets, and truthful advertising in retail markets.

**ALAN L. ROSCA**.  Mr. Rosca focuses his legal practice on complex financial and commercial matters, particularly in the areas of securities litigation, investment fraud, ERISA, and international investment disputes. He often represents investors in disputes with financial industry members arising out of investment fraud or misconduct. He prosecutes claims on behalf of investors through class actions in state or federal courts, and FINRA arbitrations. He also practices in the areas of wage-and-hour and other labor-related disputes, whistleblower matters, and antitrust cases, with a focus on market manipulation.

Alan was a lecturer and adjunct professor of Securities Regulation at Cleveland-Marshall College of Law, Cleveland State University, starting in 2012. Alan has served as co-lead counsel,

6

or is currently involved in a leading role, in class actions on behalf of investors who lost money as a result of alleged investment fraud or Ponzi schemes, as well as in other class action matters arising out of wage-and-hour or business disputes, including *Florio v. Goldman Sachs Group Inc. et al.* (S.D.N.Y.) (class action under the PSLRA); *Paulson v. Two Rivers Water and Farming Co., et. al* (D. Co.) (class action under the Colorado Securities Act); *Yao Yi Liu v. Wilmington Trust Company* (W.D.N.Y.) (representing victims of a Ponzi scheme); *Gregory v. Zions Bancorporation* (D. Utah) (representing victims of a Ponzi scheme); *Chang v. Wells Fargo bank, N.A.* (N.D. Ca.) (representing victims of a Ponzi scheme); *Elliott v. Bank of Oklahoma* (D.N.J.) (representing victims of a Ponzi scheme); *Miller v. Anderson (First Energy Derivative Litigation),* (N.D. Oh); and *O'Hearn v. Vida Longevity Fund, LP, et al.* (D. De) (class action under the Texas Securities Act); *Hanson v. Berthel Fisher & Company Financial Services, Inc., et al*. (N.D. Iowa) (representing investors in an allegedly fraudulent real estate investment program); *Carol Prock v. Thompson National Properties, LLC, et al*. (C.D. Ca.) (representing investors in an allegedly fraudulent real estate investment program); *Spaude v. Mysyk* (N.D. Oh) (representing investors in an allegedly fraudulent oil-and-gas investment scheme); *Jennifer Roth v. Life Time Fitness, Inc.* (D. Minn.) (representing fitness instructors seeking unpaid wages for work that was required by defendants); *Aleem v. Pearce & Durick* (D.N.D.) (representing investors in a fraudulent investment scheme); *Hay v. United Development Funding IV et al*. (N.D. Texas) (representing investors in an allegedly fraudulent real estate investment scheme); *Fastrich v. Continental General Insurance Company* (D. Neb.) (representing insurance agents seeking payment of certain fees and commissions allegedly owed to such agents).

Alan received his Juris Doctor degree *summa cum laude* from Cleveland-Marshall College of Law in May 2008. While in law school he served as a Managing Editor of the

Cleveland State Law Review, received the Dean's (full) scholarship for the entire Juris Doctor program, was on the Dean's List, and won the "Best Oralist" award in the Jessup Moot Court competition, Pacific Region. He passed the Ohio Bar exam in top 1%, with the highest grade in the state to the multi-state (federal law) section.

He is admitted to practice law in Ohio, District of Columbia, United States Supreme Court, and several other federal courts federal courts nationwide. He is a member of the Public Investors Arbitration Bar Association, the Cleveland Metropolitan Bar Association, where he served as the Chair of the Unlicensed Practice of Law Committee, and the Cleveland Diplomatic Corps. He also holds a Master of Business Administration degree from Baldwin-Wallace College, Ohio. He is a speaker on Ponzi schemes, investment fraud, cryptocurrencies, and attorney professionalism.

**PAUL J. SCARLATO.**   Paul Scarlato has concentrated his practice on the litigation of complex class actions since 1989. He has litigated numerous cases under the federal and state securities laws, ERISA, consumer, antitrust and common law involving companies in a broad range of industries, and has litigated many cases involving financial and accounting fraud.

In securities fraud cases, Mr. Scarlato was one of three lead attorneys for the class in *Kaufman v. Motorola, Inc.,* (N.D. Il.), a securities fraud class action that settled weeks before trial. Mr. Scarlato served as lead counsel in *Seidman v. American Mobile Systems, Inc.,* (E.D. Pa.), a securities class action that resulted in a settlement for the plaintiff class, again on the eve of trail, and served as co-lead counsel in *In re: Corel Corporation Securities Litigation* (E.D. Pa.) (securities fraud class action).

Mr. Scarlato has played a key role in numerous other securities fraud class actions over the course of his career, including as a member of the plaintiffs' teams that prosecuted *In re*

*Broadcom Securities Litigation*, which resulted in a settlement of $150 million for the class, and *AOL Time Warner Securities Litigation*, which resulted in a settlement of over $2.5 billion for investors, *In re Monster Worldwide, Inc. Securities Litigation* ($47.5 million settlement in case arising out of options backdating), *In re Mercury Interactive Securities Litigation* ($117.5 million settlement, options backdating), *In re SafeNet, Inc. Securities Litigation* ($25 million settlement, options backdating), and *In re Semtech Securities Litigation* ($20 million settlement, options backdating). Mr. Scarlato was one of the lead lawyers in *Leibovic v. United Shore Financial Services* (E.D. Mich.) (data breach class action), and *Afzal v. BMW of North America, LLC*, (D.N.J.) (product defect class action), and served on the plaintiffs' Executive Committee in *Vikram Bhatia, D.D.S. v. 3M Company*, Case No. 16-cv-01304 (D. Minn.) (product defect class action), and is counsel in *In re Platinum and Palladium Antitrust Litigation,* Case No. 14-cv-09391 (S.D.N.Y), and *In re Treasury Securities Auction Antitrust Litigation*, Case No. 15-md-02673 (S.D.N.Y.).

Mr. Scarlato, along with Mr. Rosca, currently serves as one of the lead counsel in *Florio v. Goldman Sachs Group Inc. et al.* (S.D.N.Y.) (class action under the PSLRA); *Paulson v. Two Rivers Water and Farming Co., et. al* (D. Co.) (class action under the Colorado Securities Act); *Yao Yi Liu v. Wilmington Trust Company* (W.D.N.Y.) (representing victims of a Ponzi scheme); *Gregory v. Zions Bancorporation* (D. Utah) (representing victims of a Ponzi scheme); *Chang v. Wells Fargo bank, N.A.* (N.D. Ca.) (representing victims of a Ponzi scheme); *Elliott v. Bank of Oklahoma* (D.N.J.) (representing victims of a Ponzi scheme); *Miller v. Anderson (First Energy Derivative Litigation),* (N.D. Oh); and *O'Hearn v. Vida Longevity Fund, LP, et al.* (D. De) (class action under the Texas Securities Act).

