## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY O'HERN, *et al.*, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-402-SRF |
| | ) | |
| VIDA LONGEVITY FUND, LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Timothy O'Hern, Semyon Rodkin, and Dominic Cardinale ("Plaintiffs") bring this action on behalf of themselves and all other similarly situated individuals against the Vida Longevity Fund, LP ("VLF" or the "Fund"), an open-ended investment fund that uses money raised from investors to purchase life settlements. On March 19, 2021, Plaintiffs filed a class action complaint against VLF and defendants Vida Management I, LLC; Capital Management, LLC; Vida Capital, Inc.; and Jeffrey R. Serra (collectively, "Defendants"), alleging that VLF misled investors by attributing its declining performance to one-time or extrinsic events. (D.I. 1)

The court granted preliminary certification of the settlement class and preliminary approval of the settlement on November 21, 2022. (D.I. 31) Presently before the court is Plaintiffs' uncontested motion for final approval of class action settlement and plan of allocation (D.I. 35), and the motion of Rosca Scarlato LLC ("Class Counsel") for an award of attorneys' fees, payment of expenses, and for incentive awards (D.I. 36). For the reasons that follow, the court grants final certification of the settlement class, approves the settlement agreement, and awards attorneys' fees, expenses, and incentive awards as detailed below.

## I.    BACKGROUND

Plaintiffs invested in the VLF, which bought life insurance policies at a discount with the goal of producing annualized returns of 8-12% and a return of capital with low volatility. (D.I. 1 at ¶ 3)  The VLF achieved the targeted rate of return from its inception though 2017, but its performance began to decline in 2018. (*Id.* at ¶ 4)  The class action complaint alleges that the VLF misled investors by attributing its deteriorating performance to one-time or extrinsic events. (*Id.* at ¶ 5)  At the close of the third quarter in 2020, the VLF disclosed that its losses were caused by weaknesses in its internal processes and procedures used to evaluate and price the VLF's investments. (*Id.*)  Plaintiffs allege that the failure to disclose these weaknesses and the material conflicts of interests of its founder, Jeffrey Serra, amounted to violations of the Texas Securities Act. (*Id.*)

After Plaintiffs filed this action on March 19, 2021, the VLF's financial performance began to improve, generating positive returns under new owners and management. (D.I. 35 at 2)  The parties engaged in mediation on October 14, 2021, and they reached an agreement in principle on January 5, 2022. (*Id.* at 2-3)  On July 8, 2022, the parties entered into a stipulation setting forth the negotiated terms of the proposed settlement. (D.I. 30, Ex. 2)  The proposed settlement requires Defendants to pay $1.4 million to satisfy Plaintiffs' claims in exchange for a release of class claims. (*Id.*, Ex. 2 at Ex. B at ¶ 22)  The stipulation allowed Plaintiffs to conduct due diligence discovery before submitting the proposed settlement to the court for final approval. (*Id.*, Ex. 2 at 19-20)

Plaintiffs reviewed an extensive number of documents produced by Defendants during discovery and, on September 12, 2022, informed Defendants that they intended to proceed with the settlement. (D.I. 37 at ¶¶ 16-20)  On November 21, 2022, the court preliminarily certified

the settlement class and granted preliminary approval of the proposed settlement agreement. (D.I. 31)

The record before the court confirms that Plaintiffs have fully complied with the court's order preliminarily approving the proposed settlement. (D.I. 37 at ¶ 24) The court-appointed claims administrator, Strategic Claims Services ("SCS") disseminated the Postcard Notice to 5,765 prospective class members, and the Summary Notice was published via *Globe Newswire* on the internet on January 30, 2023. (*Id.*, Ex. 4 at ¶¶ 4-7) A small percentage of the Postcard Notices were returned as undeliverable, and SCS mailed Postcard Notices to forwarding addresses when such addresses were available. (D.I. 46 at ¶ 4) SCS estimates that approximately 94% of the class received the Postcard Notice. (*Id.*)

To date, SCS has not received any objections or requests for exclusion from the class. (D.I. 37, Ex. 4 at ¶ 10) Likewise, no prospective class member has objected to the request for attorneys' fees or expenses. (*Id.* at ¶¶ 67-68)