Mr. Scarlato graduated from Moravian College in 1983 with a degree in accounting, and received his Juris Doctor degree from the Widener University School of Law in 1986. Mr. Scarlato served as law clerk to the Honorable Nelson Diaz, of the Court of Common Pleas of Philadelphia County, and thereafter to the Honorable James T. McDermott of the Pennsylvania Supreme Court. After his clerkships, and prior to becoming a litigator, Mr. Scarlato was a member of the tax department of "big four" accounting firm where he provided a broad range of accounting services to large business clients in a variety of industries.

Mr. Scarlato is a member of the bars of the Commonwealth of Pennsylvania and the State of New Jersey, and those of various federal district and circuit courts.

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---

**TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**v.**

**VIDA LONGEVITY FUND, LP, *et al.*,**

**Defendants.**

**No. 1:21-cv-00402-SRF**

---

**DECLARATION OF SETH D. RIGRODSKY ON BEHALF OF RIGRODSKY LAW, P.A. IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, SETH D. RIGRODSKY, declare as follows, pursuant to 28 U.S.C. §1746:

1.      I am a Shareholder in the law firm of Rigrodsky Law, P.A. (the "Firm"). I submit this Declaration in support of Class Counsel's application for an award of attorneys' fees and expenses in connection with services rendered in the above-entitled class action (the "Action") from inception through March 14, 2023 (the "Time Period").  I have knowledge of the matters set forth herein based on personal knowledge, my review of the Firm's records, and consultation with other personnel of the Firm.

2.      The Firm is counsel of record for Plaintiffs Timothy O'Hern, Seymon Rodkin, and Dominic Cardinale, preliminarily appointed as Class Representatives for the Class.

3.      My Firm, which assisted Class Counsel during the course of the Action, was involved in various aspects of the litigation, including drafting, finalizing, and filing documents, as will be detailed in the Declaration of Paul J. Scarlato in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an

1

Award of Attorneys' Fees, Payment of Expenses and for Service Awards ("Final Approval Motion"), filed herewith.

4.      The information in this Declaration regarding the Firm's time, including in the schedule attached hereto as Exhibit 1, was prepared from daily time records regularly prepared and maintained by the Firm in the ordinary course of business. I reviewed the Firm's daily time records to confirm their accuracy. The purpose of this review was to confirm both the accuracy of the entries in the time records as well as the necessity for, and reasonableness of, the time and expenses committed to the Action. Based on this review, I believe that the time reflected in the Firm's lodestar calculation and the litigation expenses for which payment is sought are reasonable and were necessary for the effective and efficient prosecution and resolution of the Action. In addition, I believe that the expenses are all of the type that would normally be charged to a fee-paying client in the non-contingent marketplace.

5.      The schedule attached hereto as Exhibit 1 is a summary reflecting the amount of time spent by each attorney and professional support staff employee of the Firm who were involved in the Action, and the lodestar calculation based on the Firm's current hourly rates. For personnel who are no longer employed by the Firm, the lodestar calculation is based upon the rates for such personnel in his or her final year of employment by the Firm. Time expended in preparing this Fee Application has not been included in this request.

6.      The total number of hours expended on the Action by the Firm's attorneys and professional support staff employees during the Time Period was 49.50.  The total resulting lodestar for the Firm is $41,562.50.

7.      The hourly rates for the attorneys and professional support staff of the Firm included in Exhibit 1 are the Firm's usual and customary hourly rate. The Firm's lodestar figures

2

are based upon the Firm's hourly rates, which do not include charges for expense items. Expense items are recorded separately and are not duplicated in the Firm's hourly rates.

8.      As detailed in Exhibit 2, the Firm has incurred a total of $159.00 in unreimbursed litigation expenses in connection with the prosecution of the Action. The expenses are reflected on the books and records of the Firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of March 2023, at New York, New York.

_____
Seth D. Rigrodsky
*Attorney for Plaintiffs and the Settlement Class*

**EXHIBIT 1**

**RIGRODSKY LAW, P.A. TIME REPORT**
**Inception through March 15, 2023**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Members/Partners** | | | |
| Seth D. Rigrodsky | 24.75 | $1,000.00 | $24,750.00 |
| Gina M. Serra | 21.50 | $750.00 | $16,125.00 |
| | | | |
| **Paralegals** | | | |
| Leah Wihtelin | 0.50 | $275.00 | $137.50 |
| Avery Phillips | 2.75 | $200.00 | $550.00 |
| | | | |
| **TOTAL** | **49.50** | | **$41,562.50** |

4

**EXHIBIT 2**

**RIGRODSKY LAW, P.A. EXPENSE REPORT**

| CATEGORY | AMOUNT($) |
|---|---|
| Delivery services/messengers | $159.00 |
| | |
| **TOTAL EXPENSES:** | **$159.00** |

5

**EXHIBIT 3**



# ABOUT THE FIRM

Rigrodsky Law, P.A. (the "Firm") is a law firm with a national practice serving its clients from offices located in Delaware and New York.  The Firm concentrates its practice on representing institutional and individual investors in securities fraud, corporate, and consumer class action lawsuits filed throughout the United States.

The Firm's attorneys have decades of litigation experience and have achieved precedent-setting victories for victims of corporate wrongdoing.  The Firm has recovered hundreds of millions of dollars on behalf of investors and achieved substantial corporate governance reforms in numerous securities fraud, corporate class action, and shareholder derivative lawsuits filed throughout the nation.

# SELECT FIRM ACCOMPLISHMENTS

### *Mason-Mahon, et al. v. Flint, et al.*, **Index No. 602052/2014 (New York Sup. Ct.)**

The Firm served as co-lead counsel in a derivative action against past and present members of the board of directors ("Board") of HSBC Holdings PLC, a banking corporation organized under the laws of the United Kingdom, and its various U.S. subsidiaries ("HSBC").  Plaintiffs alleged that the Board caused, and/or recklessly permitted, HSBC to violate the anti-money laundering ("AML") and sanctions laws of the United States, as well as the banking laws of the State of New York, for more than a decade, by unlawfully processing billions in U.S. dollar transactions for narcotics traffickers and state sponsors of terrorism.  As a result, in 2012, HSBC entered into a deferred prosecution agreement with the Department of Justice and the New York County District Attorneys' Office, as well as settlements with various federal and state regulators, paying $1.92 billion in fines, forfeitures, and penalties.  In addition, HSBC was required to undertake years-long AML and sanctions compliance remediation efforts.  Following dismissal of the action for failure to comply with the requirements of U.K. law, Plaintiffs achieved reversal of that dismissal on appeal.  *Mason-Mahon v. Flint*, 166 A.D.3d 754 (2d Dept. 2018).  Following the denial of defendants' appellate motion for reargument, or certification to the New York Court of Appeals, and additional motion practice before the trial court, plaintiffs achieved a $72.5 million cash settlement on behalf of nominal defendant HSBC.  In addition, HSBC agreed to certain corporate governance enhancements to bolster its AML and sanctions compliance policies and procedures.  The $72.5 million cash component of the settlement is believed to be the first derivative cash settlement against a foreign corporation, as well as the sixteenth largest derivative cash settlement, in the United States.