The net settlement amount, after deduction of taxes, notice and administrative expenses, and attorneys' fees and expenses from the allocated amount of $1.4 million, is to be distributed to all class members on a *pro rata* basis. (D.I. 37, Ex. 4 at Ex. C at ¶¶ 40-45) The settlement agreement provides that Plaintiffs' counsel will apply for an award of attorneys' fees in an amount not to exceed 30% of the settlement amount, and the amount of expenses paid or incurred shall not exceed $50,000. (*Id.*, Ex. 4 at Ex. C at ¶ 62) Incentive awards for Plaintiffs shall not exceed $30,000 total, or $10,000 per Plaintiff. (*Id.*)

## II.    CLASS CERTIFICATION

Under Rule 23 of the Federal Rules of Civil Procedure, the court must engage in a two-step analysis to determine whether to certify a class action for settlement purposes.  First, the court must determine whether Plaintiffs have satisfied the prerequisites of numerosity, commonality, typicality, and adequacy of representation as required under Rule 23(a).  If the Rule 23(a) criteria are satisfied, the court next considers whether the predominance and superiority requirements of Rule 23(b) are met.

The court conducted an analysis regarding settlement class certification under Rule 23 at the preliminary certification stage, and no material facts have changed since the preliminary certification.  (D.I. 31)  The proposed class is defined as "all persons and entities who, during the Class Period [from January 1, 2017 through March 19, 2021], purchased or otherwise acquired VLF Interests, either directly, or indirectly through Life Assets Trust S.A. Compartments VII and/or VIII, pursuant to an offering of those partnership interests."  (D.I. 30, Ex. 2 at § I.A.12-13)  These objective and administratively feasible criteria for class membership render the proposed class ascertainable.

### A.    Rule 23(a) Requirements

The four prerequisites under Rule 23(a) are: "(1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: there are questions of law or fact that are common to the class; (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class." *Schuler v. Medicines Co.*, 2016 WL 3457218, at *3 (D.N.J. June 24, 2016).

4

### 1.   Numerosity

There is no minimum number of individuals necessary for certification of a class, and a prospective class that includes more than forty members will generally satisfy the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, there are 5,765 class members who will receive payment under the terms of the settlement agreement. (D.I. 37, Ex. 4 at ¶ 4) Thus, the numerosity requirement is satisfied here.

### 2.   Commonality

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (internal citations and quotation marks omitted). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," such that the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement is satisfied in this case because there are common questions of law and fact, such as whether Defendants made material misrepresentations and omissions about VLF's underwriting and risk assessment procedures. (D.I. 1 at ¶¶ 40-43, 50)

### 3.   Typicality

"The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established. . . ." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 149 (D.N.J. 2013). The typicality requirement is satisfied even if class members do not have identical claims or

underlying factual circumstances, so long as the claims arise from the same practice or course of conduct or are based on the same legal theory.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311-12 (3d Cir. 1998).

Plaintiffs' claims arise out of the same alleged misrepresentations and omissions by Defendants.  The claims are based on Defendants' alleged misrepresentations and failure to disclose material information about weaknesses in VLF's internal processes and procedures used to evaluate and price the VLF's investments, as well as the existence of material conflicts of interest.  (D.I. 1 at ¶ 5)  Because Plaintiffs allege the same course of conduct and seek the same type of relief, the interests of the class members are sufficiently aligned to satisfy the typicality requirement.

### 4.    Adequacy of representation

To determine the adequacy of class representation, the court must consider the ability of both the named plaintiffs and counsel to fairly and adequately represent class interests.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).  Here, Plaintiffs invested in the VLF and were allegedly injured in the same manner as prospective class members as a result of Defendants' alleged misrepresentations and omissions.  (D.I. 1 at ¶¶ 7-9, 22-43)  There is no indication on the present record that Plaintiffs' interests conflict with the interests of other class members.  *See Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *9 (W.D. Pa. June 26, 2020) (finding $10,000 incentive awards to named plaintiffs were reasonable and did not give rise to a conflict between class representatives and other class members).

Moreover, Class Counsel is well equipped to adequately represent the members of the class.  The record before the court confirms that Class Counsel has substantial experience in litigating complex class action lawsuits and has diligently negotiated a favorable settlement for

6

class members.  (D.I. 37, Ex. 3)  Consequently, the requirements of Rule 23(a)(4) are met.  Fed.