### *In re CNX Gas Corporation Shareholders Litigation*, **Consol. C.A. No. 5377-VCL (Del. Ch.)**

The Firm served as sole lead counsel in a class action before the Delaware Court of Chancery brought on behalf of the shareholders of CNX Gas Corporation ("CNX") who alleged that they suffered financial injury in connection with the going-private acquisition of CNX by its controlling

parent company owner, CONSOL Energy, Inc.  After expedited proceedings, on May 26, 2010, the Court ruled that plaintiffs had made a sufficient showing that the action should move forward to trial.  In so doing, the Court issued an important opinion clarifying and defining the rights of shareholders in the context of a going-private tender offer by a controlling shareholder.  *In re CNX Gas Corp. S'holders Litig*., 4 A.3d 397 (Del. Ch. 2010).  The Court of Chancery subsequently approved a settlement of the action where defendants and their insurers agreed to pay $42.73 million to stockholders.  The parties reached settlement just days before the commencement of trial, after submission of pretrial briefing and extensive fact and expert discovery.  The settlement, which was approved on August 23, 2013, was the largest settlement of a case challenging a merger in the Court of Chancery in 2013.

### *In re Schuff International Inc. Stockholders Litigation*, Consol. C.A. No. 10323-VCZ (Del. Ch.)

The Firm served as co-lead counsel in a class action before the Delaware Court of Chancery brought on behalf of the shareholders of Schuff International Inc. ("Schuff" or the "Company"). After more than five years of litigation, plaintiff achieved a settlement that more than doubled the price – from $31.50 to $67.45 per share – that Schuff's shareholders received in the October 2014 cash tender offer from the Company's majority stockholder, HC2 Holdings, Inc.  The $35.95 per share price increase for the stockholders who tendered their shares – totaling nearly $20.5 million – was a premium of more than 114% over the October 2014 tender offer price, which represented the best recovery in Delaware shareholder class action history.  The settlement also provided an additional cash payment to the Company's remaining minority stockholders of $1,016,060, or $3.51 per share.

### *In re Metrologic Instruments, Inc. Shareholders Litigation*, Docket No. L-6430-06 (N.J. Super. Ct.)

The Firm served as sole lead counsel on behalf of Metrologic, Inc. ("Metrologic" or the "Company") shareholders.  This class action arose from a transaction to cash out the Company's minority shareholders in a merger for alleged inadequate consideration, negotiated through coercive means.  Plaintiffs alleged that the board of directors unanimously approved Metrologic's acquisition by entities owned and affiliated with Francisco Partners II, L.P., C. Harry Knowles (the Company's founder and Chairman of the Board), and Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott").  C. Harry Knowles and Elliott (the "Knowles Group") were together controlling shareholders of Metrologic.  The Knowles Group entered into voting agreements to vote their 49% in favor of the deal in addition to an undisclosed group of the Company's directors and executive officers that agreed to vote their 1.1% in favor of the deal. Therefore, 50.1% of the shares were contractually committed to voting in favor of the transaction. Furthermore, the proxy allegedly failed to disclose that even though the Knowles Group was receiving the same consideration for their shares being cashed out, they were also receiving additional consideration for the shares that they rolled over for equity in the surviving entity.  On April 17, 2009, the Court denied defendants' motion to dismiss the case.  *In re Metrologic Instruments, Inc. S'holders Litig*., Docket No. L-6430-06 (N.J. Super. Ct. Apr. 17, 2009) (Order). In 2013, plaintiffs and defendant Metrologic, in addition to the individual members of Metrologic's board of directors, reached a partial settlement in exchange for a payment of $11.95 million, which was approved by the Court on December 16, 2013.  That partial settlement excluded

the parties alleged to be Metrologic's controlling stockholders.  Plaintiffs continued to press claims against those remaining entities, ultimately resulting in an additional settlement providing for the creation of a $9.75 million fund to be distributed to the class.  The Court approved the second settlement on April 6, 2018.

### *In re Cornerstone Therapeutics, Inc. Stockholder Litigation*, Consol. C.A. No. 8922-VCG (Del. Ch.)

The Firm served as co-lead counsel in this class action before the Delaware Court of Chancery brought on behalf of the shareholders of Cornerstone Therapeutics, Inc. ("Cornerstone"). Plaintiffs alleged that the proposed acquisition of Cornerstone by its majority stockholder, Chiesi Farmaceutici S.p.A., was accomplished pursuant to an unfair process and at an unfair price.  After three years of litigation, including an appeal to the Supreme Court of Delaware, and following mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to pay $17,881,555 to the settlement class.  The Delaware Court of Chancery approved the settlement on January 26, 2017.

### *In re Prospect Medical Holdings, Inc. Shareholders Litigation*, Consol. C.A. No. 5760-VCN (Del. Ch.)

The Firm served as co-lead counsel in this class action before the Delaware Court of Chancery brought on behalf of the shareholders of Prospect Medical Holdings, Inc. ("Prospect").  Plaintiffs alleged that the proposed acquisition of Prospect by entities sponsored by Leonard Green & Partners, L.P. was the result of an unfair process and would provide Prospect's shareholders with inadequate consideration.  Following discovery and mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to provide $6.5 million to the settlement class.  The Delaware Court of Chancery approved the settlement on January 21, 2016.

### *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*, Case No. 2:13-md-02451-ADS-AKT (E.D.N.Y.)

The Firm was appointed Co-Interim Class Counsel in this multidistrict litigation pending in the United States District Court for the Eastern District of New York.  This action was brought on behalf of a national class of checking account customers of HSBC Bank USA, N.A. ("HSBC") who were improperly charged overdraft fees on debit card transactions as a result of HSBC's deceptive overdraft fee practices.  On March 5, 2014, the District Court granted, in part, and denied, in part, defendants' motion to dismiss plaintiffs' complaint.  On April 21, 2014, the District Court granted plaintiffs' motion for reconsideration of the dismissal of certain claims and reinstated those claims.  Following the completion of discovery and mediation, on February 10, 2016, the parties reached an agreement to settle the claims through a parallel state action, creating a $32 million cash settlement fund for the benefit of the class.  The settlement was approved by the Court on October 18, 2016.