R. Civ. P. 23(a)(4).

> **B.      Rule 23(b)(3) Requirements**

After determining that the putative class satisfies the Rule 23(a) requirements, the court

must decide whether the putative class may be certified under Rule 23(b)(3), which provides that

> A class action may be maintained if Rule 23(a) is satisfied and if the court finds
> that the questions of law or fact common to class members predominate over any
> questions affecting only individual members, and that a class action is superior to
> other available methods for fairly and efficiently adjudicating the controversy.
> The matters pertinent to these findings include: (A) the class members' interests
> in individually controlling the prosecution or defense of separate actions; (B) the
> extent and nature of any litigation concerning the controversy already begun by or
> against class members; (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and (D) the likely difficulties in
> managing a class action.

Fed. R. Civ. P. 23(b)(3).  These requirements are known as "predominance" and "superiority."

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

> **1.      Predominance**

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation, and assesses whether a class action would achieve

economies of time, effort, and expense, and promote uniformity of decision as to persons

similarly situated."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (internal

citations and quotation marks omitted).  This analysis is more rigorous than the commonality

requirement under Rule 23(a).  *See id.*  Nonetheless, where Plaintiffs have alleged a common

course of conduct by Defendants, the predominance requirement will likely be satisfied.  *Id.* at

297-98.  The Third Circuit is "more inclined to find the predominance test met in the settlement

context."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 434 (3d

Cir. 2016) (quoting *Sullivan*, 667 F.3d at 304 n.29).

7

In this case, common questions of law and fact predominate over any questions that may affect individual class members.  The issue of whether Defendants are liable for material misrepresentations and omissions is common to all class members and is subject to generalized proof.  Nothing in the record before the court suggests factual differences between the claims of various class members, and the settlement agreement provides for the *pro rata* distribution of funds among class members.  Therefore, the predominance requirement is satisfied.

### 2.    Superiority

The superiority analysis requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal citations and quotation marks omitted).  The court must "consider the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re NFL*, 821 F.3d at 434-35.

The superiority requirement is met because the proposed settlement will allow class members to obtain prompt, efficient relief and will avoid a multitude of individual litigations on the same issues and facts. *See In re Warfarin*, 391 F.3d at 534 (explaining that individual class members may have little interest in individually controlling separate litigations because each consumer's claim is proportionally small in relation to the cost of prosecuting a lawsuit).  In addition, class members were given an opportunity to opt out of the settlement class if they wished to bring their claims separately. *Id.*  The fact that the case is being resolved via settlement negates any concerns about the difficulty of managing a class action suit. *See Sullivan*, 667 F.3d at 302-03.

8

Having determined that Plaintiffs have satisfied the Rule 23 requirements to obtain class

certification, the court will certify Plaintiffs' proposed class for purposes of final settlement

approval.

## III.   FINAL APPROVAL OF THE SETTLEMENT

Having certified the proposed class action under Rule 23, the court must evaluate the

fairness of the class action settlement under Rule 23(e), which provides that approval of a class

settlement should occur only if the settlement is "fair, reasonable, and adequate" after

consideration of four factors: (A) whether the class representatives and class counsel have

adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C)

whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and

delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to

the class, including the method of processing class-member claims; (iii) the terms of any

proposed award of attorney's fees, including timing of payment; and (iv) any agreements

between the settling parties; and (D) whether the proposal treats class members equitably relative

to each other. Fed. R. Civ. P. 23(e)(2); *see In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241,

258 (3d Cir. 2009). The Advisory Committee's Note to the 2018 Amendment identifies these

four factors as the "core concerns" that should guide the court's decision regarding whether to

approve the proposed settlement.

Courts in the Third Circuit also continue to apply the *Girsh* factors, which include

procedural and substantive considerations similar to those in the 2018 amendments to Rule 23(e).

*See In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *4 n.1 (E.D. Pa.

Oct. 28, 2022). The nine *Girsh* factors include: (1) the complexity, expense, and likely duration

of litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

"[T]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court," and the court's decision is given "great deference." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *16 (E.D. Pa. Apr. 21, 2020). Courts generally favor settlements to avoid lengthy litigation. *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 349 (D.N.J. 2020). Here, all four factors under Rule 23(e)(2) and the corresponding *Girsh* factors weigh in favor of final approval of the settlement agreement, and the court finds that the proposed settlement is fair, reasonable, and adequate.