### *In re Nevsun Resources Ltd.*, Case No. 1:12-cv-01845-PGG (S.D.N.Y.)

The Firm was appointed co-lead counsel in this federal securities fraud class action brought on behalf of the shareholders of Nevsun Resources Ltd. (the "Company") against the Company and

certain of its officers.  Plaintiffs alleged that, during the class period, defendants made materially false and misleading statements by overstating the gold reserves at the Company's Bisha Mine in Eritrea, Africa.  On September 27, 2013, the District Court denied, in substantial part, defendants' motion to dismiss the complaint.  Following mediation, on May 1, 2014, the parties entered into a stipulation and agreement of settlement, pursuant to which defendants agreed to create a $5,995,000 cash settlement fund for the benefit of the class.  The Court approved the settlement on February 13, 2015.

### *In re Mediacom Communications Corporation Shareholders Litigation*, Consol. C.A. No. 5537-VCS (Del. Ch.)

The Firm was one of the lead counsel and one of the primary negotiators of a settlement that resulted in an additional $10 million paid to stockholders.  Plaintiffs' counsel eschewed multiple invitations to negotiate simultaneously with the special committee of Mediacom Communications Corporation's ("Mediacom") board of directors, and instead favored the approach of focusing their litigation efforts on increasing the consideration to stockholders only after the merger agreement had been negotiated and approved by the Mediacom board, as recommended by its special committee.

### *In re Fuqi International, Inc. Securities Litigation*, Case No. 1:10-cv-02515-DAB (S.D.N.Y.)

The Firm was one of plaintiffs' counsel in this federal securities class action brought on behalf of the shareholders of Fuqi International, Inc. (the "Company") who purchased Company shares between May 15, 2009 and March 25, 2011, inclusive, and on behalf of a subclass of all those who purchased or otherwise acquired Company common stock pursuant, or traceable, to the secondary offering on or about July 22, 2009.  Plaintiffs alleged that, during the class period and in the offering materials, defendants made materially false and misleading statements concerning the adequacy of its internal financial controls, as well as its financial results.  On February 18, 2016, the Court approved the settlement of claims against the Company and the individual defendants.  The settlement provided for the creation of a $7.5 million cash settlement fund for the benefit of the class.  On January 8, 2018, the Court approved a $1.1 million cash settlement in the related action, *Puerto Rico Government Judiciary Employees Retirement System, v. Marcum, LLP,* Case No. 1:15-cv-01938-DAB (S.D.N.Y.), for claims against the Company's class period independent auditor.

### *Dannis v. Nichols*, Case No. 13-CI-00452 (Ky. Cir. Ct.)

The Firm was one of the lead counsel that litigated and negotiated the settlement in this class action.  Plaintiffs challenged the fairness of a proposed going-private squeeze-out merger by NTS Realty Holdings Limited Partnership's ("NTS") controlling unitholder and Chairman of the Board. The action settled for additional consideration of $7,401,487, or more than $1.75 per unit of NTS.  The settlement was approved by the Court on April 24, 2014.

***Minerva Group LP v. Keane*,**
**Index No. 800621/2013 (N.Y. Sup. Ct.)**

The Firm served as co-lead counsel in a class action brought on behalf of the public stockholders of Mod-Pac Corp. ("Mod-Pac" or the "Company") against members of Mod-Pac's board of directors, including the Company's controlling stockholders, for alleged breaches of fiduciary duties in connection with the controlling stockholders' offer to acquire all of the outstanding shares of Mod-Pac that they did not already own through an unfair process and for an unfair price. The parties reached an agreement to settle the action, which the Court approved on December 13, 2013, pursuant to which defendants agreed to pay Mod-Pac's stockholders an additional $2.4 million, which was an increase from $8.40 per share to $9.25 per share.

***Yang v. Focus Media Holding Limited*,**
**Case No. 1:11-cv-09051-CM (S.D.N.Y.)**

The Firm served as lead counsel in *Focus Media*, in which plaintiff alleged violations of the Securities Exchange Act of 1934. On May 13, 2014, the parties entered into a stipulation and agreement of settlement, pursuant to which defendants agreed to pay $3,700,000 to the class to resolve the action. The Court approved the settlement on September 4, 2014.

***Forgo v. Health Grades, Inc.*,**
**C.A. No. 5716-VCS (Del. Ch.)**

The Firm was among the lead counsel in *Health Grades*, where, after an injunction hearing, the parties settled for extensive modification to the terms of the challenged transaction. These modifications included: a "Fort Howard" press release; a twenty-day extension of the challenged tender offer; the agreement of certain officers who had entered into tender and support agreements to similarly support a better deal; a twenty-two percent reduction in the termination fee; a forty percent reduction in the buyer's matching rights; the creation of an independent committee to negotiate with bidders and approve offers free from the influence of the allegedly self-interested chief executive; and the imposition of a requirement that a majority of the disinterested stockholders tender for the transaction to be consummated.

***In re Lear Corp. Shareholders Litigation*,**
**Consol. C.A. No. 2728-VCS (Del. Ch.)**

The Firm served as Co-Chair of Plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of Lear Corporation ("Lear" or the "Company") in connection with its sale to American Real Estate Partners, L.P. ("AREP"). The Firm represented Classic Fund Management AG (Lear's sixth largest holder) who, along with other significant shareholders, had expressed its concern regarding the price AREP offered to acquire Lear. Despite the opposition voiced by its major institutional shareholders, Lear entered into a merger agreement with AREP following a sales process that was tilted in favor of AREP. Among other things, Lear could not terminate the merger agreement without first providing the other bidder's terms to AREP and AREP had the right to top any other offer. As a result, plaintiffs alleged that no rival bidder was likely to emerge. Moreover, plaintiffs believed that the Company's intrinsic value was more than the $36 per share offered by AREP. The Firm obtained a preliminary injunction, which prohibited a stockholder vote on the merger until Lear made additional disclosures. *In re Lear Corp.*

*S'holders Litig.,* 926 A.2d 94 (Del. Ch. 2008).  As a result of the Firm's efforts, Lear made substantial and remedial disclosures in its June 18, 2007 proxy supplement, which allowed stockholders to consequentially reject the merger in July 2007.  In March 2008, after the shareholders rejected the proposed merger, the Court dismissed the class action as moot.