### A.    Plaintiffs and Class Counsel Adequately Represented the Class

Class Counsel has adequately represented the class in satisfaction of Rule 23(e)(2)(A). The record before the court establishes that Class Counsel has extensive experience in litigating complex securities cases and class actions. (D.I. 37, Ex. 5 at Ex. 3; Ex. 6 at Ex. 3) Moreover, Class Counsel's filings confirm that Class Counsel thoroughly investigated the claims, defenses, and events underlying this action. (*See, e.g.*, D.I. 1; D.I. 30; D.I. 37 at ¶¶ 6, 15) Class Counsel also engaged in extensive settlement negotiations and a private mediation, culminating in the stipulation and proposed settlement. (D.I. 37 at ¶¶ 7-15) After the court's order preliminarily approving the settlement, Class Counsel engaged in due diligence discovery to ensure that the terms of the proposed settlement were fair, reasonable, and adequate for class members. (*Id.* at

¶¶ 16-20)  These facts confirm the adequacy of Class Counsel's actual performance in representing the interests of the class.  *See Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at \*7 (E.D. Pa. Jan. 12, 2022).

Plaintiffs' representation of the interests of the class also satisfies Rule 23(e)(2)(A).  The proposed settlement establishes that Plaintiffs' claims are typical of the claims of the settlement class.  Specifically, Plaintiffs invested in the VLF and were allegedly injured in the same manner as prospective class members as a result of Defendants' alleged misrepresentations and omissions.  (D.I. 1 at ¶¶ 7-9, 22-43)  There is no indication on the present record that Plaintiffs' interests conflict with the interests of other class members.  *See Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at \*9 (W.D. Pa. June 26, 2020) (finding $10,000 incentive awards to named plaintiffs were reasonable and did not give rise to a conflict between class representatives and other class members).

### B.    The Settlement Was Negotiated at Arm's Length

All evidence points to an arm's length negotiation of the settlement in satisfaction of Rule 23(e)(2)(B).  The parties retained a neutral mediator with experience in securities class actions.  (D.I. 37 at ¶¶ 9-11)  The Advisory Committee's note to the 2018 amendment to Rule 23(e)(2) confirms that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."  Although the all-day mediation did not result in a negotiated resolution, the parties continued negotiating over the ensuing weeks and reached agreement less than three months later.  (*Id.*)  This factor supports final approval of the settlement.

**C.    The Settlement Provides Substantial Relief to the Class**

The third factor under Rule 23(e)(2) regarding the adequacy of the relief provided for the class is related to many of the *Girsh* factors. *See Utah Ret. Sys.*, 2022 WL 118104, at *8. The court's analysis under Rule 23(e)(2)(C) also addresses the first, fourth, fifth, eighth, and ninth *Girsh* factors.

The cost and risks of continued litigation favor final approval of the settlement, which creates a cash recovery of $1.4 million.  This settlement amount provides a substantial benefit to class members given the inherent risks posed by continued litigation. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (noting the importance of weighing "the realistic, rather than theoretical, potential for recovery after trial" in comparing the value of settlement versus trial).  Plaintiffs acknowledge the hurdles they would face in litigation to prove liability, damages, and loss causation in light of the parties' competing narratives about why the VLF underperformed, and whether and how conflicts of interest were disclosed.  (D.I. 37 at ¶ 21) Plaintiffs would need to rely on expert witnesses to establish damages in litigation, and their claims could be significantly reduced if a jury were to credit Defendants' experts.  Moreover, litigating the case in lieu of settlement would likely result in years of delay and significant expenditures. *See In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 WL 2985634, at *5 (E.D. Pa. July 28, 2022) (describing public policy favoring settlement of class actions and other complex litigation "that otherwise could linger for years").  Thus, the proposed settlement satisfies the requirements of Rule 23(e)(2)(C)(i).

Plaintiffs' damages expert estimates that the aggregate out-of-pocket loss caused by Defendants' conduct was about $26 million.  (D.I. 37 at ¶ 22) Thus, the proposed settlement would result in recovery of about 5.4% of those losses without risk.  (*Id.* at ¶ 23)  This is in line

with recoveries in comparable settlement agreements approved by courts. *See Utah Ret. Sys.*, 2022 WL 118104, at \*8 & n.5 (identifying the Third Circuit's median recovery of 5.2% in similar securities class action settlements); *Schuler v. Meds. Co.*, 2016 WL 3457218, at \*8 (D.N.J. June 24, 2016) (finding recovery of 4.0% of estimated recoverable damages fell within the range of previous settlement approvals).