### In re The Topps Company, Inc. Shareholders Litigation,
### Consol. C.A. No. 2786-VCS (Del. Ch.)

The Firm served as Co-Lead Counsel for Plaintiffs in this class action brought on behalf of the public shareholders of The Topps Company, Inc. ("Topps" or the "Company") in connection with its sale to Madison Dearborn Partners and Michael Eisner's The Tornante Company, LLC (collectively, "Tornante").  Plaintiffs alleged that the transaction lacked many of the hallmarks of financial fairness and that the price was unfair and achieved through a process designed to benefit Tornante, to the detriment of Topps' public shareholders.  The Firm moved the Court to issue a preliminary injunction to stop the deal.  In June 2007, the Court issued a landmark decision granting plaintiffs' injunction motion.  *In re The Topps Co., Inc. S'holders Litig.,* 926 A.2d 58 (Del. Ch. 2007).  The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events.

### Manville Personal Injury Trust v. Blankenship,
### Case No. 07-C-1333 (W. Va. Cir.)

The Firm served as counsel for plaintiff in this shareholder derivative action brought on behalf of Massey Energy Company ("Massey" or the "Company") against its board of directors and certain of its officers for breach of fiduciary duties arising out of the defendants' alleged conscious failures to cause Massey to comply with applicable environmental and worker-safety laws and regulations.  Plaintiff argued that defendants caused severe injury to the Company by consciously ignoring Massey's legal obligations to comply with federal and state law, thereby exposing the Company to a substantial threat of monetary liability for violations.  This litigation, filed in the Circuit Court of Kanawha County, West Virginia, caused Massey to implement significant corporate reforms, including improvements to its corporate policies.  The parties reached a settlement that, among other things, required Massey to: (i) implement limitations on the length of service of and enhanced membership and meeting attendance requirements for members of the Safety, Environmental and Public Policy Committee ("SEPPC") of the board of directors; (ii) grant the SEPPC authority to retain independent, outside consultants to assist it with its duties; (iii) require that the SEPPC recommend enhancements to the Company's safety and environmental procedures and reporting, including shareholder reporting; (iv) establish certain safety and environmental compliance oversight positions; and (v) implement enhanced employee reporting mechanisms for safety and environmental issues.  In June 2008, the Circuit Court approved the settlement. *Manville Personal Injury Trust v. Blankenship,* Case No. 07-C-1333 (W. Va. Cir. June 30, 2008) (Order).

***In re Chiquita Brands International, Inc., Alien Tort Statute and Shareholder
Derivative Litigation,***
**Case No. 08-01916-MD (S.D. Fla.)**

The Firm acted as counsel for plaintiff City of Philadelphia Public Employees' Retirement System in a shareholder derivative and class action brought on behalf of the public shareholders of Chiquita Brands International, Inc. ("Chiquita" or the "Company"). Plaintiffs alleged that the Company repeatedly and systematically violated federal law prohibiting transactions with recognized global terrorist organizations. Plaintiffs alleged that these breaches of fiduciary duty, along with the resultant violations of federal law, had substantially injured the Company in that, among other things, the Company consented to a criminal guilty plea. After years of litigation, on October 15, 2010, the District Court entered an Order approving a settlement of the litigation. *In re Chiquita Brands Int'l, Inc., Alien Tort Statute & S'holder Derivative Litig.*, Case No. 08-01916-MD (S.D. Fla. Oct. 15, 2010) (Order). Among other things, the settlement provided substantial and important corporate governance reforms relating to the Chiquita board's oversight and management of the Company's compliance with federal law involving Chiquita's overseas business.

***County of York Employees Retirement Plan v. Jung,***
**Index No. 651304-2010 (N.Y. Sup. Ct.)**

The Firm was one of plaintiffs' counsel representing the County of York Employees Retirement Plan in this derivative action against various directors and officers of Avon Products, Inc. ("Avon"). Plaintiffs alleged that various Avon employees violated the Foreign Corrupt Practices Act by bribing foreign officials in China. On August 3, 2016, the Court approved a settlement that provided, among other things, for Avon to adopt a global anti-corruption policy and code of conduct, as well as implement specific Foreign Corrupt Practices Act testing.

***U.F.C.W. Local 1776 & Participating Employers Pension Fund v. Devitre,***
**Case No. CV 10-2496 (D. Ariz.)**

The Firm was one of plaintiffs' counsel representing U.F.C.W. Local 1776 & Participating Employers Pension Fund against various officers and directors of the Western Union Company (the "Company") and its wholly-owned subsidiary, Western Union Financial. Plaintiff alleged that the Company's board of directors failed to appropriately oversee the Company's compliance with applicable anti-money laundering laws, regulations, and rules resulting in the Company's payment of $94 million to resolve all potential regulatory, civil, and criminal claims. On June 14, 2002, the Court approved a settlement in which the Company agreed to require the board of directors to review all reports by an independent compliance monitor; review the Company's compliance program and policies relating to the anti-money laundering laws and regulations; and review and approve the *Bank Secrecy Act and Anti-Money Laundering Compliance Program Manual for the United States* on a quarterly basis.

***PG&E San Bruno Fire Cases,***
**Case No. JCCP 4648-C (Cal. Super. Ct.)**

The Firm, as counsel for plaintiff, brought a shareholder derivative case on behalf of the shareholders of PG&E Corporation ("PG&E") in connection with the tragic loss of life and property

resulting from a San Bruno, California gas leak.  After years of litigation, the Firm helped achieve a recovery of $90 million, which constituted the seventh largest shareholder derivative settlement on record.  To improve and ensure pipeline safety, plaintiffs also obtained comprehensive gas operations therapeutics with a stipulated value of $32.05 million.   The settlement also fundamentally altered how PG&E conducts its gas operations and provided extensive corporate governance reforms.

### *Erste-Sparinvest Kapitalanlagegesellschaft m.b.H. v. Blank*, Index No. 09/3560 (N.Y. Sup.)

The Firm was counsel for a large, European institutional investor in a shareholder derivative lawsuit brought against Lloyds Banking Group p.l.c. ("Lloyds").  The lawsuit alleged that the directors of Lloyds violated their fiduciary duties to shareholders by failing to monitor the company's compliance with federal and state banking laws in connection with alleged illegal transfers of funds in the United States on behalf of certain sovereign countries including Iran.  After years of litigation and negotiations, the Firm helped achieve significant corporate governance changes to ensure that the board of directors was more actively engaged in the monitoring of Lloyds' money transfer businesses and compliance with federal and state banking rules and regulations.