Rule 23(e)(2)(C)(ii) requires the court to analyze "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, notice was sent to 5,765 potential class members by an experienced and qualified claims administrator. Of those that received notice, 1,365 claims were received, representing a claim filing rate of about 24%. (D.I. 43 at ¶ 5) This rate is consistent with other class action settlements that have been approved in the Third Circuit. *See, e.g., Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at \*2 (D.N.J. May 3, 2022) (approving class action settlement where 494,035 potential class members were notified, 97,825 proofs of claim were submitted by class members, and no objections were filed). SCS provides additional evidence showing that the claim filing rate of 24% is on par with or higher than eight other settlements of a similar size. (D.I. 46 at ¶ 5)

The notice provides that the settlement amount will be distributed to class members who submit valid claim forms and includes a proof of claim form as an attachment with instructions on how to complete the form. (D.I. 37, Ex. 4 at Ex. C at ¶¶ 41, 49-50) On this record, the effectiveness of Class Counsel's methods of distributing relief to class members is adequate and not overly burdensome. *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 350 (D.N.J. 2020) (finding settlement did not impose an onerous burden on class members where, as here, they simply needed to complete a proof of claim form).

13

Rule 23(e)(2)(C)(iii) requires consideration of the terms of any proposed award of attorneys' fees. Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel seeks not more than 30% of the settlement amount, plus accrued interest, and litigation expenses of no more than $50,000. The requested fee is within the range of reasonable attorneys' fees awarded in the Third Circuit, as discussed in more detail at § IV.A.1, *infra*. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818-19 (3d Cir. 2010) (affirming district court's award of class counsel's 30% fee request).

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) require the parties seeking approval of the settlement to file a statement identifying any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Plaintiffs represent that the stipulation executed on July 8, 2022, along with its exhibits, is the only agreement between the parties, aside from a standard non-disclosure agreement allowing Defendants to terminate the settlement if the exclusion requests exceed a specific threshold. (D.I. 35 at 19; D.I. 30, Ex. 2) This requirement is therefore satisfied.

**D.    The Proposed Plan of Allocation Treats Class Members Equally**

The settlement provides that all class members, including Plaintiffs, will receive a *pro rata* share of the net settlement amount based on their "Recognized Loss Amount" in accordance with a court-approved plan of allocation. (D.I. 30, Ex. 2 at Ex. E at ¶¶ 50, 52, 56-57) Thus, there can be no dispute that the settlement treats all class members equitably based on the relative losses they sustained, in accordance with Rule 23(e)(2)(D).

14

E.      **The Remaining *Girsh* Factors**

1.      **Reaction of the Class to the Settlement**

When there are many class members and few objectors, there is a strong presumption in favor of approving the class action settlement under the second *Girsh* factor. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). In this case, notice was sent to 5,765 prospective class members, about 94% of the prospective class actually received the notice, and no class member objected to or opted out of the settlement. (D.I. 42 at 2; D.I. 46 at ¶ 4) This factor therefore weighs in favor of final approval of the settlement.

2.      **Amount of Discovery**

Under the third *Girsh* factor, the court must consider whether the parties' attorneys had an "adequate appreciation of the merits of the case before negotiating" the settlement. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). Here, Class Counsel had undertaken significant informal discovery by the time settlement negotiations began, including a review of many documents regarding the VLF and related entities from a variety of sources. (D.I. 37 at ¶ 5) Class Counsel also spoke with several investors in the VLF and other individuals with relevant knowledge, and obtained non-public documents relevant to the issues in this litigation. (*Id.*) This informal, pre-suit discovery was sufficient to allow Class Counsel to assess the strengths and weaknesses of the case. *See In re NFL*, 821 F.3d at 436-37 ("In some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation."); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (finding class counsel had ample information to evaluate the prospects for the litigation and assess the fairness of the settlement despite the fact that no formal discovery was taken). Extensive due

15

diligence discovery taken after the parties' settlement negotiations further confirmed that the settlement was fair, reasonable and adequate. (D.I. 37 at ¶¶ 16-20)  This factor weighs in favor of approval of the settlement.

### 3.    Risks of Maintaining a Class Action Through Trial

The sixth *Girsh* factor is neutral.  Plaintiffs present no evidence or argument to suggest that the settlement class could not be maintained throughout the case. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012) (finding the sixth *Girsh* factor was neutral where "there [was] no apparent reason why the Court would decertify or modify [a] class at any time during the litigation.").