### *In re MBNA Corp. Securities Litigation*, Case No. 05-CV-00272-GMS (D. Del.)

The Firm served as liaison counsel for lead plaintiff and the members of the class in this securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of MBNA Corp. ("MBNA" or the "Company") during the period January 20, 2005 through April 20, 2005, inclusive (the "Class Period").  Plaintiffs alleged that: (i) MBNA deceived the market by reporting that MBNA would achieve annual earnings growth of 10%; (ii) the Company failed to disclose that increases in interest rates, which had commenced before the Class Period and continued throughout, were driving down the proper carrying value of the Company's interest-rate only strips, such that the value of the Company's reported assets were materially overstated; and (iii) the Company did not adjust as appropriate the assumptions and estimates used in determining the fair value of the interest-only strip receivable.  As a result, on April 21, 2005, MBNA was forced to reveal that: (i) it had to take almost a $207 million write down of its interest-only strip receivable; (ii) its first quarter income was down 93% year-over-year, including the restructuring charge; and (iii) it expected full year earnings to be significantly below the 10% growth objective.  On July 6, 2007, the Court denied defendants' motion to dismiss the amended complaint.  *Baker v. MBNA Corp.,* Case No. 05-cv-00272-GMS (D. Del July 6, 2007) (Mem. Op.).  Subsequently, after substantial litigation, the parties settled the litigation resulting in the creation of a $25 million fund to compensate injured investors.  *In re MBNA Corp. Sec. Litig.,* Case No. 05-cv-00272-GMS (D. Del. Oct. 6, 2009) (Order).

### *In re Molson Coors Brewing Co. Securities Litigation*, Case No. 05-CV-00294-GMS (D. Del.)

The Firm served as liaison counsel on behalf of lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, Metzler Investment GmbH and the members of the class in this securities class action brought on behalf of all persons who were: (i) former shareholders of

Molson Coors ("Molson Coors") as a result of the February 9, 2005 merger of Molson with and into Coors; (ii) open market purchasers of Coors common stock from July 22, 2004 through February 9, 2005; and (iii) open market purchasers of Molson Coors common stock, from the completion of the merger through April 27, 2005, inclusive.  Plaintiffs alleged that Molson Coors made false and misleading statements, including: (i) the cost saving synergies represented by Molson Coors were impossible to achieve because, among other things, Coors' rapidly increasing distribution costs would adversely affect the potential cost saving synergies; (ii) Molson and Coors were already distributing each other's products, further reducing the possibility of cost saving synergies; (iii) the merger would actually incur significant post-merger expenses due to the expected exodus of Coors senior executives who would be paid millions of dollars in benefits; and (iv) Molson Coors would inherit Molson's Brazilian operations, which were an unmitigated failure that eventually necessitated a $500 million post-merger charge and the sale of Molson's Brazilian interests at a fraction of their cost.  After extensive litigation efforts in both the United States and Canadian actions, the parties settled the lawsuits resulting in the creation of a $6 million fund for the payment of investor claims.  *In re Molson Coors Brewing Co. Sec. Litig*., Case No. 05-cv-00294-GMS (D. Del. May 19, 2009).

### *County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc.*, C.A. No. 4066-VCN (Del. Ch.)

The Firm served as lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") in connection with its sale to Bank of America Corporation ("BofA").  Plaintiff County of York Employees Retirement Plan alleged that the individual defendants hastily agreed to sell the Company over the course of a weekend without adequately informing themselves of the true value of the Company or the feasibility of securing a viable alternative transaction that would be more beneficial to shareholders than the proposed acquisition.  On October 28, 2008, the Court granted, in part, plaintiff's motion to expedite discovery and denied defendants' motion to stay or dismiss.  *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.,* C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162 (Del. Ch. Oct. 28, 2008).  Subsequently, the Firm engaged in expedited discovery.  After engaging in arm's-length negotiations, the parties reached a settlement whereby defendants made additional, substantive disclosures in their definitive proxy statement.   Thereafter, the shareholders of Merrill and BofA approved the merger.

### *David B. Shaev IRA v. Sidhu*, Case No. 00983, November Term 2005 (Phila. C.C.P., Commerce Div.)

The Firm served as co-lead counsel in this shareholder derivative and class action brought on behalf of the public shareholders of Sovereign Bancorp, Inc. ("Sovereign" or the "Company").  Sovereign completed its two-part transaction (the "Santander Transaction") whereby Sovereign sold 19.8% of the Company to Banco Santander Central Hispano, S.A., and used the proceeds to fund its acquisition of Independence Community Bancorp.  Plaintiffs alleged that Sovereign's board of directors purposely structured the Santander Transaction to be below the 20% change in control threshold established by the New York Stock Exchange.  Additionally, plaintiffs alleged the board members had improper motives of entrenchment and participated in protection of their own self interests and the improper subversion of a proxy contest launched by Sovereign's largest shareholder, Relational Investors, LLC.  Following the close of the sale in May 2006, the Firm

helped negotiate a settlement of the litigation, which conferred substantial benefits on the Company and class members, including substantial corporate governance changes adopted by the Company. The Court approved the settlement. *David B. Shaev IRA v. Sidhu,* No. 00983 (Phila. C.C.P., Commerce Div. Oct. 28, 2008) (Order). The Supreme Court of Pennsylvania upheld the settlement, which had been challenged in both the trial court and the intermediate appellate court. *Shaev v. Sidhu*, Pennsylvania Docket No. 470 EAL 2010 (Pa. Dec. 21, 2010) (Order).

### *Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow*, C.A. No. 2683-N (Del. Ch.)

The Firm served as counsel for lead plaintiff Helaba Invest Kapitalanlagegesellschaft mbH, a European institutional investor, in this class action on behalf of the public shareholders of National Home Health Care Corp. ("National Home" or the "Company"). The litigation sought to enjoin the proposed acquisition of National Home by a consortium comprised of Angelo, Gordon & Co. and Eureka Capital Partners ("Angelo Gordon") for inadequate consideration. The plaintiff alleged that certain defendants, who collectively held more than fifty percent of the National Home's outstanding stock, agreed to vote in favor of the deal and that certain of these defendants would receive benefits from National Home and Angelo Gordon not shared by National Home's minority, public shareholders. As a result of the Firm's negotiations with defendants, the parties reached a settlement by which additional, curative disclosures were made in National Home's amended proxy statements and after holding meetings with the Company's special committee and board of directors, Angelo Gordon agreed to pay an additional $1.35 per share, a financial benefit of more than $3.76 million to National Home's shareholders. In addition, even after the merger agreement was approved, the Firm continued to advocate on behalf of shareholders, and Angelo Gordon agreed to allow the Company to increase its next quarterly dividend, representing approximately $260,000 in additional value. The Court approved the settlement. *Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow,* C.A. No. 2683-N (Del. Ch. Mar. 12, 2008) (Order).