### 4.    Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor is neutral, as there is no evidence on the present record that Defendants would not be able to pay a greater judgment.  But the neutrality of this factor does not weigh against final approval of the settlement where, as here, the other *Girsh* factors support a conclusion that the settlement is fair, reasonable, and adequate. *See In re Warfarin*, 391 F.3d at 538.  Plaintiffs acknowledge that continuing the action to trial might result in a larger award for class members, but this possibility does not outweigh the risks of establishing liability, damages, and loss causation. (D.I. 35 at 17)

Based on the foregoing analysis of the Rule 23(e)(2) factors and the *Girsh* factors, the court concludes that final approval of the settlement is proper.

## IV.    ATTORNEYS' FEES, PAYMENT OF EXPENSES, AND INCENTIVE AWARDS

Class Counsel moves for an award of: (1) attorneys' fees in the amount of 30% of the $1.4 million settlement; (2) payment of litigation expenses incurred in prosecuting and settling the litigation, in the amount of $15,837.60; and (3) incentive awards to Plaintiffs in the amount

of $10,000 each, or $30,000 in the aggregate, for the time and expenses they incurred in representing the settlement class. (D.I. 36)  For the following reasons, the motion is granted.

## A.    Attorneys' Fees

Rule 23(h) states that the court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Although the decision to award attorneys' fees and expenses is within the court's discretion, "a thorough judicial review of fee applications is required for all class action settlements." *In re Prudential*, 148 F.3d at 333 (internal quotation marks omitted).  Courts assessing attorneys' fees typically apply either the percentage-of-recovery method, which awards a certain percentage of the settlement amount, or the lodestar method, which multiplies the number of hours worked by a reasonable hourly billing rate for the services. *In re Rite Aid*, 396 F.3d at 300.

### 1.    Percentage-of-recovery analysis

In common fund cases such as this one, it is typical for Class Counsel to request a percentage of the recovery. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (internal quotations and citations omitted)).  To evaluate the fairness of the requested fees under this method, the court weighs the following factors:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  Application of these factors is flexible, and "one factor may outweigh the rest." *In re Rite Aid*, 396 F.3d at 301.

Regarding the first and second factors, the $1.4 million settlement, representing approximately 5.4% of the estimated damages alleged, conforms with averages in this region and will benefit a significant number of claimants because there were no objections to the settlement or to Class Counsel's fee request.  (D.I. 37 at ¶¶ 22-23; D.I. 44); *see Utah Ret. Sys.*, 2022 WL 118104, at *8 & n.5 (identifying the Third Circuit's median recovery of 5.2% in similar securities class action settlements); *Schuler*, 2016 WL 3457218, at *8 (finding recovery of 4.0% of estimated recoverable damages fell within the range of previous settlement approvals).

As previously discussed at §§ II.A.4 and III.A, *supra*, the third *Gunter* factor supports an award of fees because Class Counsel are skilled in litigating securities class actions and expended significant time on a contingency basis.  (*See also* D.I. 37 at ¶¶ 47, 58-59)  In addition, Class Counsel overcame substantial challenges to obtain the proposed settlement because the VLF's performance improved sharply soon after the complaint was filed, and Defendants claim that the material information alleged to be omitted by Plaintiffs was disclosed in other public documents.  (*Id.* at ¶¶ 8, 47-48)

The fourth factor supports an award of fees because "securities litigation is inherently complex, expensive, and lengthy, usually requiring expert testimony on a variety of issues. Without a settlement, a significant amount of time and resources would be necessary to bring the case to a close." *Utah Ret. Sys.*, 2022 WL 118104, at *12.  Here, Plaintiffs allege violations of the Texas Securities Act that would require a showing of scienter in the face of competing narratives and expert testimony.  (D.I. 37 at ¶¶ 6, 21)

The fifth factor weighs in favor of an award of attorneys' fees because Class Counsel took this case on a contingency basis, assuming the risk that there would be no recovery.  (D.I. 37 at ¶ 47)  The uncertainty of the recovery, the general difficulty in prevailing in securities

18

cases, and the legal obstacles of establishing scienter, damages, and loss causation support an award of fees. *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *13 (D.N.J. June 15, 2020).