### *Plymouth Co. Retirement System v. MacDermid, Inc.*, Case No. 2006CV9741 (Colo. Dist. Ct.)

The Firm served as co-lead counsel on behalf of lead plaintiff Plymouth County Retirement System and the class of MacDermid, Inc. ("MacDermid" or the "Company") shareholders. This case was a class action arising from the proposed acquisition of MacDermid by Daniel H. Leever (the Company's Chairman and Chief Executive), Court Square Capital Partners II, L.P., and Weston Presidio V, L.P. Among other things, plaintiff alleged that the Company's proxy did not disclose that the directors who approved the proposed transaction would receive more than $17 million for certain options, the amount or value that certain directors would be able to invest after completion of the proposed transaction, and certain facts and assumptions underlying the fairness opinion. As a result of the Firm's negotiations with defendants, MacDermid made additional disclosures in its definitive proxy statement, including, but not limited to, the compensation and involvement of key company insiders, information regarding competing bidders, and financial analyses by Merrill Lynch. The Court approved the settlement. *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* Case No. 2006CV9741 (Colo. Dist. Ct. Dec. 10, 2007) (Order).

***Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG***,
**Case No. 07-CV-3476-GEL (S.D.N.Y.)**

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Converium Holding AG ("Converium" or the "Company") and holders of the Company's American Depository Shares against SCOR S.A. ("SCOR") and Patinex AG ("Patinex") in connection with SCOR and Patinex's acquisition of Converium.  Plaintiff alleged that the acquisition was unfair to the class.  As a result of the Firm's action, SCOR agreed to settle the litigation by increasing its offer price by 7.9%, or $259.6 million.  Citing the efforts of plaintiff's counsel, the Court approved the settlement.  *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* Case No. 3476-GEL (S.D.N.Y. Feb. 8, 2008) (Order).

***In re American Pharmaceutical Partners, Inc. Shareholders Litigation***,
**Consol. C.A. No. 1823-VCL (Del. Ch.)**

The Firm served as one of co-lead counsel in this class action brought on behalf of the public shareholders of American Pharmaceutical Partners, Inc. ("APP" or the "Company") in connection with its acquisition of American BioScience, Inc.  Plaintiffs alleged that the acquisition would have diluted the voting rights of each share of the Company, to the detriment of minority shareholders. Plaintiffs also asserted claims derivatively on behalf of the Company, which was directly harmed, among other things, when the Company's investors fled *en masse* upon announcement of the merger, and because the merger transferred the bulk of the Company's value to defendant Dr. Patrick Soon-Shiong for allegedly inadequate consideration.  In April 2006, the merger was completed and subsequently plaintiffs filed their First Consolidated Class Action Complaint in June 2006.  After nearly eighteen months of arm's-length negotiations and the production of thousands of pages of documents in response to plaintiffs' subpoenas, the parties agreed to mediation and an agreement-in-principle to settle the action.  In July 2008, the parties agreed to settle the action for $14.3 million, to be paid by defendants, which represented approximately $0.60 per damaged minority share for the shareholders.  The Court approved the settlement.  *In re Am. Pharm. Partners, Inc. S'holders Litig.,* Consol. C.A. No. 1823-VCL (Del. Ch. Dec. 16, 2008) (Order).

***Schultze Asset Management LLC v. Washington Group International, Inc.***,
**C.A. No. 3261-VCN (Del. Ch.)**

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Washington Group International, Inc. ("Washington Group" or the "Company") in connection with its sale to URS Corporation.  Plaintiff alleged that the transaction was financially and procedurally unfair to Washington Group's shareholders.  In addition, plaintiff alleged that the Company's definitive proxy statement was materially misleading because, among other things, it failed to explain why Washington Group used overly conservative financial projections to support the fairness opinion issued in connection with the transactions.  As a result of the Firm's negotiations with defendants, Washington Group agreed to and made additional curative disclosures in the definitive proxy statement.  Specifically, the Company agreed to disclose additional information concerning the potential impact of existing contract claims asserted by the Company and their impact on the Company's valuation, the Company's efforts to solicit potential acquirers, and the analyses performed by Goldman Sachs, the Company's financial advisor, in support of the merger, among other things. Additionally, Washington Group

amended the merger agreement whereby it increased the amount of consideration paid to each Washington Group shareholder.  The Court approved the settlement.  *Schultze Asset Mgmt. LLC v. Wash. Grp. Int'l, Inc.,* C.A. No. 3261-VCN (Del. Ch. May 22, 2008) (Order).

***Sheetmetal Workers' National Pension Fund v. Hill,***
**Case No. 07-cv-2269-RBK (D.N.J.)**

The Firm served as counsel for plaintiff Sheetmetal Workers' National Pension Fund in this shareholder derivative and class action brought on behalf of the public shareholders of Commerce Bancorp, Inc. ("Commerce" or the "Company") in connection with two regulatory investigations of Commerce and its subsequent acquisition by PNC Bank in a merger transaction (the "Merger").  Plaintiff alleged that the members of the board of directors of Commerce violated their fiduciary duties to the Company by approving a course of conduct whereby Commerce made unsafe loans and engaged in questionable related party transactions with its officers and directors and that the price offered in the Merger was unfair.  Plaintiff requested the Court to issue an injunction to stop the Merger and sought expedited discovery.  After extensive discovery, the Firm helped negotiate a settlement, which resulted in a $77 million reduction in the termination fee, and numerous additional disclosures in the definitive proxy statement.  The Court approved the settlement.  *Sheetmetal Workers' Nat'l Pension Fund v. Hill,* Case No. 07-cv-269 (D.N.J. May 9, 2008) (Order).

***Virgin Islands Government Employees' Retirement System v. Alvarez,***
**C.A. No. 3976-VCS (Del. Ch.)**

The Firm served as counsel for plaintiff in this derivative and class action brought on behalf of the public shareholders of UnionBanCal Corporation ("UnionBanCal" or the "Company") against its board of directors and certain officers for breach of fiduciary duties arising from the defendants' repeated and systematic failure to implement anti-money laundering procedures and policies, in violation of federal laws, including the Bank Secrecy Act.  The class action claims arose in connection with a tender offer launched by Mitsubishi UFJ Financial Group and Bank of Tokyo-UFJ Ltd.  Plaintiff Virgin Islands Government Employees' Retirement System alleged that the merger consideration was unfair in a number of respects, including the fact that the Company's share price was substantially depressed as a result of defendants' egregious failures to comply with anti-money laundering laws and regulations.  The Firm coordinated efforts with a similar litigation in California, reviewing document production, deposing key witnesses, and negotiating a settlement in which UnionBanCal agreed to and made additional material disclosures concerning the transaction.  The Court approved the settlement.  *V.I. Gov't Employees' Ret. Sys. v. Alvarez,* C.A. No. 3976-VCS (Del. Ch. Dec. 2, 2008) (Order).