The time and effort expended by Class Counsel in this action further supports an award of fees under the sixth *Gunter* factor. Class Counsel has devoted 654.70 hours to the prosecution and resolution of this case. (D.I. 37 at ¶ 57)

With respect to the seventh factor, the Third Circuit has stated that fee awards in common fund cases typically range from 19% to 45% of a settlement fund. *See In re Gen. Motors Corp.*, 55 F.3d at 822. The requested fee of 30% is reasonable and falls within the typical range of fee awards in securities class action settlements such as this one. *See, e.g., In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818-19 (3d Cir. 2010) (affirming district court's award of class counsel's 30% fee request); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *11 (D.N.J. May 3, 2022) (approving a fee award equal to 29.2% of the settlement amount).

Courts may also consider three additional factors set forth in *Prudential*, including (1) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated if the case were subject to a private contingent fee arrangement when counsel was retained; and (3) any innovative terms of settlement. *See In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *In re Prudential*, 148 F.3d at 331-32). Here, the entire value of the settlement is attributable to the efforts of Class Counsel because there is no governmental investigation. A fee of 30% is also consistent with the percentage fee that would have been negotiated if the case were subject to a private contingent fee agreement at the time counsel was retained. *See In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006); *In re Ikon Office Sols., Inc.*

*Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (observing that private contingency fees in tort matters are typically between 30 and 40% of any recovery). Finally, the record before the court does not suggest any innovative terms in the settlement, so this factor weighs neither in favor of or against the fee request. *See In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) ("In the absence of any innovative terms, this factor neither weighs in favor nor against the proposed fee request.").

        **2.**        **Lodestar cross-check**

The reasonableness of the percentage-of-recovery amount is generally confirmed using the lodestar calculation method, which is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid*, 396 F.3d at 305-06. Here, Class Counsel represents that the total lodestar amount is $505,967.50, based on 654.70 hours of work at a variety of hourly billing rates for attorneys, paralegals, and other professional support staff. (D.I. 37 at ¶ 57; Ex. 5 at ¶ 6 & Ex. 1; Ex. 6 at ¶ 6 & Ex. 1) When calculated against the requested fee of $420,000, the lodestar multiplier is 0.83. (*Id.*) In other words, Class Counsel will receive only 83% of what they would have received at the regular billing rates. This is lower than lodestar multipliers generally awarded in the Third Circuit. *See In re Prudential Ins.*, 148 F.3d at 341 (observing that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."). A negative multiplier of 0.83 "is well under the generally accepted range and provides strong additional support for approving the attorneys' fee request." *Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564, 572 (E.D. Pa. 2012).

**B.    Attorneys' Expenses**

Class Counsel requests reimbursement of $15,837.60 in expenses incurred in connection with the litigation and settlement of this action.  (D.I. 37, Ex. 5 at ¶ 8 & Ex. 2; Ex. 6 at ¶ 8 & Ex. 2)  "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp. Deriv. Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002).  The largest portion of Class Counsel's expenses was $13,150 paid for mediation costs.  (D.I. 37 at ¶ 62)  The class action notices informed prospective class members that Class Counsel would seek reimbursement of litigation expenses not to exceed $50,000.  There were no objections to this amount, and the actual amount of expenses requested is well below the amount listed in the notices.  The court finds that Class Counsel's expenses are reasonable and will grant the request for reimbursement of $15,837.60.

**C.    Incentive Awards**

Class Counsel seeks an award of $10,000 for each of the three Plaintiffs, for a total of $30,000.  The court finds the requested incentive awards to be fair and reasonable. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.").  Plaintiffs devoted substantial time and effort to prosecuting and settling the case, including frequently communicating with Class Counsel about the status of the case, reviewing pleadings and motions, discussing mediation strategy and evaluating settlement proposals, and participating directly in the mediation session.  (D.I. 37, Exs. 1-3)  The class action notices informed prospective class members that Class Counsel would seek an incentive award for Plaintiffs not to exceed $30,000 for time and expenses

21

incurred in representing the settlement class.  There were no objections to this amount.

Consequently, the court approves the incentive awards of $10,000 for each of the three Plaintiffs.

V.      **CONCLUSION**

      For the foregoing reasons, the court certifies the Rule 23 class action, approves the

proposed settlement in full, awards attorneys' fees, expenses, and for incentive awards, and

dismisses the action with prejudice.  Appropriate Orders shall follow.


Dated:  May 2, 2023

                                                        Sherry R. Fallon
                                                         United States Magistrate Judge