# THE FIRM'S PROFESSIONALS

**Seth D. Rigrodsky** is a founding Shareholder of the Firm and has over twenty-five years of legal experience.  Mr. Rigrodsky is a *magna cum laude* graduate of both Brandeis University and the Georgetown University Law Center.  While at Georgetown, he served as Articles Editor of the *Georgetown Law Review*.  Mr. Rigrodsky began his legal career as a law clerk to the Honorable Andrew G.T. Moore, II of the Supreme Court of Delaware.  Following his clerkship, Mr. Rigrodsky was associated with the law firms of Wachtell, Lipton, Rosen & Katz in New York, New York, and Morris, Nichols, Arsht & Tunnell LLP in Wilmington, Delaware, where he concentrated his practice on corporate and complex business litigation.  In 1994, Mr. Rigrodsky joined Morris and Morris in Wilmington, Delaware, where he became a partner in January 2000, and represented investors in numerous federal and state class and shareholder lawsuits.  He joined the law firm of Milberg LLP in 2001 and founded its Delaware office.  Mr. Rigrodsky co-founded the Firm in 2006.  He was appointed by the Delaware Court of Chancery to the Rules Committee of the Delaware Bar.  Mr. Rigrodsky is admitted to practice in the States of Delaware and New York, the United States District Courts for the District of Delaware, the Southern District of New York, and the District of Colorado, and the United States Courts of Appeals for the Second, Third, Fourth, and Sixth Circuits.

**Timothy J. MacFall** is a Partner at the Firm and has more than thirty years of legal experience.  Mr. MacFall is a *cum laude* graduate of Brooklyn College of the City University of New York and a graduate of Brooklyn Law School.  Upon his graduation from law school, Mr. MacFall served as an Assistant District Attorney in the Narcotics Bureau of the Kings County District Attorney's Office.  In 1987, he joined the United States Immigration & Naturalization Service as a Trial Attorney in the Alien Criminal Apprehension Program.  Mr. MacFall was subsequently cross-designated as a Special Assistant United States Attorney for the Eastern District of New York, Criminal Division.  In 1988, Mr. MacFall was appointed as a Special Assistant United States Attorney in the Civil Division of the United States Attorney's Office for the Southern District of New York.  As a government attorney, Mr. MacFall tried numerous cases to verdict and argued more than a dozen cases before the United States Court of Appeals for the Second Circuit.  Mr. MacFall was also a speaker at a United States Department of State Conference on pending extradition litigation and the 1986 *Supplementary Treaty Between the United States of America and the United Kingdom of Great Britain and Northern Ireland*; has served as a lecturer at Immigration & Naturalization Service Special Agent training seminars; and assisted in the preparation of a New York City Police Department trial testimony training film. Mr. MacFall has focused his practice primarily on complex class action litigation in state and federal courts since 1992.  Mr. MacFall has represented individual investors, union pension funds, and state pension funds in transactional and federal securities class actions throughout the United States.  Mr. MacFall joined the Firm in April 2009.  Mr. MacFall was selected for inclusion in the 2010, 2011, 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020 *New York Super Lawyers - Metro Edition* magazines for his work in securities litigation.  Mr. MacFall is admitted to practice in the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado, and the United States Court of Appeals for the Second Circuit.

**Gina M. Serra** is a Partner at the Firm.  Ms. Serra is a *cum laude* graduate of both Rowan University and Widener University School of Law in Wilmington, Delaware.  While at Widener Law, Ms. Serra was a member of the *Widener Law Review* and Vice President of the Moot Court Honor Society and the Justinian Society.  During law school, she also was a judicial intern for the Honorable Henry duPont Ridgely of the Supreme Court of Delaware, and obtained a Trial Advocacy Certificate with honors.  Ms. Serra began her legal career as the judicial law clerk to the Honorable Fred S. Silverman of the Superior Court of Delaware.  She also was a member of the Richard S. Rodney American Inn of Court.  Ms. Serra joined the Firm in September 2010.  She has been named a Delaware "Rising Star" by *Super Lawyers* for 2015, 2016, 2017, 2018, and 2019.  Ms. Serra is admitted to practice in the States of Delaware, New York, and New Jersey, the Commonwealth of Pennsylvania, the United States District Courts for the Districts of Delaware and Colorado, and the United States Court of Appeals for the Sixth Circuit.

**Herbert W. Mondros** is Special Counsel to the Firm.  Mr. Mondros is a graduate of Fairleigh Dickinson University and a *magna cum laude* graduate of Tulane University Law School, where he served as a member of the *Tulane Law Review* and was awarded the Order of the Coif.  After graduating law school, Mr. Mondros entered the United States Department of Justice through the Honors Program.  He served as a Trial Attorney in the Environmental Crimes Section and Assistant U.S. Attorney and Chief Appellate Counsel for the United States Attorney for the Eastern District of Louisiana.  Prior to joining Rigrodsky Law, Mr. Mondros was a litigation partner at Margolis Edelstein and a litigation associate in the Delaware office of Skadden, Arps, Slate, Meagher & Flom LLP.  He has represented plaintiffs and defendants in shareholder corporate and derivative litigation, securities and consumer fraud class actions, and commercial civil litigation.  Mr. Mondros routinely litigates in all of Delaware's state and federal courts.  He has an active pro bono practice, representing defendants in capital punishment cases and plaintiffs in prisoner civil rights cases.  Mr. Mondros has been a member of defense teams that exonerated and freed two individuals who had been wrongfully convicted and collectively served more than thirty years on Delaware's death row, and a third who served thirty-eight years in prison for a crime he did not commit.  Mr. Mondros serves on the Board of Innocence Delaware, an innocence organization dedicated to the exoneration of wrongfully convicted individuals.  Mr. Mondros is admitted to practice in the State of Delaware, the Commonwealth of Pennsylvania, and the United States District Courts for the District of Alaska, the District of Delaware, the Eastern and Western Districts of Arkansas, the Eastern District of Louisiana, the Eastern District of Oklahoma, and the Eastern District of Pennsylvania.

**Vincent A. Licata** is an Associate at the Firm.  Mr. Licata graduated from the Benjamin N. Cardozo School of Law with a concentration in Business Law, and obtained his bachelor's degree in Law and Policy from Dickinson College.  During law school, Mr. Licata served as a judicial intern for two New York State Supreme Court judges, in addition to clerking for a midtown litigation boutique.  He also served as a Research Assistant for tax professor Edward A. Zelinsky, and as a Notes Editor for the Cardozo Journal of Conflict Resolution.  Mr. Licata joined the Firm in September 2020 and is admitted to practice in the State of New York.



**DELAWARE**

300 Delaware Avenue, Suite 210

Wilmington, DE 19801

T: (302) 295-5310

**NEW YORK**

825 East Gate Boulevard, Suite 300

Garden City, NY 11530

T: (516) 683-3516

www.rl-legal.com